UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT T. KENNEDY, On Behalf
of Himself and All Others Similarly
Situated,

        Plaintiff,

vs.

BUTLER FINANCIAL SOLUTIONS, LLC,
HERITAGE WARRANTY INSURANCE RISK
RETENTION GROUP, INC., f/k/a HERITAGE
WARRANTY MUTUAL INSURANCE RISK
RETENTION GROUP, INC., and
JOHN DOES 1-10,

        Defendants.

Case No. 1:08-cv-1862
Honorable George M. Marovich

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

---

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Robert T. Kennedy, JoAnn Mick and Charles C. Mitschow (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, hereby allege, by and through their attorneys, based upon personal information and information obtained through the investigation of counsel, as follows:

## NATURE OF CASE

1.    Plaintiffs bring this class action on behalf of themselves and a class of similarly situated individuals who purchased Vehicle Service Contracts ("VSCs") pursuant to which Defendant, Butler Financial Solutions, LLC ("Butler") is obligated to provide repair and service coverage on new and used motor vehicles. Under the plain terms of the VSCs, Butler must pay the reasonable costs associated with certain automobile part failures or mechanical breakdowns

experienced by the contract holders' vehicles.

2.      The VSCs further state that Butler's obligations to pay covered claims under the VSCs are insured under a Vehicle Service Contract Reimbursement Policy ("Insurance Policy") issued by defendant Heritage Warranty Insurance Risk Retention Group, Inc., f/k/a Heritage Warranty Mutual Insurance Risk Retention Group, Inc. ("Heritage").  The Insurance Policy specifically states that Heritage must directly pay VSC claims if Butler fails to do so: "Upon failure of the Insured [*i.e.*, Butler] to pay or provide service on a valid claim within sixty (60) days after proof of loss has been filed with Insured [*i.e.*, Butler], coverage hereunder shall be provided directly to the service contract holder claimant."

3.      Despite these express representations, promises and contractual obligations, both Butler and Heritage refuse to pay covered claims under the VSCs.  Instead of paying claims as required under the express terms of the VSCs, Butler takes the position that only Heritage is responsible for paying all claims.  According to Heritage, Butler has yet to pay for a single repair under the VSCs.

4.      Similarly, Heritage had, as of December 2006 at the latest, decided that it too has no responsibility to pay claims, directly or indirectly, under the VSCs, and it has reaffirmed that it will refuse to pay such claims in the future.  Heritage's refusal is made in the face of the Insurance Policy, which clearly states that if Butler fails to pay a covered claim under a VSC, Heritage must pay that claim on Butler's behalf.  Heritage's responsibility to VSC holders is further confirmed by an "Administrative Agreement" between Heritage and Warrantech Automotive, Inc. ("Warrantech") which states that Warrantech shall maintain a Heritage-funded bank account for the purpose of paying all valid VSC claims (the "Loss Reserve Fund").

2

5.      Defendant Warrantech also shares significant responsibility for misleading all VSC holders regarding the policies they purchased, resulting in the unpaid claims and significant damages to Plaintiffs and Class members.  The VSC program at issue in this action was designed, priced, administered, marketed and distributed jointly by Warrantech and Heritage. However, as structured, the entire program was essentially a pyramid scheme which would necessarily need to rely upon the sale of new VSCs to fully fund the payment of claims on the existing VSCs.

6.      Despite accepting more than $25 million in VSC premiums from consumers, Warrantech and Heritage failed to design and execute the program in a manner which would ensure that sufficient funds would be set aside in the Loss Reserve Fund account to fully fund future VSC claims.  And, as recent sworn court filings make clear—unbeknownst to the VSC holders and contrary to the plain language of the VSC contracts, neither Butler nor Heritage ever intended to take on the risk or responsibility for fully funding VSC claims in the event the monies set aside in the Loss Reserve Fund were insufficient to pay valid claims.

7.      As a result of the foregoing, claims made by hundreds if not thousands of contract holders have been denied by Defendants without any proper legal basis.  According to Heritage, claims under the VSC policies are being submitted at a rate exceeding $200,000 per month. Despite outstanding claims which greatly exceed $1 million, Heritage now admits that it has paid merely $220,000 to VSC holders.

8.      Absent action by this Court, Butler and Heritage will continue to refuse valid VSC claims in the future, so that even with compensation now Class members and indeed all holders of the VSCs who develop service contract claims will likely go unreimbursed despite

3

their coverage.

9.     By this action, Plaintiffs seek damages and other relief on their own behalf, and on behalf of a nationwide class of other similarly situated individuals who purchased or hold the VSCs.  As alleged more fully below, Defendants are liable to Plaintiffs and other Class members for, among other things, violations of the Magnuson-Moss Warranty Act, breach of express contract and breach of third-party beneficiary contracts.  Plaintiffs also request that the Court provide injunctive and/or declaratory relief, including an order declaring that Butler or Heritage, or both, are obligated to pay covered claims and that the VSCs are voidable at the option of the VSC holders.

## PARTIES

10.     Plaintiff Robert T. Kennedy ("Kennedy") is an individual residing in Castle Rock, Colorado.  In December 2002, Mr. Kennedy purchased a VSC, a true and correct copy of which is attached hereto as Exhibit A.  He paid $1,332 for his VSC, which provides coverage for a period of 84 months or 100,000 miles.

11.     Plaintiff JoAnn Mick ("Mick") is a citizen and resident of Lake Forest, Illinois.  On November 1, 2002, Ms. Mick purchased a VSC, Policy No. WWTN33859 but is currently unable to locate her copy.  However, Defendants Heritage, Warrantech and Butler have acknowledged its existence, at the terms described, by, *inter alia*, paying her for a valid claim before the Heritage-Butler dispute caused the impasse described in this Complaint, and a full and complete copy of Ms. Mick's VSC is available to each of the Defendants on their computer systems.  She paid $1,270 for her VSC, which was supposed to provide coverage for a period of sixty (60) months or 100,000  miles.

4

12.     Plaintiff Charles C. Mitschow ("Mitschow") is a citizen and resident of Hendersonville, North Carolina. In June 2003, Mr. Mitschow purchased a VSC, a true and correct copy of which is attached hereto as Exhibit B. He paid $1,500 for his VSC, which was supposed to provide coverage for a period of 72 months or 100,000 miles.

13.     Defendant, Butler, is a Delaware Limited Liability Company which, at the time the above-referenced VSCs were sold to Plaintiffs, had its principal place of business in Boca Raton, Florida. In approximately October 2005, Butler relocated its corporate offices to Ashville, North Carolina. Butler is the primary obligor under the VSCs.

14.     Defendant, Heritage, is a South Carolina corporation in the business of insurance, with its principal place of business also located in South Carolina. Heritage issued the Insurance Policy with respect to Butler's obligations under the VSCs. According to Butler, Heritage (along with Warrantech) monitored and controlled the terms, conditions and pricing of the VSCs, and set the amount of money from the sale of VSCs that would be placed in its Loss Reserve Fund for the payment of VSC claims. Heritage received, up front, more than $25,000,000 in premiums and other monies from the sale of the VSCs.

15.     Defendant, Warrantech, is a Connecticut corporation with its principal place of business in Bedford, Texas. Warrantech is a wholly-owned subsidiary of Warrantech Corporation, which develops, markets, distributes and administers vehicle service contracts. According to Warrantech, it marketed, distributed and administered the VSCs. According to Heritage, Warrantech also initially designed and priced the VSC program. According to Butler, Warrantech (along with Heritage) monitored and controlled the terms, conditions and pricing of the VSCs, and set the amount of money from the sale of VSCs that would be placed in its Loss

Reserve Fund for the payment of VSC claims. According to Heritage, Warrantech represented to both Butler and Heritage that they would not bear any risk or downside exposure on the VSCs and would not be called upon to pay claims exceeding the amounts already set aside in the Loss Reserve Fund. According to Butler, Heritage knew that Butler would not and could not pay VSC claims in the first instance. According to American Re (the reinsurance company identified on the VSCs), Warrantech fraudulently induced it into providing insurance on some or all of the VSCs by falsely representing, among other things, that American Re would not bear any risk or downside exposure on the VSCs and would not be called upon to pay claims exceeding the amounts already set aside in the Loss Reserve Fund.

16.     The John Doe Defendants are persons or entities whose identities are not yet known to Plaintiffs who, in concert with the other Defendants, caused the damages alleged in this Complaint.

17.     Defendants Butler, Heritage and Warrantech are collectively referred to herein as "Defendants."

18.     The following pending lawsuits directly or indirectly concern the VSC program and the ongoing dispute as to which entity or entities are obligated to pay the VSC claims of Plaintiffs and the Class: (i) *Warrantech v. Heritage*, Case No. 07CV3539 (N.D. Ill.); (ii) *Heritage v. Butler et al.*, Case No. 07CV6977 (N.D. Ill.); and (iii) *American Resources In. Co., Inc. v. Warrantech et al.*, Case No. 07-850-WS-M (S.D. Ala.).

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2). Upon information and belief, this case involves claims that have a total value in

excess of $5,000,000, exclusive of interest and costs.  No individual claim is less than the sum or value of $25 and there are thousands of VSC holders that are members of the putative Class.

20.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391 because:

a.    The Administrative Agreement between Heritage and Warrantech provides that, in the event of a dispute between them, litigation must be covered in federal or state courts within the State of Illinois to resolve disputes and that Illinois law shall apply;

b.    The Insurance Policy purchased by Butler from Heritage states that Heritage will submit to the competent jurisdiction of any court in the United States, and Butler has sought to litigate relevant issues under the policy in this District;

c.    There are two related actions in this District where Butler, Heritage and Warrantech are already seeking a determination of their rights and obligations under the VSCs, the Insurance Policy and the Administrative Agreement;

d.    The resolution of the two related cases will impact the rights of Plaintiffs and Class members;

e.    Defendant Butler has conceded that venue is proper in this District by seeking and achieving a transfer of its related action from South Carolina to this District and seeking to intervene in the other related action which is also pending in this District;

f.    Heritage, Butler and Warrantech do substantial business in this District and, upon information and belief, some VSCs were sold in this District;

g.    Plaintiffs and the Class initially filed their action in the United States District Court for the District of Florida, formerly the site of Butler's headquarters, and both Heritage and Butler argued that such venue was improper and the Florida court transferred this

7

action to this District;

       h.    Defendant Butler has argued that this District is the proper venue for this action;

       i.    Plaintiff Mick and other members of the Class reside in this District; and

       j.    Upon information and belief, some of the witnesses with knowledge of the facts related to this action are currently located in this District.

## FACTUAL BACKGROUND

21.    When purchasing an automobile, a consumer may also buy a third-party VSC to supplement any manufacturer's warranties. A VSC typically requires that the issuer pay for certain types of automobile repairs during the term of the contract. Upon information and belief, Butler is a leading provider of VSCs and is the obligor with respect to hundreds of thousands of VSCs that were sold, and continue to be sold, to vehicle purchasers throughout the country.

22.    The VSCs at issue here are standard form contracts pursuant to which Butler promises to "pay or reimburse You [the VSC purchaser] for reasonable costs to repair or replace any Breakdown of a part listed under Mechanical Coverage."

23.    The VSCs further state that Butler's obligations are "insured by a policy issued by Heritage Warranty Mutual Risk Retention Group, Inc. . . ." and that: "[i]f a covered claim is not paid within sixty (60) days . . . after proof of loss has been filed, You [the purchaser] may file a claim directly with the Insurance Company [Heritage]." The Insurance Policy itself specifically states that Heritage must directly pay VSC claims if Butler fails to do so: "Upon failure of the Insured [*i.e.*, Butler] to pay or provide service on a valid claim within sixty (60) days after proof of loss has been filed with Insured [*i.e.*, Butler], coverage hereunder shall be provided directly to

the service contract holder claimant."

24.     Heritage's responsibility to VSC holders is further confirmed by the Administrative Agreement between Warrantech and Heritage.  The agreement specifically states that Warrantech shall maintain a Heritage-funded and controlled  Loss Reserve Fund bank account solely for the purpose of paying out and settling all valid claims submitted by VSC holders.

25.     Despite these unequivocal contractual obligations, both Butler and Heritage routinely and uniformly refuse to pay covered claims under the VSCs.

26.     Instead of paying claims as required under the express terms of the VSCs, Butler takes the position that Heritage is solely responsible for funding the Loss Reserve Fund account for the purpose of paying out and settling all covered VSC claims.  Butler further contends that it has no financial ability to pay claims itself or otherwise fund the Loss Reserve Fund account, and states that Heritage is obligated to, and until recently has always, controlled and funded the Loss Reserve Fund account and timely paid VSC claims.

27.     Likewise, Heritage takes the position that it has no responsibility to pay VSC claims, and that Butler must pay these claims.  As recently as September 14, 2007, Heritage has reaffirmed in sworn legal pleadings that it will continue to refuse to pay such claims in the future.

28.     Heritage's after-the-fact rationale and purported legal basis for not paying valid VSC claims has been inconsistent.  In court filings, Heritage claims that under the Insurance Policy it is only obligated to pay claims if and when Butler actually declares bankruptcy.  On the other hand, according to a sworn statement of Butler's former manager in September 2007:

Heritage has, since its initial failure to pay claims in February 2007, made statements to service contract holders (claimants) that their [sic] obligation to Butler no longer existed because the policy had been canceled effective January 31, 2007. Heritage has made statements to claimants that Heritage's insurance obligations with respect to claims made under the terms of service contracts issued while their [sic] insurance policy was in full force and effect no longer existed. To the best of my knowledge, such statements to claimants continue to be made by Heritage personnel.

29.     As the proximate result of Butler's and Heritage's refusal to pay valid claims, hundreds or perhaps thousands of valid claims remain unpaid. Upon information and belief, unpaid VSC claims are well in excess of $1 million.

30.     Although Butler and Heritage have unequivocal contractual obligations to timely pay valid VSC claims, Warrantech shares significant responsibility for misleading all VSC holders regarding the VSC policies they purchased, resulting in significant damages. The VSC program at issue in this action was designed, priced, administered, marketed and distributed jointly by Warrantech and Heritage.

31.     As structured, however, the VSC program was essentially a pyramid scheme which necessarily relied upon the sale of new VSCs to fully fund the Loss Reserve Fund account, which was the only source of payment for claims on the outstanding VSCs. Despite accepting more than $25,000,000 in VSC premiums from consumers, Warrantech and Heritage failed to design and execute the program in a manner which would ensure that sufficient funds would be set aside in the Loss Reserve Fund account to fund all future VSC claims.

32.     Unbeknownst to the VSC holders and contrary to the plain language of their VSC contracts, neither Butler nor Heritage ever intended to take on the risk or responsibility for fully funding VSC claims in the event that the monies set aside in the Loss Reserve Fund account

10

were insufficient to pay valid claims.

33.    According to court filings, Butler, the named obligor, has never paid any money toward the payment of VSC claims, and never intended to.  While Heritage partially funded the Loss Reserve Fund account as the VSCs were sold and monies received, despite its contractual responsibilities and the nature of its role as insurer, Heritage never intended to bear any risk that the Fund would be insufficient.  According to Heritage, in putting together the VSC program, Warrantech told Heritage that it would be only a "fronting insurer" without "any downside exposure" since funds taken from the sale of the VSCs would be sufficient to cover all claims. Warrantech allegedly made similar representations to Butler.  Further, according to a lawsuit filed by American Re (the reinsurer for Heritage's VSC obligations) in Alabama, it was told by Warrantech that there would be no risk to it for insuring the VSCs and that it would not be called upon to pay any claims.  Thus, each Defendant knew that, contrary to the language of the VSCs, neither the obligor (Butler) nor the insurer (Heritage) nor the reinsurer (American Re), had any intention of taking on the risk that the funds available from the sale on VSCs would be insufficient to pay valid VSC claims.

34.    Moreover, according to a sworn statement by Butler's manager:

"Between 2001 and January 31, 2007, on information and belief, Heritage paid every claim from day one on all VSC claims which arose after the Heritage Policy went into effect.  During this time, Heritage knew, understood, and agreed that Butler would not pay any covered claims under the VSCs in the first instance."

"Between 2001 and April 2007, at no time has Butler ever (i) paid or reimbursed any Heritage insured VSC claim that Warrantech determined was covered…";

"Between 2001 and April 2007, to the best of my knowledge, Heritage has never requested or required, as conditions to Heritage's

payment of covered claims, that … (ii) 60 days elapse before Heritage would pay or honor a claim … ."

35.    Needless to say, none of the above facts were disclosed to VSC purchasers.  As a result, all VSC holders have been misled and claims made by hundreds if not thousands of VSC contract holders have been systematically denied without any proper legal basis.  According to Heritage itself, claims under the VSC policies are being submitted, but not paid, at a rate exceeding $200,000 per month.  Despite outstanding claims which by now must exceed $1 million, Heritage now states that it has paid merely $220,000 in claims to VSC holders.

## PLAINTIFFS' VSC CLAIMS

36.    In December 2002, Mr. Kennedy purchased his VSC to cover a 2003 GMC Envoy, which he bought new in Colorado.  In August 2007, Kennedy's vehicle sustained a mechanical failure which was covered by his VSC.  Plaintiff took the vehicle to a local dealer which contacted Butler's claims administrator and submitted the claim.  The administrator approved the repair being sought and acknowledged that the repair was covered under the VSC, but nonetheless refused to authorize payment for the repair--telling Kennedy and his dealer that they would need to seek payment directly from Defendant Heritage.  Likewise, the website of Defendant Warrantech, Warrantybynet.com, also instructed VSC holders to submit claims directly to Defendant Heritage:

> From June 1, 2002 through August 2004, Warrantybynet, Inc. marketed and sold vehicle service contracts administered by Vemeco, Inc. ("Vemeco").  If you refer to the Declarations Page of your contract, you will see that the obligor is Butler Financial Solutions, LLC ("Butler").  As the obligor, Butler is responsible for the payment of all covered claims.  You will also see that Butler's obligation to pay covered claims is insured by Heritage Warranty Insurance RRG, Inc. ("Heritage"), pursuant to Insurance Policy HWMIRRG-SC-WAR-0001, and reinsured through

American Re.

> Warrantybynet, Inc. has recently learned, that although the insurance premiums that were collected on your behalf were remitted to Heritage several years ago, Heritage has stopped funding Vemeco for the purpose of paying covered claims. As such, you should follow the instructions on your Declarations Page and submit any claims directly to Heritage at its present address of 5747 Perimeter Drive, Suite 200, Dublin, Ohio 43017.

37.     After Butler rejected his claim, Mr. Kennedy contacted Defendant Heritage which likewise denied that it had any responsibility for paying for the repairs under the VSCs, explained that Butler is the responsible party under the contracts, and refused to pay, telling Plaintiff that any payment would have to come from Butler.

38.     At this point, Kennedy had the approval of the claims administrator for his repair, and both of the parties who were liable to him for payment had refused, not for any substantive or procedural reasons, but simply because each said the other was responsible for payment. Kennedy also was aware that these same Defendants were in litigation with each other, and that neither was paying the similar legitimate bills of other VSC holders. Faced with this impasse, Kennedy filed his class action Complaint on behalf of himself and a class of VSC holders on September 11, 2007.

39.     In *Warrantech Automotive, Inc. v. Heritage Warranty Insurance Risk Retention Group, Inc.*, Docket No. 1:07-cv-3539 ("*Warrantech v. Heritage*"), Warrantech sued Heritage, and Heritage brought a counterclaim against Warrantech Automotive, Inc. and a third party claim against Warrantech Corp. and Vemeco, the administrators for Butler. In this litigation, these Defendants have made clear that they will continue to refuse to pay legitimate claims of Class members.

13

40.     Thereafter, Heritage continued to refuse to pay claims of VSC holders, as did Butler.

41.     By course of dealing, and by its express rejection of Plaintiff Kennedy's claim, Heritage rejected Plaintiff Kennedy's claim, in advance of the 60 day period.

42.     In spite of Heritage's refusal to pay Mr. Kennedy's claim or other Class members' claims, and its affirmative statements in sworn pleadings and elsewhere to that effect, once Heritage recognized that Kennedy had filed suit, and that Defendants had no legitimate defense to his claims, Heritage sent to Kennedy a check purportedly in full payment of his claim. Because he had filed his action as the representative of the Class asserted herein, and assumed the duties of a Class representative, Kennedy refused and demanded that Heritage "extend the present offer of settlement to include full relief to all individuals who have submitted valid claims but have not been reimbursed under their policies." Heritage has refused this demand. In subsequent sworn pleadings, Butler has ratified Heritage's attempt to buy off Mr. Kennedy's claims and Heritage's rejection of Kennedy's demand for class-wide relief.

43.     Heritage, ratified by Butler, took the actions set out in Paragraph 42 above because (a) it had no defense to Mr. Kennedy's claim, and (b) it wanted to avoid Mr. Kennedy's lawsuit seeking relief on behalf of all other VSC holders.

44.     In June 2003, Mr. Mitschow purchased his VSC to cover a 2000 Chevrolet Blazer which he purchased in Connecticut. In May 2007, Mr. Mitschow's vehicle sustained a mechanical failure which was covered by his VSC. Mitschow took his vehicle to a local repair shop which contacted Butler's claims administrator and submitted the claim. The administrator never authorized payment for the repair - - indicating that Mr. Mitschow would need to seek

14

payment directly from Defendant Heritage.

45.     In August 2007, Mr. Mitschow's vehicle sustained another mechanical failure which was covered by his VSC.  Plaintiff took his vehicle to a different repair shop, contacted Butler's claims administrator, which never authorized payment for the repair - - indicating to Plaintiff that he would need to seek payment directly from Defendant Heritage.  Thereafter, in mid-August 2007, Mr. Mitschow sent the two claims directly to Defendant Heritage via certified mail.  A month later, in pleadings in *Warrantech v. Heritage,* Heritage confirmed that it was refusing to pay the claims of any VSC holders.  Neither Heritage nor Butler has paid Mr. Mitshcow's claims.

46.     On November 1, 2002, Ms. Mick purchased her VSC through Warranty-By-Net to cover a 1999 Jeep Grand Cherokee.  The contract provided coverage for 60 months, five (5) years or 100,000 miles, with a zero deductible on claims.  Prior to the Heritage-Butler-Warrantech dispute described in this Complaint, Heritage had paid Ms. Mick on valid claims as late as May 2007.  Thereafter, though, the Defendants' dispute changed the Defendants' positions.

47.     In September, 2007, Ms. Mick's vehicle required repairs that were covered by her VSC.  Ms. Mick presented her facts to Warrantech through Vemeco, the Warrantech entity administering the VSC contract.

48.     Ms. Mick received approval for her claim, but Warrantech refused to honor the approved claim.

49.     Ms. Mick then sent a letter dated October 9, 2007 to Warrantech reiterating her request for payment.  On October 16, 2007, Vemeco, through its legal department, sent Ms.

15

Mick a letter stating that the VSC was underwritten by Heritage, that Heritage was not funding the account, and that therefore Vemeco could "only register this claim" and send a copy of the receipt to both Heritage and Butler to request reimbursement.

50.    On November 9, 2007, Ms. Mick telephoned Heritage. On that same day, she received a response call from Heritage, and she complied with Heritage's request by faxing her invoice, receipt and the October 16, 2007 Vemeco letter.

51.    Ms. Mick received no further response from Heritage and on December 6, 2007 she sent an e-mail to Warrantech and Heritage demanding payment. This e-mail was also ignored. Despite further telephone calls, Ms. Mick's claim has not been paid, and she has not received any further response.

## CLASS ACTION ALLEGATIONS

52.    Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all other persons similarly situated, as members of a proposed class ("Class") defined as follows:

> All persons who purchased or hold a VSC: (i) in which Butler Financial Solutions, LLC is identified as the obligor; and (ii) which is currently in effect or was in effect as of December 2006.

Specifically excluded from the proposed Class are Defendants and their officers, directors and employees.

53.    The Class, as currently defined, is identifiable and unambiguous based upon objective information and criteria. Plaintiffs reserve the right to expand, limit, amend or otherwise alter the class definition, or propose subclasses in response to facts learned through formal or informal discovery, their continuing investigation, legal arguments advanced by

Defendants, concerns of the Court, or otherwise.

54.    **Numerosity**.  The members of the Class are so numerous that their individual

joinder is impracticable.  While the precise number of Class members is unknown to Plaintiffs,

Defendant Warrantech recently represented in a sworn statement that, as of September 2007,

"247,921 VSCs have been sold in the United States with Butler as the obligor."  Because the

identity of Class members are known to Defendants, the Class may readily be notified of the

pendency of this action.

55.    **Existence and Predominance of Common Questions of Law and Fact**.

Common questions of law and fact exist as to all members of the Class and predominate over

any questions affecting only individual Class members.  These common legal and factual

questions will include, but are not limited, to the following:

  a.    Whether Defendants violated the Magnuson-Moss Warranty Act, 15

U.S.C. §2306, and whether they are therefore liable to Plaintiffs and the Class;

  b.    Whether Butler is contractually obligated to pay claims under the VSCs;

  c.    Whether a refusal to pay claims by Butler constitutes a breach of its VSCs

with Class members;

  d.    Whether Heritage's failure to fund or otherwise pay claims excuses Butler

from its obligation to pay Class members' claims pursuant to the VSCs;

  e.    Whether Defendants' conduct, representations and/or omissions at the

time the VSCs were entered into renders the contracts voidable at the option of the Class

members;

  f.    Whether Heritage is contractually obligated to pay Class members' claims

pursuant to the VSCs, the Insurance Policy and/or the Administrative Agreement;

g.      Whether Class members are third-party beneficiaries of the Insurance Policy and/or the Administrative Agreement;

h.      Whether Heritage breached its contracts with Butler and/or Warrantech by failing to fund or otherwise pay claims under the VSCs; and

i.      Whether the Court should declare the parties' rights under the VSCs, the Insurance Policy and/or the Administrative Agreement, enjoin Butler and/or Heritage from continuing to refuse to pay claims under the VSCs by asserting that they have no obligations thereunder, and/or declare the VSCs voidable at the Class members' option.

56.    **Typicality**.  Plaintiffs' claims are typical of the claims of other members of the Class in that Plaintiffs and each member of the Class are purchasers or holders of the VSCs at issue, have the same contractual rights with respect to Butler and Heritage, and received the same written disclosures with respect to the terms and conditions of their VSCs.

57.    **Adequacy of Representation**.  Plaintiffs will fairly and adequately protect the interests of the members of the Class and Plaintiffs intend to prosecute this action vigorously and in the interests of the Class.  To that effect, when Heritage attempted to "buy off" Plaintiff Kennedy by offering him the opportunity to have his individual claim satisfied at the expense of the Class, Kennedy refused Heritage's chicanery.  Plaintiffs Mick and Mitschow likewise disavow any similar effort by Defendants to "buy off" their claims at the expense of the Class. Plaintiffs have no interests that are adverse or antagonistic to those of other Class members, and have retained counsel experienced in complex consumer class action litigation.

58.    **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts, and would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here. In addition, adequate notice can be given to Class members directly using information maintained in Defendants' records and, if appropriate, through publication notice.

59.    Furthermore, the prosecution of separate actions by individual members of the Class would create a risk of: (i) inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members who are not parties to the adjudications or substantially impair or impede their ability to protect their interests. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FIRST CLAIM FOR RELIEF
### (Violations of the Magnuson-Moss Warranty Act Against All Defendants)

60.     Plaintiffs assert this claim against Defendants on behalf of themselves and the

Class, and incorporate by reference and reallege all paragraphs alleged herein.

61.     Plaintiffs are consumers, as defined in the Magnuson-Moss Warranty Act

("MMWA").

62.     Each Defendant is a "service contractor" under the MMWA.

63.     The VSCs at issue in this action are "service contracts" as defined in the MMWA.

64.     Plaintiffs have complied with all requirements and prerequisites under the

MMWA.

65.     Under the MMWA, 15 U.S.C. §2306, the terms and conditions of a service

contract must be fully, clearly and conspicuously disclosed.

66.     Defendants failed to fully, clearly and conspicuously disclose the terms and

conditions of the VSCs since, among other things:

        a.     Each VSC states that Butler is the obligor.  However, this disclosure is

false and misleading, since the Defendants never intended that Butler would pay or otherwise

fund any VSC claims as obligor, and Butler never did so.  Unbeknownst to VSC holders, as

structured, the entire program was essentially a pyramid scheme which would necessarily need

to rely upon the sale of new VSCs to fully fund the payment of claims on the existing VSCs

since, contrary to the disclosures made, no party had assumed the risk that actual VSC claims

would exceed the anticipated amount;

        b.     Each VSC states that Heritage insures the obligations of Butler under the

VSCs.  However, this disclosure is false, misleading and, at best, incomplete, since Heritage

20

never intended to fully insure the obligations of Butler, except—it contends—in the case where Butler actually declares bankruptcy. According to Heritage, it was only a "fronting insurer" without "any downside exposure." Unbeknownst to VSC holders, as structured, the entire program was essentially a pyramid scheme which would necessarily need to rely upon the sale of new VSCs to fully fund the payment of claims on the existing VSCs since, contrary to the disclosures made, no party had assumed the risk that actual VSC claims would exceed the anticipated amount;

        c.      Each VSC states that it is reinsured by an additional insurance company, such as American Re. However, this disclosure is false, misleading and, at best, incomplete, since the reinsurers were told by Warrantech that there would be no risk to them for insuring the VSCs and that they would not be called upon to pay any claims. Thus, each Defendant knew that, contrary to the disclosures made in the VSCs, neither the obligor (Defendant Butler) nor the insurer (Defendant Heritage) nor the reinsurer (American Re), had any intention of taking on the risk that the funds available from the sale on VSCs would be insufficient to pay valid VSC claims;

        d.      Each VSC states that if a covered claim is not paid in sixty days, VSC holders may file a claim directly with "the Insurance Company." However, the term "Insurance Company" is not defined and it is unclear whether it means just Heritage or Heritage and the reinsurer. Moreover, this disclosure is false, misleading and, at best, incomplete, since it suggests that the claims would be timely paid by an insurance company if not timely paid by Butler. Additionally, the disclosure did not state that the insurer would only pay if and when Butler declared bankruptcy or that payments would only be made if there were sufficient funds

set aside from previous sales of VSCs. It also failed to disclose that neither the obligor (Defendant Butler) nor the insurer (Defendant Heritage) nor the reinsurer (American Re) had any intention of taking on the risk if the funds available from the sale on VSCs would be insufficient to pay valid VSC claims.; and

        e.      Each VSC states that if a covered claim is not paid in sixty days, VSC holders may file a claim directly with "the Insurance Company." Yet, this disclosure is false, misleading and at best, incomplete, since it suggests that a VSC holder must file a second claim should Butler fail to pay the initial filed claim within sixty days. In reality, and unbeknownst to VSC holders, Heritage is contractually obligated to timely pay claims that were previously submitted to Butler whether or not the claim is resubmitted. Indeed, it did so without waiting for sixty days to elapse until 2007, when the Loss Reserve Fund account was largely dissipated. According to the contract between Butler and Heritage: "Upon failure of the Insured [*i.e.*, Butler] to pay or provide service on a valid claim within sixty (60) days after proof of loss has been filed with Insured, coverage hereunder shall be provided directly to the service contract holder claimant."

       67.      Plaintiffs and Class members have suffered, and continue to suffer, damages as a result of Defendants' false, misleading and incomplete disclosures and their failure to comply with their obligations under 15 U.S.C. §2306 and the terms of the VSCs.

### SECOND CLAIM FOR RELIEF
### (Breach of Contract Against Butler)

       68.      Plaintiffs assert this claim against Butler on behalf of themselves and the Class, and incorporate by reference and reallege all paragraphs alleged herein.

22

69.    Butler is party to, and owes contractual duties under, the VSCs with Plaintiffs and other members of the Class.

70.    Butler is contractually obligated to pay claims under the VSCs to contract holders, and breached its contractual duties to Plaintiffs and other members of the Class by routinely and uniformly refusing to pay any of their claims under those contracts.

71.    As a direct result of Butler's breaches of its contractual obligations, Plaintiffs and other members of the Class have sustained damages in an amount to be determined.  The measure of damages may include, *inter alia*, the amount paid for the VSCs, as those contracts have no value to Plaintiffs and Class members in light of the fact that Defendants uniformly refuse to pay any claims under those contracts.

## THIRD CLAIM FOR RELIEF
### (Voidable Contracts Against All Defendants)

72.    Plaintiffs assert this claim against Defendants on behalf of themselves and the Class, and incorporate by reference and reallege all paragraphs alleged herein.

73.    As a result of Defendants' failure to communicate all of the essential terms, conditions, exclusions and limitations of the VSCs and/or their inability or unwillingness to pay valid claims, the VSCs were entered into as a result of fraud or mistake and they never formed enforceable contracts with Plaintiffs and the Class.

74.    Based on the foregoing, Plaintiffs and the Class are entitled to a ruling that the VSCs are voidable at the option of Plaintiffs and the Class.  Plaintiffs and the Class are also entitled to compensatory damages in an amount to be determined.  The measure of damages may include, *inter alia*, the amount paid for the VSCs, as those contracts have no value to Plaintiffs and Class members in light of the fact that Defendants uniformly refuse to pay any claims under

those contracts.

## FOURTH CLAIM FOR RELIEF
### (Breach Of Third-Party Beneficiary Contracts Against Heritage)

75.    Plaintiffs assert this claim against Heritage on behalf of themselves and the Class,

and incorporate by reference and reallege all paragraphs alleged herein.

76.    Heritage issued the Insurance Policy to Butler, whereby it agreed to pay claims

under the VSCs if Butler failed to perform under those contracts.  The Insurance Policy states:

> UPON FAILURE OF THE INSURED [*i.e.*, Butler] TO PERFORM
> UNDER THE SERVICE CONTRACTS [*i.e.*,the VSCs], HERITAGE
> WARRANTY  MUTUAL  INSURANCE  RISK  RETENTION
> GROUP, INC. SHALL PAY ON BEHALF OF THE INSURED
> ANY SUMS THE INSURED IS LEGALLY OBLIGATED TO PAY
> OR SHALL PROVIDE THE SERVICE THAT THE INSURED IS
> LEGALLY OBLIGATED TO PERFORM ACCORDING TO THE
> INSURED'S  CONTRACTUAL  OBLIGATION  UNDER  THE
> SERVICE CONTRACTS ISSUED BY THE INSURED . . .

It further states:

> "UPON FAILURE OF THE INSURED [*i.e.* Butler] TO PAY OR
> PROVIDE SERVICE ON A VALID CLAIM WITHIN SIXTY (60)
> DAYS AFTER PROOF OF LOSS HAS BEEN FILED WITH THE
> INSURED [ *i.e.* Butler] COVERAGE HEREUNDER SHALL BE
> PROVIDED  DIRECTLY  TO  THE  SERVICE  CONTRACT
> HOLDER CLAIMANT."

Thus, as evident by the contractual language, and the parties' own conduct, Butler and Heritage

clearly manifested their intent that the contract primarily and directly benefit Plaintiffs and the

Class.

77.    Heritage breached its contract with Butler by refusing to pay the claims of

Plaintiffs and the Class, thereby causing them damage.

78.    Heritage is also a party to the Administrative Agreement with defendant

Warrantech, by which Heritage agreed to, among other things, be responsible for all VSC claim costs, to fund an account for payment of VSC claims and to indemnify Warrantech in numerous situations, including Heritage's failure to pay claims. Thus, as evident by the contractual language, and the parties' own conduct, Warrantech and Heritage clearly manifested their intent that the contract primarily and directly benefit Plaintiffs and the Class.

79.    Heritage breached its contract with Warrantech by refusing to fully fund the Loss Reserve Fund account and/or indemnify Warrantech for its wrongful actions so that valid claims could be paid, thereby causing damage to Plaintiffs and the Class.

80.    As a result of Heritage's actions, consumers who present valid claims are having their claims rejected or ignored, and the Defendants by their litigation have made clear that none of them will pay legitimate claims. Thus, even if Heritage were to pay currently submitted claims, it has declared its intent not to do so in the future, and Plaintiffs and the Class have a reasonable expectation that absent a Court order, Heritage will continue to breach its contracts in the future.

81.    Based on the foregoing, Plaintiffs and the Class are entitled to: (i) a ruling that the Insurance Policy and/or the Administrative Agreement create an obligation on Heritage's behalf to pay the valid claims of Plaintiffs and the Class; and (ii) an order requiring Heritage to pay their claims as well as any future claims. Plaintiffs and the Class are also entitled to compensatory damages in an amount to be determined. The measure of damages may include, *inter alia*, the amount paid for the VSCs, as those contracts have no value to Plaintiffs and Class members in light of the fact that Defendants uniformly refuse to pay any claims under those contracts.

25

## FIFTH CLAIM FOR RELIEF
### (Declaratory Relief Against All Defendants)

82.    Plaintiffs assert this claim against Defendants on behalf of themselves and the Class, and incorporate by reference and reallege all paragraphs alleged herein.

83.    Plaintiffs and other members of the Class hereby seek declaratory relief in the form of an order declaring their rights under the VSCs, the Insurance Policy and the Administrative Agreement, including their contractual rights to require both Butler and Heritage to pay claims under those contracts.

84.    Plaintiffs and other members of the Class hereby seek declaratory relief in the form of an order declaring that Butler, Heritage and Warrantech failed to fully, clearly and conspicuously disclose the terms and conditions of the VSCs, thereby entitling them to an award of damages and rendering the VSCs voidable at the Class members' option.

85.    The equities support granting the declaratory relief requested herein, as Plaintiffs and other Class members have been deprived of the value of the VSCs because of an actual controversy that is ripe for adjudication as to the extent of Defendants' obligations under the various contracts.

86.    Plaintiffs and Class members have a reasonable fear and expectation that Butler and Heritage will continue to refuse payment on legitimate VSC claims in the future, leaving them with worthless VSCs, unreimbursed VSC claims and claims that may accrue in the future.

87.    Moreover, Heritage has alleged that Warrantech refuses to cooperate with Heritage and refuses to administer the VSCs, making future damage to Plaintiffs, the Class and other VSC holders inevitable.

88.    Granting the declaratory relief requested herein would be just and equitable under the circumstances, particularly because there are believed to be tens of thousands of consumers who purchased VSCs that are still in force, all of whom would benefit from a judicial declaration that Defendants cannot lawfully refuse to pay valid claims solely by "pointing fingers" at each other.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel of record to represent the Class;

B.    For compensatory damages sustained by Plaintiffs and other members of the Class as a result of Defendants' breaches and awarding such prejudgment interest as may be allowed by law;

C.    For imposition of a constructive trust, in favor of Plaintiffs and members of the Class, upon any benefits improperly received by Defendants as a result of their wrongful conduct;

D.    For declaratory relief as set forth above, including a declaration that the VSCs are voidable at the option of Plaintiffs and the Class;

E.    For restitution, disgorgement and/or other equitable relief as the Court deems proper;

F.    For a permanent injunction prohibiting Defendants and their agents, employees, representatives and all persons acting on their behalf from engaging in the conduct and practices

27

complained of herein;

   G.  For reasonable attorneys' fees and costs of suit, including, *inter alia*, filing fees,

costs and expert witness fees; and

   H.  For such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

   Plaintiffs demand a trial by jury on all issues so triable.

         Respectfully submitted,

Date: May 29, 2008        **HARRISON & HELD LLP**

      By:  <u>s/George N. Vurdelja, Jr.</u>
         George N. Vurdelja, Jr.
         333 W. Wacker Drive, Suite 1700
         Chicago, Illinois 60606
         Telephone: 312/753-6161
         Facsimile: 312/332-1150
         gvurdelja@harrisonheld.com

         Jeffrey A. Berens
         **DYER & BERENS LLP**
         682 Grant Street
         Denver, Colorado  80203
         Telephone: 303/861-1764
         Facsimile: 303/395-0393
         jeff@dyerberens.com

         Scott R. Shepherd
         **SHEPHERD, FINKELMAN, MILLER**
          **& SHAH, LLP**
         1640 Town Center Circle, Suite 216
         Weston, Florida 33326
         Telephone: 954/943-9191
         Facsimile: 954/943-9173
         sshepherd@sfmslaw.com

28

Douglas P. Dehler
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
111 East Wisconsin Avenue, Suite 1750
Milwaukee, Wisconsin 53202
Telephone: 414/226-9900
Facsimile: 414/226-9905
ddehler@sfmslaw.com

James C. Shah
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
35 E. State Street
Media, Pennsylvania 19063
Telephone: 610/891-9880
Facsimile: 610/891-9883
jshah@sfmslaw.com
**Attorneys for Plaintiffs**

# EXHIBIT 1

Warrantybynet

# DECLARATION PAGE

| This is your CUSTOMER CONTRACT NUMBER. Please use this number in any phone or written communication. | WWTN35244 | 84100UK7 | 720045 | ✓ NEW |
|---|---|---|---|---|
| | YOUR CONTRACT NUMBER | YOUR CONTRACT PLAN CODE | SELLING DEALER CODE | USED |

CONTRACT HOLDER (You, Your):

ROBERT T. KENNEDY

CONTRACT HOLDER ADDRESS: (Phone: (303)796-8400)

3469 SOARING EAGLE LANE

CASTLE ROCK, CO  80109

DESCRIPTION OF YOUR VEHICLE:

| YEAR | MAKE | MODEL | VEHICLE ID NUMBER | CONTRACT CHARGE | DEDUCTIBLE |
|---|---|---|---|---|---|
| 2003 | Gmc | ENVOY | 1GKDT13S432222730 | $1,332.00 | $0.00 |

FULL PAY

✓ PAY AS YOU GO

REDUCING DEDUCTIBLE (Does not apply unless checked yes)

TERM

| MONTHS | MILEAGE |
|---|---|
| 84 | 100000 |

ADDITIONAL

4WD

| *CONTRACT PURCHASE DATE | *ODOMETER MILEAGE AT CONTRACT PURCHASE DATE |
|---|---|
| 12/20/2002 | 50 |

DEALER/LESSOR:

Warrantybynet

ADDRESS  393 Mantoloking Rd. Brick, NJ  08723

LIENHOLDER: (Entity financing VSC)

DEALER PHONE NUMBER  (800) 962-4720

AUTHORIZED DEALER SIGNATURE

*CONTRACT PURCHASE DATE  12/20/2002

DATE  12/20/2002
Contract Purchase Date

VEMCO

Administrator
Vemco, Inc.
P.O. Box 410
Alvarado, TX  76009
1-800-543-8801 (NAT'L)

If this Vehicle Service Contract has been financed, the Lienholder shall be entitled to any refunds resulting from the cancellation of this Vehicle Service Contract for whatever reason. This would include cancellation for non-payment, repossession of the vehicle, or total loss of the vehicle.

*New vehicle plan [Premier (plan code UK7) and Peak (plan code XD7) Advantage Series] expiration is measured in time/mileage from the Contract Purchase Date and zero (0) miles.
*Used vehicle plan [Powertrain (plan code XP7), Select (plan code XF7), and Value (plan code XD7) Advantage Series] expiration is measured in time/mileage from the Contract Purchase Date and Odometer Mileage (at Contract Purchase Date).

*All vehicle plans require a mandatory "Waiting Period before Coverage takes effect. The "Waiting Period" is 30 days <u>and</u> 1,000 miles from the Contract Purchase Date and Odometer Mileage at Contract Purchase Date.

The definition of  "We, Us and Our" used frequently throughout the Vehicle Service Contract is defined as BUTLER FINANCIAL SOLUTIONS, L.L.C., 2300 CORPORATE BLVD., NW, SUITE 214, BOCA RATON, FL  33431.  Please refer to the Vehicle Service Contract for additional Definitions.

Our obligations under this Vehicle Service Contract are insured by a policy issued by Heritage Warranty Mutual Insurance Risk Retention Group, Inc., 1550 South 70th Street, Lincoln, Nebraska 68596, under a motor Vehicle Service Contract reimbursement policy, and reinsured by American Re®. - a national A++ rated company and a member of the Munich Re Group®.  If a covered claim is not paid within sixty (60) days, [except in Arizona thirty (30) days], after proof of loss has been filed, You may file a claim directly with the Insurance Company.  Please call 1-800-543-8801 for instructions.

H250502WBN0502

CUSTOMER SUPPORT NUMBER – Please see the box labeled **Your Contract** Number on the Declaration Page. This is **Your** CUSTOMER SUPPORT NUMBER. Please refer to this number in any written or verbal communication, such as requesting information or filing a claim.

**PURCHASE OF THIS VEHICLE SERVICE CONTRACT IS NOT REQUIRED IN ORDER TO PURCHASE OR FINANCE A MOTOR VEHICLE.**

## THINGS TO DO NOW

The **Declaration Page** is an important part of this Agreement. It is **Your** responsibility to notify **Us** if any information is incorrect. Please read all sections carefully and if are unclear about any information call **Us** at 1-800-962-4720. Refer to the bold printed number in any verbal or written communication, such as requesting information or filing a claim.

Check Plan Code – Not every part of **Your Vehicle** is covered by this **Contract**. **Coverage** is identified by the last three (3) letters of the Plan Code as shown on the **Declaration Page** of this **Contract**. Please compare the last 3 letters of the Plan Code on the **Declaration Page** with the Plan Code and Corresponding **Coverage** as listed under **Mechanical Coverage**. If this box was left blank, or Plan Code is inaccurate, contact **Your Administrator** immediately.

Check **Your Deductible** – Please check the box labeled **DEDUCTIBLE** on **Your Declaration Page**. A number should be in the box which identifies the portion of the covered repair **You** will be required to pay if **You** have a claim. If this box was left blank, contact **Your Administrator** immediately.

NOTE: This **Contract** is not valid unless **You** have signed the **Declaration Page** and it has been affixed to the front of this **Contract**.

## THINGS YOU MUST DO THROUGHOUT THE TERM OF YOUR CONTRACT

**Properly Maintain Your Vehicle and KEEP THE RECEIPTS** – This **Contract** is only valid if **Your Vehicle** has been maintained in accordance with the manufacturer's specifications. Keep copies of all receipts (oil changes, lubrication, etc.), as proof of maintenance may be required when **You** file a claim. SEE SECTION: "GENERAL PROVISIONS" FOR SPECIFIC MAINTENANCE REQUIREMENTS.

Obtain approval PRIOR to having work performed that may be covered by this **Contract**. If **You** believe the failure may be covered by this **Contract**, call the **Administrator** personally, or instruct the repair facility performing the work to call and **Register** the claim BEFORE THE WORK IS PERFORMED. SEE SECTION: "WHAT TO DO IN THE EVENT OF A BREAKDOWN".

## DEFINITIONS

The following definitions apply to words frequently used in this **Contract** and appear in Bold Faced Type:

**You, Your** – Means the **Contract** Holder shown on the **Declaration Page** or the person to whom this **Contract** was properly transferred.

**We, Us, Our** – Means the obligor of this **Contract** as stated on the **Declaration Page** attached to this **Contract**.

**Administrator** – Means The **Administrator** as shown on the **Declaration Page**.

**Contract** – Means this Vehicle Service **Contract** which **You** have purchased from **Us** to protect **Your Vehicle**.

**Declaration Page** – Means the numbered document which must be attached to and forms part of this **Contract**. It lists information regarding **You**, **Your Vehicle**, **Coverage** selected, and other vital information.

**Mechanical Coverage** – Lists the **Coverages** provided to **You** for **Your Vehicle** under this **Contract**.

**Coverage** – Means the protection **You** have selected, as listed under Mechanical **Coverage** Section.

**Your Vehicle** – Means the vehicle which is described on the **Declaration Page**.

**Deductible** – Means the amount **You** are required to pay, as shown on the **Declaration Page**, for covered **Breakdowns**. Once a part is repaired or replaced under the terms of this **Contract**, there will be no **Deductible** for future repairs to that part.

**Breakdown or Mechanical Failure** – These terms are used interchangeably and mean the failure of a covered part under normal service. A covered part has failed when it can no longer perform the function for which it was designed solely because of its condition and not because of the action or inaction of any non-covered parts. **Subsequent Damages** resulting from the **Breakdown or Mechanical Failure** of a covered part are covered by this **Contract**, except when **You** have failed to perform the recommended maintenance services for **Your Vehicle**.

**Subsequent Damage** – Means the direct or immediate damage to a non-covered part occurring as a singular event or failure originating with the failure of a covered part.

**Consequential Damage** – Means an event or damage that occurs separately as a consequence or result of the failure of a covered or non-covered part, such as, loss of time or use, inconvenience, commercial loss, personal injury or property damage.

**Registered** – Means a claim has been **Registered** only when the **Administrator** has been contacted and has issued a claim reference number.

**Pre-existing** – Means a condition that within all reasonable mechanical probability relates to the mechanical fitness of **Your Vehicle** prior to **Contract** issuance.

**Preferred Repair Facility** – A Repair Facility that has been selected and assigned by the **Administrator** to provide quality service to the customer.

## GENERAL PROVISIONS

This **CONTRACT** is between **US** and **YOU**, and is subject to all the Terms and Conditions contained herein.

1. **CONTRACT PERIOD**
   **Coverage** under this **Contract** begins 30 days and 1,000 miles from the **Contract** Purchase Date and Odometer Mileage at **Contract** Purchase Date and will expire according to the time and/or mileage of the term/miles selected, whichever occurs first, as shown on the **Declaration Page**.
   a) New Vehicle Plan (Premier and Peak Advantage Series) expiration is measured in time/mileage from the **Contract** Purchase Date and zero (0) miles.
   b) Used Vehicle Plan (Powertrain, Select, and Value Advantage Series) expiration is measured in time/mileage from the **Contract** Purchase Date and Odometer Mileage (at **Contract** Purchase Date).

2. **COVERAGE**
   The **Coverage** afforded **You** for **Your Vehicle** is fully described in this **Contract**. Please see section: "Mechanical Coverage" of this **Contract**.

3. **BREAKDOWN OF COVERED PARTS**
   **We** will pay or reimburse **You** for reasonable costs to repair or replace any **Breakdown** of a part listed under **Mechanical Coverage**. REPLACEMENT PARTS MAY BE NEW, REMANUFACTURED, OR REPLACEMENT PARTS OF LIKE KIND AND QUALITY.

4. **DEDUCTIBLE**
   In the event of a **Breakdown** covered by this **Contract**, **You** may be required to pay a **Deductible**. No **Deductible** payment is required with respect to Towing/Road Service, Rental, Trip Interruption, and Lost Key/Lockout **Coverages**, if they are provided by this **Contract**.
   **You** have a Per Repair Visit **Deductible**, as shown on the **Declaration Page**, the **Deductible** amount will be applied on a per repair visit basis. Should a covered **Breakdown** take more than one visit to repair, only one **Deductible** will apply for that **Breakdown**.
   In addition, if **You** bring **Your Vehicle** to a **Preferred Repair Facility**, $50 (fifty) dollars of any **Deductible** will be waived. **Our Administrator** will assist **You** in locating a **Preferred Repair Facility**.

5. **TERRITORY**
   This **Contract** applies only to **Breakdown** that occur and repairs made within the United States of America and Canada.

6. **LIMITS OF LIABILITY**
   a. **Per Repair Visit** – **Our** liability for any one (1) Repair Visit shall in no event exceed the trade-in value of **Your Vehicle** at the time of said Repair Visit, as listed in the Kelly Blue Book Used Car Guide.
   b. **Aggregate** – The total of all claims and benefits paid or payable while this **Contract** is in force shall not exceed the price **You** paid for **Your Vehicle** (excluding tax, title and license fees).

1

## GENERAL PROVISIONS CONT'D

**7. MAINTENANCE REQUIREMENTS**
   a. You must have **Your Vehicle** checked and serviced in accordance with the manufacturer's recommendations, as outlined in the Owner's Manual. NOTE: **Your** Owner's Manual lists different servicing recommendations based on **Your** individual driving habits and climate conditions. **You** are required to follow the maintenance schedule that applies to **Your** conditions. Failure to follow the manufacturer's recommendations that apply to **Your** specific conditions may result in the denial of **Coverage**. If an Owner's Manual is not provided, **You** can contact the **Administrator** and the servicing recommendations will be provided to **You**.
   b. It is required that verifiable receipts be retained for the service work. Or, if **You** perform **Your** own service, **You** must retain verifiable receipts showing purchases of all required parts and materials necessary to perform the required maintenance showing the date and mileage when the services were performed. Maintenance and/or service work receipts may be requested by the **Administrator**.

**8. TRANSFER OF YOUR VEHICLE SERVICE CONTRACT**
   a. **Your Contract** may be transferable to someone to whom **You** sell or otherwise transfer **Your Vehicle** while this **Contract** is still in force. This **Contract** cannot be transferred if the title transfer of **Your Vehicle** passes through an entity other than the subsequent buyer, or **Your Vehicle** is sold or traded to a dealership, leasing agency or entity/individual in the business of selling vehicles. This **Contract** can only be transferred once and the transfer must be initiated by the original **Contract** Holder.
   b. To transfer, the following must be submitted to the **Administrator** within 30 days of the change of ownership to a subsequent individual purchaser:
      - A completed transfer form; with
      - Name and Address of New owner, date of sale to new owner, current mileage; and
      - $50.00 Transfer Fee made payable to the **Administrator**.
   c. Any remaining manufacturer's warranty must also be transferred at the same time as vehicle ownership transfer. Copies of all maintenance records showing actual oil changes and manufacturers maintenance must be given to the new owner. These maintenance records must be retained along with similar documentation for future maintenance work which the new owner has performed in accordance with the Maintenance Requirements of this **Contract**. If necessary, these documents will be verified by the **Administrator**.

**9. OUR RIGHT TO RECOVER PAYMENT**
   If **You** have a right to recover against another party for anything **We** have paid under this **Contract**, **Your** rights shall become **Our** rights. **You** shall do whatever is necessary to enable **Us** to enforce these rights. **We** shall recover only the excess after **You** are fully compensated for **Your** loss.

**10. REPAIR INSPECTIONS**
   **We** reserve the right to inspect **Your Vehicle** to evaluate covered repairs.

**11. FINANCIAL AGREEMENTS**
   If this Agreement was financed (purchased on a payment plan) by a funding party, they shall be entitled to any refund(s) resulting from cancellation of this Agreement for any reason including repossession of **Your Vehicle**, or total loss of **Your Vehicle**. Failure to make monthly payments in a timely manner may result in cancellation of this Agreement and no refund will be due. Should a claim arise before this Agreement is paid in full, the balance owed will be deducted from the claim payment.

**12. REFUND POLICY FOR PRE-AUTHORIZED CHECK PAYMENTS**
   If payment has been made by a pre-authorized check(s), **You** must submit all original cancelled pre-authorized check(s) to the funding party. For purposes of refund, photocopies of pre-authorized check(s) are not accepted. With receipt of **Your** refund, **Your** original pre-authorized check(s) will be returned to **You**.

**13. REINSTATEMENT**
   If this Vehicle Service **Contract** is cancelled due to non-payment, **We** reserve the option to reinstate the Agreement. As a condition of reinstatement, the full amount of **Contract** price must be paid and **We** will not be responsible or liable to **You** for any **Mechanical Failure** to **Your Vehicle** during the first thirty (30) days and 1,000 miles from the effective date and miles at the time of the Reinstatement Notice.

**14. VEHICLE SERVICE CONTRACT RENEWAL**
   Contracts may be renewed depending on the odometer's mileage and age of vehicle at the time of renewal. This Vehicle Service **Contract** may be renewed at **Our** option, provided that the vehicle is not more than ten (10) model years old and has less than 100,000 total odometer miles. Please contact **Us** at least 30 days and 1,000 miles prior to the expiration of this Agreement to be eligible for the renewal.

**15. TAXES**
   **Coverage** includes State and local taxes where applicable.

**16. FLUIDS**
   **Coverage** includes fluids to complete a covered repair.

**17. SEALS AND GASKETS**
   All Seals and Gaskets for the specific components listed are covered, as either an individual repair or in conjunction with the repair of a covered component.

## CANCELLATION OF YOUR CONTRACT

   a. **You** may cancel this **Contract** by sending a letter of cancellation along with the **Contract** to 393 Mantoloking Rd., Brick, NJ 08723. A notarized statement indicating the odometer reading must be submitted.
   b. **We** may cancel this **Contract** for non-payment of the **Contract** charge, or for misrepresentation in the submission of a claim. **We** may cancel this **Contract** if **Your Vehicle** is found to be modified in a manner not recommended by the manufacturer, or **Your Vehicle** is found to be used as a commercial vehicle.
   c. If **Your Vehicle** and this **Contract** have been financed, the lienholder shown on the **Declaration Page** may cancel this **Contract** for non-payment or if **Your Vehicle** is declared a total loss or is repossessed.
   d. If this **Contract** is cancelled within the first thirty (30) days and no claims have been filed, **We** will refund the entire **Contract** charge paid. If this **Contract** is cancelled after the first thirty (30) days or a claim has been filed, **We** will refund an amount of the **Contract** charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term/miles selected and the date **Coverage** begins, less a twenty five ($25.00) dollar administrative fee. In the event of cancellation, the lienholder, if any, will be named on a cancellation refund check as their interest may appear. The total amount of all authorized claims will be deducted from all refunds.

## WHAT TO DO IN THE EVENT OF A BREAKDOWN

**A. IF YOUR VEHICLE INCURS A BREAKDOWN, YOU MUST TAKE THE FOLLOWING STEPS TO FILE A CLAIM:**
   1. _Prevent Further Damage_ – Take immediate action to prevent further damage. This **Contract** will not cover the damage caused by not securing a timely repair when a **Breakdown** has occurred. The operator is responsible for observing vehicle warning lights and gauges, and taking appropriate action immediately. Failure to do so, may result in the denial of **Coverage**.
   2. _Take **Your Vehicle** to a Licensed Repair Facility_ - If **Your Vehicle** breaks down, take **Your Vehicle** to any licensed repair facility (**You** may contact the **Administrator** for help in locating a repair facility).
   3. _Provide Repair Facility with a copy of **Your Contract** and/or **Your Contract** Number_.
   4. _Register repairs with the **Administrator**_ – Prior to any repair being made, instruct the Service Manager at the repair facility to contact the **Administrator** to **Register** the claim. Any claim for repairs that have not been **Registered** will not be covered except as provided under Emergency Repairs. The amount **Registered** with the **Administrator** is the maximum amount that will be paid for repairs covered under the terms of the **Contract**. Any additional amount must be **Registered** with the **Administrator**, prior to submitting the claim for payment.
   5. _Authorize Teardown and/or Inspection_ – In some cases, **You** may need to authorize the repair facility to inspect and/or teardown **Your Vehicle** in order to determine the cause and cost of the repair. **You** will be responsible for these charges if the failure is not covered under this **Contract**. We reserve the right to require an inspection of **Your Vehicle** prior to any repair being made.
   6. _Review Coverage_ – After the **Administrator** has been contacted, review with the Service Manager what will be covered by this **Contract**.

2

H520502WBN0602

## WHAT TO DO IN THE EVENT OF A BREAKDOWN CONT'D

7. **Pay any applicable Deductible** – **We** will pay the repair facility or **You** for the cost of the work performed on **Your Vehicle** that is covered by this **Contract** and previously authorized, less the **Deductible** (if any). Once authorization is obtained, and the repair is completed, all repair orders and documentation must be submitted to the **Administrator** within sixty (60) days to be eligible for payment.

8. **Emergency Repairs** – Should an emergency occur which requires a **Breakdown** repair be made at a time when, due to circumstances beyond **Our** control, the **Administrator's** office cannot be contacted, **You** must call the **Administrator's** office within five (5) business days from the date of repair to determine if such repair will be covered by this **Contract**. If covered, **You** will be reimbursed for the repair.

B. **IF YOUR VEHICLE BREAKS DOWN ON THE ROAD:**

Follow the same steps as above. If necessary, the repair facility will be paid, less **Your Deductible** (if any), by the **Administrator's** national charge card system (MasterCard or VISA) on **Your** behalf. In some case, **You** may need to pay the repair bill in full. If so, **You** will be reimbursed for the **Registered** amount of the repair, less **Your Deductible** (if any). If **You** have any questions regarding claim procedures or **Coverages**, please call the **Administrator** at the number below and ask for a Customer Support Representative:

**Vemeco, Inc.**
**P. O. Box 410**
**Alvarado, TX 76009**
**Customer Service/Claims (800) 543-8801***
**Available 24 hrs/day–365 days/year**
***For Towing/Road Service and Lost Key/Lockout assistance, Call (800) 765-6622**

## SERVICE MANAGER'S GUIDE TO FILING A CLAIM
## STEPS TO FOLLOW WHEN FILING A CLAIM:

1. **Advise Contract Holder** -- That evaluating the cause of the failure does not mean that the failure is covered under this **Contract**. All covered repairs must be **Registered** with the **Administrator**.

2. **Contract Holder's Approval for Evaluation** – Obtain approval from the **Contract** Holder to inspect and/or teardown vehicle to determine cause and cost of repair. Save all components including fluids and filters, in the event the **Administrator** requires an inspection. Inform the **Contract** Holder that the cost of the teardown will not be paid if the failure of the component disassembled is not covered under the **Contract**.

3. **Cause, Cure and Cost** – Assess the problem(s), cause, cure of the failure and cost of the repairs.

**NOTE: Any major component failure that has a verifiable complaint, i.e., slipping transmission, knocking engine, etc., should be called in prior to any teardown.**

4. **Register the Repair with the Administrator** – Call the **Administrator's** Service Manager's Support representative at (800) 543-8801 to **Register** the claim. Please have the following items ready when you place the call:
   a. Customer's **Contract** Number
   b. Cause of Failure and Cure
   c. Cost of the Repair
   d. Factory Part Number(s)

5. **The Support Representative will verify the Coverage and –**
   A. **Register Claim** – The **Administrator** will **Register** the claim by issuing a Reference Number. Record this Reference Number on the Repair Order. The **Registered** claim amount is the maximum that will be paid. Any additional amounts must be **Registered** with the **Administrator**, prior to submitting the claim for payment.
   
   **OR**
   
   B. **Request Additional Evaluation** – Request further evaluation, teardown or outside inspection.
      I. **Inspection** – The **Administrator** reserves the right to require an inspection of the vehicle prior to any repair being accomplished. Diagnostic procedures not associated with the teardown are not covered.
      II. **Teardown** – If a teardown is necessary in order to determine the cause of failure, the **Contract** Holder must approve the teardown. Please advise the **Contract** Holder that, if the component disassembled is not covered, then the **Contract** Holder must pay for the teardown.
   Listed below is the Inspection Teardown Policy:
      a. Save all components, including fluids and filters, that need to be inspected.
      b. The Support Representative will arrange for inspection.
      c. If not visited within 48 hours, call the Support Representative.
      
      **OR**
      
   C. **Deny Claim** – Deny the request and issue a Reference Number.

6. **Review Repairs with Contract Holder** – After the **Administrator** has been contacted, review with the **Contract** Holder what will be covered by the **Contract** and what portions of the repairs, if any, will not be covered.

7. **Contract Holder's Approval for Repairs** – Obtain the **Contract** Holder's approval to complete the repairs. All repair orders must have customer's signature.

8. **Submit Repair Orders for Payment** – All repair orders and documentation must be submitted to the **Administrator**, at the address noted under "What To Do In The Event Of A Breakdown" within sixty (60) days.

## MECHANICAL COVERAGE

## POWERTRAIN SERIES 1-5 (Plan Code XP7)

 **1. Engine:** Cylinder Block, Cylinder Head(s), Rotary Housing and all internal lubricated parts contained within the engine including: Pistons; Piston Rings; Connecting Rod Bearings; Crankshaft; Crankshaft Main Bearings; Camshaft; Camshaft Bearings; Cam Followers; Timing Chain or Belt; Timing Gears, Guides, Tensioners; Rocker Arms; Rocker Shafts; Rocker Bushings; Cylinder Head Valves; Valve Guides; Valve Lifters; Valve Springs; Valve Seals; Valve Retainers; Valve Seats; Push Rods; Water Pump; Fuel Pump; Oil Pump and Oil Pump Housing; Harmonic Balancer; Oil Pan; Timing Chain Cover; Intake and Exhaust Manifolds; Valve Covers; Engine Mounts; Cam Gear Bolt; Harmonic Balancer Bolt; Head Bolts; and Seals and Gaskets.

**2. Turbocharger/Supercharger:** (factory installed only) Turbocharger/Supercharger Housing and All Internal Parts; and Seals and Gaskets.

**3. Transmission:** (Automatic or Standard) Transmission Case and all Internal Parts plus: Torque Converter; Flywheel/Flex Plate, Vacuum Modulator; Electronic Shift Control Unit; Transmission Cooler; Transmission Mounts; Oil Pan; Slave/Clutch Master Cylinder; Pilot Bearing; Throw-Out Bearing; and Seals and Gaskets.

**4. Transfer Case:** Transfer Case and All Internal Parts; and Seals and Gaskets.

**5. Drive Axle:** (Front and Rear) Drive Axle Case; All Internal Parts contained within the Drive Axle; Locking Hubs; Drive Shafts; Center Support Bearings; Universal Joints; Constant Velocity Joints; Axle Bearings; Four–Wheel Drive Actuator; Differential Cover; and Seals and Gaskets.

3

H520502WBN0602

**6. Steering:** All internal parts contained within the Steering Box; Rack and Pinion Gear; Power Steering Pump; Power Steering Hoses; Steering Knuckles; Pitman Arm; Idler Arm; Tie Rod Ends and Drag Link; Steering Damper; Upper and Lower Steering Column Shafts and Couplings, including Internal Tilt-Wheel Mechanism; Steering Box and Rack and Pinion Gear Housings; Power Steering Assist Cylinder; Power Steering Pump Cooler; Twin "I" Beam & Bushings; and Steering Travel Stop. **Rear Wheel Steering:** Rear Steering Shaft and Couplings; Power Cylinder and Pump; Electronic Control Unit/Solenoid; Phase Control Unit; Stepper Motor; Steering Box; Control Valve; Rack; Tie Rod Ends; and Seals and Gaskets.

**7. Brakes:** Master Cylinder; Power Brake Cylinder; Vacuum/Hydro Assist Booster; Disc Brake Caliper; Wheel Cylinders; Compensating Valve; Brake Hydraulic Lines and Fittings; Hydraulic Control Unit; Hydraulic Trailer Brake Assembly and it's Components. The following ABS Parts are also covered: Electronic Control Processor; Wheel Speed Sensors; Hydraulic Pump/Motor Assembly; Pressure Modulator Valve/Isolation Dump Valve; Accumulator; and Seals and Gaskets.

**8. Electrical:** Alternator; Voltage Regulator; Starter Motor; Starter Solenoid and Starter Drive; Engine Compartment Wiring Harness; Computerized Timing Control Unit; Electronic Ignition Module; Crank Angle Sensor; Knock Sensor; Ignition Switch; Ignition Switch Lock Cylinder; Front and Rear Window Wiper Motor, Washer Pump and Switch; Stop Lamp Switch; Headlamp Switch; Turn Signal Switch; Heater/A.C. Blower Speed Switch; Manual Heater/A.C. Control Head; Horns; Trailer Brake Wiring Harness; Auxiliary Power Supply Wiring; Exterior Cab Lighting;  Auxiliary Fuel Tank Switching Unit and Switch; and O-2 Sensors.

**9. Air Conditioner:** Condenser; Compressor; Compressor Clutch and Pulley; Air Conditioning Lines and Hoses; Evaporator; Idler Pulley and Idler Pulley Bearing; High/Low Compressor Cut-off Switch; Expansion Valve; Pressure Cycling Switch; and Seals and Gaskets.  The following parts are also covered if they are required in connection with the repair of a covered part listed above: Accumulator/Receiver Dryer; Orifice Tube; Oil and Refrigerant.

**10. Front and Rear Suspension:** Upper and Lower Control Arms; Control Arm Shafts and Bearings or Bushings; Upper and Lower Ball Joints; Radius Arm and Bushings; Torsion Bars, Mounts and Bushings; Stabilizer Bar, Links and Bushings; Struts; Strut Bearing Plates; Spindle and Spindle Support; Wheel Bearings; Panhard Bar; Track Bar; Suspension Bumpers; Leaf Springs; Leaf Spring Shackles and Hardware; Load Assist Shocks; Shocks; Load Assist Springs; Coil Springs; and Seals and Gaskets. **Variable Dampening Suspension:** Compressor; Control Module; Dampening Actuator; Solenoid; Struts; Height Sensor; Mode Selector Switch; and Seals and Gaskets.

**11. Enhanced Electrical:** Automatic Climate Control Programmer; Electronic Instrument Cluster; Mileage Computer; Distributor; Ignition Coil; Electronic Combination Entry System (Does Not Include Transmitters and Receivers for Remote Locks); Cruise Control Module, Transducer, Servo and Amplifier; Powertrain Control Module; Headlamp Motors; Power Window Motor; Power Seat Motor; Power Mirror Motor; Power Antenna Motor/Mast Assembly; Convertible Top Motor; Power Sunroof Motor; Power Window Switch; Cruise Control Engagement Switch; Power Seat Switch; Power Mirror Motor Switch; Rear Defogger Switch; Power Door Lock Actuator and Switch.

**12. Fuel Delivery:** Fuel Injection Pump and Injectors; Vacuum Pump; Fuel Tank; Fuel Tank Sending Unit; Metal Fuel Delivery Lines; Fuel Pressure Regulator; and Fuel Tank Switching Unit/Pump.

**13. Cooling:** Engine Cooling Fan and Motor; Fan Clutch; Belt Tensioner; Radiator; Heater Core; Thermostat; Blower Motor; Hot Water Valve; Engine Oil Cooler; Cooler Lines and Fittings.

**Premier Advantage Series:** We will pay or reimburse **You** for reasonable cost to repair or replace any **Breakdown** of all parts listed under **Mechanical Coverage** and any other parts, except for those items listed in the Exclusions Section of this **Contract**.

| Hyundai/Kia (Plan Code HU7) | Isuzu (Plan Code IW7) | Volkswagen (Plan Code VU7) | Chrysler (Plan Code CW7) | All Others (Plan Code WK7) |
|---|---|---|---|---|

**Premier Wrap Series:** We will pay or reimburse **You** for reasonable costs to repair or replace any **Breakdown** of all parts listed under **Mechanical Coverage** and any other parts, except for Engine, Turbocharger/Supercharger, Transmission, Transfer Case, and Drive Axle components as listed in the Powertrain Series and except for those items listed under the Exclusions Section of this **Contract**.

**CONVERSION COVERAGE:** If the **Contract** Registration Page shows that **You** purchased the **Conversion Coverage** option, **You** will have the following **Coverage** (All parts listed must be installed by Licensed Conversion Company):

Electronic — Compact Disc Player; Cassette Player; Speakers; VideoCassette Player/Recorder; Auxiliary Light Switches; and Captain Chair Motor and Switch.

Rear Air Conditioner — Expansion Valve; Evaporator; Capacitors; Relays; Blower Motor and Switch; and Seals and Gaskets.

Camping Accessories — Refrigerator; Stove; LP Gas Regulator, Lines and Fittings; Fresh Water System Pump; Tank; Lines; Faucets and Fittings.

**TOWING/ROAD SERVICE:** In the event **Your Vehicle** is disabled, **We** will pay or reimburse **You** for receipted towing or road service expenses up to fifty dollars ($50) per occurrence.  For Trucks and/or SUV's **We** will pay or reimburse **You** for receipted towing or road service expenses up to seventy-five dollars ($75) per occurrence and up to one hundred dollars ($100) for flatbed (four-wheel drive trucks and SUV's only) per occurrence.  Any payment shall be for actual towing or road service charges in excess of any applicable reimbursement from the manufacturer or any other towing or road service  **Coverage**.

**Road Service Coverage** includes the following:
Battery Service — If a battery failure occurs, a jump start will be applied to start the covered vehicle.
Flat Tire Assistance — Service consists of removal of the flat tire and its replacement with the spare tire.
Fuel, Oil, Fluid and Water Delivery Service — An emergency supply of fuel, oil, fluid and water will be delivered if **You** are in immediate need. **You** must pay for the fuel or the fluid when it is delivered.
No **Deductible** will apply to this benefit.

**RENTAL:** In the event of a **Breakdown** covered by this **Contract**, **We** will pay or reimburse **You** for receipted expenses to rent a replacement vehicle (from a licensed rental agency) or for alternate public transportation while **Your Vehicle** is at a licensed repair facility.  **Coverage** will be provided to **You** on the following basis, up to a maximum of thirty dollars ($30) for every eight (8) labor hours, or portion thereof, of applicable labor time required to complete the repair, up to a maximum of one hundred fifty dollars ($150) for each repair visit. This **Coverage** does not apply to the time waiting for parts, services, weekends or other delays beyond the control of the repair facility or the **Administrator**. However, an additional three (3) days of rental **Coverage** applies in the event of a parts delay when an internal repair or replacement is performed on a major component (Engine, Transmission, Drive Axle).  No **Deductible** will apply to this benefit.

**TRIP INTERRUPTION:** In the event of a **Breakdown** covered by this **Contract** occurs more than one hundred (100) miles from **Your** home and results in a repair facility keeping **Your Vehicle** overnight, **We** will reimburse **You** for receipted hotel and restaurant expenses, up to one hundred dollars ($100) per day for a maximum of five (5) days (Total benefit per occurrence of $500).  No **Deductible** will apply to this benefit.

**LOST KEY/LOCK OUT:** In the event the keys for **Your Vehicle** are lost, broken or accidentally locked in **Your Vehicle**, **We** will reimburse **You** for receipted expenses, up to a maximum of thirty-five dollars ($35) for locksmith services.  No **Deductible** will apply to this benefit.

H520502WBN0602

6.  Review Coverage — After the Administrator

H520502WBN06

## EXCLUSIONS

**This Vehicle Service Contract Provides No Coverage or Benefits:**

A. FOR ANY PART NOT SPECIFICALLY LISTED UNDER MECHANICAL COVERAGE, INCLUDING ANY OF THE FOLLOWING PARTS: CARBURETOR, BATTERY, STANDARD TRANSMISSION CLUTCH ASSEMBLY, FRICTION CLUTCH DISC AND PRESSURE PLATE, DISTRIBUTOR CAP AND ROTOR, SAFETY RESTRAINT SYSTEMS (INCLUDING AIR BAGS), GLASS, LENSES, SEALED BEAMS, LIGHT BULBS, FUSES, CIRCUIT BREAKERS, CELLULAR PHONES, TELEVISION/VCR, GAME CENTERS, ELECTRONIC TRANSMITTING/RECEIVING DEVICES, GLOBAL POSITIONING SYSTEMS, VOICE RECOGNITION SYSTEMS, BRAKE ROTORS AND DRUMS, ALL EXHAUST COMPONENTS, AND THE FOLLOWING EMISSION COMPONENTS: EGR PURGE VALVE/SOLENOIDS, VACUUM CANISTER, VAPOR RETURN CANISTER, VAPOR RETURN LINES/VALVES, AIR PUMP/LINES/VALVES, CATALYTIC CONVERTER/FILTERING/SENSORS, EMISSION VAPOR SENSORS, WEATHER STRIPS, TRIM, MOLDINGS, BRIGHT METAL CHROME, UPHOLSTERY AND CARPET, PAINT, OUTSIDE ORNAMENTATION, BUMPERS, BODY SHEET METAL AND PANELS, FRAME AND STRUCTURAL BODY PARTS, VINYL AND CONVERTIBLE TOPS, ANY CONVERTIBLE TOP ASSEMBLIES, HARDWARE OR LINKAGES, TIRES (EXCEPT AS MAY OTHERWISE BE PROVIDED UNDER MECHANICAL COVERAGE), WHEEL/RIMS. EXTERNAL NUTS, BOLTS AND FASTENERS ARE NOT COVERED UNLESS SPECIFICALLY LISTED UNDER MECHANICAL COVERAGE (EXCEPT WHERE REQUIRED IN CONJUNCTION WITH A COVERED REPAIR).

B. FOR MAINTENANCE SERVICES AND PARTS DESCRIBED IN YOUR VEHICLE'S OWNER'S MANUAL AS SUPPLIED BY THE MANUFACTURER AND OTHER NORMAL MAINTENANCE SERVICES AND PARTS WHICH INCLUDE, BUT ARE NOT LIMITED TO: ALIGNMENTS, ADJUSTMENTS, WHEEL BALANCING, TUNE-UPS, SPARK PLUGS, SPARK PLUG WIRES, GLOW PLUGS, HOSES, DRIVE BELTS, BRAKE PADS, BRAKE LININGS/SHOES, AND WIPER BLADES. FILTERS, LUBRICANTS, COOLANTS, FLUIDS AND REFRIGERANDS WILL BE COVERED ONLY IF REPLACEMENT IS REQUIRED IN CONNECTION WITH A BREAKDOWN.

C. FOR ANY DAMAGE AND/OR BREAKDOWN RESULTING FROM COLLISION, ROAD HAZARD, FIRE, THEFT, VANDALISM, RIOT EXPLOSION, LIGHTNING, EARTHQUAKE, FREEZING, RUST OR CORROSION, WINDSTORM, HAIL, WATER OR FLOOD, ACTS OF GOD, SALT, ENVIRONMENTAL DAMAGE, CHEMICALS, CONTAMINATION OF FLUIDS, FUELS, COOLANTS OR LUBRICANTS.

D. FOR ANY BREAKDOWN CAUSED BY MISUSE, ABUSE, NEGLIGENCE, LACK OF NORMAL MAINTENANCE REQUIRED BY THE MANUFACTURER'S MAINTENANCE SCHEDULE FOR YOUR VEHICLE, OR IMPROPER SERVICING OR REPAIRS SUBSEQUENT TO PURCHASE. FOR ANY BREAKDOWN CAUSED BY SLUDGE BUILD-UP RESULTING FROM YOUR FAILURE TO PERFORM RECOMMENDED MAINTENANCE SERVICES, OR FAILURE TO MAINTAIN PROPER LEVELS OF LUBRICANTS AND/OR COOLANTS, OR FAILURE TO PROTECT YOUR VEHICLE FROM FURTHER DAMAGE WHEN A BREAKDOWN HAS OCCURRED OR FAILURE TO HAVE YOUR VEHICLE TOWED TO THE SERVICE FACILITY WHEN CONTINUED OPERATION MAY RESULT IN FURTHER DAMAGE.

E. FOR ANY REPAIR OR REPLACEMENT OF ANY COVERED PART IF A BREAKDOWN HAS NOT OCCURRED OR IF THE WEAR ON THAT PART HAS NOT EXCEEDED THE FIELD TOLERANCES ALLOWED BY THE MANUFACTURER.

F. IF ANY ALTERATIONS HAVE BEEN MADE TO YOUR VEHICLE OR YOU ARE USING OR HAVE USED YOUR VEHICLE IN A MANNER NOT RECOMMENDED BY THE MANUFACTURER, INCLUDING BUT NOT LIMITED TO, THE FAILURE OF ANY CUSTOM OR ADD-ON PART, ALL FRAME OR SUSPENSION MODIFICATIONS, LIFT KITS, ANY TIRE THAT IS NOT RECOMMENDED BY THE ORIGINAL MANUFACTURER IF IT CREATES AN ODOMETER/SPEEDOMETER VARIANCE OF GREATER THAN 4%, TRAILER HITCHES, EMISSIONS AND/OR EXHAUST SYSTEMS MODIFICATIONS, ENGINE MODIFICATIONS, TRANSMISSION MODIFICATIONS, AND/OR DRIVE AXLE MODIFICATIONS.

G. IF YOUR ODOMETER HAS CEASED TO OPERATE AND ODOMETER REPAIRS HAVE NOT BEEN MADE IMMEDIATELY, OR THE ODOMETER HAS BEEN ALTERED IN ANY WAY SUBSEQUENT TO PURCHASE, OR IF YOUR VEHICLE HAS EVER BEEN A TOTAL LOSS, SALVAGED OR REBUILT.

H. FOR ANY LIABILITY FOR PROPERTY DAMAGE, OR FOR INJURY TO OR DEATH OF ANY PERSON ARISING OUT OF THE OPERATION, MAINTENANCE OR USE OF YOUR VEHICLE DESCRIBED IN THIS CONTRACT, WHETHER OR NOT RELATED TO THE PARTS COVERED. FOR LOSS OF USE, TIME, PROFIT, INCONVENIENCE, OR ANY OTHER CONSEQUENTIAL LOSS (EXCEPT AS MAY OTHERWISE BE PROVIDED UNDER MECHANICAL COVERAGE), INCLUDING ANY CONSEQUENTIAL DAMAGE TO A NON-COVERED PART THAT RESULTS FROM A BREAKDOWN.

I. WHEN THE RESPONSIBILITY FOR THE REPAIR IS COVERED BY AN INSURANCE POLICY, MANUFACTURER AND/OR DEALER CUSTOMER ASSISTANCE PROGRAM, OR ANY WARRANTY FROM THE MANUFACTURER, SUCH AS EXTENDED DRIVE TRAIN, MAJOR COMPONENT OR FULL COVERAGE WARRANTIES (REGARDLESS OF THE REMAINING MANUFACTURER'S WARRANTY WHEN YOU PURCHASED THIS CONTRACT), OR A REPAIRER'S GUARANTEE/WARRANTY. FURTHER, COVERAGE UNDER THIS CONTRACT IS SIMILARLY LIMITED IN THE EVENT OF A BREAKDOWN IF THE MANUFACTURER HAS ANNOUNCED ITS RESPONSIBILITY THROUGH ANY MEANS, INCLUDING PUBLIC RECALLS AND FACTORY SERVICE BULLETINS.

J. IF YOUR VEHICLE IS USED FOR TOWING (USED AS A COMMERCIAL UNIT, FARMING OR RANCHING, ROUTE WORK, JOB-SITE ACTIVITIES, SERVICE OR REPAIR WORK, DELIVERY OF GOODS, OR IS USED FOR RENTAL), OR IS USED FOR RENTAL, TAXI, LIMOUSINE OR SHUTTLE, TOWING/WRECKER SERVICE, DUMPING (DUMP BEDS), CHERRY PICKERS, LIFTING OR HOISTING, POLICE OR EMERGENCY SERVICE, PRINCIPALLY OFF-ROAD USE, RACING OR COMPETITIVE DRIVING.

K. FOR ANY BREAKDOWN OCCURRING PRIOR TO THE CONTRACT PURCHASE DATE, OR IF THE INFORMATION PROVIDED BY YOU, OR THE REPAIR FACILITY CANNOT BE VERIFIED AS ACCURATE OR IS FOUND TO BE DECEPTIVELY INACCURATE.

L. FOR BREAKDOWNS THAT OCCUR AND/OR REPAIRS MADE OUTSIDE OF THE UNITED STATES OF AMERICA AND CANADA.

M. FOR DIAGNOSTIC AND/OR TEARDOWN PROCEDURES THAT ARE NOT LISTED, OR ARE IN EXCESS OF THE TIMES LISTED IN THE CURRENT YEAR'S NATIONAL FLAT RATE HOURLY GUIDE IN CONJUNCTION WITH A COVERED REPAIR.

## SPECIAL STATE REQUIREMENTS/DISCLOSURES

### ALASKA

EXCLUSIONS SECTION –
Item **J.** is amended by adding the following:
This **Contract** does provide **Coverage** if **Your Vehicle** is used for snow removal, provided **Your Vehicle** is properly equipped for such use and is not used commercially.

Item **N.** is added as follows:
This **Contract** does not provide **Coverage** for damages for bad faith, punitive or exemplary damages, personal injury including bodily injury, property damage (except as specifically stated in the **Contract**), and attorney's fees.

### ARIZONA

**Our** obligations under this Service **Contract** are insured by a policy issued by the Insurance Company as stated on the **Declaration Page**. If a covered claim is not paid within thirty (30) days after proof of loss has been filed, **You** may file a claim directly with the Insurance Company.
CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION – Item **a.** is amended by adding the following:
a. **You** may also cancel this contract by returning it to the **Administrator**, Vemaco, Inc., as listed on the **Declaration Page**.

Item **b.** is deleted and replaced with the following –
b. **We** may cancel this **Contract** for non-payment of the **Contract** charge, or for misrepresentation in the submission of a claim made by **You**. **We** may cancel this **Contract** if **Your Vehicle** is found to be modified by **You** in a manner not recommended by the manufacturer, or **Your Vehicle** is found to be used as a commercial vehicle.

### CALIFORNIA

DEFINITIONS SECTION – The definition of **Breakdown** is deleted and replaced with the following:
**Breakdown**– Means the failure of a covered part under normal service due to defects in material and workmanship. A covered part has failed when it can no longer perform the function for which it was designed solely because of its condition and not because of the action or inaction of any non-covered parts.

CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION – Item **d.** is deleted and replaced with the following:
d. If this **Contract** is cancelled within the first sixty (60) days and no claims have been filed, **We** will refund the entire **Contract** charge paid. If this **Contract** is cancelled after the first sixty (60) days or a claim has been filed, **We** will refund an amount of the **Contract** charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term of the plan selected and the date **Coverage** begins, less an administration fee of twenty five ($25.00) dollars or 10% of the **Contract** charge, whichever is less. In the event of cancellation, the lienholder, if any, will be named on a cancellation refund check as their interest may appear. The total amount of all authorized claims will be deducted from all refunds.

5

H520502WBN0602

## CONNECTICUT

Connecticut Public Act, 87-393, Laws 1987, requires an automobile dealer to provide a warranty covering certain classes of used motor vehicles as follows:

Used vehicles with a sale price of $3,000 but less than $5,000

Provides **Coverage** for 30 days or 1,500 miles, whichever occurs first.

Used vehicles with a sale price of $5,000 or more

Provides **Coverage** for 60 days or 3,000 miles, whichever occurs first.

The vehicle **You** have purchased may be covered by this law. If so, the following is added to this **Contract**: In addition to the dealer warranty required by this law, **You** have elected to purchase this **Contract**, which may provide **You** with additional protection during the dealer warranty period and provides protection after the dealer warranty has expired. **You** have been charged separately only for this **Contract**. The required dealer warranty is provided free of charge. Furthermore, the definitions, **Coverages** and exclusions stated in this **Contract** apply only to this **Contract** and are not the terms of the required dealer warranty.

## GEORGIA

**Our** obligations under this Service **Contract** are insured by a policy issued by the Insurance Company as stated on the **Declaration Page**. If a covered claim is not paid within sixty (60) days after proof of loss has been filed, **You** may file a claim directly with the Insurance Company.

EXCLUSIONS SECTION – Item **J.** is deleted and replaced with the following:

**J.** If **Your Vehicle** is used for towing (unless **Your Vehicle** is equipped with factory installed or factory authorized tow package), or is used as a commercial unit, or is used for rental, taxi, limousine or shuttle, commercial delivery, towing or road repair operations, construction, job site activities, commercial hauling, police or emergency service, principally off-road use, prearranged or organized racing or competitive driving, snow removal, route-work, service or repair.

CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION – Item **d.** is deleted and replaced with the following:

**d.** If this **Contract** is cancelled within the first sixty (60) days and no claims have been filed, **We** will refund the entire **Contract** charge paid. If this **Contract** is cancelled after the first sixty (60) days or a claim has been filed, **We** will refund an amount of the **Contract** charge according to the pro-rata method reflecting the greater of the days or the miles driven based on the term of the plan selected and the date **Coverage** begins. An administration fee of 10% of the pro-rata refund amount will be applied if this **Contract** is cancelled by **You**. In the event of cancellation, if this **Contract** is financed, the lienholder, if any, will be named on a cancellation refund check as their interest may appear. If **You** have cancelled this **Contract** and have not received the refund from **Us** or the **Administrator** within sixty (60) days of such cancellation, **You** may contact the Insurance Company identified on the **Declaration Page**. The total amount of all authorized claims will be deducted from all refunds.

## HAWAII

DEFINITIONS SECTION – The definition of Breakdown is deleted and replaced with the following:

**Breakdown** – Means the failure of a covered part under normal service due to defects in material and workmanship. A covered part has failed when it can no longer perform the function for which it was designed solely because of its condition and not because of the action or inaction of any non-covered parts.

Hawaii Revised Statutes requires an automobile dealer to provide a warranty covering certain classes of used motor vehicles as follows:

Used vehicles with less than 25,000 miles at the time of sale

Provides **Coverage** for 90 days or 5,000 miles, whichever occurs first.

Used vehicles with 25,000 miles or more but less than 50,000 miles at the time of sale

Provides **Coverage** for 60 days or 3,000 miles, whichever occurs first.

Used vehicles with 50,000 miles or more but not more than 75,000 miles at the time of sale

Provides **Coverage** for 30 days or 1,000 miles, whichever occurs first.

The vehicle **You** have purchased may be covered by this law. If so, the following is added to this **Contract**: In addition to the dealer warranty required by this law, **You** have elected to purchase this **Contract**, which may provide **You** with additional protection during the dealer warranty period and provides protection after the dealer warranty has expired. **You** have been charged separately for this **Contract**. The required dealer warranty is provided free of charge. Furthermore, the definitions, **Coverages** and exclusions stated in this **Contract** apply only to this **Contract** and are not the terms of the required dealer warranty.

BENEFITS – Towing/Road Service and Rental is not available.

## IDAHO

Notice – **Coverage** afforded under this **Contract** is not guaranteed by the Idaho Insurance Guarantee Association.

## ILLINOIS

EXCLUSIONS SECTION – Item **E.** is amended to read:

**E.** For any repair or replacement of any covered part if a **Breakdown** has not occurred. A gradual reduction in operating performance due to wear and tear does not constitute a **Breakdown**.

CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION – Item **d.** is deleted and replaced with the following:

**d.** If this **Contract** is cancelled within the first sixty (60) days and no claims have been filed, **We** will refund the entire **Contract** charge paid. If this **Contract** is cancelled after the first sixty (60) days or a claim has been filed, **We** will refund an amount of the **Contract** charge according to the pro-rata method reflecting the greater of the days or the miles driven based on the term of the plan selected and the date **Coverage** begins. The Vehicle Service **Contract** provider may retain a cancellation fee not to exceed the lesser of 10% of the Vehicle Service **Contract** price or fifty dollars ($50). In the event of a cancellation, the lienholder, if any, will be named on a cancellation refund check as their interest may appear. The total amount of all authorized claims will be deducted from all refunds.

LIMITS OF LIABILITY – Item **b.** Aggregate is amended to read as follows:

**b.** **Aggregate** – The total of all claims and benefits paid or payable while this **Contract** is in force shall not exceed the Actual Cash Value for **Your Vehicle** (excluding tax, title and license fees).

## INDIANA

**Your** proof of payment to the issuing dealer for this **Contract** shall be considered proof of payment to the Insurance Company which guarantees **Our** obligations to **You**, providing such insurance was in effect at the time **You** purchased this **Contract**.

## IOWA

If **You** have any questions regarding this **Contract**, **You** may contact the **Administrator** by mail or by phone. Refer to the **Declaration Page** for the **Administrator's** address and toll free telephone number. Iowa residents only may also contact the Iowa Insurance Commissioner at the following address: Iowa Insurance Department, 6th floor, Lucas State Office Building, Des Moines, Iowa 50319.

## MASSACHUSETTS

NOTICE TO CUSTOMER: PURCHASE OF THIS CONTRACT IS NOT REQUIRED IN ORDER TO REGISTER OR FINANCE A VEHICLE. THE BENEFITS PROVIDED MAY DUPLICATE EXPRESS MANUFACTURER'S OR SELLER'S WARRANTIES THAT COME AUTOMATICALLY WITH EVERY SALE. THE SELLER OF THIS COVERAGE IS REQUIRED TO INFORM YOU OF ANY WARRANTIES AVAILABLE TO YOU WITHOUT THIS CONTRACT.

Chapter 90, Section 7N 1/4 of Massachusetts General Laws requires an automobile dealer to provide a warranty covering certain classes of used motor vehicles as follows:

6

H520502WBN0602

## SPECIAL STATE REQUIREMENTS/DISCLOSURES CONT'D

### MASSACHUSETTS CONT'D

Used vehicles with less than 40,000 miles at the time of sale
    Provides **Coverage** for 90 days or 3,750 miles, whichever occurs first.
Used vehicles with 40,000 miles or more but less than 80,000 miles at the time of sale
    Provides **Coverage** for 60 days or 2,500 miles, whichever occurs first.
Used vehicles with 80,000 miles or more but less than 125,000 miles at the time of sale
    Provides **Coverage** for 30 days or 1,250 miles, whichever occurs first.
The vehicle **You** have purchased may be covered by this law. If so, the following is added to this **Contract**: In addition to the dealer warranty required by this law, **You** have elected to purchase this **Contract**, which may provide **You** with additional protection during the dealer warranty period and provides protection after the dealer warranty has expired. **You** have been charged separately only for this **Contract**. The required dealer warranty is provided free of charge. Furthermore, the definitions, **Coverages** and exclusions stated in this **Contract** apply only to this **Contract** and are not the terms of the required dealer warranty.

### MINNESOTA

The **Coverages** listed below are provided to **You** by the dealer at no charge as required by Minnesota Statute 325F.662. The term of the required warranty is based on the mileage at the time of sale as follows:
Used vehicles with less than 36,000 miles at the time of sale
    Provides **Coverage** for 60 days or 2,500 miles, whichever occurs first.
Used vehicles with 36,000 miles or more but less than 75,000 miles at the time of sale
    Provides **Coverage** for 30 days or 1,000 miles, whichever occurs first.
**Engine:** Lubricated Parts; Intake Manifolds; Engine Block; Cylinder Heads; Rotary Engine Housings; and Ring Gear; Water Pump; Externally Mounted Mechanical Fuel Pump; Radiator; Alternator; Generator; and Starter. **Transmission:** Case; Internal Parts; Torque Converter; or, the Manual Transmission Case and Internal Parts. **Drive Axle:** Axle Housings and Internal Parts; Axle Shafts; Drive and Output Shafts; and Universal Joints; but excluding the Secondary Drive Axle on vehicles other than passenger vans, mounted on a truck chassis. **Brakes:** Master Cylinder; Vacuum Assist Booster; Wheel Cylinders; Hydraulic Lines and Fittings; and Disc Brake Calipers. **Steering:** Gear Housing and all Internal Parts; Power Steering Pump; Valve Body; Piston; and Rack. Note: The following parts are covered only on vehicles with less than 36,000 miles: Steering Rack; Radiator; Alternator; Generator; and Starter.

The above **Coverages** are excluded from this **Contract** during the applicable warranty period, unless the dealer becomes unable to meet its obligations. **Your** rights and obligations are fully explained in the dealer issued used vehicle limited warranty document.
CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION — Item **d.** is amended by adding the following:
**d.** If **You** have cancelled this **Contract** and have not received the refund from Us or the **Administrator** within sixty (60) days of such cancellation, **You** may contact the Insurance Company identified on the **Declaration Page**.
**Definition:** "**Pre-existing**" is not applicable to Minnesota residents.

EXCLUSIONS SECTION -
**Coverage** Exclusion for breakdowns caused by rust, corrosion, sludge build up or damage to a covered part by a non-covered part does not apply to Minnesota residents.

### NEVADA

This Service **Contract** is not renewable. The provisions of this **Contract** apply only to the original purchaser of the Service **Contract**.
CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION — Items **b.** and **d.** are DELETED and REPLACED with the following:
**b.** **We** may cancel this **Contract** within 70 days from the date of purchase for any reason. After 70 days, **We** may only cancel this Service **Contract** for fraud, material misrepresentation, nonpayment by **You** or a substantial breach of duties by **You** relating to the covered property or its use. **We** may cancel this **Contract** if **Your Vehicle** is found to be modified in a manner not recommended by the manufacturer, or if **Your Vehicle** is found to be used as a Commercial vehicle. If **We** cancel **Your Contract**, **You** will be entitled to a refund on the unearned **Contract** fee according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term/miles selected and the date **Coverage** begins, no administrative fee will be deducted. In the event **We** cancel this **Contract**, written notice will be sent to **Your** last known address at least 15 days prior to cancellation with the effective date of the cancellation.
**d.** **You** may cancel this **Contract** at anytime. If **You** have made no claim and **Your** request for cancellation is within 30 days, the full price **You** paid for the Service **Contract** will be refunded and no administrative fee will be deducted. If **You** have made a claim under the **Contract**, or if **Your** request is beyond the first 30 days, **We** will refund to **You** an amount based on the pro-rata method, less a $25.00 administrative fee. If **Your Contract** was financed, the outstanding balance will be deducted from any refund, however, **You** will not be charged for claims paid or repair service fees. If **You** cancel this **Contract** and the refund is not processed within 45 days, a 10% penalty will be added to the refund for every 30 days the refund is not paid. The total amount of all authorized claims will be deducted from all refunds.

### NEW HAMPSHIRE

GENERAL PROVISIONS SECTION — Item **8b.** is deleted and replaced with the following:
**b.** To transfer, the following must be submitted to the **Administrator** within 30 days of the change of ownership to a subsequent individual purchaser:
    Original **Contract** and **Declaration Page**; and name and address of new owner, date of sale to new owner, current mileage.
CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION — Item **d.** is deleted and replaced with the following:
**d.** If this **Contract** is cancelled within the first sixty (60) days and no claims have been filed, **We** will refund the entire **Contract** charge paid. If this **Contract** is cancelled after the first sixty (60) days or a claim has been filed, **We** will refund an amount of the **Contract** charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term of the plan selected and the date **Coverage** begins. In the event of cancellation, the lienholder, if any, will be named on a cancellation refund check as their interest may appear. The total amount of all authorized claims will be deducted from all refunds.

### NEW YORK

Section 196b of New York General Business Law requires an automobile dealer to provide a warranty covering certain classes of used motor vehicles as follows:
Used vehicles with 36,000 miles or less at the time of sale
    Provides **Coverage** for 90 days or 4,000 miles, whichever occurs first.
Used vehicles with more than 36,000 miles but less than 80,000 miles at the time of sale
    Provides **Coverage** for 60 days or 3,000 miles, whichever occurs first.
Used vehicles with 80,000 miles or more but no more than 100,000 miles at the time of sale
    Provides **Coverage** for 30 days or 1,000 miles, whichever occurs first.
The vehicle **You** have purchased may be covered by this law. If so, the following is added to this **Contract**: In addition to the dealer warranty required by this law, **You** have elected to purchase this **Contract**, which may provide **You** with additional protection during the dealer warranty period and provides protection after the dealer warranty has expired. **You** have been charged separately only for this **Contract**. The required dealer warranty is provided free of charge. Furthermore, the definitions, **Coverages** and exclusions stated in this **Contract** apply only to this **Contract** and are not the terms of the required dealer warranty.

### NORTH CAROLINA

CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION — Item **d.** is deleted and replaced with the following:
**d.** If this **Contract** is cancelled within the first sixty (60) days and no claims have been filed, **We** will refund the entire **Contract** charge paid. If this **Contract** is cancelled after the first sixty (60) days or a claim has been filed, **We** will refund an amount of the **Contract** charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term of the plan selected and the date **Coverage** begins, less an administration fee of $25 or 10% of the pro-rata refund amount, whichever is less. In the event of cancellation, the lienholder, if any, will be named on a cancellation refund check as their interest may appear. The total amount of all authorized claims will be deducted from all refunds.

H520502WBN0602

## SPECIAL STATE REQUIREMENTS/DISCLOSURES CONT'D

### OKLAHOMA
**Disclosure Statement:** This service warranty is not issued by the manufacturer or wholesale company marketing the product. This warranty will not be honored by such manufacturer or wholesale company.
CANCELLATION OF VEHICLE SERVICE **CONTRACT** Section – Item **d.** is deleted and replaced with the following:
**d.** If this **Contract** is cancelled within the first sixty (60) days and no claims have been filed, **We** will refund the entire **Contract** charge paid. If this **Contract** is cancelled after the first sixty (60) days or a claim has been filed, **We** will refund an amount of the **Contract** charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term of the plan selected and the date **Coverage** begins. An administration fee of 10% of the pro-rata refund amount will be applied if this **Contract** is cancelled by **You**. In the event of cancellation, the lienholder, if any, will be named on a cancellation refund check as their interest may appear. The total amount of all authorized claims will be deducted from all refunds.

### RHODE ISLAND
Section 31-5.4 of Rhode Island General Business Law requires an automobile dealer to provide a warranty covering certain classes of used motor vehicles as follows:
<u>Used vehicles with 36,000 miles or less at the time of sale</u>
    Provides **Coverage** for 90 days or 4,000 miles, whichever occurs first.
<u>Used vehicles with more than 36,000 miles but less than 100,000 miles at the time of sale</u>
    Provides **Coverage** for 30 days or 1,000 miles, whichever occurs first.
The vehicle **You** have purchased may be covered by this law. If so, the following is added to this **Contract**: In addition to the dealer warranty required by this law, **You** have elected to purchase this **Contract**, which may provide **You** with additional protection during the dealer warranty period and provides protection after the dealer warranty has expired. **You** have been charged separately only for this **Contract**. The required dealer warranty is provided free of charge. Furthermore, the definitions, **Coverages** and exclusions stated in this **Contract** apply only to this **Contract** and are not the terms of the required dealer warranty.

### SOUTH CAROLINA
If **You** have any questions regarding this **Contract**, or a complaint against the Obligor, **You** may contact the South Carolina Department of Insurance at 300 Arbor Lake Drive, Columbia, South Carolina 29223, (803)-737-6180.
CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION – Item **b.** is amended by adding the following:
**b.** If **We** cancel this **Contract** **We** shall mail a written notice to **You** at the last known address held by **Us** at least 15 days prior to cancellation, providing **You** with notice of cancellation date and the reason for cancellation. However, prior notice is not required if the reason for cancellation is nonpayment of the provider fee, a material misrepresentation by the Service **Contract** holder to the provider, or a substantial breach of duties by the Service **Contract** holder relating to the covered product or its use.

Items **d.** is deleted and replaced with the following:
**d.** If this **Contract** is cancelled within the first sixty (60) days and no claims have been filed, **We** will refund the entire **Contract** charge paid. If this **Contract** is cancelled after the first sixty (60) days or a claim has been filed, **We** will refund an amount of the **Contract** charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term/miles selected and the date **Coverage** begins, less a twenty-five ($25.00) dollar administrative fee. In the event of cancellation, the lienholder, if any, will be named on a cancellation refund check as their interest may appear. A ten percent penalty per month shall be added to a refund that is not paid or credited within 45 days after return of the Service **Contract** to the provider. The total amount of all authorized claims will be deducted from all refunds.

### TEXAS
If **You** have any questions regarding the regulation of the Service **Contract** provider or a complaint against the Obligor, **You** may contact the Texas Department of Licensing & Regulation, 920 Colorado, P.O. Box 12157, Austin, Texas 78711, (800) 803-9202.
CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION – Item **b.** is amended by adding the following:
**b.** If **We** cancel this **Contract** **We** shall mail a written notice to **You** at the last known address held by **Us** before the fifth day preceding the effective date of cancellation. The notice will state the effective date and the reason for the cancellation. However, prior notice is not required if the reason for cancellation is nonpayment of the provider fee, a material misrepresentation by the Service **Contract** holder to the provider, or a substantial breach of duties by the Service **Contract** holder relating to the covered product or its use.

Item **d.** is amended by adding the following:
**d.** If a Service **Contract** is cancelled under this section and the provider does not pay the refund or credit the Service **Contract** holder's account before the 46th day after the date of the return of the Service **Contract** to the provider, the provider is liable to the **Contract** holder for a penalty in an amount not to exceed 10 percent of the amount outstanding per month.

### UTAH
Note: **Coverage** afforded under this **Contract** is not guaranteed by the Property and Casualty Guarantee Association.
CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION – Item **b.** is deleted and replaced with the following:
**b.** **We** may cancel this **Contract** for the following reasons by sending to **You** notice of cancellation and the reason for cancellation, via first class mail, to **Your** last known address:
    1. **We** may cancel this **Contract** for non-payment of the **Contract** charge. Such cancellation will be    effective 10 days after mailing of notice.
    2. **We** may cancel this **Contract** for misrepresentation of a claim, if **Your** **Vehicle** is found to be modified in a manner not recommended by the manufacturer, or if **Your Vehicle** is found to be used as a Commercial vehicle and the applicable surcharge has not been marked on the Declaration Page and payment has not been received for this surcharge. Such cancellation will be effective 30 days after mailing of notice.

### WASHINGTON
CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION – Items **a.** and **b.** are deleted and replaced with the following:
**a.** **You** may cancel this **Contract** by returning it to the **Administrator**. An odometer statement indicating the odometer reading at the date of the request will be required. A ten percent (10%) penalty will be added to any refund that is not paid within 30 days of return of the **Contract** to the **Administrator**.
**b.** **We** may cancel this **Contract** for non-payment of the **Contract** Charge, or for misrepresentation in obtaining this **Contract** or in the submission of a claim. If cancelled, written notice of cancellation, including the actual reason for the cancellation, will be mailed to the last mailing address known to the **Administrator** at least:
    1. 10 days before the effective date of cancellation if cancelled for non-payment of the **Contract** charge.
    2. 45 days before the effective date of cancellation if cancelled for any other reason.

### WISCONSIN
THIS WARRANTY IS SUBJECT TO LIMITED REGULATION BY THE OFFICE OF THE COMMISSIONER OF INSURANCE.
WHAT TO DO IN THE EVENT OF A BREAKDOWN – Item **A.4.** is deleted and replaced with the following:
**4.** <u>Obtain Authorization from the **Administrator**</u> – Prior to any repair being made, instruct the Service Manager at the repair facility to contact the **Administrator** to obtain an authorization for the claim. Failure to obtain authorization prior to having repairs made may jeopardize **Coverage** under this **Contract**, except as provided under Emergency Repairs.

The amount authorized by the **Administrator** is the amount that will be paid for repairs covered under the terms of this **Contract**. Any additional amount must receive prior approval.

H520502WBN060

H520502WBN0602

## VEHICLE MAINTENANCE LOG

| DATE SERVICE | MILEAGE WHEN SERVICE / REPAIR ORDER NUMBER | SERVICE PERFORMED | NAME AND ADDRESS OF SERVICING FACILITY | MECHANIC OR SERVICE MANAGER |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

9

H520502WBN0602

b. **Aggregate** -- The total of all claims and benefits p
Vehicle (excluding tax, title and license fees).

1

H520502WBN0(

# EXHIBIT 2

# DECLARATION PAGE

**Warrantybynet**

*If this Vehicle Service Contract has been financed, the Lienholder shall be entitled to any refunds resulting from the cancellation of this Vehicle Service Contract for whatever reason. This would include cancellation for non-payment, repossession of the vehicle, or total loss of the vehicle.*

This is your CUSTOMER CONTRACT NUMBER. Please use this number in any phone or written communication.

| WWTN39388 | 72100UK7 | 720045 | ✓ NEW |
|---|---|---|---|
| YOUR CONTRACT NUMBER | YOUR CONTRACT PLAN CODE | SELLING DEALER CODE | USED |

| CONTRACT HOLDER (You, Your): | CONTRACT HOLDER ADDRESS: (Phone: (860)868-9908 |
|---|---|
| CHARLES C. MITSCHOW | 289 LITCHFIELD TURNPIKE |
| | NEW PRESTON, CT 06777 |

DESCRIPTION OF YOUR VEHICLE:

| YEAR | MAKE | MODEL | VEHICLE ID NUMBER | CONTRACT CHARGE | DEDUCTIBLE |
|---|---|---|---|---|---|
| 2000 | Chevrolet | BLAZER | 1GNDT13W3Y2179706 | $1,500.00 | $0.00 |

REDUCING DEDUCTIBLE (Does not apply unless checked yes)

TERM

| MONTHS | MILEAGE |
|---|---|
| 72 | 100000 |

FULL PAY

✓ PAY AS YOU GO

ADDITIONAL
4WD

| *CONTRACT PURCHASE DATE | *ODOMETER MILEAGE AT CONTRACT PURCHASE DATE |
|---|---|
| 6/12/2003 | 35331 |

LIENHOLDER: (Entity financing VSC)

DEALER/LESSOR:
Warrantybynet

ADDRESS 399 Mantoloking Rd. Brick, NJ 08723

DEALER PHONE NUMBER    (800) 962-4720

*CONTRACT PURCHASE DATE    6/12/2003

AUTHORIZED DEALER SIGNATURE    DATE    6/12/2003

FEMCCO

*New vehicle plan [Premier (plan code UK7) and Peak (plan code XD7) Advantage Series] expiration is measured in time/mileage from the Contract Purchase Date and zero (0) miles.
*Used vehicle plan [Powertrain (plan code XP7), Select (plan code XF7), and Value (plan code XD7) Advantage Series] expiration is measured in time/mileage from the Contract Purchase Date and Odometer Mileage (at Contract Purchase Date).

*All vehicle plans require a mandatory "Waiting Period before Coverage takes effect. The "Waiting Period" is 30 days and 1,000 miles from the Contract Purchase Date and Odometer Mileage at Contract Purchase Date.

The definition of "We, Us and Our" used frequently throughout the Vehicle Service Contract is defined as BUTLER FINANCIAL SOLUTIONS, L.L.C., 2300 CORPORATE BLVD., NW, SUITE 214, BOCA RATON, FL 33431. Please refer to the Vehicle Service Contract for additional Definitions.

Our obligations under this Vehicle Service Contract are insured by a policy issued by Heritage Warranty Mutual Insurance Risk Retention Group, Inc., 1550 South 70th Street, Lincoln, Nebraska 68596, under a motor Vehicle Service Contract reimbursement policy, and reinsured by American Re®. - a national A+ rated company and a member of the Munich Re Group®. If a covered claim is not paid within sixty (60) days, [except in Arizona thirty (30) days], after proof of loss has been filed, You may file a claim directly with the Insurance Company. Please call 1-800-543-8801 for instructions.

H250502WBN0502Rev 03/03

*[handwritten]* Butler Financial (Group)

*[handwritten]* 828 654 0244

*[handwritten]* 877 358 1500

## IMPORTANT INFORMATION YOU NEED TO KNOW

CUSTOMER SUPPORT NUMBER – Please see the box labeled **Your** Contract Number on the Declaration Page. This is **Your** CUSTOMER SUPPORT NUMBER. Please refer to this number in any written or verbal communication, such as requesting information or filing a claim.

**PURCHASE OF THIS VEHICLE SERVICE CONTRACT IS NOT REQUIRED IN ORDER TO PURCHASE OR FINANCE A MOTOR VEHICLE.**

## THINGS TO DO NOW

The Declaration Page is an important part of this Agreement. It is **Your** responsibility to notify **Us** if any information is incorrect. Please read all sections carefully and if are unclear about any information call **Us** at 1-800-962-4720. Refer to the bold printed number in any verbal or written communication, such as requesting information or filing a claim.

Check Plan Code – Not every part of **Your Vehicle** is covered by this **Contract**. **Coverage** is identified by the last three (3) letters of the Plan Code as shown on the **Declaration Page** of this **Contract**. Please compare the last 3 letters of the Plan Code on the **Declaration Page** with the Plan Code and Corresponding **Coverage** as listed under **Mechanical Coverage**. If this box was left blank, or Plan Code is inaccurate, contact **Your Administrator** immediately.

Check **Your** Deductible – Please check the box labeled DEDUCTIBLE on **Your** Declaration Page. A number should be in the box which identifies the portion of the covered repair **You** will be required to pay if **You** have a claim. If this box was left blank, contact **Your Administrator** immediately.

NOTE: This **Contract** is not valid unless **You** have signed the Declaration Page and it has been affixed to the front of this **Contract**.

## THINGS YOU MUST DO THROUGHOUT THE TERM OF YOUR CONTRACT

**Properly Maintain Your Vehicle and KEEP THE RECEIPTS** – This **Contract** is only valid if **Your Vehicle** has been maintained in accordance with the manufacturer's specifications. Keep copies of all receipts (oil changes, lubrication, etc.), as proof of maintenance may be required when **You** file a claim. SEE SECTION: "GENERAL PROVISIONS" FOR SPECIFIC MAINTENANCE REQUIREMENTS.

Obtain approval PRIOR to having work performed that may be covered by this **Contract**. If **You** believe the failure may be covered by this **Contract**, call the **Administrator** personally, or instruct the repair facility performing the work to call and **Register** the claim BEFORE THE WORK IS PERFORMED. SEE SECTION: "WHAT TO DO IN THE EVENT OF A BREAKDOWN".

## DEFINITIONS

The following definitions apply to words frequently used in this **Contract** and appear in **Bold Faced Type**:

**You, Your** – Means the **Contract** Holder shown on the Declaration Page or the person to whom this **Contract** was properly transferred.

**We, Us, Our** – Means the obligor of this **Contract** as stated on the Declaration Page attached to this **Contract**.

**Administrator** – Means The **Administrator** as shown on the Declaration Page.

**Contract** – Means this Vehicle Service **Contract** which **You** have purchased from **Us** to protect **Your Vehicle**.

**Declaration Page** – Means the numbered document which must be attached to and forms part of this **Contract**. It lists information regarding **You**, **Your Vehicle**, **Coverage** selected, and other vital information.

**Mechanical Coverage** – Lists the **Coverages** provided to **You** for **Your Vehicle** under this **Contract**.

**Coverage** – Means the protection **You** have selected, as listed under Mechanical **Coverage** Section.

**Your Vehicle** – Means the vehicle which is described on the Declaration Page.

**Deductible** – Means the amount **You** are required to pay, as shown on the Declaration Page, for covered **Breakdowns**. Once a part is repaired or replaced under the terms of this **Contract**, there will be no **Deductible** for future repairs to that part.

**Breakdown or Mechanical Failure** – These terms are used interchangeably and mean the failure of a covered part under normal service. A covered part has failed when it can no longer perform the function for which it was designed solely because of its condition and not because of the action or inaction of any non-covered parts. **Subsequent Damages** resulting from the **Breakdown or Mechanical Failure** of a covered part are covered by this **Contract**, except when **You** have failed to perform the recommended maintenance services for **Your Vehicle**.

**Subsequent Damage** – Means the direct or immediate damage to a non-covered part occurring as a singular event or failure originating with the failure of a covered part.

**Consequential Damage** – Means an event or damage that occurs separately as a consequence or result of the failure of a covered or non-covered part, such as, loss of time or use, inconvenience, commercial loss, personal injury or property damage.

**Registered** – Means a claim has been **Registered** only when the **Administrator** has been contacted and has issued a claim reference number.

**Pre-existing** – Means a condition that within all reasonable mechanical probability relates to the mechanical fitness of **Your Vehicle** prior to **Contract** issuance.

**Preferred Repair Facility** – A Repair Facility that has been selected and assigned by the **Administrator** to provide quality service to the customer.

## GENERAL PROVISIONS

This **CONTRACT** is between **US** and **YOU**, and is subject to all the Terms and Conditions contained herein.

1. **CONTRACT PERIOD**
   **Coverage** under this **Contract** begins 30 days and 1,000 miles from the **Contract** Purchase Date and Odometer Mileage at **Contract** Purchase Date and will expire according to the time and/or mileage of the term/miles selected, whichever occurs first, as shown on the **Declaration Page**.
   a) New Vehicle Plan (Premier and Peak Advantage Series) expiration is measured in time/mileage from the **Contract** Purchase Date and zero (0) miles.
   b) Used Vehicle Plan (Powertrain, Select, and Value Advantage Series) expiration is measured in time/mileage from the **Contract** Purchase Date and Odometer Mileage (at **Contract** Purchase Date).

2. **COVERAGE**
   The **Coverage** afforded **You** for **Your Vehicle** is fully described in this **Contract**. Please see section: "Mechanical **Coverage**" of this **Contract**.

3. **BREAKDOWN OF COVERED PARTS**
   **We** will pay or reimburse **You** for reasonable costs to repair or replace any **Breakdown** of a part listed under Mechanical **Coverage**. REPLACEMENT PARTS MAY BE NEW, REMANUFACTURED, OR REPLACEMENT PARTS OF LIKE KIND AND QUALITY. If necessary, the repair facility will be paid, less **Your** Deductible (if any), by the **Administrator's** national charge card system (MasterCard or VISA) on **Your** behalf.

4. **DEDUCTIBLE**
   In the event of a **Breakdown** covered by this **Contract**, **You** may be required to pay a **Deductible**. No **Deductible** payment is required with respect to Towing/Road Service, Rental, Trip Interruption, and Lost Key/Lockout Coverages, if they are provided by this **Contract**. **You** have a Per Repair Visit Deductible, as shown on the Declaration Page, the Deductible amount will be applied on a per repair visit basis. Should a covered **Breakdown** take more than one visit to repair, only one **Deductible** will apply for that **Breakdown**. In addition, if **You** bring **Your Vehicle** to a **Preferred Repair Facility**, $50 (fifty) dollars of any **Deductible** will be waived. **Our Administrator** will assist **You** in locating a **Preferred Repair Facility**.

5. **TERRITORY**
   This **Contract** applies only to **Breakdown** that occur and repairs made within the United States of America and Canada.

6. **LIMITS OF LIABILITY**
   a. Per Repair Visit – **Our** liability for any one (1) Repair Visit shall in no event exceed the trade-in value of **Your Vehicle** at the time of said Repair Visit, as listed in the Kelly Blue Book Used Car Guide.
   b. Aggregate – The total of all claims and benefits paid or payable while this **Contract** is in force shall not exceed the price **You** paid for **Your Vehicle** (excluding tax, title and license fees).

H520502WBN0602Rev 02/03

## WHAT TO DO IN THE EVENT OF A BREAKDOWN CONT'D

7. Pay any applicable Deductible – We will pay the repair facility or You for the cost of the work performed on Your Vehicle that is covered by this Contract and previously authorized, less the Deductible (if any). Once authorization is obtained, and the repair is completed, all repair orders and documentation must be submitted to the Administrator within sixty (60) days to be eligible for payment.

8. Emergency Repairs - Should an emergency occur which requires a Breakdown repair be made at a time when, due to circumstances beyond Our control, the Administrator's office cannot be contacted, You must call the Administrator's office within five (5) business days from the date of repair to determine if such repair will be covered by this Contract. If covered, You will be reimbursed for the repair.

**B. IF YOUR VEHICLE BREAKS DOWN ON THE ROAD:**
Follow the same steps as above. If necessary, the repair facility will be paid, less Your Deductible (if any), by the Administrator's national charge card system (MasterCard or VISA) on Your behalf. In some case, You may need to pay the repair bill in full. If so, You will be reimbursed for the Registered amount of the repair, less Your Deductible (if any). If You have any questions regarding claim procedures or Coverages, please call the Administrator at the number below and ask for a Customer Support Representative:

Vemeco, Inc.
P. O. Box 410
Alvarado, TX 76009
Customer Service/Claims (800) 543-8801*
Available 24 hrs/day–365 days/year
*For Towing/Road Service and Lost Key/Lockout assistance, Call (888) 248-8289

## SERVICE MANAGER'S GUIDE TO FILING A CLAIM
## STEPS TO FOLLOW WHEN FILING A CLAIM:

1. Advise Contract Holder – That evaluating the cause of the failure does not mean that the failure is covered under this Contract. All covered repairs must be Registered with the Administrator.

2. Contract Holder's Approval for Evaluation – Obtain approval from the Contract Holder to inspect and/or teardown vehicle to determine cause and cost of repair. Save all components including fluids and filters. In the event the Administrator requires an inspection. Inform the Contract Holder that the cost of the teardown will not be paid if the failure of the component disassembled is not covered under the Contract.

3. Cause, Cure and Cost – Assess the problem(s), cause, cure of the failure and cost of the repairs.

NOTE: Any major component failure that has a verifiable complaint, i.e., slipping transmission, knocking engine, etc., should be called in prior to any teardown.

4. Register the Repair with the Administrator – Call the Administrator's Service Manager's Support representative at (800) 543-8801 to Register the claim. Please have the following items ready when you place the call:
   a. Customer's Contract Number
   b. Cause of Failure and Cure
   c. Cost of the Repair
   d. Factory Part Number(s)

5. The Support Representative will verify the Coverage and –
   A. Register Claim – The Administrator will Register the claim by issuing a Reference Number. Record this Reference Number on the Repair Order. The Registered claim amount is the maximum that will be paid. Any additional amounts must be Registered with the Administrator, prior to submitting the claim for payment.

OR

   B. Request Additional Evaluation – Request further evaluation, teardown or outside inspection.
      I. Inspection – The Administrator reserves the right to require an inspection of the vehicle prior to any repair being accomplished. Diagnostic procedures not associated with the teardown are not covered.
      II. Teardown – If a teardown is necessary in order to determine the cause of failure, the Contract Holder must approve the teardown. Please advise the Contract Holder that, if the component disassembled is not covered, then the Contract Holder must pay for the teardown.
   Listed below is the Inspection Teardown Policy:
      a. Save all components, including fluids and filters, that need to be inspected.
      b. The Support Representative will arrange for inspection.
      c. If not visited within 48 hours, call the Support Representative.

OR

   C. Deny Claim – Deny the request and issue a Reference Number.

6. Review Repairs with Contract Holder – After the Administrator has been contacted, review with the Contract Holder what will be covered by the Contract and what portions of the repairs, if any, will not be covered.

7. Contract Holder's Approval for Repairs – Obtain the Contract Holder's approval to complete the repairs. All repair orders must have customer's signature.

8. Submit Repair Orders for Payment – All repair orders and documentation must be submitted to the Administrator, at the address noted under "What To Do In The Event Of A Breakdown" within sixty (60) days.

## MECHANICAL COVERAGE



### POWERTRAIN SERIES 1-5 (Plan Code XP7)

**1. Engine:** Cylinder Block, Cylinder Head(s), Rotary Housing and all internal lubricated parts contained within the engine including: Pistons; Piston Rings; Connecting Rod Bearings; Crankshaft; Crankshaft Main Bearings; Camshaft; Camshaft Bearings; Cam Followers; Timing Chain or Belt; Timing Gears, Guides, Tensioners; Rocker Arms; Rocker Shafts; Rocker Bushings; Cylinder Head Valves; Valve Guides; Valve Lifters; Valve Springs; Valve Seals; Valve Retainers; Valve Seats; Push Rods; Water Pump; Fuel Pump; Oil Pump and Oil Pump Housing; Harmonic Balancer; Oil Pan; Timing Chain Cover; Intake and Exhaust Manifolds; Valve Covers; Engine Mounts; Cam Gear Bolt; Harmonic Balancer Bolt; Head Bolts; and Seals and Gaskets.

**2. Turbocharger/Supercharger:** (factory installed only) Turbocharger/Supercharger Housing and All Internal Parts; and Seals and Gaskets.

**3. Transmission:** (Automatic or Standard) Transmission Case and all Internal Parts plus: Torque Converter, Flywheel/Flex Plate, Vacuum Modulator; Electronic Shift Control Unit; Transmission Cooler; Transmission Mounts; Oil Pan; Slave/Clutch Master Cylinder; Pilot Bearing; Throw-Out Bearing; and Seals and Gaskets.

**4. Transfer Case:** Transfer Case and All Internal Parts; and Seals and Gaskets.

**5. Drive Axle:** (Front and Rear) Drive Axle Case; All Internal Parts contained within the Drive Axle; Locking Hubs; Drive Shafts; Center Support Bearings; Universal Joints; Constant Velocity Joints; Axle Bearings; Four–Wheel Drive Actuator; Differential Cover; and Seals and Gaskets.

H520502WBN0602Rev 02/03

## EXCLUSIONS

**This Vehicle Service Contract Provides No Coverage or Benefits:**

A. FOR ANY PART NOT SPECIFICALLY LISTED UNDER MECHANICAL COVERAGE, OR FOR PREMIER ADVANTAGE SERIES, ANY OF THE FOLLOWING PARTS: CARBURETOR, BATTERY, STANDARD TRANSMISSION CLUTCH ASSEMBLY, FRICTION CLUTCH DISC AND PRESSURE PLATE, DISTRIBUTOR CAP AND ROTOR, SAFETY RESTRAINT SYSTEMS (INCLUDING AIR BAGS), GLASS, LENSES, SEALED BEAMS, LIGHT BULBS, FUSES, CIRCUIT BREAKERS, CELLULAR PHONES, TELEVISION/VCR (UNLESS APPROPRIATE SURCHARGE IS NOTED ON REGISTRATION PAGE AND HAS BEEN PAID FOR), GAME CENTERS, ELECTRONIC TRANSMITTING/RECEIVING DEVICES, GLOBAL POSITIONING/NAVIGATION SYSTEMS (UNLESS APPROPRIATE SURCHARGE IS NOTED ON REGISTRATION PAGE AND HAS BEEN PAID FOR), VOICE RECOGNITION SYSTEMS, BRAKE ROTORS AND DRUMS, ALL EXHAUST COMPONENTS, AND THE FOLLOWING EMISSION COMPONENTS: EGR PURGE VALVE/SOLENOIDS, VACUUM CANISTER, VAPOR RETURN CANISTER, VAPOR RETURN LINES/VALVES, AIR PUMP/LINES/VALVES, CATALYTIC CONVERTER/FILTERING/SENSORS, EMISSION VAPOR SENSORS, WEATHER STRIPS, TRIM, MOLDINGS, BRIGHT METAL CHROME, UPHOLSTERY AND CARPET, PAINT, OUTSIDE ORNAMENTATION, BUMPERS, BODY SHEET METAL AND PANELS, FRAME AND STRUCTURAL BODY PARTS, VINYL AND CONVERTIBLE TOPS, ANY CONVERTIBLE TOP ASSEMBLIES, HARDWARE OR LINKAGES, TIRES (EXCEPT AS MAY OTHERWISE BE PROVIDED UNDER MECHANICAL COVERAGE), WHEEL/RIMS. EXTERNAL NUTS, BOLTS AND FASTENERS ARE NOT COVERED UNLESS SPECIFICALLY LISTED UNDER MECHANICAL COVERAGE (EXCEPT WHERE REQUIRED IN CONJUNCTION WITH A COVERED REPAIR).

B. FOR MAINTENANCE SERVICES AND PARTS DESCRIBED IN YOUR VEHICLE'S OWNER'S MANUAL AS SUPPLIED BY THE MANUFACTURER AND OTHER NORMAL MAINTENANCE SERVICES AND PARTS WHICH INCLUDE, BUT ARE NOT LIMITED TO: ALIGNMENTS, ADJUSTMENTS, WHEEL BALANCING, TUNE-UPS, SPARK PLUGS, SPARK PLUG WIRES, GLOW PLUGS, HOSES, DRIVE BELTS, BRAKE PADS, BRAKE LININGS/SHOES, AND WIPER BLADES. FILTERS, LUBRICANTS, COOLANTS, FLUIDS AND REFRIGERANTS WILL BE COVERED ONLY IF REPLACEMENT IS REQUIRED IN CONNECTION WITH A BREAKDOWN.

C. FOR ANY DAMAGE AND/OR BREAKDOWN RESULTING FROM COLLISION, ROAD HAZARD, FIRE, THEFT, VANDALISM, RIOT EXPLOSION, LIGHTNING, EARTHQUAKE, FREEZING, RUST OR CORROSION, WINDSTORM, HAIL, WATER OR FLOOD, ACTS OF GOD, SALT, ENVIRONMENTAL DAMAGE, CHEMICALS, CONTAMINATION OF FLUIDS, FUELS, COOLANTS OR LUBRICANTS.

D. FOR ANY BREAKDOWN CAUSED BY MISUSE, ABUSE, NEGLIGENCE, LACK OF NORMAL MAINTENANCE REQUIRED BY THE MANUFACTURER'S MAINTENANCE SCHEDULE FOR YOUR VEHICLE, OR IMPROPER SERVICING OR REPAIRS SUBSEQUENT TO PURCHASE. FOR ANY BREAKDOWN CAUSED BY SLUDGE BUILD-UP RESULTING FROM YOUR FAILURE TO PERFORM RECOMMENDED MAINTENANCE SERVICES, OR FAILURE TO MAINTAIN PROPER LEVELS OF LUBRICANTS AND/OR COOLANTS, OR FAILURE TO PROTECT YOUR VEHICLE FROM FURTHER DAMAGE WHEN A BREAKDOWN HAS OCCURRED OR FAILURE TO HAVE YOUR VEHICLE TOWED TO THE SERVICE FACILITY WHEN CONTINUED OPERATION MAY RESULT IN FURTHER DAMAGE.

E. FOR ANY REPAIR OR REPLACEMENT OF ANY COVERED PART IF A BREAKDOWN HAS NOT OCCURRED OR IF THE WEAR ON THAT PART HAS NOT EXCEEDED THE FIELD TOLERANCES ALLOWED BY THE MANUFACTURER.

F. IF ANY ALTERATIONS HAVE BEEN MADE TO YOUR VEHICLE OR YOU ARE USING OR HAVE USED YOUR VEHICLE IN A MANNER NOT RECOMMENDED BY THE MANUFACTURER, INCLUDING BUT NOT LIMITED TO, THE FAILURE OF ANY CUSTOM OR ADD-ON PART, ALL FRAME OR SUSPENSION MODIFICATIONS, LIFT KITS, ANY TIRE THAT IS NOT RECOMMENDED BY THE ORIGINAL MANUFACTURER IF IT CREATES AN ODOMETER/SPEEDOMETER VARIANCE OF GREATER THAN 4%, TRAILER HITCHES, EMISSIONS AND/OR EXHAUST SYSTEMS MODIFICATIONS, ENGINE MODIFICATIONS, TRANSMISSION MODIFICATIONS, AND/OR DRIVE AXLE MODIFICATIONS.

G. IF YOUR ODOMETER HAS CEASED TO OPERATE AND ODOMETER REPAIRS HAVE NOT BEEN MADE IMMEDIATELY, OR THE ODOMETER HAS BEEN ALTERED IN ANY WAY SUBSEQUENT TO PURCHASE, OR IF YOUR VEHICLE HAS EVER BEEN A TOTAL LOSS, SALVAGED OR REBUILT.

H. FOR ANY LIABILITY FOR PROPERTY DAMAGE, OR FOR INJURY TO OR DEATH OF ANY PERSON ARISING OUT OF THE OPERATION, MAINTENANCE OR USE OF YOUR VEHICLE DESCRIBED IN THIS CONTRACT, WHETHER OR NOT RELATED TO THE PARTS COVERED. FOR LOSS OF USE, TIME, PROFIT, INCONVENIENCE, OR ANY OTHER CONSEQUENTIAL LOSS (EXCEPT AS MAY OTHERWISE BE PROVIDED UNDER MECHANICAL COVERAGE), INCLUDING ANY CONSEQUENTIAL DAMAGE TO A NON-COVERED PART THAT RESULTS FROM A BREAKDOWN.

I. WHEN THE RESPONSIBILITY FOR THE REPAIR IS COVERED BY AN INSURANCE POLICY, MANUFACTURER AND/OR DEALER CUSTOMER ASSISTANCE PROGRAM, OR ANY WARRANTY FROM THE MANUFACTURER, SUCH AS EXTENDED DRIVE TRAIN, MAJOR COMPONENT OR FULL COVERAGE WARRANTIES (REGARDLESS OF THE REMAINING MANUFACTURER'S WARRANTY WHEN YOU PURCHASED THIS CONTRACT), OR A  REPAIRER'S GUARANTEE/WARRANTY. FURTHER, COVERAGE UNDER THIS CONTRACT IS SIMILARLY LIMITED IN THE EVENT OF A BREAKDOWN IF THE MANUFACTURER HAS ANNOUNCED ITS RESPONSIBILITY THROUGH ANY MEANS, INCLUDING PUBLIC RECALLS AND FACTORY SERVICE BULLETINS.

J. IF YOUR VEHICLE IS USED FOR TOWING (USED AS A COMMERCIAL UNIT, FARMING OR RANCHING, ROUTE WORK, JOB-SITE ACTIVITIES, SERVICE OR REPAIR WORK, DELIVERY OF GOODS, OR IS USED FOR RENTAL), OR IS USED FOR RENTAL, TAXI, LIMOUSINE OR SHUTTLE, TOWING/WRECKER SERVICE, DUMPING (DUMP BEDS), CHERRY PICKERS, LIFTING OR HOISTING, POLICE OR EMERGENCY SERVICE, PRINCIPALLY OFF-ROAD USE, RACING OR COMPETITIVE DRIVING.

K. FOR ANY BREAKDOWN OCCURRING PRIOR TO THE CONTRACT PURCHASE DATE, OR IF THE INFORMATION PROVIDED BY YOU, OR THE REPAIR FACILITY CANNOT BE VERIFIED AS ACCURATE OR IS FOUND TO BE DECEPTIVELY INACCURATE.

L. FOR BREAKDOWNS THAT OCCUR AND/OR REPAIRS MADE OUTSIDE OF THE UNITED STATES OF AMERICA AND CANADA.

M. FOR DIAGNOSTIC AND/OR TEARDOWN PROCEDURES THAT ARE NOT LISTED, OR ARE IN EXCESS OF THE TIMES LISTED IN THE CURRENT YEAR'S NATIONAL FLAT RATE HOURLY GUIDE IN CONJUNCTION WITH A COVERED REPAIR.

## SPECIAL STATE REQUIREMENTS/DISCLOSURES

### ALASKA

EXCLUSIONS SECTION –
Item **J.** is amended by adding the following:
This **Contract** does provide **Coverage** if **Your Vehicle** is used for snow removal, provided **Your Vehicle** is properly equipped for such use and is not used commercially.

Item **N.** is added as follows:
This **Contract** does not provide **Coverage** for damages for bad faith, punitive or exemplary damages, personal injury including bodily injury, property damage (except as specifically stated in the **Contract**), and attorney's fees.

### ARIZONA

Our obligations under this Service **Contract** are insured by a policy issued by the Insurance Company as stated on the **Declaration Page**. If a covered claim is not paid within thirty (30) days after proof of loss has been filed, **You** may file a claim directly with the Insurance Company.
CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION – Item **a.** is amended by adding the following:
a. **You** may also cancel this contract by returning it to the **Administrator**, Vemeco, Inc., as listed on the **Declaration Page**.

Item **b.** is deleted and replaced with the following –
b. **We** may cancel this **Contract** for non-payment of the **Contract** charge, or for misrepresentation in the submission of a claim made by **You**. **We** may cancel this **Contract** if **Your Vehicle** is found to be modified by **You** in a manner not recommended by the manufacturer, or **Your Vehicle** is found to be used as a commercial vehicle.

### CALIFORNIA

DEFINITIONS SECTION – The definition of **Breakdown** is deleted and replaced with the following:
**Breakdown**– Means the failure of a covered part under normal service due to defects in material and workmanship.  A covered part has failed when it can no longer perform the function for which it was designed solely because of its condition and not because of the action or inaction of any non-covered parts.

CANCELLATION OF VEHICLE SERVICE **CONTRACT** SECTION – Item **d.** is deleted and replaced with the following:
d. If this **Contract** is cancelled within the first sixty (60) days and no claims have been filed, **We** will refund the entire **Contract** charge paid. If this **Contract** is cancelled after the first sixty (60) days or a claim has been filed, **We** will refund an amount of the **Contract** charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term of the plan selected and the date **Coverage** begins, less an administration fee of twenty five ($25.00) dollars or 10% of the **Contract** charge, whichever is less. In the event of cancellation, the lienholder, if any, will be named on a cancellation refund check as their interest may appear.

H520502WBN0602Rev 02/03

## SPECIAL STATE REQUIREMENTS/DISCLOSURES CONT'D

### MASSACHUSETTS CONT'D

Used vehicles with less than 40,000 miles at the time of sale
  Provides Coverage for 90 days or 3,750 miles, whichever occurs first.
Used vehicles with 40,000 miles or more but less than 80,000 miles at the time of sale
  Provides Coverage for 60 days or 2,500 miles, whichever occurs first.
Used vehicles with 80,000 miles or more but less than 125,000 miles at the time of sale
  Provides Coverage for 30 days or 1,250 miles, whichever occurs first.
The vehicle You have purchased may be covered by this law. If so, the following is added to this Contract: In addition to the dealer warranty required by this law, You have elected to purchase this Contract, which may provide You with additional protection during the dealer warranty period and provides protection after the dealer warranty has expired. You have been charged separately only for this Contract. The required dealer warranty is provided free of charge. Furthermore, the definitions, Coverages and exclusions stated in this Contract apply only to this Contract and are not the terms of the required dealer warranty.

### MINNESOTA

The Coverages listed below are provided to You by the dealer at no charge as required by Minnesota Statute 325F.662. The term of the required warranty is based on the mileage at the time of sale as follows:
Used vehicles with less than 36,000 miles at the time of sale
  Provides Coverage for 60 days or 2,500 miles, whichever occurs first.
Used vehicles with 36,000 miles or more but less than 75,000 miles at the time of sale
  Provides Coverage for 30 days or 1,000 miles, whichever occurs first.
Engine: Lubricated Parts; Intake Manifolds; Engine Block; Cylinder Heads; Rotary Engine Housings; and Ring Gear; Water Pump; Externally Mounted Mechanical Fuel Pump; Radiator; Alternator; Generator; and Starter. Transmission: Case; Internal Parts; Torque Converter; or, the Manual Transmission Case and Internal Parts. Drive Axle: Axle Housings and Internal Parts; Axle Shafts; Drive and Output Shafts; and Universal Joints; but excluding the Secondary Drive Axle on vehicles other than passenger vans, mounted on a truck chassis. Brakes: Master Cylinder; Vacuum Assist Booster; Wheel Cylinders; Hydraulic Lines and Fittings; and Disc Brake Calipers. Steering: Gear Housing and all Internal Parts; Power Steering Pump; Valve Body; Piston; and Rack. Note: The following parts are covered only on vehicles with less than 36,000 miles: Steering Rack; Radiator; Alternator; Generator; and Starter.

The above Coverages are excluded from this Contract during the applicable warranty period, unless the dealer becomes unable to meet its obligations. Your rights and obligations are fully explained in the dealer issued used vehicle limited warranty document.
CANCELLATION OF VEHICLE SERVICE CONTRACT SECTION – Item d. is amended by adding the following:
d.  If You have cancelled this Contract and have not received the refund from Us or the Administrator within sixty (60) days of such cancellation, You may contact the Insurance Company identified on the Declaration Page.

Definition: "Pre-existing" is not applicable to Minnesota residents.

EXCLUSIONS SECTION –
Coverage Exclusion for breakdowns caused by rust, corrosion, sludge build up or damage to a covered part by a non-covered part does not apply to Minnesota residents.

### NEVADA

The provisions of this Contract apply only to the original purchaser of the Service Contract.
CANCELLATION OF VEHICLE SERVICE CONTRACT SECTION – Items b. and d. are DELETED and REPLACED with the following:
b.  We may cancel this Contract within 70 days from the date of purchase for any reason. After 70 days, We may only cancel this Service Contract for fraud, material misrepresentation, nonpayment by You or a substantial breach of duties by You relating to the covered property or its use. We may cancel this Contract if Your Vehicle is found to be modified in a manner not recommended by the manufacturer, or if Your Vehicle is found to be used as a commercial vehicle. If We cancel Your Contract, You will be entitled to a refund on the unearned Contract fee according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term/miles selected and the date Coverage begins, no administrative fee will be deducted. In the event We cancel this Contract, written notice will be sent to Your last known address at least 15 days prior to cancellation with the effective date of the cancellation.

d.  You may cancel this Contract at anytime. If You have made no claim and Your request for cancellation is within 30 days, the full price You paid for the Service Contract will be refunded and no administrative fee will be deducted. If You have made a claim under the Contract, or if Your request is beyond the first 30 days, We will refund to You an amount based on the pro-rata method, less a $25.00 administrative fee. If Your Contract was financed, the outstanding balance will be deducted from any refund, however, You will not be charged for claims paid or repair service fees. If You cancel this Contract and the refund is not processed within 45 days, a 10% penalty will be added to the refund for every 30 days the refund is not paid.

### NEW HAMPSHIRE

GENERAL PROVISIONS SECTION – Item 8b. is deleted and replaced with the following:
b.  To transfer, the following must be submitted to the Administrator within 30 days of the change of ownership to a subsequent individual purchaser:
  Original Contract and Declaration Page; and name and address of new owner, date of sale to new owner, current mileage.

CANCELLATION OF VEHICLE SERVICE CONTRACT SECTION – Item d. is deleted and replaced with the following:
d.  If this Contract is cancelled within the first sixty (60) days and no claims have been filed, We will refund the entire Contract charge paid. If this Contract is cancelled after the first sixty (60) days or a claim has been filed, We will refund an amount of the Contract charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term of the plan selected and the date Coverage begins. In the event of cancellation, the lienholder, if any, will be named on a cancellation refund check as their interest may appear.

### NEW YORK

Section 196b of New York General Business Law requires an automobile dealer to provide a warranty covering certain classes of used motor vehicles as follows:
Used vehicles with 36,000 miles or less at the time of sale
  Provides Coverage for 90 days or 4,000 miles, whichever occurs first.
Used vehicles with more than 36,000 miles but less than 80,000 miles at the time of sale
  Provides Coverage for 60 days or 3,000 miles, whichever occurs first.
Used vehicles with 80,000 miles or more but no more than 100,000 miles at the time of sale
  Provides Coverage for 30 days or 1,000 miles, whichever occurs first.
The vehicle You have purchased may be covered by this law. If so, the following is added to this Contract: In addition to the dealer warranty required by this law, You have elected to purchase this Contract, which may provide You with additional protection during the dealer warranty period and provides protection after the dealer warranty has expired. You have been charged separately only for this Contract. The required dealer warranty is provided free of charge. Furthermore, the definitions, Coverages and exclusions stated in this Contract apply only to this Contract and are not the terms of the required dealer warranty.

### NORTH CAROLINA

CANCELLATION OF VEHICLE SERVICE CONTRACT SECTION – Item d. is deleted and replaced with the following:
d.  If this Contract is cancelled within the first sixty (60) days and no claims have been filed, We will refund the entire Contract charge paid. If this Contract is cancelled after the first sixty (60) days or a claim has been filed, We will refund an amount of the Contract charge according to the pro-rata method reflecting the greater of the days in force or the miles driven based on the term of the plan selected and the date Coverage begins, less an administration fee of $25 or 10% of the pro-rata refund amount, whichever is less. In the event of cancellation, the lienholder, if any, will be named on a cancellation refund check as their interest may appear.

7                                                                                    H520502WBN0602Rev 02/03