IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT T. KENNEDY, On Behalf of Himself and All Others Similarly Situated, </br> </br> Plaintiff, </br> </br> v. </br> </br> BUTLER FINANCIAL SOLUTIONS, LLC, HERITAGE WARRANTY INSURANCE RISK RETENTION GROUP, INC., f/k/a HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC., and JOHN DOES 1-10, </br> </br> Defendants. | Case No. 1:08-cv-1862 </br> </br> Honorable George M. Marovich |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(a) AND 23(b)(3)

Plaintiffs, Robert T. Kennedy, JoAnn Mick and Charles C. Mitschow ("Plaintiffs"), respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Class Certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and for appointment of Class counsel pursuant to Fed. R. Civ. P. 23(g).[1]

### I. PRELIMINARY STATEMENT

This consumer action arises from an ongoing dispute among Defendants[2] regarding who

---

[1] Plaintiffs are not seeking certification pursuant to Rule 23(b)(2) at this time.

[2] "Defendants" are Butler Financial Solutions, LLC ("Butler"), Heritage Warranty Insurance Risk Retention Group, Inc. ("Heritage"), and Warrantech Automotive, Inc. ("Warrantech").

1

is financially responsible for paying motor vehicle repair and service claims under the Vehicle Service Contracts ("VSCs") that are the subject of this litigation. Defendants' feud has resulted in hundreds, if not thousands, of valid VSC claims going unpaid while Defendants engage in a time-consuming and expensive finger-pointing game. Indeed, this dispute has resulted in at least three separate lawsuits among Defendants regarding who should be paying the valid claims of Plaintiffs and the putative Class. Meanwhile, the only thing that is clear in the Defendants' machinations is that Plaintiffs all have the same claims, differing only in the amount they are owed in reimbursements. As a result of Defendants' dispute, Plaintiffs and the Class continue to suffer significant damages, and hold essentially worthless VSCs. Accordingly, Plaintiffs hereby move this Court for an order certifying a class (the "Class") of similarly-situated persons consisting of:

> All persons who purchased or held Vehicle Service Contracts:
> (i) in which Butler Financial Solutions, LLC is identified as the obligor; and (ii) which currently is in effect or was in effect as of December 2006. Excluded from the Class are Defendants and their officers, directors and employees.

Plaintiffs bring their claims for damages against Defendants for: (i) violations of the Magnuson-Moss Warranty Act; (ii) breach of contract; and (iii) breach of third-party beneficiary contract. Additionally, Plaintiffs seek a declaration of their rights under the VSCs and the contracts among Defendants, and request an order declaring that the VSCs are voidable at their option.

This case is ideal for class treatment. The Class is composed of thousands of persons that purchased standardized VSCs which contain identical language. The responsibilities of Defendants to Class members are governed by the language of these identical contracts, as well

as a single insurance policy (issued to Butler by Heritage) and an Administrative Agreement (between Heritage and Warrantech). Plaintiffs and Class members were all subject to the same false, misleading and incomplete disclosures made by Defendants in the form VSCs.

Judicial economies and efficiencies would be promoted by certifying this case as a class action due in part to the prohibitive costs required to pursue individual actions and the likelihood that this is the only method for absent Class members to seek redress for their injuries. As set forth below, all of the prerequisites for class certification are met here; and for these reasons, Plaintiffs respectfully request that the Court grant this Motion.

## II.   STATEMENT OF FACTS

When a consumer buys an automobile, he or she may also purchase a third-party VSC to supplement any manufacturer's warranties. *See* FAC at ¶ 21.[3] With the purchase of a VSC, a VSC holder is promised that he or she will not have to pay for certain types of covered repairs, including automobile part failures or mechanical breakdowns, for the term of the VSC. *See* Affidavit of Jeanine M. Folz, Senior Vice President of Insurance Services and Assistant Corporate Secretary for Warrantech Corporation, dated September 18, 2007 ("Folz Aff.") at ¶ 2, (Shepherd Dec., Ex.3); *see also* FAC at ¶¶ 1, 21-23. Instead, the VSC provides that those repair costs are to be paid by the party that sells the VSC to the consumer. *See* Folz Aff. at ¶ 2; *see also* FAC at ¶¶ 1, 21-23.

The VSCs at issue here, which were purchased by Plaintiffs and Class members, are standardized form contracts with identical language. *See* FAC at ¶¶ 10-12, 22; Shepherd Dec.,

---

[3] Unless otherwise indicated, "¶ __" or "¶¶ __" refer to paragraphs in the First Amended Class Action Complaint filed on May 29, 2008 ("Complaint" or "FAC"). The supporting Declaration of Scott R. Shepherd attached to Plaintiffs' Motion is referred to as "Shepherd Dec.".

Exs. 1 and 2 (copies of VSCs purchased by Plaintiffs). That language expressly obligates Defendant Butler to pay covered claims. *See* FAC at ¶¶ 1, 22; *see also* Affidavit of Harris Miller, Consultant and former Manager for Butler, dated September 18, 2007 ("Miller Aff.") at p. 6, ¶ 17[4], (Shepherd Dec., Ex. 4 ). If after 60 days Butler fails to do so, the VSCs state that the claims are insured under a Vehicle Service Contract Reimbursement Policy ("Insurance Policy") issued by Heritage which must directly pay the VSC claims. *See* FAC at ¶¶ 2, 23-24, 76; *see also* Folz Aff. at ¶ 8; Miller Aff. at pp. 8-9, ¶ 20, 23-26.

Heritage's responsibility to VSC holders is further confirmed by an "Administrative Agreement" between Defendants Heritage and Warrantech, which states that Warrantech shall maintain a Heritage-funded bank account for the purpose of paying all valid VSC claims (the "Loss Reserve Fund"). FAC at ¶¶ 4, 24; *see also* Folz Aff. at ¶¶ 9-16; Miller Aff. at pp.12-16, ¶¶ 39-50. The VSC program at issue in this action was designed, priced, administered, marketed and distributed jointly by Warrantech and Heritage. FAC at ¶¶ 5, 14-15, 30; *see also* Folz Aff. at ¶¶ 5, 20-22, 24; Miller Aff. at pp. 3-4, ¶¶ 7, 11. However, as structured, the entire program was essentially a pyramid scheme which would necessarily need to rely upon the sale of new VSCs to fully fund the payment of claims on the existing VSCs. FAC at ¶¶ 5-7, 31, 66(a)-(b); *see also* Miller Aff. at pp. 7-8, ¶19 (Warrantech remitted to Heritage all premiums, from which Heritage satisfied claims).

Despite accepting more than $25,000,000 in VSC premiums from consumers, Warrantech and Heritage failed to ensure that sufficient funds were set aside in the Loss Reserve

---

[4] Due to the inconsistent paragraph numbering in the Miller Aff., citations include page number and paragraph number.

Fund account to fully fund future VSC claims. FAC at ¶¶ 6, 14-15, 31; *see also* Folz Aff. at ¶23; Miller Aff. at p.10, ¶ 30. Unbeknownst to the VSC holders and contrary to the plain language of their contracts, neither Butler nor Heritage ever intended to take on the risk or responsibility of fully funding VSC claims in the event the monies set aside in the Loss Reserve Fund were insufficient to pay valid claims. FAC at ¶¶ 6, 15, 32; *see also* Miller Aff. at p. 20, ¶ 70; Affidavit of Paul Miles, Treasurer of Heritage, dated July 27, 2007 ("Miles Aff.") at ¶¶ 5, 7 (Shepherd Dec., Ex. 5).

As a result of the foregoing, claims made by hundreds if not thousands of VSC holders, including Plaintiffs, have been systematically denied by Defendants without any legal basis. FAC at ¶¶ 7, 25, 35; *see also* Folz Aff. at ¶¶ 5, 31; Miller Aff. at pp. 18-19, ¶¶ 62-65. Butler has never paid any claim. FAC at ¶¶ 3, 26, 33; Miller Aff. at p. 3, ¶ 8. According to Heritage, claims under the VSC policies are being submitted at a rate exceeding $200,000 per month. FAC at ¶¶ 7, 35; *see also* Miles Aff. at ¶ 8. Yet despite outstanding claims which greatly exceed $1 million, Heritage has paid merely $220,000 to VSC holders. FAC at ¶¶ 7, 29, 35; *see also* Miles Aff. at ¶ 6. Absent action by this Court, Defendants will continue to refuse valid VSC claims and Plaintiffs and Class members will go unreimbursed despite their coverage. *See* FAC at ¶¶ 8, 25-29, 35; *see also* Miller Aff. at p. 20, ¶ 69.

### III. LEGAL ANALYSIS

#### A. Legal Standard For Certifying A Class Action

Courts retain broad discretion when determining whether class certification is appropriate. *See Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). In making this determination, "Rule 23(a) should be liberally construed to support its

5

policy of favoring the maintenance of class actions." *Wallace v. Chicago Housing Authority*, 224 F.R.D. 420, 423 (N.D. Ill. 2004) (*citing King v. Kansas City S. Indus.*, 519 F.2d 20, 25-26 (7th Cir. 1975)). Nothing, however, "in either the language or history of Rule 23 gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974); *see also Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141, at *2 (N.D. Ill. Aug. 12, 2002) ("Where plaintiffs seek class certification, the court should not consider the merits of the case."). Instead, "the court takes all well-pleaded allegations to be true." *Id.*; *see also Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970) ("whether there is a proper class does not depend on the existence of a cause of action").

Class certification is appropriate when all of the elements of Rule 23(a) and one of the elements of Rule 23(b) have been satisfied. *Mendez v. M.R.S. Associates*, No. 03 C 6753, 2004 WL 1745779, at *3 (N.D. Ill. Aug. 3, 2004); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Here, the four prerequisites of Rule 23(a) (numerosity, commonality, typicality, and fair and adequate representation) and the requirements of Rule 23(b)(3) (predominance and superiority) are satisfied.

### B. The Proposed Class Satisfies The Requirements Of Fed. R. Civ. P. 23(a)

#### 1. Rule 23(a)(1): The Proposed Class Is So Numerous That Joinder Of All Members Is Impracticable

Rule 23(a)(1) requires that the proposed class be "so numerous that the joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Williams v. Chartwell Fin. Services, Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000) (same). "'Impracticable' does not mean 'impossible,' but rather, extremely difficult and inconvenient." *Fields v. Maram*, No. 04 C 0174,

2004 WL 1879997, at *3 (N.D. Ill. Aug. 17, 2004). No "magic number" is required to maintain a class action, but "permissive joinder is usually impracticable where there are more than 40 class members." *Swanagan v. Al Piemonte Ford Sales, Inc.*, No. 94 C 4070, 1995 WL 493480, at *7 (N.D. Ill. Aug. 15, 1995) (citation omitted); *see also Jackson v. National Action Fin. Services, Inc.*, 227 F.R.D. 284, 287 (N.D. Ill. 2005) (same). If, as here, the exact number of class members is not known to plaintiff (FAC at ¶ 54), some evidence or reasonable estimate is sufficient to satisfy the numerosity requirement. *See Mejdreck*, 2002 WL 1838141, at *3 (*citing Long v. Thornton Township High Sch. Dist. 205*, 82 F.R.D. 186, 189 (N.D. Ill. 1979)).

Here, Defendants cannot seriously contest numerosity. According to Warrantech, the claims handler for the VSCs at issue in this action, as of September 2007, 247,921 VSCs had been sold in the United States with Butler as the obligor. *See* Folz Aff. at ¶ 5; *see also* FAC at ¶ 54. Those VSCs, according to Butler, were sold in forty-eight states. *See* "Butler's Memorandum in Opposition to Heritage's Motion for Preliminary Injunction," Case No. 2:07-cv-02627-DCN, U.S.D.C. Dist. of South Carolina at p.3 (Shepherd Dec., Ex. 6); *see also* Prelim. Injunction Motion Hearing Transcript at 28:4-5, Case No. 2:07-cv-02627-DCN, dated September 21, 2007 (Shepherd Dec., Ex. 7).[5]

Based on this testimony and as alleged in the Complaint, this equates to thousands of potential Class members. *See* FAC at ¶¶ 7-8, 19, 29, 35, 88; *see also Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 212-213 (N.D. Ill. 2002) (court considered evidence presented by plaintiff outside the pleadings in granting motion for class certification); *Ludwig v.*

---

[5] *See also Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 73-74, 76 (E.D.N.Y. 2004) (numerosity satisfied in order to certify claim for breach of standard form contract where the putative class involved insurance policyholders from 47 states).

*Pilkington North America, Inc.*, No. 03 C 1086, 2003 WL 22478842, at *1 (N.D. Ill. Nov. 4, 2003) (the court "may look beyond the pleadings to determine whether the requirements of Rule 23 are met"). In such instances, "'[w]here the class is large, the numbers alone are dispositive of the impracticability of joinder,' and the Court need not consider other factors to determine whether the numerosity requirement is met."[6] *Wallace*, 224 F.R.D. at 427 (*quoting Thillens, Inc. v. Community Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983)). Numerosity clearly is satisfied.

        **2.    Rule 23(a)(2): There Are Significant Questions Of Law And Fact Common To The Members Of The Class**

Rule 23(a)(2) requires prospective class members to share common questions of law or fact. *See* Fed. R. Civ. P. 23(a)(2); *Small v. Sullivan*, 820 F. Supp. 1098, 1109-1110 (S.D. Ill. 1992). Commonality is not a demanding requirement: it calls only for the existence of at least one issue of fact or law common to all class members. *Meiresonne v. Marriott Corp.*, 124 F.R.D. 619, 622 (N.D. Ill. 1989). The claims of the potential class members need not be factually or legally identical. *See Borowski v. City of Burbank*, 101 F.R.D. 59, 62 (N.D. Ill. 1984). Rather, "[a] 'common nucleus of operative fact' is generally sufficient to satisfy this second requirement." *Mejdreck*, 2002 WL 1838141, at *3 (*quoting Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common nucleus of operative fact is usually found where

---

[6] Nevertheless, the proposed Class members are likely to reside in many states, or, in other words, be geographically dispersed, which further frustrates joinder. *See Allen v. Issac*, 99 F.R.D. 45, 53 (N.D. Ill. 1983) (members scattered throughout the country, rendering joinder impracticable); *see Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 785 (N.D. Ill. 1984) (a finding of numerosity may be supported by "common sense assumptions"); *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996) (discussing how factors such as judicial economy, geographic diversity of class members, and the ability of class members to institute individual lawsuits may also impact whether joinder is impracticable).

the defendant has engaged in some standardized conduct toward the proposed class members. *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995) (*citing Franklin v. City of Chicago*, 102 F.R.D. 944, 949-950 (N.D. Ill. 1984)).

The VSCs at issue in this action are standard form contracts. *See* FAC at ¶¶ 10-12, 22; Shepherd Dec., Exs. 1 and 2 (copies of the VSCs purchased by Plaintiffs Kennedy and Mitschow). Under such circumstances, "claims arising out of standard documents present a 'classic case for treatment as a class action.'" *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295, 299 (N.D. Ill. 2005) (*quoting Ingram v. Corporate Receivables, Inc.*, No. 02 C 6608, 2003 WL 21982152, at *3 (N.D. Ill. Aug. 19, 2003) (citing additional cases)). Moreover, as the Complaint alleges (FAC at ¶ 55), the following legal and factual questions are common to the proposed Class:

- Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. §2306, and whether they are therefore liable to Plaintiffs and the Class;

- Whether Butler is contractually obligated to pay claims under the VSCs;

- Whether a refusal to pay claims by Butler constitutes a breach of its VSCs with Class members;

- Whether Heritage's failure to fund or otherwise pay claims excuses Butler from its obligation to pay Class members' claims pursuant to the VSCs;

- Whether Defendants' conduct, representations and/or omissions at the time the VSCs were entered into renders the contracts voidable at the option of the Class members;

- Whether Heritage is contractually obligated to pay Class members' claims pursuant to the VSCs, the Insurance Policy and/or the Administrative Agreement;

- Whether Class members are third party beneficiaries of the Insurance Policy and/or the Administrative Agreement;

- Whether Heritage breached its contracts with Butler and/or Warrantech by failing

> - to fund or otherwise pay claims under the VSCs; and
>
> - Whether the Court should declare the parties' rights under the VSCs, the Insurance Policy and/or the Administrative Agreement, enjoin Butler and/or Heritage from continuing to refuse to pay claims under the VSCs by asserting that they have no obligations thereunder, and/or declare the VSCs voidable at the Class members' option.

Keeping in mind that, "the commonality requirement has been characterized as a 'low hurdle' easily surmounted,"[7] the proposed Class satisfies Rule 23(a)(2).

### 3.  Rule 23(a)(3): The Claims Of The Proposed Class Representatives Are Typical Of The Class

Rule 23(a)(3) requires that the claims of the representative party be typical of the claims of the prospective class. *See* Fed. R. Civ. P. 23(a)(3); *Goldwater v. Alston & Bird*, 116 F.R.D. 342, 351 (S.D. Ill. 1987). The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of the other class members. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); *see also Ludwig* 2003 WL 22478842, at *3 ("The issue of typicality is closely related to commonality, and should be liberally construed.") (citation omitted). Specifically, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente*, 713 F.2d at 232; *see also Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 676 (N.D. Ill. 1989) (same). Under Rule 23(a)(3), typicality "should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

---

[7] *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992) (*quoting Wesley v. General Motors Acceptance Corp.*, No. 91 C 3368, 1992 WL 57948 at *3 (N.D. Ill. Mar. 20, 1992)).

Here, the claims asserted by the proposed Class representatives are typical, if not identical, to the claims of the respective members of the proposed Class as a whole. Plaintiffs and each member of the Class are purchasers or holders of the VSCs at issue, have the same contractual rights with respect to Butler and Heritage, and they received the same written disclosures with respect to the terms and conditions of their VSCs. FAC at ¶ 56. Those rights support Plaintiffs' contractual and Magnuson-Moss Warranty Act claims, and the claims of the absent Class members, which are based upon the same facts and legal theories and will be proven by the same evidence, thereby satisfying the typicality requirement of Rule 23(a)(3).

### 4. Rule 23(a)(4): The Interests Of The Class Will Be Fairly And Adequately Protected

Rule 23(a)(4) requires that the representative party fairly and adequately protect the interests of the proposed class. *See* Fed. R. Civ. P. 23(a)(4). Three important factors in making this determination are: (1) whether the plaintiff has interests that are antagonistic to the class; (2) whether the plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy; and (3) plaintiff's counsel's qualifications, experience, and ability to conduct the litigation vigorously. *Mendez,* 2004 WL 1745779, at *5 (*citing Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313, 317-19 (N.D. Ill. 1995)). In this case, all three factors are satisfied.

First, Plaintiffs' interests are neither antagonistic to, nor in conflict with, the interests of the other Class members. To the contrary, Plaintiffs and other members of the Class have been harmed as a result of the same wrongful conduct engaged in by Defendants. *See* FAC at ¶¶ 9, 36-37, 44-51. Plaintiffs each purchased one of the VSCs at issue in this case that is largely worthless due to the same false, misleading and incomplete disclosures concerning the VSCs as other members of the Class. *See* FAC at ¶¶ 10-12, 67, 71.

Second, in prosecuting their own claims to achieve maximum recovery, Plaintiffs will also vigorously prosecute the claims of other Class members. Plaintiffs are all willing and able to take an active role in this litigation to protect the interests of absent Class members.[8] FAC at ¶ 57.

Third, the proposed Lead Counsel for the Class, Dyer & Berens LLP ("Dyer & Berens") and Shepherd, Finkelman, Miller & Shah, LLP ("SFMS") are competent, highly experienced, and well-qualified to fulfill the duties associated with appointment as Class counsel, including vigorously prosecuting this case. See Fed. R. Civ. P. 23(g). As reflected further in these firms' resumes (Shepherd Dec., Exs. 8 and 9), these attorneys have significant complex, consumer class action litigation experience and are capable of pursuing this litigation on behalf of the Class. As recognized by one court in this District, "[w]here, as here, attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again." *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (*citing Beckless v. Heckler*, 622 F. Supp. 715, 721 (N.D. Ill. 1985)). Accordingly, the interests of the Class will be fairly and adequately protected.

### C.　This Action Satisfies The Requirements Of Fed. R. Civ. P. 23(b)(3)

Rule 23(b)(3) authorizes certification where common questions of law or fact predominate over individual questions and the class action is superior to other available means of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Wilson v. Collecto, Inc.*, No. 03 C 4673, 2004 WL 432509, at *5 (N.D. Ill. Feb. 25, 2004). Both requirements are satisfied here.

---

[8] Indeed, Plaintiff Kennedy already has shown his understanding of his duties. *See* FAC at ¶ 42.

### 1.　Common Questions Of Law Or Fact Predominate

There is considerable overlap between Rule 23(a)(2)'s commonality prerequisite and 23(b)(3), in that, Rule 23(a)(2) requires that common issues exist, while Rule 23(b)(3) requires that they predominate. *See Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1419 (N.D. Ill. 1996). Given this, "a finding of commonality will likely satisfy a finding of predomination." *Mejdreck*, 2002 WL 1838141, at *6 (*citing Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 677 (N.D. Ill. 1989)). In this case, the common nucleus of operative fact concerns the form contracts (the VSCs) purchased by Plaintiffs and the Class members. *See* FAC at ¶¶ 1, 22. Since the claims of Plaintiffs and the proposed Class "arise from allegations of common practice and rights derived from form contracts, the case appears to present the classic case for treatment as a class action." *Haroco, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 121 F.R.D. 664, 669 (N.D. Ill. 1988); *see also Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974) (class action appropriate in case involving standard form retail installment contract). This is true even though the nature and amount of damages may differ among members of the class. *Ingram v. Corporate Receivables, Inc.*, No. 02 C 6608, 2003 WL 21982152, at *4 (N.D. Ill. Aug. 19, 2003). Moreover, if Defendants are liable for breaches of the VSCs and/or for the false, misleading and incomplete disclosures contained in the VSCs, they are liable to all similarly situated Class members. *See Mendez*, 2004 WL 1745779, at *6 (finding predominance where liability questions are subject to class-wide proof, specifically, defendant's liability to each class member springs from the same legal theory and the same standard form letter); *see also Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 428, 446 (4th Cir. 2003) (common question of whether plaintiffs are third party beneficiaries of the

contract predominated over individual questions of liability supporting class certification); *Skelton v. General Motors Corp.*, 860 F.2d 250, 251 (7th Cir. 1988) (citing plaintiffs' successful petition for class certification of Magnuson-Moss Warranty Act claim); *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 642 (D. Colo. 1986) (certifying a Magnuson-Moss class).[9] Accordingly, common questions of law or fact predominate over individual questions.

### 2. A Class Action Is Superior To Other Available Methods

A class action should be certified when that vehicle is superior to other methods of adjudication, such as joinder or individual actions. *See* Fed. R. Civ. P. 23(b)(3); *Carbajal v. Capital One*, 219 F.R.D. 437, 445 (N.D. Ill. 2004). As explained by the Seventh Circuit:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Here, the damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. FAC at ¶ 58. It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them. *Id.* Moreover, there is

---

[9] *See also Lee v. Allstate Life Ins. Co.*, 838 N.E.2d 15, 21 (Ill. App. Ct. 2005) (affirming certification of nationwide class based on breach of contract claim); *Slimack v. County Life Ins. Co.*, 591 N.E.2d 70, 79 (Ill App. Ct. 1992) (class certification proper where defendant breached standard form contract); *Carrao v. Health Care Serv. Corp.*, 454 N.E.2d 781, 791 (Ill. App. Ct. 1983) (certifying class based on breach of contract claims where beneficiaries had their insurance claims denied by defendant); *Berry v. Federal Kemper Life Assur. Co.*, 99 P.3d 116, 1192 (N.M. Ct. App. 2004) (certifying a nationwide class based on defendants' breach of a standard form contract); *Enfield v. Old Line Life Ins. Co of America*, 98 P.3d 1048, 1054 (N.M. Ct. App. 2004) (same).

no indication that any member of the Class would prefer to prosecute these claims individually. In any event, if certain Class members desire to do so, they will have the opportunity to opt-out of the Class. The other factors specified in Rule 23(b)(3) also militate in favor of certification. *See Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *16 (N.D. Ill. Oct. 19, 2001). Specifically, counsel is unaware of any other litigation against these Defendants asserting these claims on behalf of a consumer Class. Concentration of the litigation in one forum will avoid inconsistent adjudications and promote fairness and efficiency. *See* FAC at ¶¶ 58-59. Finally, this case presents no unusual difficulties in maintaining the class action or providing notice to the Class. *See id.* at ¶ 58. In sum, the class action device is superior to any other available means.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Class Certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and for appointment of Class counsel pursuant to Fed. R. Civ. P. 23(g).

DATED: May 29, 2008

Respectfully submitted,

**HARRISON & HELD LLP**

By:    s/George N. Vurdelja, Jr.
George N. Vurdelja, Jr.
333 W. Wacker Drive, Suite 1700
Chicago, Illinois 60606
Telephone: 312/753-6161
Facsimile: 312/332-1150
gvurdelja@harrisonheld.com

Jeffrey A. Berens
**DYER & BERENS LLP**
682 Grant Street
Denver, Colorado  80203
Telephone: 303/861-1764
Facsimile: 303/395-0393
jeff@dyerberens.com

Scott R. Shepherd
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
1640 Town Center Circle, Suite 216
Weston, FL 33326
Telephone: 954/943-9191
Facsimile: 954/943-9173
sshepherd@sfmslaw.com

James C. Shah
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
35 E. State Street
Media, Pennsylvania  19063
Telephone: 610/891-9880
Facsimile:  610/891-9883
jshah@sfmslaw.com

Douglas P. Dehler
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
111 East Wisconsin Avenue, Suite 1750
Milwaukee, Wisconsin 53202
Telephone: 414/226-9900
Facsimile:  414/226-9905
ddehler@sfmslaw.com

**Attorneys for Plaintiffs**