IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT T. KENNEDY, On Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>BUTLER FINANCIAL SOLUTIONS, LLC, HERITAGE WARRANTY INSURANCE RISK RETENTION GROUP, INC., f/k/a HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC., and JOHN DOES 1-10,<br><br>        Defendant. | Civil Action No. 08 CV 1862<br><br>JUDGE MAROVICH<br><br>MAGISTRATE JUDGE KEYS |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WARRANTECH AUTOMOTIVE, INC.'S RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Defendant Warrantech Automotive, Inc. ("Warrantech"), through its undersigned attorneys, hereby files its Memorandum of Law in Support of its Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss First Amended Class Action Complaint.

### PRELIMINARY STATEMENT

Plaintiffs Robert T. Kennedy, JoAnn Mick and Charles C. Mitschow (collectively "Plaintiffs") have attempted to state three causes of action against Warrantech: (1) violation of 15 U.S.C. § 2306 of the Magnuson-Moss Warranty Act ("Magnuson-Moss Act") (First Claim for Relief of the First Amended Complaint); (2) a declaration that the Vehicle Service Contracts ("VSCs") entered into by the Plaintiffs are voidable because of fraud or mistake (Third Claim for Relief of the First Amended Complaint); and (3) a declaration that Warrantech failed to fully, clearly and conspicuously disclose the terms and conditions of the VSCs (Fifth Claim for Relief of the First Amended Complaint). All three causes of action are premised on the same alleged conduct: that

Warrantech allegedly failed to disclose certain aspects of the VSCs and the insurance that existed to pay claims. Specifically, Plaintiffs allege that at the time Plaintiffs purchased their VSCs, Warrantech failed to disclose that Butler Financial Solutions, LLC ("Butler"), Heritage Warranty Insurance Risk Retention Group, Inc. ("Heritage") and American Reinsurance Company ("Am Re") did not intend to pay claims in the event that funds obtained from the sale of VSCs and put into a Loss Reserve Fund proved to be insufficient to pay claims.

The First Amended Class Action Complaint must be dismissed as against Warrantech for lack of subject-matter jurisdiction and for failure to state a cause of action:

- The Magnuson-Moss Act does not apply because the VSCs and the insurance policy that insures them are regulated by state statutes enacted for the purpose of regulating the business of insurance, and application of the Magnuson-Moss Act would invalidate, impair or supersede the state statutes. Therefore, under the provisions of the McCarran-Ferguson Act, 15 U.S.C. § 1012(b) ("McCarran-Ferguson Act"), the state statutes preclude application of the Magnuson-Moss Act.

- Warrantech did not "enter into" the VSCs, and is not a party to them. Therefore, under the plain language of the Magnuson-Moss Act, Plaintiffs cannot state a cause of action against Warrantech.

- Plaintiffs have not pled the elements of fraudulent concealment. Plaintiffs have not pled that Warrantech had a duty to Plaintiffs to disclose certain facts nor have they alleged that that they relied on Warrantech's alleged silence. Moreover, Plaintiffs have alleged only that Warrantech failed to disclose how third parties would behave *if* a certain event, *i.e.* the depletion of the Loss Reserve Fund, occurred in the future. The alleged failure to offer a prediction cannot support a cause of action for fraud, which must be based on a misrepresentation or concealment of an existing fact.

- Similarly, Plaintiffs have not alleged that they had a mistaken belief in the existence of a present fact at the time they purchased the VSCs. Instead, they allege that they mistakenly believed that Butler, Heritage and Am Re would pay their claims in the future. Such a "mistake" is made by every party that enters into a contract – if a party did not believe the other would perform as promised, they would not enter into the contract. Being disappointed in the expectation that the other party would perform entitles the disappointed party to sue for breach, not to void the contract entirely.

## ARGUMENT

### I.     STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure requires dismissal for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion. *See Sprint Spectrum L.P. v. City of Carmel, Indiana*, 361 F.3d 998, 1001 (7th Cir. 2004). The court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

Rule 12(b)(6) compels dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a 12(b)(6) motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *Graebel/Los Angeles Movers, Inc. v. Johnson*, No. 04C8282, 2006 WL 533360, at *2 (N.D. Ill. Mar. 1, 2006). On a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999); *Johnson*, 2006 WL 533360, at *2. A motion to dismiss will be granted "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley*, 355 U.S. at 45-46; *SRAM Corp. v. Sunrace Roots Enter. Co., Ltd.*, 390 F. Supp. 2d 781, 784 (N.D. Ill. 2005).

II.   **PLAINTIFFS' FIRST CLAIM FOR RELIEF SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION AND BECAUSE WARRANTECH IS NOT A PARTY TO THE VSCs**

A.   **The McCarran-Ferguson Act Causes State Laws Regulating VSCs and the Insurance Policies that Insure Them to Pre-Empt the Magnuson-Moss Act**

Section 2(b) of the McCarran-Ferguson Act states that:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance. . . .

15 U.S.C. § 1012(b). The effect of the McCarran-Ferguson Act is to preclude a federal statute from applying if doing so would "invalidate, impair, or supersede" a state law enacted for the purpose of regulating the business of insurance. *See United States Dept. of the Treasury v. Fabe*, 508 U.S. 491, 500-01 (1993). Three criteria must be met in order for the McCarran-Ferguson Act to preclude application of a federal statute: (1) the federal statute must not "specifically relate" to the business of insurance; (2) the state law must have been enacted "for the purpose of regulating the business of insurance"; and (3) application of the federal statute would "invalidate, impair, or supersede" the state law. *See Fabe*, 508 U.S. at 501; *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1042 (7th Cir. 1998).

The VSCs purchased by the Plaintiffs and the Heritage insurance policy that insures Butler's obligations as "obligor" for the VSCs are regulated by statutes across the United States, including Plaintiffs' home states of Colorado, Illinois and North Carolina. *See* National Association of Insurance Commissioners, Compendium of State Laws on Insurance Topics II-PA-60-1-19 (2007) (summarizing state service contract acts); C.R.S.A. § 42-11-101 *et seq.*; 215 ILCS 152/1 *et seq.*; N.C.G.S.A. § 66-370 *et seq.* (hereinafter "Service Contract Acts"). There can be no dispute that the Magnuson-Moss Act does not specifically relate to the business of insurance. The state Service Contract Acts were enacted for the purpose of regulating the business of insurance and the

4

Magnuson-Moss Act would invalidate, impair, or supersede the Service Contract Acts. Therefore, under the McCarran-Ferguson Act, the VSCs and the insurance policy are governed solely by state law and Plaintiffs cannot bring a cause of action under the Magnuson-Moss Act.

### 1. The State Service Contract Acts Were Enacted for the Purpose of Regulating the Business of Insurance

A law enacted "for the purpose of regulating the business of insurance" is one "aimed at protecting or regulating [the] relationship [between insurer and insured], directly or indirectly." *SEC v. National Sec., Inc.*, 393 U.S. 453, 460 (1969). The United States Supreme Court recognizes that a "broad category of laws" will meet this description, consisting of any "laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance." *Fabe*, 508 U.S. at 505. Whether a particular law is for the purpose of regulating the business of insurance is based on a "common sense understanding of insurance regulation." *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 374 (1999). Three factors are relevant to the inquiry, although they are not essential elements that must be present and "need not all point in the same direction." *Id.* at 373-74, quoting *O'Connor v. UNUM Life Ins. Co. of Am.*, 146 F.3d 959, 963 (D.C. Cir. 1998). The three factors are whether the rule at issue, (1) has the effect of transferring or spreading a policyholder's risk, (2) is an integral part of the policy relationship between the insurer and the insured, and (3) is limited to entities within the insurance industry. *Ward*, 526 U.S. at 374.

The state Service Contract Acts that regulate Plaintiffs' VSCs and the Heritage insurance policy that insures them regulate the business of insurance. As an initial matter, they fit the common sense understanding of insurance regulation. The Service Contract Acts are administered and enforced by the state insurance departments, which have authority to promulgate and enforce rules regarding VSCs and the policies that insure them. *See, e.g.*, 215 ILCS 152/50; N.C.G.S.A. § 66-373(d). The Acts delimit the scope of contracts and persons who fall within their provisions by defining "service contract," "service contract holder," "service contract provider," and "service

5

contract reimbursement insurance policy." *See, e.g.,* C.R.S.A. § 42-11-101(1)-(6); 215 ILCS 152/5; N.C.G.S.A. §§ 66-370(b)(1)-(6), 66-374(b). The Acts require service contracts and insurance policies to contain specific terms and make specific disclosures to service contract holders. *See, e.g.,* C.R.S.A. §§ 42-11-103, 42-11-104; 215 ILCS 152/15(1)(A)-(D), 215 ILCS 152/20, 215 ILCS 152/30; N.C.G.S.A. §§ 66-372, 66-373. The self-evident purpose of these Acts is to regulate service contracts and the insurance underlying them in the same comprehensive statutory and administrative scheme.

The service contracts and the insurance are inextricably linked in this regulatory scheme, for obvious reasons. Service contracts, such as Plaintiffs' VSCs, provide rights to the contract owners in the event that the products (*e.g.,* Plaintiffs' vehicles) break down. The liability risk of the obligor under the contracts (*e.g.,* Butler) is then transferred to the insurer (*e.g.,* Heritage) by means of an insurance policy. The Service Contract Acts regulate the means by which this transfer occurs. Thus, the first factor of the Supreme Court's analysis is undeniably met with respect to Plaintiffs' VSCs.

The second factor of the analysis also is present. By regulating the means of transferring the risk, the Service Contract Acts clearly regulate an integral part of the relationship between the insurer and the insured. They set forth the type of insurance that can be purchased to insure service contracts (a "service contract reimbursement insurance policy" as defined in the various Acts), the terms of the insurance, and when service contract holders can submit claims to the obligor and the insurance company. Consequently, the Service Contract Acts regulate the "core of the 'business of insurance.'" *Fabe*, 508 U.S. at 501.

The service contracts are a necessary part of the risk transference to the insurance company, which is why the Service Contract Acts require them to disclose the existence of the insurance to the service contract holders and explain how the holders can make claims directly to the insurer. *See, e.g.,* C.R.S.A. § 42-11-104; 215 ILCS 152/15(1)(C)-(D). The Service Contract Acts refer to the

money the service contract holders use to purchase service contracts as the "premium" that the insurer accepts to insure the service contracts. *See, eg.,* 215 ILCS 152/20(c); N.C.G.S.A. § 66-373(c)(1), (5). Plaintiffs allege that the VSCs give Plaintiffs rights under the Heritage insurance policy both directly and as third-party beneficiaries. (*See* First Am. Cmplt. ¶¶ 2, 23, 76.) The Service Contract Acts are an integral part of the relationship between Heritage as insurer on the one hand and Butler and Plaintiffs as insureds on the other.

Finally, the regulation of service contracts and insurance policies is limited to entities within the insurance industry because only an insurance company can issue the insurance policies that insure the obligations in the service contracts. The insurance companies must agree to insure the service contracts in the form and manner required by the Service Contract Acts. Thus the Service Contract Acts have all three of the relevant factors, indicating that they are for the purpose of regulating the business of insurance.

> **2.    Application of the Magnuson-Moss Act to Plaintiffs' VSCs and the Heritage Insurance Policy Would "Invalidate, Impair, or Supersede" State Service Contract Acts**

As Plaintiffs have attempted to use it, the Magnuson-Moss Act directly conflicts with the state Service Contract Acts, and would interfere with the states' administrative regimes. *See Doe v. Mutual of Omaha Ins. Co.,* 179 F.3d 557, 563 (7th Cir. 1999). Plaintiffs allege that Heritage and Warrantech are "service contractors" as that term is used in the Magnuson-Moss Act. (*See* First Am. Complt. ¶ 62.) The Magnuson-Moss Act does not define "service contractor," but the state Service Contract Acts define "service contract provider," which is the same thing.[1] *See, eg.,* C.R.S.A. § 42-11-101(4)(a); 215 ILCS 152/5; N.C.G.S.A. §§ 66-370(b)(6), 66-374(b). For example, under the Illinois statute a "service contract provider" is "a person who is contractually obligated to the service

---

[1] Black's Law Dictionary defines a "contractor" as "a party to a contract" and "one who contracts to do work or provide supplies to another." Black's Law Dictionary 327 (7th ed. 1999).

contract holder under the terms of the service contract. A service contract provider does not include an insurer." 215 ILCS 152/5. Heritage is an insurer, and therefore is not a "service contract provider" by state law. In order for Plaintiffs to pursue a cause of action against Heritage under the Magnuson-Moss Act, they would have to prove that Heritage is the very thing that state law says it is not. A clearer conflict between federal and state law cannot be envisioned.

Similarly, Warrantech is not a "service contract provider" under the state Service Contract Acts. Warrantech is not contractually obligated to Plaintiffs under the terms of their VSCs. (Plaintiffs implicitly admit this because they have not sued Warrantech for breach of the VSCs.) Attempting to transform Warrantech into a "service contractor" for purposes of the Magnuson-Moss Act would cause Warrantech to have to meet the financial requirements for service contract providers in the state Service Contract Acts (e.g., being insured under Heritage's insurance policy), and would subject Warrantech to regulation and enforcement proceedings by the state insurance departments that apply only to service contract providers. See, e.g., C.R.S.A. § 42-11-102; 215 ILCS 152/15, 215 ILCS 152/50; N.C.G.S.A. §§ 66-372, 66-373. Injecting Warrantech into the relationship between the service contract provider and the service contract holder would play havoc with the states' administration of the Service Contract Acts.

Plaintiffs allege that the statement in the VSCs that VSC holders may file claims directly with the insurance company if the claims are not paid is "false, misleading, and, at best, incomplete" and therefore in violation of the Magnuson-Moss Act. (See First Am. Complt. ¶ 66.d-e.) This allegation, however, is in direct conflict with the state Service Contract Acts, which require service contracts and insurance policies to contain precisely such a provision. See, e.g., C.R.S.A. §§ 42-11-103, 42-11-104; 215 ILCS 152/15(1)(D), 215 ILCS 152/20(b); N.C.G.S.A. § 66-373(c)(1). If Plaintiffs can challenge these provisions under the Magnuson-Moss Act, then the Act would render the provisions

null and void. The result – the Magnuson-Moss Act pre-empting state law – would be the opposite of that mandated by the McCarran-Ferguson Act.

Plaintiffs also allege that several additional disclosures should have been made in the VSCs concerning how claims are paid and the relationship among Butler, Warrantech and Heritage. (*See* First Am. Complt. ¶¶ 32-35, 66.a-c.) The state legislatures and insurance departments have carefully considered what provisions must be contained in service contracts and the policies that insure them and have described them in the Service Contract Acts. *See, e.g.,* C.R.S.A. §§ 42-11-103, 42-11-104; 215 ILCS 152/15(1)(A)-(D), 215 ILCS 152/20, 215 ILCS 152/30; N.C.G.S.A. §§ 66-372, 66-373. Service contract providers and insurers rely on the Service Contract Acts to write the service contracts and insurance policies. The certainty and uniformity provided by the Service Contract Acts would be severely undermined, if not eliminated outright, by overlaying the provisions of the Magnuson-Moss Act on top of the requirements of the Service Contract Acts. State insurance departments would have to refer to the Magnuson-Moss Act, and case law interpreting it, in addition to their own rules and regulations when administering and enforcing the Service Contract Acts.

Quite simply, the Magnuson-Moss Act would replace the state laws enacted to regulate service contracts and the concomitant insurance policies, a result entirely at odds with the McCarran-Ferguson Act. *Cf. Ophthalmic Mut. Ins. Co. v Musser*, 143 F.3d 1062, 1067 (7th Cir. 1998) (any doubt whether Congress intended to pre-empt a state insurance law is resolved against pre-emption). At a minimum, the states would be hindered in administering the Service Contract Acts. Therefore, the McCarran-Ferguson Act precludes application of the Magnuson-Moss Act in this case.

### 3. The Federal Trade Commission Agrees that the McCarran-Ferguson Act Precludes Federal Jurisdiction Over Insurance for VSCs

Any lingering doubts that state Service Contract Acts pre-empt the Magnuson-Moss Act are put to rest by the fact that the Federal Trade Commission, the agency charged with administering

9

and enforcing the Magnuson-Moss Act (*see, e.g.,* 15 U.S.C. § 2306(a) (granting the FTC authority to

make rules concerning disclosures in service contracts)), acknowledges that the Act does not apply

to VSC insurance. The FTC has authored a regulation that states in relevant part:

> The Act recognizes two types of agreements which may provide similar coverage of
> consumer products, the written warranty, and the service contract. In addition, other
> agreements may meet the statutory definitions of either "written warranty" or
> "service contract," but are sold and regulated under state law as contracts of
> insurance. *One example is the automobile breakdown insurance policies sold
> in many jurisdictions and regulated by the state as a form of casualty
> insurance.* The McCarran-Ferguson Act, 15 U.S.C. 1011 et seq., precludes
> jurisdiction under federal law over "the business of insurance" to the extent an
> agreement is regulated by state law as insurance. Thus, such agreements are subject
> to the Magnuson-Moss Warranty Act only to the extent that they are not regulated in
> a particular state as the business of insurance.

16 C.F.R. § 700.11(a) (emphasis added). A court may not substitute its own construction of a statute

for a reasonable interpretation made by the agency that administers it where the statute is silent or

unclear on an issue. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843-

44 (1984); *Square D Co. and Subsidiaries v. Commissioner of the IRS,* 438 F.3d 739, 744 (7th Cir. 2006).

The Magnuson-Moss Act does not directly speak to the issue of whether it applies to vehicle service

contracts. As demonstrated above, the FTC's interpretation of the Magnuson-Moss Act as not

applying to VSC "casualty insurance" is a reasonable interpretation of the Act. Therefore, this Court

should defer to the FTC's interpretation that there is no jurisdiction under the Magnuson-Moss Act.

**B.    Warrantech Did not Enter Into the VSCs and Is not Contractually Obligated
to Plaintiffs Under the VSCs**

Plaintiffs cannot allege a cause of action against Warrantech under the Magnuson-Moss Act

because Warrantech did not enter into the VSCs with Plaintiffs and is not contractually obligated to

Plaintiffs. Courts in the Seventh Circuit have consistently held that purchasers of VSCs cannot

maintain causes of action under the Magnuson-Moss Act against persons who are not parties to the

contracts. *See Priebe v. Autobarn, Ltd.,* 240 F.3d 584, 587-88 (7th Cir. 2001); *Hamilton v. O'Connor

Chevrolet, Inc.,* 399 F. Supp.2d 860, 870-71 (N.D. Ill. 2005) (Magnuson-Moss Act claim dismissed

against dealership that merely sold VSC to plaintiff and was not party to contract); *Long v. Wix Auto*, No. 00 C 5842, 2001 U.S. Dist. LEXIS 24135, *5 (N.D. Ill. Jan. 4, 2001) (same, noting that dealership did not "enter into" service contract); *Larry J. Soldinger Assocs., Ltd. v. Aston Martin Lagonda of North Am, Inc.*, No. 97 C 7792, 1998 WL 151817, *3 (N.D. Ill. Mar. 27, 1998) (no cause of action against dealership under Magnuson-Moss Act where warranty was made by manufacturer).

Plaintiffs can only sue "service contractors" under the Magnuson-Moss Act. 15 U.S.C. § 2301(3) (definition of "consumer" as person entitled to enforce obligations of service contract against service contractor). As discussed above, Warrantech is not a "service contract provider" under the state Service Contract Acts. Because a "contractor" is the same thing as a "contract provider," Warrantech also is not a "service contractor" under the Magnuson-Moss Act.

The Magnuson-Moss Act prohibits suppliers and warrantors from "entering into" service contracts unless they fully, clearly, and conspicuously disclose its terms and conditions. 15 U.S.C. § 2306(b). Plaintiffs' VSCs clearly state that the party obligated to Plaintiffs is Butler. (First Am. Complt., Ex. A.) Butler's obligations in turn are expressly insured by Heritage. (*Id.*) Plaintiffs allege that Butler and Heritage "entered into" the VSCs with Plaintiffs. Warrantech did not "enter into" any VSCs, and therefore Plaintiffs cannot maintain a cause of action against Warrantech under the Magnuson-Moss Act.

## III.    PLAINTIFFS' THIRD CLAIM FOR RELIEF SHOULD BE DISMISSED BECAUSE PLAINTIFFS CANNOT STATE CAUSES OF ACTION FOR FRAUD AND MISTAKE

In cursory fashion, for their Third Claim for Relief Plaintiffs allege that their VSCs are voidable because they were procured as the result of fraud or mistake. Plaintiffs have not alleged all of the elements of fraudulent concealment, including the existence of a duty to disclose facts and justifiable reliance. Plaintiffs cannot state a cause of action for fraud because the alleged failure to offer a prediction of something that might occur in the future is not an actionable concealment.

Similarly, Plaintiffs cannot state a cause of action for mistake because the alleged "mistake" is not a mistake regarding the existence of a present fact, but merely Plaintiffs' alleged mistaken belief that Butler, Heritage and Am Re would perform as promised.

## A.    Plaintiffs Cannot State a Cause of Action for Fraudulent Concealment Against Warrantech

Plaintiffs allege that Warrantech fraudulently concealed that Butler, Heritage and Am Re would not pay claims in the event that the Loss Reserve Fund contained insufficient money to pay claims. To prove fraudulent concealment, Plaintiffs must plead (1) concealment of a material fact under circumstances that created a duty to speak, (2) that Warrantech intended to induce a false belief, (3) that Plaintiffs could not have discovered the truth through reasonable inquiry or inspection, or were prevented from making a reasonable inquiry or inspection, (4) that Plaintiffs justifiably relied on Warrantech's silence as a representation that the fact did not exist, (5) that the concealed information was such that Plaintiffs would have acted differently had they known it, and (6) that Plaintiffs' reliance resulted in damages. *See Bauer v. Giannis*, 834 N.E.2d 952, 957-58 (Ill. App. Ct. 2005); *Lefebre Intergraphics, Inc. v. Sanden Machine Ltd.*, 946 F. Supp. 1358, 1367 (N.D. Ill. 1996).

A duty to disclose exists only under limited circumstances, such as where there is a "special or fiduciary relationship." *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 816-17 (Ill. App. Ct. 1998); *Lefebre Intergraphics*, 946 F. Supp. at 1366. Mere silence in a business transaction is not enough to constitute fraud. *Lefebre Intergraphics*, 946 F. Supp. at 1367. As discussed above, Warrantech is not a "service contractor" or "service contract provider." Plaintiffs do not allege any other relationship between themselves and Warrantech that would give rise to a duty to disclose on the part of Warrantech. Warrantech had no special or fiduciary relationship with Plaintiffs and thus no duty to disclose.

Plaintiffs also have not alleged that Warrantech intended to induce them to have a false belief about the VSCs, that they could not have discovered the truth through a reasonable inquiry or were prevented from making a reasonable inquiry, or that they justifiably relied on Warrantech's silence. Therefore, Plaintiffs have not stated a cause of action against Warrantech for fraudulent concealment.

Indeed, Plaintiffs *cannot* state a cause of action for fraudulent concealment against Warrantech under the facts as pled in the First Amended Complaint. Significantly, Plaintiffs do not allege that, at the time Plaintiffs purchased their VSCs, the Loss Reserve Fund did not contain sufficient funds to pay claims that Plaintiffs might make. Rather, Plaintiffs allege that Heritage stopped paying claims in December of 2006, several years after Plaintiffs purchased their VSCs. (*See* First Am. Complt. ¶¶ 4, 10-12.) Plaintiffs allege that Heritage had paid claims between 2001 and January 2007. (*Id.* ¶ 34.) Heritage only stopped paying claims once the Loss Reserve Fund ran out. (*Id.* ¶¶ 26-27, 32-33.) Thus, Plaintiffs allege that between 2001 and December 2006, the Loss Reserve Fund contained sufficient funds to pay claims.

To be actionable, a misrepresentation must be of a *fact. Lillien v. Peak6 Investments, L.P.*, 417 F.3d 667, 671 (7th Cir. 2005); *Claricom Networks, L.L.C. v. Illinois Bell Telephone Co.*, No. 04 C 4906, 2005 WL 1705831, *3 (N.D. Ill. July 20, 2005). Promises and predictions about the future, expressions of opinion, and failures to volunteer predictions are not actionable. *Lillien*, 417 F.3d at 671; *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1299 (7th Cir. 1993); *Lefebure Intergraphics*, 946 F. Supp. at 1364; *First Nat. Bank of Boston v. Heuer*, 702 F. Supp. 173, 178 (N.D. Ill. 1988); *Illinois Non-Profit Risk Mngmt. Ass'n v. Human Serv. Ctr. of Southern Metro-East*, 884 N.E.2d 700, 710 (Ill. App. Ct. 2008); *Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Ct. 1995). Financial projections are statements of opinion, not fact. *INRMA*, 884 N.E.2d at 710; *Lagen*, 653 N.E.2d at 973.

At the time Plaintiffs purchased their VSCs, the program was working as expected: VSC holders submitted claims, and Heritage funded the payment of claims from the Loss Reserve Fund. Plaintiffs complain that Warrantech should have predicted that the Loss Reserve Fund would run out at some point, and that when it did, Butler and Heritage would refuse to pay further claims. Warrantech's alleged failure to volunteer this prediction to Plaintiffs at the time they purchased their VSCs, years before the Loss Reserve Fund ran out, is not a misrepresentation or concealment of a then-existing fact. Therefore, Plaintiffs cannot state a cause of action for fraud.

### B.    As a Matter of Law, Plaintiffs Cannot Void the VSCs Based On an Alleged Mistaken Belief that Their Claims Would Be Paid

Without providing any supporting facts, Plaintiffs allege that they are entitled to void the VSCs at their option based on an unspecified mistake in entering into the VSCs. To the extent that Plaintiffs allege as "mistakes" the belief that the Loss Reserve Fund would be sufficient to pay all claims, or that Plaintiffs believed that Butler, Heritage and Am Re would pay their claims once the Loss Reserve Fund was depleted, neither allegation supports voiding the VSCs.

A mistake must be as to a present or past fact. *See United States v. Southwestern Elec. Coop., Inc.*, 869 F.2d 310, 314 (7th Cir. 1989). A contract may not be avoided on the grounds of mistake if the mistake concerns an erroneous "prediction or judgment as to events to occur in the future." *Id.*, quoting Restatement (Second) of Contracts § 151a. Similarly, a mistaken belief or expectation that a party would honor its promise to pay under a contract is not a present mistake of fact entitling the other party to rescind the contract. *See Wilson v. Moore*, 504 N.E.2d 1383, 1386-87 (Ill. App. Ct. 1987). Here, Plaintiffs allege that they believed their claims would be paid when they entered into the VSCs, which is not a mistake of fact. Every party enters into contracts with the belief and expectation that the other party will perform as promised. Being mistaken in this expectation cannot allow contracts to be avoided, otherwise every time a contract is breached the non-breaching

14

party would have the option to avoid it. Therefore, Plaintiffs cannot state a cause of action to void the VSCs on the grounds of mistake.

## IV.  PLAINTIFFS' FIFTH CLAIM FOR RELIEF SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST WARRANTECH

Plaintiffs' Fifth Claim for Relief seeks declaratory relief from Warrantech in the form of an order declaring that Butler, Heritage and Warrantech failed to fully, clearly and conspicuously disclose the terms and conditions of the VSCs. (*See* First Am. Complt. ¶ 84.) For the reasons set forth above, Plaintiffs are not entitled to such an order, because they cannot state causes of action against Warrantech under the Magnuson-Moss Act or for common law fraud or mistake. Therefore, Plaintiffs' Fifth Claim for Relief should be dismissed as against Warrantech. *Cf. Pelfresne v. Village of Lindenhurst*, No. 03 C 6905, 2005 WL 2322228, *6 (N.D. Ill. Sept. 16, 2005) (declaratory judgment count dismissed as "serv[ing] no useful purpose" because substantive suit would resolve issues raised by declaratory judgment action).

## CONCLUSION

Wherefore, for the foregoing reasons, Warrantech Automotive, Inc. respectfully requests that Plaintiffs' First Amended Class Action Complaint be dismissed as against Warrantech and grant Warrantech such other and further relief as the Court deems just and proper.

Date:  August 4, 2008

Respectfully Submitted,

WARRANTECH AUTOMOTIVE, INC.

By:    /s/ Paul Walker-Bright
                    One of Its Attorneys
            Paul Walker-Bright, Esq. (# 6226315)
            Evan T. Knott, Esq. (# 6277800)
            REED SMITH LLP
            10 South Wacker Drive, 40th Floor
            Chicago, Illinois 60606
            Telephone:  (312) 207-1000
            Fax:  (312) 207-6400

            David M. Schlecker (admitted *pro hac vice*)
            REED SMITH LLP
            599 Lexington Avenue
            New York, New York 10017
            Telephone:  (212) 521-5400
            Fax:  (212) 521-5450

## CERTIFICATE OF SERVICE

I, Paul Walker-Bright, an attorney of record in this lawsuit, hereby certify that on August 4,

2008, true and accurate copies of the foregoing Memorandum of Law in Support of Plaintiff

Warrantech Automotive, Inc.'s Rule 12(b)(6) Motion to Dismiss First Amended Class Action

Complaint were served electronically via e-mail to the following attorneys:

### Attorneys for Plaintiffs:
George Vurdelja, Jr.
Harrison & Held LLP
333 West Wacker Drive, Suite 1700
Chicago, Illinois 60606
Telephone: (312) 753-6161
Facsimile: (312) 332-1150

Scott R. Shepherd
Shepherd, Finkelman, Miller & Shah, LLP
1640 Town Center Circle, Suite 216
Weston, Florida 33326
Telephone: (954) 943-9191
Facsimile: (954) 943-9173

### Attorneys for Defendant Heritage Warranty Insurance Risk Retention Group, Inc.:
Thomas M. Dee, *admitted pro hac vice*
Joel B. Samson, ARDC # 06244795
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
Telephone: (314) 480-1500
Facsimile: (314) 480-1505

John Kenneth Kallman
Law Offices of John Kenneth Kallman
221 North LaSalle Street, Suite 1200
Chicago, Illinois 60601
Telephone: (312) 578-1515

**Attorneys for Defendant Butler Financial Solutions, LLC:**
Michael M. Tannen, ARDC # 6204635
Law Offices of Michael Murphy Tannen, P.C.
39 South LaSalle Street, Suite 905
Chicago, Illinois 60603
Telephone: (312) 641-6650


/s/ Paul Walker-Bright
Paul Walker-Bright