# REINSURANCE CUSTODIAL AGREEMENT

Effective: March 15, 2003

entered into by and among

**Mardan Reinsurance, Limited**
(hereinafter referred to as the "Reinsurer")

and

**Heritage Warranty Mutual Insurance RRG, Inc.**
(hereinafter referred to as the "Beneficiary")

and

**SunTrust Bank**
(hereinafter referred to as the "Custodian")

## SECTION 1 – PURPOSE OF AGREEMENT

1.1 Pursuant to the terms hereof, Reinsurer, Beneficiary, and Custodian hereby create a Custodial account for the sole use and benefit of the Beneficiary. The Reinsurer obligates itself to deliver to and deposit with the Custodian "Securities" (as defined in Section 3.1) which shall be received and held by the Custodian in accordance with the terms and conditions of this Agreement. The securities thus held by the Custodian are hereinafter referred to as the "Custodial Fund."

1.2 The rights and obligations of Reinsurer, Custodian and Beneficiary under this Agreement are not subject to any conditions or qualifications not stated herein.

## SECTION 2 – REINSURER'S DEPOSITS TO AND WITHDRAWALS FROM FUND

2.1 Within seven (7) days after the effective date of this Agreement first set forth above, the Reinsurer shall deliver or transfer to the Custodian Securities with a market value (determined in accordance with Section 3.3) of not less than the full amount of the Reinsurer's Obligations (as defined in Section 4.3(d), due or which may become due under a certain Quota Share Reinsurance Agreement effective between the Reinsurer and Beneficiary, less Obligations paid by the Reinsurer under said agreement (hereinafter referred to as the "Reinsurance Agreement").

2.2 Within forty-five (45) days after the end of each calendar quarter, the Reinsurer shall deposit with the Custodian such additional securities as may be necessary to increase the aggregate market value of the Custodial Fund to an amount at least equal to the amount required under Section 2.1.

2.3 In the event the aggregate market value of the Custodial Fund immediately after each calendar quarter is greater than the amount required in Section 2.2, the Reinsurer may withdraw Securities from the Custodial Fund so as to reduce the aggregate market value of the Custodial Fund to an amount not less than the amount required in section 2.2 . The Custodian shall permit such withdrawal upon receipt by it or written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.4 The Reinsurer may at any time withdraw Securities from the Custodial Fund provided that concurrently therewith Securities of equal or greater market value are deposited in the Custodial Fund, and Custodian shall permit such substitution of Securities upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

**EXHIBIT**

tabbies'

F

permit such substitution of Securities upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.5 All Securities, other than cash, deposited by the Reinsurer with the Custodian pursuant to Sections 2.1., 2.2, or 2.4 shall be accompanied by executed assignments, endorsements in blank or stock powers as appropriate to enable the Beneficiary to transfer title to such Securities pursuant to the Beneficiary's right and authority under Section 4. Any such instruments shall be held and safeguarded by the Custodian, and delivered to the Beneficiary if the Beneficiary is entitled under Section 4 to take possession of the Securities applicable thereto, or returned to the Reinsurer with any withdrawals of the applicable Securities by the Reinsurer pursuant to Sections 2.3, 2.4 or 8.

2.6 Custodian agrees to provide to the Beneficiary and Reinsurer with written notice of any deposits to or withdrawals from the Custodial Fund within ten (10) days after each such deposit or withdrawal.

## SECTION 3 – SECURITIES

3.1 The term "Securities" as used herein is defined as any combination of (a) cash; (b) certificates of deposit issued by any national or state chartered bank or savings and loan association which shall be payable in United States dollars; (c) United States Government issued or guaranteed bonds, bills or notes; or (d) any other bonds or other investments of the types specified in subsections (1), (2), (3) and (13) of Section 1404 of the New York Insurance Law; provided that all such Securities deposited in the Custodial Fund hereunder shall constitute admitted assets and shall comply in all respects with the investment rules and limitations prescribed by the applicable insurance laws and regulations of the states of South Carolina and New York.

3.2 Upon receipt of prior approval by the Reinsurer, the Custodian is authorized to invest any cash on deposit in the Custodial Fund, provided that all such investments shall fall within one of the categories of investments set forth in Section 3.1.

3.3 For the purposes of this Agreement, the market value of Securities shall be determined as follows: (a) at the time any Securities are deposited initially with the Custodian, and as respects Securities on deposit at the end of each calendar quarter, the Reinsurer shall in good faith place a tentative market value on said Securities and shall notify the Beneficiary of such valuation by supplement to the Custodian's statement of assets for the calendar quarter in question; (b) if the Beneficiary disagrees with such tentative market valuation, it may so notify the Reinsurer within 30 days after the date it receives the Custodian's quarterly statement of assets and the Reinsurer's supplement thereto; and (c) in the event the parties cannot resolve any difference with respect to the market value of the Securities, the market value of the security in dispute shall be determined by using the definition of "value" set forth in the Investment Company Act of 1940, Section 2(a) (41).

## SECTION 4 – BENEFICIARY'S CLAIM ON CUSTODIAL FUND

4.1 Beneficiary may withdraw assets from the Securities deposited in the Custodial Fund at any time, and without notice to the Reinsurer, and at the Beneficiary's option, may hold such Securities or sell the same at public or private sale and exercise such other rights as may be permitted by applicable statute; provided, however, that the Beneficiary first gives notice to the Custodian in accordance with Section 4.2 and that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.2 The Beneficiary may demand possession of the Custodial Fund form the Custodian, and the Custodian is required immediately to deliver physical custody of the Securities in the Custodial Fund to the Beneficiay, solely upon receipt by the Custodian of the Beneficiary's written notice stating that the Beneficiary is demanding possession of all Securities in the Custodial Fund pursuant to Section 4 of this Agreement provide however that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.3     In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2 herein, the Beneficiary shall deposit the entire Custodial Fund in a separate account, in the name of the Beneficiary in any United States bank or Custodial company, apart from its general assets, in Custodial for such uses as are specified below. The Beneficiary shall use and apply any amounts withdrawn form the Custodial Fund and deposited in said separate Custodial account, without diminution because of the insolvency of the Beneficiary or the Reinsurer, only for the following purposes:

    a)   to pay or reimburse the Beneficiary for the Reinsurer's share under the Reinsurance Agreement regarding any losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer or for unearned premiums due to the Beneficiary, if not otherwise paid by the Reinsurer;

    b)   to make payment to the Reinsurer of any amounts held in the Custodial Fund that exceed 102 percent of the actual amount required to fund the Obligations (as defined in subparagraph (d) below) under the Reinsurance Agreement; or

    c)   where the Beneficiary has received notification of termination of the Custodial Fund pursuant to Section 8.2, and where the Reinsurer's Obligation under the Reinsurance Agreement remain unliquidated and undischarged ten (10) days prior to such termination date, to maintain said separate Custodial account for such uses and purposes specified in (a) and (b) above as may remain executory after such withdrawal and for any period after such termination date.

    d)   "Obligations" within the meaning of the Section and this Agreement, means:

        (i)   losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer;

        (ii)   reserves for losses reported and outstanding;

        (iii) reserves for losses incurred but not reported; and

        (iv) reserves for allocated loss expenses and unearned premiums.

4.4     In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2, the Reinsurer shall continue to be liable to Beneficiary for any amount by which balances due the Beneficiary under the Reinsurance Agreement exceed the aggregate market value of the Securities withdrawn from the Custodial Fund as of the date of withdrawal. The aggregate market value of the Securities shall be determined in accordance with Section 3.3 (c).

## SECTION 5 – EXPENSES

5.1     Any interest of dividends from Securities deposited in the Custodial Fund shall be payable by the Custodian to the Reinsurer upon receipt by the Custodian.

5.2     All fees and expenses charged by the Custodian for its services under the terms of this Agreement shall be paid by the Reinsurer and in no event shall the Custodian withdraw any amount from the Custodial Fund for the purposes of paying compensation to, or reimbursing any expenses of, the Custodian.

## SECTION 6 – CUSTODIAN

6.1     The Custodian shall receive, hold, and safeguard all Securities deposited under this Agreement and shall determine that all such Securities are in such form that the Beneficiary, or the Custodian upon direction by the Beneficiary, may whenever necessary negotiate any such Securities, without consent or signature from the Reinsurer or any other person or entity. The Custodian shall not be responsible for the adequacy of the

Custodial Fund, or for the valuation of the same or of the Securities from time to time deposited in, withdrawn from, or comprising the Custodial Fund. The Custodian also shall have no power or duty to collect any Securities from the Reinsurer or to enforce the provisions hereof regarding the deposit or withdrawal of Securites except as in herein specifically provided.

6.2    The Custodian shall be liable for its own negligence, willful misconduct or lack of good faith in performing its obligations under this Agreement. In the absence of such liability, the Custodian shall be indemnified by the Reinsurer for actions taken and not taken by the Custodian in performing its obligations hereunder, and for any legal expenses or other costs which the Custodian may reasonably incur with respect to such acts or failures to act or the defense therof.

6.3    The Custodian hereby waives any right of set-off and all other rights and remedies against or affecting the Custodial Fund.

6.4    The Custodian agrees to provide to the Beneficiary and the Reinsurer a statement of all assets in the Custodial Fund upon its inception and at intervals no less frequent than the end of each calendar quarter. Such reports shall identify all deposits, withdrawals and substitutions made during the preceding calendar quarter and shall list all Securities held in the Custodial Fund as of the last day of said quarter.

6.5    The Custodian may at any time resign from and terminate its capacity hereunder by written notice to both the Beneficiary and the Reinsurer effective not less than ninety (90) days after receipt by the Beneficiary and Reinsurer of the notice; provided that no such resignation shall be effective until a successor Custodian (the "Successor Custodian") has been duly appointed and approved by the Beneficiary and Reinsurer and all Securities in the Custodial Fund have been duly transferred to the Successor Custodian or, in the event a Successor Custodian is not appointed within ninety (90) days of the receipt of said notice, the Custodial Fund has been transferred to the Beneficiary as provided herein.

The Reinsurer, upon receipt of the above notice of resignation, shall undertake to obtain the agreement of a Successor Custodian to act in accordance with all agreements of the Custodian hereunder. The choice of Successor Custodian is subject to approval by the Beneficiary, which approval shall not be unreasonably withheld if the Successor Custodian so chosen is chartered as a national or state bank and has capital and surplus of at least US $100,000,000. In the event the Reinsurer is unable to obtain such an approved Successor Custodian within ninety (90) days from its receipt of notice from the Custodian, the Custodian is authorized to deliver the Custodial Fund to the Beneficiary. In such event, the Beneficiary shall, until an approved Successor Custodian if found, hold the Custodial Fund pursuant to the terms hereof, being fully substituted for the Custodian except that Section 6 hereof shall not apply.

Upon the Custodian's delivery of the Custodial Fund to the Successor Custodian or, if none is approved, to the Beneficiary along with a closing statement showing all transactions relating to the Custodial Fund since the date of the Custodian's last quarterly report, the Custodian shall be discharged of further responsibilities hereunder.

6.6    Custodian, upon written demand of the Beneficiary pursuant to Section 4.1 and 4.2 herein, shall immediately take any and all steps necessary to transfer absolutely and unequivocally all right, title and interest in the Securities held in the Custodial Fund to the Beneficiary and deliver physical custody of such Securities to the Beneficiary.

6.7    Custodian shall provide the Beneficiary and Reinsurer with the reports and notices required under Sections 2.6 and 2.7 of this Agreement.

SECTION 7 – ACCESS TO REPORTS

7.1    The Beneficiary, by its duly authorized representatives, shall have the right at any reasonable time to examine all papers in the possession of the Reinsurer and the Custodian applicable to this Agreement and the Custodial Fund deposited and maintained hereunder.

SECTION 8 – TERMINATION

8.1    The Reinsurer may terminate this Agreement at any time by paying in cash to the Beneficiary or furnishing a bank letter of credit to the Beneficiary in an amount equal to the total net balance due the Beneficiary u nder the Reinsurance Agreement, where the net balance due the Beneficiary is defined as the full amount of the Reinsurer's Obligations (as defined in Section 4.3 (d) due or which may become due under the Reinsurance Agreement less Obligations paid by the Reinsurer under said Contract; provided however, that the Custodian shall release Securities held and deposited with the Custodian under this Agreement only upon written notice from the Beneficiary that such payment by the Reinsurer has been duly made.  Any bank letter of credit furnished pursuant to this provision shall comply in all respects with the applicable provisions of the Illinois and New York Insurance Laws.

8.2    Except for terminations by the Reinsurer pursuant to Section 8.1,the Reinsurer may not terminate this Agreement unless at least thirty (30) days, but not more than forty-five (45) days, prior to termination of the Custodial Fund written notification of termination shall be delivered by the Custodian to the Beneficiary.

8.3    Upon termination of the Custodial Fund, all Securities not previously withdrawn by the Beneficiary shall, with written approval by the Beneficiary, be delivered over the Reinsurer by the Custodian

SECTION 9 – CONSTRUCTION AND EFFECT

       This Agreement and all proceedings pursuant hereto shall be governed by the law of the State of Illinois.

9.2    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.

9.3    This Agreement may be executed in any number of counterparts or by attached documents, all of which shall constitue one and the same original.

SECTION 10 – ADDRESSES FOR NOTICES

10.1   All notices, letters, telexes or other communications between any one party to this Agreement and any other should be addressed as follows:

       (a).    Reinsurer:      Mardian Reinsurance, Limited
                               209 Factory Ave., Syracuse, NY 13208
                               Attn:  Mark Fiorini

       (b).    Beneficiary:    Heritage Warranty Mutual Insurance RRG, Inc.
                               8055 "O" Street, Lincoln, NE 68510
                               Attn:  Peter Knolla, Senior Vice President

       (c).    Custodian:      Smith Hayes Advisers, Inc.
                               200 Centre Terrace, 1225 L Street, PO Box 83000
                               Lincoln, Nebraska 68501
                               Attn:  Lisa Smith

## SECTION 11 – AUTHORIZATIONS

11.1    Upon the execution of this Agreement, the Reinsurer and the Beneficiary each shall provide the Custodian with a list, certified by their respective Secretaries, of the names and signatures of those persons authorized to furnish the Custodian with the directions and approvals contemplated hereunder on behalf of those parties. Until notified in writing in the same manner of any additions to or deletions from such list, the Custodian may continue to rely upon the same for purposes of this Agreement.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement on the dates set forth below.

Dated:  6-26-03

REINSURER

By: _____
        Mark Fiorini

Dated:

BENEFICIARY

By: _____
        Peter Knolla, Senior Vice President

Dated:

CUSTODIAN

By: _____
        Lisa Smith

# REINSURANCE CUSTODIAL AGREEMENT

Effective:  March 15, 2003

entered into by and among

**Marion Reinsurance, Ltd.**
(hereinafter referred to as the "Reinsurer")

and

**Heritage Warranty Mutual Insurance RRG, Inc.**
(hereinafter referred to as the "Beneficiary")

and

**Smith Hayes Advisers, Inc.**
(hereinafter referred to as the "Custodian")

## SECTION 1 – PURPOSE OF AGREEMENT

1.1     Pursuant to the terms hereof, Reinsurer, Beneficiary, and Custodian hereby create a Custodial account for the sole use and benefit of the Beneficiary.  The Reinsurer obligates itself to deliver to and deposit with the Custodian "Securities" (as defined in Section 3.1) which shall be received and held by the Custodian in accordance with the terms and conditions of this Agreement.  The Securities thus held by the Custodian are hereinafter referred to as the "Custodial Fund."

1.2     The rights and obligations of Reinsurer, Custodian and Beneficiary under this Agreement are not subject to any conditions or qualifications not stated herein.

## SECTION 2 – REINSURER'S DEPOSITS TO AND WITHDRAWALS FROM FUND

2.1     Within seven (7) days after the effective date of this Agreement first set forth above, the Reinsurer shall deliver or transfer to the Custodian Securities with a market value (determined in accordance with Section 3.3) of not less than the full amount of the Reinsurer's Obligations (as defined in Section 4.3(d), due or which may become due under a certain Quota Share Reinsurance Agreement effective between the Reinsurer and Beneficiary, less Obligations paid by the Reinsurer under said agreement (hereinafter referred to as the "Reinsurance Agreement").

2.2     Within forty-five (45) days after the end of each calendar quarter, the Reinsurer shall deposit with the Custodian such additional Securities as may be necessary to increase the aggregate market value of the Custodial Fund to an amount at least equal to the amount required under Section 2.1.

2.3     In the event the aggregate market value of the Custodial Fund immediately after each calendar quarter is greater than the amount required in Section 2.2, the Reinsurer may withdraw Securities from the Custodial Fund so as to reduce the aggregate market value of the Custodial Fund to an amount not less than the amount required in Section 2.2.  The Custodian shall permit such withdrawal upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

.4     The Reinsurer may at any time withdraw Securities from the Custodial Fund provided that concurrently therewith Securities of equal or greater market value are deposited in the Custodial Fund, and Custodian shall

permit such substitution of Securities upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.5 All Securities, other than cash, deposited by the Reinsurer with the Custodian pursuant to Sections 2.1., 2.2, or 2.4 shall be accompanied by executed assignments, endorsements in blank or stock powers as appropriate to enable the Beneficiary to transfer title to such Securities pursuant to the Beneficiary's right and authority under Section 4. Any such instruments shall be held and safeguarded by the Custodian, and delivered to the Beneficiary if the Beneficiary is entitled under Section 4 to take possession of the Securities applicable thereto, or returned to the Reinsurer with any withdrawals of the applicable Securities by the Reinsurer pursuant to Sections 2.3, 2.4 or 8.

2.6 Custodian agrees to provide to the Beneficiary and Reinsurer with written notice of any deposits to or withdrawals from the Custodial Fund within ten (10) days after each such deposit or withdrawal.

## SECTION 3 – SECURITIES

3.1 The term "Securities" as used herein is defined as any combination of (a) cash; (b) certificates of deposit issued by any national or state chartered bank or savings and loan association which shall be payable in United States dollars; (c) United States Government issued or guaranteed bonds, bills or notes; or (d) any other bonds or other investments of the types specified in subsections (1), (2), (3) and (13) of Section 1404 of the New York Insurance Law; provided that all such Securities deposited in the Custodial Fund hereunder shall constitute admitted assets and shall comply in all respects with the investment rules and limitations prescribed by the applicable insurance laws and regulations of the states of South Carolina and New York.

3.2 Upon receipt of prior approval by the Reinsurer, the Custodian is authorized to invest any cash on deposit in the Custodial Fund, provided that all such investments shall fall within one of the categories of investments set forth in Section 3.1.

3.3 For the purposes of this Agreement, the market value of Securities shall be determined as follows: (a) at the time any Securities are deposited initially with the Custodian, and as respects Securities on deposit at the end of each calendar quarter, the Reinsurer shall in good faith place a tentative market value on said Securities and shall notify the Beneficiary of such valuation by supplement to the Custodian's statement of assets for the calendar quarter in question; (b) if the Beneficiary disagrees with such tentative market valuation, it may so notify the Reinsurer within 30 days after the date it receives the Custodian's quarterly statement of assets and the Reinsurer's supplement thereto; and (c) in the event the parties cannot resolve any difference with respect to the market value of the Securities, the market value of the security in dispute shall be determined by using the definition of "value" set forth in the Investment Company Act of 1940, Section 2(a) (41).

## SECTION 4 – BENEFICIARY'S CLAIM ON CUSTODIAL FUND

4.1 Beneficiary may withdraw assets from the Securities deposited in the Custodial Fund at any time, and without notice to the Reinsurer, and at the Beneficiary's option, may hold such Securities or sell the same at public or private sale and exercise such other rights as may be permitted by applicable statute; provided, however, that the Beneficiary first gives notice to the Custodian in accordance with Section 4.2 and that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.2 The Beneficiary may demand possession of the Custodial Fund form the Custodian, and the Custodian is required immediately to deliver physical custody of the Securities in the Custodial Fund to the Beneficiay, solely upon receipt by the Custodian of the Beneficiary's written notice stating that the Beneficiary is demanding possession of all Securities in the Custodial Fund pursuant to Section 4 of this Agreement provide however that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

2

4.3     In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2 herein, the Beneficiary shall deposit the entire Custodial Fund in a separate account, in the name of the Beneficiary in any United States bank or Custodial company, apart from its general assets, in Custodial for such uses as are specified below. The Beneficiary shall use and apply any amounts withdrawn form the Custodial Fund and deposited in said separate Custodial account, without diminution because of the insolvency of the Beneficiary or the Reinsurer, only for the following purposes:

a)  to pay or reimburse the Beneficiary for the Reinsurer's share under the Reinsurance Agreement regarding any losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer or for unearned premiums due to the Beneficiary, if not otherwise paid by the Reinsurer;

b)  to make payment to the Reinsurer of any amounts held in the Custodial Fund that exceed 102 percent of the actual amount required to fund the Obligations (as defined in subparagraph (d) below) under the Reinsurance Agreement; or

c)  where the Beneficiary has received notification of termination of the Custodial Fund pursuant to Section 8.2, and where the Reinsurer's Obligation under the Reinsurance Agreement remain unliquidated and undischarged ten (10) days prior to such termination date, to maintain said separate Custodial account for such uses and purposes specified in (a) and (b) above as may remain executory after such withdrawal and for any period after such termination date.

d)  "Obligations" within the meaning of the Section and this Agreement, means:

(i)  losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer;

(ii) reserves for losses reported and outstanding;

(iii) reserves for losses incurred but not reported; and

(iv) reserves for allocated loss expenses and unearned premiums.

4.4     In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2, the Reinsurer shall continue to be liable to Beneficiary for any amount by which balances due the Beneficiary under the Reinsurance Agreement exceed the aggregate market value of the Securities withdrawn from the Custodial Fund as of the date of withdrawal. The aggregate market value of the Securities shall be determined in accordance with Section 3.3 (c).

SECTION 5 – EXPENSES

5.1     Any interest of dividends from Securities deposited in the Custodial Fund shall be payable by the Custodian to the Reinsurer upon receipt by the Custodian.

5.2     All fees and expenses charged by the Custodian for its services under the terms of this Agreement shall be paid by the Reinsurer and in no event shall the Custodian withdraw any amount from the Custodial Fund for the purposes of paying compensation to, or reimbursing any expenses of, the Custodian.

SECTION 6 – CUSTODIAN

6.1     The Custodian shall receive, hold, and safeguard all Securities deposited under this Agreement and shall determine that all such Securities are in such form that the Beneficiary, or the Custodian upon direction by the Beneficiary, may whenever necessary negotiate any such Securities, without consent or signature from the Reinsurer or any other person or entity. The Custodian shall not be responsible for the adequacy of the

3

Custodial Fund, or for the valuation of the same or of the Securities from time to time deposited in, withdrawn from, or comprising the Custodial Fund. The Custodian also shall have no power or duty to collect any Securities from the Reinsurer or to enforce the provisions hereof regarding the deposit or withdrawal of Securites except as in herein specifically provided.

6.2     The Custodian shall be liable for its own negligence, willful misconduct or lack of good faith in performing its obligations under this Agreement. In the absence of such liability, the Custodian shall be indemnified by the Reinsurer for actions taken and not taken by the Custodian in performing its obligations hereunder, and for any legal expenses or other costs which the Custodian may reasonably incur with respect to such acts or failures to act or the defense therof.

6.3     The Custodian hereby waives any right of set-off and all other rights and remedies against or affecting the Custodial Fund.

6.4     The Custodian agrees to provide to the Beneficiary and the Reinsurer a statement of all assets in the Custodial Fund upon its inception and at intervals no less frequent than the end of each calendar quarter. Such reports shall identify all deposits, withdrawals and substitutions made during the preceding calendar quarter and shall list all Securities held in the Custodial Fund as of the last day of said quarter.

6.5     The Custodian may at any time resign from and terminate its capacity hereunder by written notice to both the Beneficiary and the Reinsurer effective not less than ninety (90) days after receipt by the Beneficiary and Reinsurer of the notice; provided that no such resignation shall be effective until a successor Custodian (the "Successor Custodian") has been duly appointed and approved by the Beneficiary and Reinsurer and all Securities in the Custodial Fund have been duly transferred to the Successor Custodian or, in the event a Successor Custodian is not appointed within ninety (90) days of the receipt of said notice, the Custodial Fund has been transferred to the Beneficiary as provided herein.

The Reinsurer, upon receipt of the above notice of resignation, shall undertake to obtain the agreement of a Successor Custodian to act in accordance with all agreements of the Custodian hereunder. The choice of Successor Custodian is subject to approval by the Beneficiary, which approval shall not be unreasonably withheld if the Successor Custodian so chosen is chartered as a national or state bank and has capital and surplus of at least US $100,000,000. In the event the Reinsurer is unable to obtain such an approved Successor Custodian within ninety (90) days from its receipt of notice from the Custodian, the Custodian is authorized to deliver the Custodial Fund to the Beneficiary. In such event, the Beneficiary shall, until an approved Successor Custodian if found, hold the Custodial Fund pursuant to the terms hereof, being fully substituted for the Custodian except that Section 6 hereof shall not apply.

Upon the Custodian's delivery of the Custodial Fund to the Successor Custodian or, if none is approved, to the Beneficiary along with a closing statement showing all transactions relating to the Custodial Fund since the date of the Custodian's last quarterly report, the Custodian shall be discharged of further responsibilities hereunder.

6.6     Custodian, upon written demand of the Beneficiary pursuant to Section 4.1 and 4.2 herein, shall immediately take any and all steps necessary to transfer absolutely and unequivocally all right, title and interest in the Securities held in the Custodial Fund to the Beneficiary and deliver physical custody of such Securities to the Beneficiary.

6.7     Custodian shall provide the Beneficiary and Reinsurer with the reports and notices required under Sections 2.6 and 2.7 of this Agreement.

## SECTION 7 – ACCESS TO REPORTS

7.1     The Beneficiary, by its duly authorized representatives, shall have the right at any reasonable time to examine all papers in the possession of the Reinsurer and the Custodian applicable to this Agreement and the Custodial Fund deposited and maintained hereunder.

## SECTION 8 – TERMINATION

8.1     The Reinsurer may terminate this Agreement at any time by paying in cash to the Beneficiary or furnishing a bank letter of credit to the Beneficiary in an amount equal to the total net balance due the Beneficiary u nder the Reinsurance Agreement, where the net balance due the Beneficiary is defined as the full amount of the Reinsurer's Obligations (as defined in Section 4.3 (d) due or which may become due under the Reinsurance Agreement less Obligations paid by the Reinsurer under said Contract; provided however, that the Custodian shall release Securities held and deposited with the Custodian under this Agreement only upon written notice from the Beneficiary that such payment by the Reinsurer has been duly made.  Any bank letter of credit furnished pursuant to this provision shall comply in all respects with the applicable provisions of the Illinois and New York Insurance Laws.

8.2     Except for terminations by the Reinsurer pursuant to Section 8.1,the Reinsurer may not terminate this Agreement unless at least thirty (30) days, but not more than forty-five (45) days, prior to termination of the Custodial Fund written notification of termination shall be delivered by the Custodian to the Beneficiary.

8.3     Upon termination of the Custodial Fund, all Securities not previously withdrawn by the Beneficiary shall, with written approval by the Beneficiary, be delivered over the Reinsurer by the Custodian

## SECTION 9 – CONSTRUCTION AND EFFECT

9.1     This Agreement and all proceedings pursuant hereto shall be governed by the law of the State of Illinois.

9.2     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.

9.3     This Agreement may be executed in any number of counterparts or by attached documents, all of which shall constitue one and the same original.

## SECTION 10 – ADDRESSES FOR NOTICES

10.1    All notices, letters, telexes or other communications between any one party to this Agreement and any other should be addressed as follows:

    (a).    Reinsurer:      Marion Reinsurance, Ltd.
                            1045 Route 109, Suite 105, Lindenhurst, NY 11757
                            Attn:  Anthony Pellarin

    (b).    Beneficiary:    Heritage Warranty Mutual Insurance RRG, Inc.
                            8055 "O" Street, Lincoln, NE 68510
                            Attn:  Peter Knolla, Senior Vice President

    (c).    Custodian:      Smith Hayes Advisers, Inc.
                            200 Centre Terrace, 1225 L Street, PO Box 83000
                            Lincoln, Nebraska 68501
                            Attn:  Lisa Smith

## SECTION 11 – AUTHORIZATIONS

11.1    Upon the execution of this Agreement, the Reinsurer and the Beneficiary each shall provide the Custodian with a list, certified by their respective Secretaries, of the names and signatures of those persons authorized to furnish the Custodian with the directions and approvals contemplated hereunder on behalf of those parties. Until notified in writing in the same manner of any additions to or deletions from such list, the Custodian may continue to rely upon the same for purposes of this Agreement.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement on the dates set forth below.

Dated:                                  REINSURER

                                        By: _____
                                             Anthony Pellarin

Dated:                                  BENEFICIARY

                                        By: _____
                                             Peter Knolla, Senior Vice President

Dated:                                  CUSTODIAN

                                        By: _____
                                             Lisa Smith

6

# REINSURANCE CUSTODIAL AGREEMENT

Effective: <u>January 1, 2004</u>

entered into by and among

**<u>Fuccillo Reinsurance Company, Ltd.</u>**
(hereinafter referred to as the "Reinsurer")

and

<u>Heritage Warranty Mutual Insurance RRG, Inc.</u>
(hereinafter referred to as the "Beneficiary")

and

_____
(hereinafter referred to as the "Custodian")

## SECTION 1 – PURPOSE OF AGREEMENT

1.1    Pursuant to the terms hereof, Reinsurer, Beneficiary, and Custodian hereby create a Custodial account for the sole use and benefit of the Beneficiary. The Reinsurer obligates itself to deliver to and deposit with the Custodian "Securities" (as defined in Section 3.1) which shall be received and held by the Custodian in accordance with the terms and conditions of this Agreement. The Securities thus held by the Custodian are hereinafter referred to as the "Custodial Fund."

1.2    The rights and obligations of Reinsurer, Custodian and Beneficiary under this Agreement are not subject to any conditions or qualifications not stated herein.

## SECTION 2 – REINSURER'S DEPOSITS TO AND WITHDRAWALS FROM FUND

2.1    Within seven (7) days after the effective date of this Agreement first set forth above, the Reinsurer shall deliver or transfer to the Custodian Securities with a market value (determined in accordance with Section 3.3) of not less than the full amount of the Reinsurer's Obligations (as defined in Section 4.3(d), due or which may become due under a certain Quota Share Reinsurance Agreement effective between the Reinsurer and Beneficiary, less Obligations paid by the Reinsurer under said agreement (hereinafter referred to as the "Reinsurance Agreement").

2.2    Within forty-five (45) days after the end of each calendar quarter, the Reinsurer shall deposit with the Custodian such additional Securities as may be necessary to increase the aggregate market value of the Custodial Fund to an amount at least equal to the amount required under Section 2.1.

2.3    In the event the aggregate market value of the Custodial Fund immediately after each calendar quarter is greater than the amount required in Section 2.2, the Reinsurer may withdraw Securities from the Custodial Fund so as to reduce the aggregate market value of the Custodial Fund to an amount not less than the amount required in Section 2.2. The Custodian shall permit such withdrawal upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.4    The Reinsurer may at any time withdraw Securities from the Custodial Fund provided that concurrently therewith Securities of equal or greater market value are deposited in the Custodial Fund, and Custodian shall permit such substitution of Securities upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.5 All Securities, other than cash, deposited by the Reinsurer with the Custodian pursuant to Sections 2.1., 2.2, or 2.4 shall be accompanied by executed assignments, endorsements in blank or stock powers as appropriate to enable the Beneficiary to transfer title to such Securities pursuant to the Beneficiary's right and authority under Section 4. Any such instruments shall be held and safeguarded by the Custodian, and delivered to the Beneficiary if the Beneficiary is entitled under Section 4 to take possession of the Securities applicable thereto, or returned to the Reinsurer with any withdrawals of the applicable Securities by the Reinsurer pursuant to Sections 2.3, 2.4 or 8.

2.6 Custodian agrees to provide to the Beneficiary and Reinsurer with written notice of any deposits to or withdrawals from the Custodial Fund within ten (10) days after each such deposit or withdrawal.

## SECTION 3 – SECURITIES

3.1 The term "Securities" as used herein is defined as any combination of (a) cash; (b) certificates of deposit issued by any national or state chartered bank or savings and loan association which shall be payable in United States dollars; (c) United States Government issued or guaranteed bonds, bills or notes; or (d) any other bonds or other investments of the types specified in subsections (1), (2), (3) and (13) of Section 1404 of the New York Insurance Law; provided that all such Securities deposited in the Custodial Fund hereunder shall constitute admitted assets and shall comply in all respects with the investment rules and limitations prescribed by the applicable insurance laws and regulations of the states of South Carolina and New York.

3.2 Upon receipt of prior approval by the Reinsurer, the Custodian is authorized to invest any cash on deposit in the Custodial Fund, provided that all such investments shall fall within one of the categories of investments set forth in Section 3.1.

3.3 For the purposes of this Agreement, the market value of Securities shall be determined as follows: (a) at the time any Securities are deposited initially with the Custodian, and as respects Securities on deposit at the end of each calendar quarter, the Reinsurer shall in good faith place a tentative market value on said Securities and shall notify the Beneficiary of such valuation by supplement to the Custodian's statement of assets for the calendar quarter in question; (b) if the Beneficiary disagrees with such tentative market valuation, it may so notify the Reinsurer within 30 days after the date it receives the Custodian's quarterly statement of assets and the Reinsurer's supplement thereto; and (c) in the event the parties cannot resolve any difference with respect to the market value of the Securities, the market value of the security in dispute shall be determined by using the definition of "value" set forth in the Investment Company Act of 1940, Section 2(a) (41).

## SECTION 4 – BENEFICIARY'S CLAIM ON CUSTODIAL FUND

4.1 Beneficiary may withdraw assets from the Securities deposited in the Custodial Fund at any time, and without notice to the Reinsurer, and at the Beneficiary's option, may hold such Securities or sell the same at public or private sale and exercise such other rights as may be permitted by applicable statute; provided, however, that the Beneficiary first gives notice to the Custodian in accordance with Section 4.2 and that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.2 The Beneficiary may demand possession of the Custodial Fund form the Custodian, and the Custodian is required immediately to deliver physical custody of the Securities in the Custodial Fund to the Beneficiay, solely upon receipt by the Custodian of the Beneficiary's written notice stating that the Beneficiary is demanding possession of all Securities in the Custodial Fund pursuant to Section 4 of this Agreement provide however that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.3 In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2 herein, the Beneficiary shall deposit the entire Custodial Fund in a separate account, in the name of the

Heritage Reinsurance doc

Beneficiary in any United States bank or Custodial company, apart from its general assets, in Custodial for such uses as are specified below. The Beneficiary shall use and apply any amounts withdrawn form the Custodial Fund and deposited in said separate Custodial account, without diminution because of the insolvency of the Beneficiary or the Reinsurer, only for the following purposes:

a)  to pay or reimburse the Beneficiary for the Reinsurer's share under the Reinsurance Agreement regarding any losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer or for unearned premiums due to the Beneficiary, if not otherwise paid by the Reinsurer;

b)  to make payment to the Reinsurer of any amounts held in the Custodial Fund that exceed 102 percent of the actual amount required to fund the Obligations (as defined in subparagraph (d) below) under the Reinsurance Agreement; or

c)  where the Beneficiary has received notification of termination of the Custodial Fund pursuant to Section 8.2, and where the Reinsurer's Obligation under the Reinsurance Agreement remain unliquidated and undischarged ten (10) days prior to such termination date, to maintain said separate Custodial account for such uses and purposes specified in (a) and (b) above as may remain executory after such withdrawal and for any period after such termination date.

d)  "Obligations" within the meaning of the Section and this Agreement, means:

> (i)  losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer;
>
> (ii)  reserves for losses reported and outstanding;
>
> (iii) reserves for losses incurred but not reported; and
>
> (iv) reserves for allocated loss expenses and unearned premiums.

4.4  In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2, the Reinsurer shall continue to be liable to Beneficiary for any amount by which balances due the Beneficiary under the Reinsurance Agreement exceed the aggregate market value of the Securities withdrawn from the Custodial Fund as of the date of withdrawal. The aggregate market value of the Securities shall be determined in accordance with Section 3.3 (c).

SECTION 5 – EXPENSES

5.1  Any interest of dividends from Securities deposited in the Custodial Fund shall be payable by the Custodian to the Reinsurer upon receipt by the Custodian.

5.2  All fees and expenses charged by the Custodian for its services under the terms of this Agreement shall be paid by the Reinsurer and in no event shall the Custodian withdraw any amount from the Custodial Fund for the purposes of paying compensation to, or reimbursing any expenses of, the Custodian.

SECTION 6 – CUSTODIAN

6.1  The Custodian shall receive, hold, and safeguard all Securities deposited under this Agreement and shall determine that all such Securities are in such form that the Beneficiary, or the Custodian upon direction by the Beneficiary, may whenever necessary negotiate any such Securities, without consent or signature from the Reinsurer or any other person or entity. The Custodian shall not be responsible for the adequacy of the Custodial Fund, or for the valuation of the same or of the Securities from time to time deposited in, withdrawn from, or comprising the Custodial Fund. The Custodian also shall have no power or duty to collect any

Heritage Reinsurance doc

Securities from the Reinsurer or to enforce the provisions hereof regarding the deposit or withdrawal of Securites except as in herein specifically provided.

6.2     The Custodian shall be liable for its own negligence, willful misconduct or lack of good faith in performing its obligations under this Agreement. In the absence of such liability, the Custodian shall be indemnified by the Reinsurer for actions taken and not taken by the Custodian in performing its obligations hereunder, and for any legal expenses or other costs which the Custodian may reasonably incur with respect to such acts or failures to act or the defense therof.

6.3     The Custodian hereby waives any right of set-off and all other rights and remedies against or affecting the Custodial Fund.

6.4     The Custodian agrees to provide to the Beneficiary and the Reinsurer a statement of all assets in the Custodial Fund upon its inception and at intervals no less frequent than the end of each calendar quarter. Such reports shall identify all deposits, withdrawals and substitutions made during the preceding calendar quarter and shall list all Securities held in the Custodial Fund as of the last day of said quarter.

6.5     The Custodian may at any time resign from and terminate its capacity hereunder by written notice to both the Beneficiary and the Reinsurer effective not less than ninety (90) days after receipt by the Beneficiary and Reinsurer of the notice; provided that no such resignation shall be effective until a successor Custodian (the "Successor Custodian") has been duly appointed and approved by the Beneficiary and Reinsurer and all Securities in the Custodial Fund have been duly transferred to the Successor Custodian or, in the event a Successor Custodian is not appointed within ninety (90) days of the receipt of said notice, the Custodial Fund has been transferred to the Beneficiary as provided herein.

The Reinsurer, upon receipt of the above notice of resignation, shall undertake to obtain the agreement of a Successor Custodian to act in accordance with all agreements of the Custodian hereunder. The choice of Successor Custodian is subject to approval by the Beneficiary, which approval shall not be unreasonably withheld if the Successor Custodian so chosen is chartered as a national or state bank and has capital and surplus of at least US $100,000,000. In the event the Reinsurer is unable to obtain such an approved Successor Custodian within ninety (90) days from its receipt of notice from the Custodian, the Custodian is authorized to deliver the Custodial Fund to the Beneficiary. In such event, the Beneficiary shall, until an approved Successor Custodian if found, hold the Custodial Fund pursuant to the terms hereof, being fully substituted for the Custodian except that Section 6 hereof shall not apply.

Upon the Custodian's delivery of the Custodial Fund to the Successor Custodian or, if none is approved, to the Beneficiary along with a closing statement showing all transactions relating to the Custodial Fund since the date of the Custodian's last quarterly report, the Custodian shall be discharged of further responsibilities hereunder.

6.6     Custodian, upon written demand of the Beneficiary pursuant to Section 4.1 and 4.2 herein, shall immediately take any and all steps necessary to transfer absolutely and unequivocally all right, title and interest in the Securities held in the Custodial Fund to the Beneficiary and deliver physical custody of such Securities to the Beneficiary.

6.7     Custodian shall provide the Beneficiary and Reinsurer with the reports and notices required under Sections 2.6 and 2.7 of this Agreement.

SECTION 7 – ACCESS TO REPORTS

Heritage Reinsurance doc

7.1 The Beneficiary, by its duly authorized representatives, shall have the right at any reasonable time to examine all papers in the possession of the Reinsurer and the Custodian applicable to this Agreement and the Custodial Fund deposited and maintained hereunder.

## SECTION 8 – TERMINATION

8.1 The Reinsurer may terminate this Agreement at any time by paying in cash to the Beneficiary or furnishing a bank letter of credit to the Beneficiary in an amount equal to the total net balance due the Beneficiary u nder the Reinsurance Agreement, where the net balance due the Beneficiary is defined as the full amount of the Reinsurer's Obligations (as defined in Section 4.3 (d) due or which may become due under the Reinsurance Agreement less Obligations paid by the Reinsurer under said Contract; provided however, that the Custodian shall release Securities held and deposited with the Custodian under this Agreement only upon written notice from the Beneficiary that such payment by the Reinsurer has been duly made. Any bank letter of credit furnished pursuant to this provision shall comply in all respects with the applicable provisions of the Illinois and New York Insurance Laws.

8.2 Except for terminations by the Reinsurer pursuant to Section 8.1, the Reinsurer may not terminate this Agreement unless at least thirty (30) days, but not more than forty-five (45) days, prior to termination of the Custodial Fund written notification of termination shall be delivered by the Custodian to the Beneficiary.

8.3 Upon termination of the Custodial Fund, all Securities not previously withdrawn by the Beneficiary shall, with written approval by the Beneficiary, be delivered over the Reinsurer by the Custodian

## SECTION 9 – CONSTRUCTION AND EFFECT

9.1 This Agreement and all proceedings pursuant hereto shall be governed by the law of the State of Illinois.

9.2 This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.

9.3 This Agreement may be executed in any number of counterparts or by attached documents, all of which shall constitue one and the same original.

## SECTION 10 – ADDRESSES FOR NOTICES

10.1 All notices, letters, telexes or other communications between any one party to this Agreement and any other should be addressed as follows:

(a). Reinsurer: _Thomas J. Latant_
_Tucallo Reinsurance Company Ltd_
_7811 Pebble Springs Ct, Sandy, UT 84093_

(b). Beneficiary: Heritage Warranty Mutual Insurance RRG, Inc.
8055 "O" Street, Lincoln, NE 68510
Attn: Peter Knolla, Senior Vice President

(c). Custodian: 

## SECTION 11 – AUTHORIZATIONS

Heritage Reinsurance doc

11.1 Upon the execution of this Agreement, the Reinsurer and the Beneficiary each shall provide the Custodian with a list, certified by their respective Secretaries, of the names and signatures of those persons authorized to furnish the Custodian with the directions and approvals contemplated hereunder on behalf of those parties. Until notified in writing in the same manner of any additions to or deletions from such list, the Custodian may continue to rely upon the same for purposes of this Agreement.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement on the dates set forth below.

Dated:                            REINSURER

By: _____
Signature

_____
Printed Name

_____
Company Name & Title

Dated:                            BENEFICIARY

By: _____
Peter Knolla, Senior Vice President, Heritage Warranty

Dated:                            CUSTODIAN

By: _____
Signature

_____
Printed Name

_____
Company Name & Title

Heritage Reinsurance doc

## REINSURANCE CUSTODIAL AGREEMENT

Effective: March 15, 2003

entered into by and among

### Damar Reinsurance, Ltd.
(hereinafter referred to as the "Reinsurer")

and

### Heritage Warranty Mutual Insurance RRG, Inc.
(hereinafter referred to as the "Beneficiary")

and

### Smith Hayes Advisers, Inc.
(hereinafter referred to as the "Custodian")

## SECTION 1 – PURPOSE OF AGREEMENT

1.1 Pursuant to the terms hereof, Reinsurer, Beneficiary, and Custodian hereby create a Custodial account for the sole use and benefit of the Beneficiary. The Reinsurer obligates itself to deliver to and deposit with the Custodian "Securities" (as defined in Section 3.1) which shall be received and held by the Custodian in accordance with the terms and conditions of this Agreement. The Securities thus held by the Custodian are hereinafter referred to as the "Custodial Fund."

1.2 The rights and obligations of Reinsurer, Custodian and Beneficiary under this Agreement are not subject to any conditions or qualifications not stated herein.

## SECTION 2 – REINSURER'S DEPOSITS TO AND WITHDRAWALS FROM FUND

2.1 Within seven (7) days after the effective date of this Agreement first set forth above, the Reinsurer shall deliver or transfer to the Custodian Securities with a market value (determined in accordance with Section 3.3) of not less than the full amount of the Reinsurer's Obligations (as defined in Section 4.3(d), due or which may become due under a certain Quota Share Reinsurance Agreement effective between the Reinsurer and Beneficiary, less Obligations paid by the Reinsurer under said agreement (hereinafter referred to as the "Reinsurance Agreement").

2.2 Within forty-five (45) days after the end of each calendar quarter, the Reinsurer shall deposit with the Custodian such additional Securities as may be necessary to increase the aggregate market value of the Custodial Fund to an amount at least equal to the amount required under Section 2.1.

2.3 In the event the aggregate market value of the Custodial Fund immediately after each calendar quarter is greater than the amount required in Section 2.2, the Reinsurer may withdraw Securities from the Custodial Fund so as to reduce the aggregate market value of the Custodial Fund to an amount not less than the amount required in Section 2.2. The Custodian shall permit such withdrawal upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.4 The Reinsurer may at any time withdraw Securities from the Custodial Fund provided that concurrently therewith Securities of equal or greater market value are deposited in the Custodial Fund, and Custodian shall

permit such substitution of Securities upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.5 All Securities, other than cash, deposited by the Reinsurer with the Custodian pursuant to Sections 2.1., 2.2, or 2.4 shall be accompanied by executed assignments, endorsements in blank or stock powers as appropriate to enable the Beneficiary to transfer title to such Securities pursuant to the Beneficiary's right and authority under Section 4. Any such instruments shall be held and safeguarded by the Custodian, and delivered to the Beneficiary if the Beneficiary is entitled under Section 4 to take possession of the Securities applicable thereto, or returned to the Reinsurer with any withdrawals of the applicable Securities by the Reinsurer pursuant to Sections 2.3, 2.4 or 8.

2.6 Custodian agrees to provide to the Beneficiary and Reinsurer with written notice of any deposits to or withdrawals from the Custodial Fund within ten (10) days after each such deposit or withdrawal.

## SECTION 3 – SECURITIES

3.1 The term "Securities" as used herein is defined as any combination of (a) cash; (b) certificates of deposit issued by any national or state chartered bank or savings and loan association which shall be payable in United States dollars; (c) United States Government issued or guaranteed bonds, bills or notes; or (d) any other bonds or other investments of the types specified in subsections (1), (2), (3) and (13) of Section 1404 of the New York Insurance Law; provided that all such Securities deposited in the Custodial Fund hereunder shall constitute admitted assets and shall comply in all respects with the investment rules and limitations prescribed by the applicable insurance laws and regulations of the states of South Carolina and New York.

3.2 Upon receipt of prior approval by the Reinsurer, the Custodian is authorized to invest any cash on deposit in the Custodial Fund, provided that all such investments shall fall within one of the categories of investments set forth in Section 3.1.

3.3 For the purposes of this Agreement, the market value of Securities shall be determined as follows: (a) at the time any Securities are deposited initially with the Custodian, and as respects Securities on deposit at the end of each calendar quarter, the Reinsurer shall in good faith place a tentative market value on said Securities and shall notify the Beneficiary of such valuation by supplement to the Custodian's statement of assets for the calendar quarter in question; (b) if the Beneficiary disagrees with such tentative market valuation, it may so notify the Reinsurer within 30 days after the date it receives the Custodian's quarterly statement of assets and the Reinsurer's supplement thereto; and (c) in the event the parties cannot resolve any difference with respect to the market value of the Securities, the market value of the security in dispute shall be determined by using the definition of "value" set forth in the Investment Company Act of 1940, Section 2(a) (41).

## SECTION 4 – BENEFICIARY'S CLAIM ON CUSTODIAL FUND

4.1 Beneficiary may withdraw assets from the Securities deposited in the Custodial Fund at any time, and without notice to the Reinsurer, and at the Beneficiary's option, may hold such Securities or sell the same at public or private sale and exercise such other rights as may be permitted by applicable statute; provided, however, that the Beneficiary first gives notice to the Custodian in accordance with Section 4.2 and that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.2 The Beneficiary may demand possession of the Custodial Fund form the Custodian, and the Custodian is required immediately to deliver physical custody of the Securities in the Custodial Fund to the Beneficiay, solely upon receipt by the Custodian of the Beneficiary's written notice stating that the Beneficiary is demanding possession of all Securities in the Custodial Fund pursuant to Section 4 of this Agreement provide however that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.3    In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2 herein, the Beneficiary shall deposit the entire Custodial Fund in a separate account, in the name of the Beneficiary in any United States bank or Custodial company, apart from its general assets, in Custodial for such uses as are specified below. The Beneficiary shall use and apply any amounts withdrawn form the Custodial Fund and deposited in said separate Custodial account, without diminution because of the insolvency of the Beneficiary or the Reinsurer, only for the following purposes:

   a)    to pay or reimburse the Beneficiary for the Reinsurer's share under the Reinsurance Agreement regarding any losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer or for unearned premiums due to the Beneficiary, if not otherwise paid by the Reinsurer;

   b)    to make payment to the Reinsurer of any amounts held in the Custodial Fund that exceed 102 percent of the actual amount required to fund the Obligations (as defined in subparagraph (d) below) under the Reinsurance Agreement; or

   c)    where the Beneficiary has received notification of termination of the Custodial Fund pursuant to Section 8.2, and where the Reinsurer's Obligation under the Reinsurance Agreement remain unliquidated and undischarged ten (10) days prior to such termination date, to maintain said separate Custodial account for such uses and purposes specified in (a) and (b) above as may remain executory after such withdrawal and for any period after such termination date.

   d)    "Obligations" within the meaning of the Section and this Agreement, means:

      (i)    losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer;

      (ii)   reserves for losses reported and outstanding;

      (iii)  reserves for losses incurred but not reported; and

      (iv)   reserves for allocated loss expenses and unearned premiums.

4.4    In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2, the Reinsurer shall continue to be liable to Beneficiary for any amount by which balances due the Beneficiary under the Reinsurance Agreement exceed the aggregate market value of the Securities withdrawn from the Custodial Fund as of the date of withdrawal. The aggregate market value of the Securities shall be determined in accordance with Section 3.3 (c).

SECTION 5 – EXPENSES

5.1    Any interest of dividends from Securities deposited in the Custodial Fund shall be payable by the Custodian to the Reinsurer upon receipt by the Custodian.

5.2    All fees and expenses charged by the Custodian for its services under the terms of this Agreement shall be paid by the Reinsurer and in no event shall the Custodian withdraw any amount from the Custodial Fund for the purposes of paying compensation to, or reimbursing any expenses of, the Custodian.

SECTION 6 – CUSTODIAN

6.1    The Custodian shall receive, hold, and safeguard all Securities deposited under this Agreement and shall determine that all such Securities are in such form that the Beneficiary, or the Custodian upon direction by the Beneficiary, may whenever necessary negotiate any such Securities, without consent or signature from the Reinsurer or any other person or entity. The Custodian shall not be responsible for the adequacy of the

Custodial Fund, or for the valuation of the same or of the Securities from time to time deposited in, withdrawn from, or comprising the Custodial Fund. The Custodian also shall have no power or duty to collect any Securities from the Reinsurer or to enforce the provisions hereof regarding the deposit or withdrawal of Securites except as in herein specifically provided.

6.2  The Custodian shall be liable for its own negligence, willful misconduct or lack of good faith in performing its obligations under this Agreement. In the absence of such liability, the Custodian shall be indemnified by the Reinsurer for actions taken and not taken by the Custodian in performing its obligations hereunder, and for any legal expenses or other costs which the Custodian may reasonably incur with respect to such acts or failures to act or the defense therof.

6.3  The Custodian hereby waives any right of set-off and all other rights and remedies against or affecting the Custodial Fund.

6.4  The Custodian agrees to provide to the Beneficiary and the Reinsurer a statement of all assets in the Custodial Fund upon its inception and at intervals no less frequent than the end of each calendar quarter. Such reports shall identify all deposits, withdrawals and substitutions made during the preceding calendar quarter and shall list all Securities held in the Custodial Fund as of the last day of said quarter.

6.5  The Custodian may at any time resign from and terminate its capacity hereunder by written notice to both the Beneficiary and the Reinsurer effective not less than ninety (90) days after receipt by the Beneficiary and Reinsurer of the notice; provided that no such resignation shall be effective until a successor Custodian (the "Successor Custodian") has been duly appointed and approved by the Beneficiary and Reinsurer and all Securities in the Custodial Fund have been duly transferred to the Successor Custodian or, in the event a Successor Custodian is not appointed within ninety (90) days of the receipt of said notice, the Custodial Fund has been transferred to the Beneficiary as provided herein.

The Reinsurer, upon receipt of the above notice of resignation, shall undertake to obtain the agreement of a Successor Custodian to act in accordance with all agreements of the Custodian hereunder. The choice of Successor Custodian is subject to approval by the Beneficiary, which approval shall not be unreasonably withheld if the Successor Custodian so chosen is chartered as a national or state bank and has capital and surplus of at least US $100,000,000. In the event the Reinsurer is unable to obtain such an approved Successor Custodian within ninety (90) days from its receipt of notice from the Custodian, the Custodian is authorized to deliver the Custodial Fund to the Beneficiary. In such event, the Beneficiary shall, until an approved Successor Custodian if found, hold the Custodial Fund pursuant to the terms hereof, being fully substituted for the Custodian except that Section 6 hereof shall not apply.

Upon the Custodian's delivery of the Custodial Fund to the Successor Custodian or, if none is approved, to the Beneficiary along with a closing statement showing all transactions relating to the Custodial Fund since the date of the Custodian's last quarterly report, the Custodian shall be discharged of further responsibilities hereunder.

6.6  Custodian, upon written demand of the Beneficiary pursuant to Section 4.1 and 4.2 herein, shall immediately take any and all steps necessary to transfer absolutely and unequivocally all right, title and interest in the Securities held in the Custodial Fund to the Beneficiary and deliver physical custody of such Securities to the Beneficiary.

6.7  Custodian shall provide the Beneficiary and Reinsurer with the reports and notices required under Sections 2.6 and 2.7 of this Agreement.

## SECTION 7 – ACCESS TO REPORTS

7.1     The Beneficiary, by its duly authorized representatives, shall have the right at any reasonable time to examine all papers in the possession of the Reinsurer and the Custodian applicable to this Agreement and the Custodial Fund deposited and maintained hereunder.

## SECTION 8 – TERMINATION

8.1     The Reinsurer may terminate this Agreement at any time by paying in cash to the Beneficiary or furnishing a bank letter of credit to the Beneficiary in an amount equal to the total net balance due the Beneficiary u nder the Reinsurance Agreement, where the net balance due the Beneficiary is defined as the full amount of the Reinsurer's Obligations (as defined in Section 4.3 (d) due or which may become due under the Reinsurance Agreement less Obligations paid by the Reinsurer under said Contract; provided however, that the Custodian shall release Securities held and deposited with the Custodian under this Agreement only upon written notice from the Beneficiary that such payment by the Reinsurer has been duly made.  Any bank letter of credit furnished pursuant to this provision shall comply in all respects with the applicable provisions of the Illinois and New York Insurance Laws.

8.2     Except for terminations by the Reinsurer pursuant to Section 8.1,the Reinsurer may not terminate this Agreement unless at least thirty (30) days, but not more than forty-five (45) days, prior to termination of the Custodial Fund written notification of termination shall be delivered by the Custodian to the Beneficiary.

8.3     Upon termination of the Custodial Fund, all Securities not previously withdrawn by the Beneficiary shall, with written approval by the Beneficiary, be delivered over the Reinsurer by the Custodian

## SECTION 9 – CONSTRUCTION AND EFFECT

9.1     This Agreement and all proceedings pursuant hereto shall be governed by the law of the State of Illinois.

9.2     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.

9.3     This Agreement may be executed in any number of counterparts or by attached documents, all of which shall constitue one and the same original.

## SECTION 10 – ADDRESSES FOR NOTICES

10.1    All notices, letters, telexes or other communications between any one party to this Agreement and any other should be addressed as follows:

    (a).    Reinsurer:    Damar Reinsurance, Limited
    209 Factory Ave., Syracuse, NY 13208
    Attn:  Mark Fiorini

    (b).    Beneficiary:    Heritage Warranty Mutual Insurance RRG, Inc.
    8055 "O" Street, Lincoln, NE 68510
    Attn:  Peter Knolla, Senior Vice President

    (c).    Custodian:    Smith Hayes Advisers, Inc.
    200 Centre Terrace, 1225 L Street, PO Box 83000
    Lincoln, Nebraska 68501
    Attn:  Lisa Smith

## SECTION 11 – AUTHORIZATIONS

11.1     Upon the execution of this Agreement, the Reinsurer and the Beneficiary each shall provide the Custodian with a list, certified by their respective Secretaries, of the names and signatures of those persons authorized to furnish the Custodian with the directions and approvals contemplated hereunder on behalf of those parties. Until notified in writing in the same manner of any additions to or deletions from such list, the Custodian may continue to rely upon the same for purposes of this Agreement.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement on the dates set forth below.

Dated: _____                          REINSURER

                                            By: _____
                                                Dan Fiorini


Dated: _____                          BENEFICIARY

                                            By: _____
                                                Peter Knolla, Senior Vice President


Dated: _____                          CUSTODIAN

                                            By: _____
                                                Lisa Smith

6

## REINSURANCE CUSTODIAL AGREEMENT

### Effective: June 2, 2003

entered into by and among

### Bradford Reinsurance Co., Ltd.
(hereinafter referred to as the "Reinsurer")

and

### Heritage Warranty Mutual Insurance RRG, Inc.
(hereinafter referred to as the "Beneficiary")

and

### Smith Barney
(hereinafter referred to as the "Custodian")

## SECTION 1 – PURPOSE OF AGREEMENT

1.1   Pursuant to the terms hereof, Reinsurer, Beneficiary, and Custodian hereby create a Custodial account for the sole use and benefit of the Beneficiary. The Reinsurer obligates itself to deliver to and deposit with the Custodian "Securities" (as defined in Section 3.1) which shall be received and held by the Custodian in accordance with the terms and conditions of this Agreement. The Securities thus held by the Custodian are hereinafter referred to as the "Custodial Fund."

1.2   The rights and obligations of Reinsurer, Custodian and Beneficiary under this Agreement are not subject to any conditions or qualifications not stated herein.

## SECTION 2 – REINSURER'S DEPOSITS TO AND WITHDRAWALS FROM FUND

2.1   Within seven (7) days after the effective date of this Agreement first set forth above, the Reinsurer shall deliver or transfer to the Custodian Securities with a market value (determined in accordance with Section 3.3) of not less than the full amount of the Reinsurer's Obligations (as defined in Section 4.3(d), due or which may become due under a certain Quota Share Reinsurance Agreement effective between the Reinsurer and Beneficiary, less Obligations paid by the Reinsurer under said agreement (hereinafter referred to as the "Reinsurance Agreement").

2.2   Within forty-five (45) days after the end of each calendar quarter, the Reinsurer shall deposit with the Custodian such additional Securities as may be necessary to increase the aggregate market value of the Custodial Fund to an amount at least equal to the amount required under Section 2.1.

2.3   In the event the aggregate market value of the Custodial Fund immediately after each calendar quarter is greater than the amount required in Section 2.2, the Reinsurer may withdraw Securities from the Custodial Fund so as to reduce the aggregate market value of the Custodial Fund to an amount not less than the amount required in Section 2.2. The Custodian shall permit such withdrawal upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.4   The Reinsurer may at any time withdraw Securities from the Custodial Fund provided that concurrently therewith Securities of equal or greater market value are deposited in the Custodial Fund, and Custodian shall permit such substitution of Securities upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.5 All Securities, other than cash, deposited by the Reinsurer with the Custodian pursuant to Sections 2.1., 2.2, or 2.4 shall be accompanied by executed assignments, endorsements in blank or stock powers as appropriate to enable the Beneficiary to transfer title to such Securities pursuant to the Beneficiary's right and authority under Section 4. Any such instruments shall be held and safeguarded by the Custodian, and delivered to the Beneficiary if the Beneficiary is entitled under Section 4 to take possession of the Securities applicable thereto, or returned to the Reinsurer with any withdrawals of the applicable Securities by the Reinsurer pursuant to Sections 2.3, 2.4 or 8.

2.6 Custodian agrees to provide to the Beneficiary and Reinsurer with written notice of any deposits to or withdrawals from the Custodial Fund within ten (10) days after each such deposit or withdrawal.

## SECTION 3 – SECURITIES

3.1 The term "Securities" as used herein is defined as any combination of (a) cash; (b) certificates of deposit issued by any national or state chartered bank or savings and loan association which shall be payable in United States dollars; (c) United States Government issued or guaranteed bonds, bills or notes; or (d) any other bonds or other investments of the types specified in subsections (1), (2), (3) and (13) of Section 1404 of the New York Insurance Law; provided that all such Securities deposited in the Custodial Fund hereunder shall constitute admitted assets and shall comply in all respects with the investment rules and limitations prescribed by the applicable insurance laws and regulations of the states of South Carolina and New York.

3.2 Upon receipt of prior approval by the Reinsurer, the Custodian is authorized to invest any cash on deposit in the Custodial Fund, provided that all such investments shall fall within one of the categories of investments set forth in Section 3.1.

3.3 For the purposes of this Agreement, the market value of Securities shall be determined as follows: (a) at the time any Securities are deposited initially with the Custodian, and as respects Securities on deposit at the end of each calendar quarter, the Reinsurer shall in good faith place a tentative market value on said Securities and shall notify the Beneficiary of such valuation by supplement to the Custodian's statement of assets for the calendar quarter in question; (b) if the Beneficiary disagrees with such tentative market valuation, it may so notify the Reinsurer within 30 days after the date it receives the Custodian's quarterly statement of assets and the Reinsurer's supplement thereto; and (c) in the event the parties cannot resolve any difference with respect to the market value of the Securities, the market value of the security in dispute shall be determined by using the definition of "value" set forth in the Investment Company Act of 1940, Section 2(a) (41).

## SECTION 4 – BENEFICIARY'S CLAIM ON CUSTODIAL FUND

4.1 Beneficiary may withdraw assets from the Securities deposited in the Custodial Fund at any time, and without notice to the Reinsurer, and at the Beneficiary's option, may hold such Securities or sell the same at public or private sale and exercise such other rights as may be permitted by applicable statute; provided, however, that the Beneficiary first gives notice to the Custodian in accordance with Section 4.2 and that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.2 The Beneficiary may demand possession of the Custodial Fund form the Custodian, and the Custodian is required immediately to deliver physical custody of the Securities in the Custodial Fund to the Beneficiay, solely upon receipt by the Custodian of the Beneficiary's written notice stating that the Beneficiary is demanding possession of all Securities in the Custodial Fund pursuant to Section 4 of this Agreement provide however that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.3    In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2 herein, the Beneficiary shall deposit the entire Custodial Fund in a separate account, in the name of the Beneficiary in any United States bank or Custodial company, apart from its general assets, in Custodial for such uses as are specified below. The Beneficiary shall use and apply any amounts withdrawn form the Custodial Fund and deposited in said separate Custodial account, without diminution because of the insolvency of the Beneficiary or the Reinsurer, only for the following purposes:

   a)  to pay or reimburse the Beneficiary for the Reinsurer's share under the Reinsurance Agreement regarding any losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer or for unearned premiums due to the Beneficiary, if not otherwise paid by the Reinsurer;

   b)  to make payment to the Reinsurer of any amounts held in the Custodial Fund that exceed 102 percent of the actual amount required to fund the Obligations (as defined in subparagraph (d) below) under the Reinsurance Agreement; or

   c)  where the Beneficiary has received notification of termination of the Custodial Fund pursuant to Section 8.2, and where the Reinsurer's Obligation under the Reinsurance Agreement remain unliquidated and undischarged ten (10) days prior to such termination date, to maintain said separate Custodial account for such uses and purposes specified in (a) and (b) above as may remain executory after such withdrawal and for any period after such termination date.

   d)  "Obligations" within the meaning of the Section and this Agreement, means:

      (i)  losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer;

      (ii)  reserves for losses reported and outstanding;

      (iii) reserves for losses incurred but not reported; and

      (iv) reserves for allocated loss expenses and unearned premiums.

4.4    In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2, the Reinsurer shall continue to be liable to Beneficiary for any amount by which balances due the Beneficiary under the Reinsurance Agreement exceed the aggregate market value of the Securities withdrawn from the Custodial Fund as of the date of withdrawal. The aggregate market value of the Securities shall be determined in accordance with Section 3.3 (c).

SECTION 5 – EXPENSES

5.1    Any interest of dividends from Securities deposited in the Custodial Fund shall be payable by the Custodian to the Reinsurer upon receipt by the Custodian.

5.2    All fees and expenses charged by the Custodian for its services under the terms of this Agreement shall be paid by the Reinsurer and in no event shall the Custodian withdraw any amount from the Custodial Fund for the purposes of paying compensation to, or reimbursing any expenses of, the Custodian.

SECTION 6 – CUSTODIAN

6.1    The Custodian shall receive, hold, and safeguard all Securities deposited under this Agreement and shall determine that all such Securities are in such form that the Beneficiary, or the Custodian upon direction by the Beneficiary, may whenever necessary negotiate any such Securities, without consent or signature from the Reinsurer or any other person or entity. The Custodian shall not be responsible for the adequacy of the

Custodial Fund, or for the valuation of the same or of the Securities from time to time deposited in, withdrawn from, or comprising the Custodial Fund. The Custodian also shall have no power or duty to collect any Securities from the Reinsurer or to enforce the provisions hereof regarding the deposit or withdrawal of Securites except as in herein specifically provided.

6.2     The Custodian shall be liable for its own negligence, willful misconduct or lack of good faith in performing its obligations under this Agreement. In the absence of such liability, the Custodian shall be indemnified by the Reinsurer for actions taken and not taken by the Custodian in performing its obligations hereunder, and for any legal expenses or other costs which the Custodian may reasonably incur with respect to such acts or failures to act or the defense therof.

6.3     The Custodian hereby waives any right of set-off and all other rights and remedies against or affecting the Custodial Fund.

6.4     The Custodian agrees to provide to the Beneficiary and the Reinsurer a statement of all assets in the Custodial Fund upon its inception and at intervals no less frequent than the end of each calendar quarter. Such reports shall identify all deposits, withdrawals and substitutions made during the preceding calendar quarter and shall list all Securities held in the Custodial Fund as of the last day of said quarter.

6.5     The Custodian may at any time resign from and terminate its capacity hereunder by written notice to both the Beneficiary and the Reinsurer effective not less than ninety (90) days after receipt by the Beneficiary and Reinsurer of the notice; provided that no such resignation shall be effective until a successor Custodian (the "Successor Custodian") has been duly appointed and approved by the Beneficiary and Reinsurer and all Securities in the Custodial Fund have been duly transferred to the Successor Custodian or, in the event a Successor Custodian is not appointed within ninety (90) days of the receipt of said notice, the Custodial Fund has been transferred to the Beneficiary as provided herein.

The Reinsurer, upon receipt of the above notice of resignation, shall undertake to obtain the agreement of a Successor Custodian to act in accordance with all agreements of the Custodian hereunder. The choice of Successor Custodian is subject to approval by the Beneficiary, which approval shall not be unreasonably withheld if the Successor Custodian so chosen is chartered as a national or state bank and has capital and surplus of at least US $100,000,000. In the event the Reinsurer is unable to obtain such an approved Successor Custodian within ninety (90) days from its receipt of notice from the Custodian, the Custodian is authorized to deliver the Custodial Fund to the Beneficiary. In such event, the Beneficiary shall, until an approved Successor Custodian if found, hold the Custodial Fund pursuant to the terms hereof, being fully substituted for the Custodian except that Section 6 hereof shall not apply.

Upon the Custodian's delivery of the Custodial Fund to the Successor Custodian or, if none is approved, to the Beneficiary along with a closing statement showing all transactions relating to the Custodial Fund since the date of the Custodian's last quarterly report, the Custodian shall be discharged of further responsibilities hereunder.

6.6     Custodian, upon written demand of the Beneficiary pursuant to Section 4.1 and 4.2 herein, shall immediately take any and all steps necessary to transfer absolutely and unequivocally all right, title and interest in the Securities held in the Custodial Fund to the Beneficiary and deliver physical custody of such Securities to the Beneficiary.

6.7     Custodian shall provide the Beneficiary and Reinsurer with the reports and notices required under Sections 2.6 and 2.7 of this Agreement.

## SECTION 7 – ACCESS TO REPORTS

7.1     The Beneficiary, by its duly authorized representatives, shall have the right at any reasonable time to examine all papers in the possession of the Reinsurer and the Custodian applicable to this Agreement and the Custodial Fund deposited and maintained hereunder.

## SECTION 8 – TERMINATION

8.1     The Reinsurer may terminate this Agreement at any time by paying in cash to the Beneficiary or furnishing a bank letter of credit to the Beneficiary in an amount equal to the total net balance due the Beneficiary u nder the Reinsurance Agreement, where the net balance due the Beneficiary is defined as the full amount of the Reinsurer's Obligations (as defined in Section 4.3 (d) due or which may become due under the Reinsurance Agreement less Obligations paid by the Reinsurer under said Contract; provided however, that the Custodian shall release Securities held and deposited with the Custodian under this Agreement only upon written notice from the Beneficiary that such payment by the Reinsurer has been duly made.  Any bank letter of credit furnished pursuant to this provision shall comply in all respects with the applicable provisions of the Illinois and New York Insurance Laws.

8.2     Except for terminations by the Reinsurer pursuant to Section 8.1,the Reinsurer may not terminate this Agreement unless at least thirty (30) days, but not more than forty-five (45) days, prior to termination of the Custodial Fund written notification of termination shall be delivered by the Custodian to the Beneficiary.

8.3     Upon termination of the Custodial Fund, all Securities not previously withdrawn by the Beneficiary shall, with written approval by the Beneficiary, be delivered over the Reinsurer by the Custodian

## SECTION 9 – CONSTRUCTION AND EFFECT

9.1     This Agreement and all proceedings pursuant hereto shall be governed by the law of the State of Illinois.

9.2     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.

9.3     This Agreement may be executed in any number of counterparts or by attached documents, all of which shall constitue one and the same original.

## SECTION 10 – ADDRESSES FOR NOTICES

10.1    All notices, letters, telexes or other communications between any one party to this Agreement and any other should be addressed as follows:

(a).    Reinsurer:      Bradford Reinsurance Co., Ltd.
                        2791 Rt. 73 South, Maple Shade, NJ 08052
                        Attn:  James S. Richardson

(b).    Beneficiary:    Heritage Warranty Mutual Insurance RRG, Inc.
                        8055 "O" Street, Lincoln, NE 68510
                        Attn:  Peter Knolla, Senior Vice President

(c).    Custodian:      Smith Barney
                        21250 Hawthorne Blvd Suite 650 Torrance CA 90503
                        Attn:  Laurie Lujan

## SECTION 11 – AUTHORIZATIONS

11.1    Upon the execution of this Agreement, the Reinsurer and the Beneficiary each shall provide the Custodian with a list, certified by their respective Secretaries, of the names and signatures of those persons authorized to furnish the Custodian with the directions and approvals contemplated hereunder on behalf of those parties. Until notified in writing in the same manner of any additions to or deletions from such list, the Custodian may continue to rely upon the same for purposes of this Agreement.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement on the dates set forth below.

Dated:                          **REINSURER**

                                By: _____
                                    James S. Richardson

Dated:                          **BENEFICIARY**

                                By: _____
                                    Peter Knolla, Senior Vice President

Dated:                          **CUSTODIAN**

                                By: _____

6

# REINSURANCE CUSTODIAL AGREEMENT

Effective: June 2, 2003

entered into by and among

<u>Alrendan RE., Ltd.</u>
(hereinafter referred to as the "Reinsurer")

and

<u>Heritage Warranty Mutual Insurance RRG, Inc.</u>
(hereinafter referred to as the "Beneficiary")

and

<u>SunTrust Bank</u>
(hereinafter referred to as the "Custodian")

## SECTION 1 – PURPOSE OF AGREEMENT

1.1    Pursuant to the terms hereof, Reinsurer, Beneficiary, and Custodian hereby create a Custodial account for the sole use and benefit of the Beneficiary. The Reinsurer obligates itself to deliver to and deposit with the Custodian "Securities" (as defined in Section 3.1) which shall be received and held by the Custodian in accordance with the terms and conditions of this Agreement. The securities thus held by the Custodian are hereinafter referred to as the "Custodial Fund."

1.2    The rights and obligations of Reinsurer, Custodian and Beneficiary under this Agreement are not subject to any conditions or qualifications not stated herein.

## SECTION 2 – REINSURER'S DEPOSITS TO AND WITHDRAWALS FROM FUND

2.1    Within seven (7) days after the effective date of this Agreement first set forth above, the Reinsurer shall deliver or transfer to the Custodian Securities with a market value (determined in accordance with Section 3.3) of not less than the full amount of the Reinsurer's Obligations (as defined in Section 4.3(d), due or which may become due under a certain Quota Share Reinsurance Agreement effective between the Reinsurer and Beneficiary, less Obligations paid by the Reinsurer under said agreement (hereinafter referred to as the "Reinsurance Agreement").

2.2    Within forty-five (45) days after the end of each calendar quarter, the Reinsurer shall deposit with the Custodian such additional securities as may be necessary to increase the aggregate market value of the Custodial Fund to an amount at least equal to the amount required under Section 2.1.

2.3    In the event the aggregate market value of the Custodial Fund immediately after each calendar quarter is greater than the amount required in Section 2.2, the Reinsurer may withdraw Securities from the Custodial Fund so as to reduce the aggregate market value of the Custodial Fund to an amount not less than the amount required in section 2.2 . The Custodian shall permit such withdrawal upon receipt by it or written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.4    The Reinsurer may at any time withdraw Securities from the Custodial Fund provided that concurrently therewith Securities of equal or greater market value are deposited in the Custodial Fund, and Custodian shall permit such substitution of Securities upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.5 All Securities, other than cash, deposited by the Reinsurer with the Custodian pursuant to Sections 2.1, 2.2, or 2.4 shall be accompanied by executed assignments, endorsements in blank or stock powers as appropriate to enable the Beneficiary to transfer title to such Securities pursuant to the Beneficiary's right and authority under Section 4. Any such instruments shall be held and safeguarded by the Custodian, and delivered to the Beneficiary if the Beneficiary is entitled under Section 4 to take possession of the Securities applicable thereto, or returned to the Reinsurer with any withdrawals of the applicable Securities by the Reinsurer pursuant to Sections 2.3, 2.4 or 8.

2.6 Custodian agrees to provide to the Beneficiary and Reinsurer with written notice of any deposits to or withdrawals from the Custodial Fund within ten (10) days after each such deposit or withdrawal.

## SECTION 3 – SECURITIES

3.1 The term "Securities" as used herein is defined as any combination of (a) cash; (b) certificates of deposit issued by any national or state chartered bank or savings and loan association which shall be payable in United States dollars; (c) United States Government issued or guaranteed bonds, bills or notes; or (d) any other bonds or other investments of the types specified in subsections (1), (2), (3) and (13) of Section 1404 of the New York Insurance Law; provided that all such Securities deposited in the Custodial Fund hereunder shall constitute admitted assets and shall comply in all respects with the investment rules and limitations prescribed by the applicable insurance laws and regulations of the states of South Carolina and New York.

3.2 Upon receipt of prior approval by the Reinsurer, the Custodian is authorized to invest any cash on deposit in the Custodial Fund, provided that all such investments shall fall within one of the categories of investments set forth in Section 3.1.

3.3 For the purposes of this Agreement, the market value of Securities shall be determined as follows: (a) at the time any Securities are deposited initially with the Custodian, and as respects Securities on deposit at the end of each calendar quarter, the Reinsurer shall in good faith place a tentative market value on said Securities and shall notify the Beneficiary of such valuation by supplement to the Custodian's statement of assets for the calendar quarter in question; (b) if the Beneficiary disagrees with such tentative market valuation, it may so notify the Reinsurer within 30 days after the date it receives the Custodian's quarterly statement of assets and the Reinsurer's supplement thereto; and (c) in the event the parties cannot resolve any difference with respect to the market value of the Securities, the market value of the security in dispute shall be determined by using the definition of "value" set forth in the Investment Company Act of 1940, Section 2(a) (41).

## SECTION 4 – BENEFICIARY'S CLAIM ON CUSTODIAL FUND

4.1 Beneficiary may withdraw assets from the Securities deposited in the Custodial Fund at any time, and without notice to the Reinsurer, and at the Beneficiary's option, may hold such Securities or sell the same at public or private sale and exercise such other rights as may be permitted by applicable statute; provided, however, that the Beneficiary first gives notice to the Custodian in accordance with Section 4.2 and that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.2 The Beneficiary may demand possession of the Custodial Fund form the Custodian, and the Custodian is required immediately to deliver physical custody of the Securities in the Custodial Fund to the Beneficiay, solely upon receipt by the Custodian of the Beneficiary's written notice stating that the Beneficiary is demanding possession of all Securities in the Custodial Fund pursuant to Section 4 of this Agreement provide however that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.3   In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2 herein, the Beneficiary shall deposit the entire Custodial Fund in a separate account, in the name of the Beneficiary in any United States bank or Custodial company, apart from its general assets, in Custodial for such uses as are specified below.  The Beneficiary shall use and apply any amounts withdrawn form the Custodial Fund and deposited in said separate Custodial account, without diminution because of the insolvency of the Beneficiary or the Reinsurer, only for the following purposes:

   a)   to pay or reimburse the Beneficiary for the Reinsurer's share under the Reinsurance Agreement regarding any losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer or for unearned premiums due to the Beneficiary, if not otherwise paid by the Reinsurer;

   b)   to make payment to the Reinsurer of any amounts held in the Custodial Fund that exceed 102 percent of the actual amount required to fund the Obligations (as defined in subparagraph (d) below) under the Reinsurance Agreement; or

   c)   where the Beneficiary has received notification of termination of the Custodial Fund pursuant to Section 8.2, and where the Reinsurer's Obligation under the Reinsurance Agreement remain unliquidated and undischarged ten (10) days prior to such termination date, to maintain said separate Custodial account for such uses and purposes specified in (a) and (b) above as may remain executory after such withdrawal and for any period after such termination date.

   d)   "Obligations" within the meaning of the Section and this Agreement, means:

      (i)   losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer;

      (ii)   reserves for losses reported and outstanding;

      (iii) reserves for losses incurred but not reported; and

      (iv) reserves for allocated loss expenses and unearned premiums.

4.4   In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2, the Reinsurer shall continue to be liable to Beneficiary for any amount by which balances due the Beneficiary under the Reinsurance Agreement exceed the aggregate market value of the Securities withdrawn from the Custodial Fund as of the date of withdrawal.  The aggregate market value of the Securities shall be determined in accordance with Section 3.3 (c).

## SECTION 5 – EXPENSES

5.1   Any interest of dividends from Securities deposited in the Custodial Fund shall be payable by the Custodian to the Reinsurer upon receipt by the Custodian.

5.2   All fees and expenses charged by the Custodian for its services under the terms of this Agreement shall be paid by the Reinsurer and in no event shall the Custodian withdraw any amount from the Custodial Fund for the purposes of paying compensation to, or reimbursing any expenses of, the Custodian.

## SECTION 6 – CUSTODIAN

6.1   The Custodian shall receive, hold, and safeguard all Securities deposited under this Agreement and shall determine that all such Securities are in such form that the Beneficiary, or the Custodian upon direction by the Beneficiary, may whenever necessary negotiate any such Securities, without consent or signature from the Reinsurer or any other person or entity.  The Custodian shall not be responsible for the adequacy of the

Custodial Fund, or for the valuation of the same or of the Securities from time to time deposited in, withdrawn from, or comprising the Custodial Fund. The Custodian also shall have no power or duty to collect any Securities from the Reinsurer or to enforce the provisions hereof regarding the deposit or withdrawal of Securites except as in herein specifically provided.

6.2 The Custodian shall be liable for its own negligence, willful misconduct or lack of good faith in performing its obligations under this Agreement. In the absence of such liability, the Custodian shall be indemnified by the Reinsurer for actions taken and not taken by the Custodian in performing its obligations hereunder, and for any legal expenses or other costs which the Custodian may reasonably incur with respect to such acts or failures to act or the defense therof.

6.3 The Custodian hereby waives any right of set-off and all other rights and remedies against or affecting the Custodial Fund.

6.4 The Custodian agrees to provide to the Beneficiary and the Reinsurer a statement of all assets in the Custodial Fund upon its inception and at intervals no less frequent than the end of each calendar quarter. Such reports shall identify all deposits, withdrawals and substitutions made during the preceding calendar quarter and shall list all Securities held in the Custodial Fund as of the last day of said quarter.

6.5 The Custodian may at any time resign from and terminate its capacity hereunder by written notice to both the Beneficiary and the Reinsurer effective not less than ninety (90) days after receipt by the Beneficiary and Reinsurer of the notice; provided that no such resignation shall be effective until a successor Custodian (the "Successor Custodian") has been duly appointed and approved by the Beneficiary and Reinsurer and all Securities in the Custodial Fund have been duly transferred to the Successor Custodian or, in the event a Successor Custodian is not appointed within ninety (90) days of the receipt of said notice, the Custodial Fund has been transferred to the Beneficiary as provided herein.

The Reinsurer, upon receipt of the above notice of resignation, shall undertake to obtain the agreement of a Successor Custodian to act in accordance with all agreements of the Custodian hereunder. The choice of Successor Custodian is subject to approval by the Beneficiary, which approval shall not be unreasonably withheld if the Successor Custodian so chosen is chartered as a national or state bank and has capital and surplus of at least US $100,000,000. In the event the Reinsurer is unable to obtain such an approved Successor Custodian within ninety (90) days from its receipt of notice from the Custodian, the Custodian is authorized to deliver the Custodial Fund to the Beneficiary. In such event, the Beneficiary shall, until an approved Successor Custodian if found, hold the Custodial Fund pursuant to the terms hereof, being fully substituted for the Custodian except that Section 6 hereof shall not apply.

Upon the Custodian's delivery of the Custodial Fund to the Successor Custodian or, if none is approved, to the Beneficiary along with a closing statement showing all transactions relating to the Custodial Fund since the date of the Custodian's last quarterly report, the Custodian shall be discharged of further responsibilities hereunder.

6.6 Custodian, upon written demand of the Beneficiary pursuant to Section 4.1 and 4.2 herein, shall immediately take any and all steps necessary to transfer absolutely and unequivocally all right, title and interest in the Securities held in the Custodial Fund to the Beneficiary and deliver physical custody of such Securities to the Beneficiary.

6.7 Custodian shall provide the Beneficiary and Reinsurer with the reports and notices required under Sections 2.6 and 2.7 of this Agreement.

## SECTION 7 – ACCESS TO REPORTS

7.1    The Beneficiary, by its duly authorized representatives, shall have the right at any reasonable time to examine all papers in the possession of the Reinsurer and the Custodian applicable to this Agreement and the Custodial Fund deposited and maintained hereunder.

## SECTION 8 – TERMINATION

8.1    The Reinsurer may terminate this Agreement at any time by paying in cash to the Beneficiary or furnishing a bank letter of credit to the Beneficiary in an amount equal to the total net balance due the Beneficiary u nder the Reinsurance Agreement, where the net balance due the Beneficiary is defined as the full amount of the Reinsurer's Obligations (as defined in Section 4.3 (d) due or which may become due under the Reinsurance Agreement less Obligations paid by the Reinsurer under said Contract; provided however, that the Custodian shall release Securities held and deposited with the Custodian under this Agreement only upon written notice from the Beneficiary that such payment by the Reinsurer has been duly made.  Any bank letter of credit furnished pursuant to this provision shall comply in all respects with the applicable provisions of the Illinois and New York Insurance Laws.

8.2    Except for terminations by the Reinsurer pursuant to Section 8.1,the Reinsurer may not terminate this Agreement unless at least thirty (30) days, but not more than forty-five (45) days, prior to termination of the Custodial Fund written notification of termination shall be delivered by the Custodian to the Beneficiary.

8.3    Upon termination of the Custodial Fund, all Securities not previously withdrawn by the Beneficiary shall, with written approval by the Beneficiary, be delivered over the Reinsurer by the Custodian

## SECTION 9 – CONSTRUCTION AND EFFECT

9.1    This Agreement and all proceedings pursuant hereto shall be governed by the law of the State of Illinois.

9.2    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.

9.3    This Agreement may be executed in any number of counterparts or by attached documents, all of which shall constitue one and the same original.

## SECTION 10 – ADDRESSES FOR NOTICES

10.1    All notices, letters, telexes or other communications between any one party to this Agreement and any other should be addressed as follows:

    (a).    Reinsurer:    Alrendan RE., Ltd.
                                204 W. Rt. 130, Burlington, NJ 08016
                                Attn: J. Richard Mee

    (b).    Beneficiary:    Heritage Warranty Mutual Insurance RRG, Inc.
                                  8055 "O" Street, Lincoln, NE 68510
                                Attn: Peter Knolla, Senior Vice President

    (c).    Custodian:    Smith Barney
                                  21250 Hawthorne Blvd Suite 650 Torrance CA 90503
                                  Attn: Laurie Luyon

## SECTION 11 – AUTHORIZATIONS

11.1   Upon the execution of this Agreement, the Reinsurer and the Beneficiary each shall provide the Custodian with a list, certified by their respective Secretaries, of the names and signatures of those persons authorized to furnish the Custodian with the directions and approvals contemplated hereunder on behalf of those parties. Until notified in writing in the same manner of any additions to or deletions from such list, the Custodian may continue to rely upon the same for purposes of this Agreement.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement on the dates set forth below.

Dated:                                    REINSURER

                                          By: _____
                                              J. Richard Mee

Dated:                                    BENEFICIARY

                                          By: _____
                                              Peter Knolla, Senior Vice President

Dated:                                    CUSTODIAN

                                          By: _____

REINSURANCE CUSTODIAL AGREEMENT

Effective: March 15, 2003

entered into by and among

**12GK Reinsurance, Ltd.**
(hereinafter referred to as the "Reinsurer")

and

**Heritage Warranty Mutual Insurance RRG, Inc.**
(hereinafter referred to as the "Beneficiary")

and

**Smith Hayes Advisers, Inc.**
(hereinafter referred to as the "Custodian")

## SECTION 1 – PURPOSE OF AGREEMENT

1.1    Pursuant to the terms hereof, Reinsurer, Beneficiary, and Custodian hereby create a Custodial account for the sole use and benefit of the Beneficiary. The Reinsurer obligates itself to deliver to and deposit with the Custodian "Securities" (as defined in Section 3.1) which shall be received and held by the Custodian in accordance with the terms and conditions of this Agreement. The Securities thus held by the Custodian are hereinafter referred to as the "Custodial Fund."

1.2    The rights and obligations of Reinsurer, Custodian and Beneficiary under this Agreement are not subject to any conditions or qualifications not stated herein.

## SECTION 2 – REINSURER'S DEPOSITS TO AND WITHDRAWALS FROM FUND

2.1    Within seven (7) days after the effective date of this Agreement first set forth above, the Reinsurer shall deliver or transfer to the Custodian Securities with a market value (determined in accordance with Section 3.3) of not less than the full amount of the Reinsurer's Obligations (as defined in Section 4.3(d), due or which may become due under a certain Quota Share Reinsurance Agreement effective between the Reinsurer and Beneficiary, less Obligations paid by the Reinsurer under said agreement (hereinafter referred to as the "Reinsurance Agreement").

2.2    Within forty-five (45) days after the end of each calendar quarter, the Reinsurer shall deposit with the Custodian such additional Securities as may be necessary to increase the aggregate market value of the Custodial Fund to an amount at least equal to the amount required under Section 2.1.

2.3    In the event the aggregate market value of the Custodial Fund immediately after each calendar quarter is greater than the amount required in Section 2.2, the Reinsurer may withdraw Securities from the Custodial Fund so as to reduce the aggregate market value of the Custodial Fund to an amount not less than the amount required in Section 2.2. The Custodian shall permit such withdrawal upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.4    The Reinsurer may at any time withdraw Securities from the Custodial Fund provided that concurrently therewith Securities of equal or greater market value are deposited in the Custodial Fund, and Custodian shall

permit such substitution of Securities upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.5     All Securities, other than cash, deposited by the Reinsurer with the Custodian pursuant to Sections 2.1., 2.2, or 2.4 shall be accompanied by executed assignments, endorsements in blank or stock powers as appropriate to enable the Beneficiary to transfer title to such Securities pursuant to the Beneficiary's right and authority under Section 4.   Any such instruments shall be held and safeguarded by the Custodian, and delivered to the Beneficiary if the Beneficiary is entitled under Section 4 to take possession of the Securities applicable thereto, or returned to the Reinsurer with any withdrawals of the applicable Securities by the Reinsurer pursuant to Sections 2.3, 2.4 or 8.

2.6     Custodian agrees to provide to the Beneficiary and Reinsurer with written notice of any deposits to or withdrawals from the Custodial Fund within ten (10) days after each such deposit or withdrawal.

## SECTION 3 – SECURITIES

3.1     The term "Securities" as used herein is defined as any combination of (a) cash; (b) certificates of deposit issued by any national or state chartered bank or savings and loan association which shall be payable in United States dollars; (c) United States Government insured or guaranteed bonds, bills or notes; or (d) any other bonds or other investments of the types specified in subsections (1), (2), (3) and (13) of Section 1404 of the New York Insurance Law; provided that all such Securities deposited in the Custodial Fund hereunder shall constitute admitted assets and shall comply in all respects with the investment rules and limitations prescribed by the applicable insurance laws and regulations of the states of South Carolina and New York.

3.2     Upon receipt of prior approval by the Reinsurer, the Custodian is authorized to invest any cash on deposit in the Custodial Fund, provided that all such investments shall fall within one of the categories of investments set forth in Section 3.1.

3.3     For the purposes of this Agreement, the market value of Securities shall be determined as follows: (a) at the time any Securities are deposited initially with the Custodian, and as respects Securities on deposit at the end of each calendar quarter, the Reinsurer shall in good faith place a tentative market value on said Securities and shall notify the Beneficiary of such valuation by supplement to the Custodian's statement of assets for the calendar quarter in question; (b) if the Beneficiary disagrees with such tentative market valuation, it may so notify the Reinsurer within 30 days after the date it receives the Custodian's quarterly statement of assets and the Reinsurer's supplement thereto; and (c) in the event the parties cannot resolve any difference with respect to the market value of the Securities, the market value of the security in dispute shall be determined by using the definition of "value" set forth in the Investment Company Act of 1940, Section 2(a) (41).

## SECTION 4 – BENEFICIARY'S CLAIM ON CUSTODIAL FUND

4.1     Beneficiary may withdraw assets from the Securities deposited in the Custodial Fund at any time, and without notice to the Reinsurer, and at the Beneficiary's option, may hold such Securities or sell the same at public or private sale and exercise such other rights as may be permitted by applicable statute; provided, however, that the Beneficiary first gives notice to the Custodian in accordance with Section 4.2 and that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.2     The Beneficiary may demand possession of the Custodial Fund form the Custodian, and the Custodian is required immediately to deliver physical custody of the Securities in the Custodial Fund to the Beneficiay, solely upon receipt by the Custodian of the Beneficiary's written notice stating that the Beneficiary is demanding possession of all Securities in the Custodial Fund pursuant to Section 4 of this Agreement provide however that such funds may be used only for the purposes listed in Section 4.3 (a), (b), (c) and (d).

4.3     In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2 herein, the Beneficiary shall deposit the entire Custodial Fund in a separate account, in the name of the Beneficiary in any United States bank or Custodial company, apart from its general assets, in Custodial for such uses as are specified below. The Beneficiary shall use and apply any amounts withdrawn form the Custodial Fund and deposited in said separate Custodial account, without diminution because of the insolvency of the Beneficiary or the Reinsurer, only for the following purposes:

    a) to pay or reimburse the Beneficiary for the Reinsurer's share under the Reinsurance Agreement regarding any losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer or for unearned premiums due to the Beneficiary, if not otherwise paid by the Reinsurer;

    b) to make payment to the Reinsurer of any amounts held in the Custodial Fund that exceed 102 percent of the actual amount required to fund the Obligations (as defined in subparagraph (d) below) under the Reinsurance Agreement; or

    c) where the Beneficiary has received notification of termination of the Custodial Fund pursuant to Section 8.2, and where the Reinsurer's Obligation under the Reinsurance Agreement remain unliquidated and undischarged ten (10) days prior to such termination date, to maintain said separate Custodial account for such uses and purposes specified in (a) and (b) above as may remain executory after such withdrawal and for any period after such termination date.

    d) "Obligations" within the meaning of the Section and this Agreement, means:

        (i) losses and allocated loss expenses paid by the Beneficiary, but not recovered from the Reinsurer;

        (ii) reserves for losses reported and outstanding;

        (iii) reserves for losses incurred but not reported; and

        (iv) reserves for allocated loss expenses and unearned premiums.

4.4     In the event the Beneficiary takes possession of any amounts of the Custodial Fund pursuant to Sections 4.1 and 4.2, the Reinsurer shall continue to be liable to Beneficiary for any amount by which balances due the Beneficiary under the Reinsurance Agreement exceed the aggregate market value of the Securities withdrawn from the Custodial Fund as of the date of withdrawal. The aggregate market value of the Securities shall be determined in accordance with Section 3.3 (c).

## SECTION 5 – EXPENSES

5.1     Any interest of dividends from Securities deposited in the Custodial Fund shall be payable by the Custodian to the Reinsurer upon receipt by the Custodian.

5.2     All fees and expenses charged by the Custodian for its services under the terms of this Agreement shall be paid by the Reinsurer and in no event shall the Custodian withdraw any amount from the Custodial Fund for the purposes of paying compensation to, or reimbursing any expenses of, the Custodian.

## SECTION 6 – CUSTODIAN

6.1     The Custodian shall receive, hold, and safeguard all Securities deposited under this Agreement and shall determine that all such Securities are in such form that the Beneficiary, or the Custodian upon direction by the Beneficiary, may whenever necessary negotiate any such Securities, without consent or signature from the Reinsurer or any other person or entity. The Custodian shall not be responsible for the adequacy of the

Custodial Fund, or for the valuation of the same or of the Securities from time to time deposited in, withdrawn from, or comprising the Custodial Fund. The Custodian also shall have no power or duty to collect any Securities from the Reinsurer or to enforce the provisions hereof regarding the deposit or withdrawal of Securites except as in herein specifically provided.

6.2     The Custodian shall be liable for its own negligence, willful misconduct or lack of good faith in performing its obligations under this Agreement. In the absence of such liability, the Custodian shall be indemnified by the Reinsurer for actions taken and not taken by the Custodian in performing its obligations hereunder, and for any legal expenses or other costs which the Custodian may reasonably incur with respect to such acts or failures to act or the defense therof.

6.3     The Custodian hereby waives any right of set-off and all other rights and remedies against or affecting the Custodial Fund.

6.4     The Custodian agrees to provide to the Beneficiary and the Reinsurer a statement of all assets in the Custodial Fund upon its inception and at intervals no less frequent than the end of each calendar quarter. Such reports shall identify all deposits, withdrawals and substitutions made during the preceding calendar quarter and shall list all Securities held in the Custodial Fund as of the last day of said quarter.

6.5     The Custodian may at any time resign from and terminate its capacity hereunder by written notice to both the Beneficiary and the Reinsurer effective not less than ninety (90) days after receipt by the Beneficiary and Reinsurer of the notice; provided that no such resignation shall be effective until a successor Custodian (the "Successor Custodian") has been duly appointed and approved by the Beneficiary and Reinsurer and all Securities in the Custodial Fund have been duly transferred to the Successor Custodian or, in the event a Successor Custodian is not appointed within ninety (90) days of the receipt of said notice, the Custodial Fund has been transferred to the Beneficiary as provided herein.

The Reinsurer, upon receipt of the above notice of resignation, shall undertake to obtain the agreement of a Successor Custodian to act in accordance with all agreements of the Custodian hereunder. The choice of Successor Custodian is subject to approval by the Beneficiary, which approval shall not be unreasonably withheld if the Successor Custodian so chosen is chartered as a national or state bank and has capital and surplus of at least US $100,000,000. In the event the Reinsurer is unable to obtain such an approved Successor Custodian within ninety (90) days from its receipt of notice from the Custodian, the Custodian is authorized to deliver the Custodial Fund to the Beneficiary. In such event, the Beneficiary shall, until an approved Successor Custodian if found, hold the Custodial Fund pursuant to the terms hereof, being fully substituted for the Custodian except that Section 6 hereof shall not apply.

Upon the Custodian's delivery of the Custodial Fund to the Successor Custodian or, if none is approved, to the Beneficiary along with a closing statement showing all transactions relating to the Custodial Fund since the date of the Custodian's last quarterly report, the Custodian shall be discharged of further responsibilities hereunder.

6.6     Custodian, upon written demand of the Beneficiary pursuant to Section 4.1 and 4.2 herein, shall immediately take any and all steps necessary to transfer absolutely and unequivocally all right, title and interest in the Securities held in the Custodial Fund to the Beneficiary and deliver physical custody of such Securities to the Beneficiary.

6.7     Custodian shall provide the Beneficiary and Reinsurer with the reports and notices required under Sections 2.6 and 2.7 of this Agreement.

## SECTION 7 – ACCESS TO REPORTS

7.1     The Beneficiary, by its duly authorized representatives, shall have the right at any reasonable time to examine all papers in the possession of the Reinsurer and the Custodian applicable to this Agreement and the Custodial Fund deposited and maintained hereunder.

## SECTION 8 – TERMINATION

8.1     The Reinsurer may terminate this Agreement at any time by paying in cash to the Beneficiary or furnishing a bank letter of credit to the Beneficiary in an amount equal to the total net balance due the Beneficiary u nder the Reinsurance Agreement, where the net balance due the Beneficiary is defined as the full amount of the Reinsurer's Obligations (as defined in Section 4.3 (d) due or which may become due under the Reinsurance Agreement less Obligations paid by the Reinsurer under said Contract; provided however, that the Custodian shall release Securities held and deposited with the Custodian under this Agreement only upon written notice from the Beneficiary that such payment by the Reinsurer has been duly made.  Any bank letter of credit furnished pursuant to this provision shall comply in all respects with the applicable provisions of the Illinois and New York Insurance Laws.

8.2     Except for terminations by the Reinsurer pursuant to Section 8.1,the Reinsurer may not terminate this Agreement unless at least thirty (30) days, but not more than forty-five (45) days, prior to termination of the Custodial Fund written notification of termination shall be delivered by the Custodian to the Beneficiary.

8.3     Upon termination of the Custodial Fund, all Securities not previously withdrawn by the Beneficiary shall, with written approval by the Beneficiary, be delivered over the Reinsurer by the Custodian

## SECTION 9 – CONSTRUCTION AND EFFECT

9.1     This Agreement and all proceedings pursuant hereto shall be governed by the law of the State of Illinois.

9.2     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.

9.3     This Agreement may be executed in any number of counterparts or by attached documents, all of which shall constitue one and the same original.

## SECTION 10 – ADDRESSES FOR NOTICES

10.1    All notices, letters, telexes or other communications between any one party to this Agreement and any other should be addressed as follows:

    (a).    Reinsurer:    12GK Reinsurance, Ltd.
    1045 Route 109, Suite 105, Lindenhurst, NY 11757
    Attn:  Anthony J. Pellarin

    (b).    Beneficiary:    Heritage Warranty Mutual Insurance RRG, Inc.
    8055 "O" Street, Lincoln, NE 68510
    Attn:  Peter Knolla, Senior Vice President

    (c).    Custodian:    Smith Hayes Advisers, Inc.
    200 Centre Terrace, 1225 L Street, PO Box 83000
    Lincoln, Nebraska 68501
    Attn:  Lisa Smith

## SECTION 11 – AUTHORIZATIONS

11.1   Upon the execution of this Agreement, the Reinsurer and the Beneficiary each shall provide the Custodian with a list, certified by their respective Secretaries, of the names and signatures of those persons authorized to furnish the Custodian with the directions and approvals contemplated hereunder on behalf of those parties. Until notified in writing in the same manner of any additions to or deletions from such list, the Custodian may continue to rely upon the same for purposes of this Agreement.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement on the dates set forth below.

Dated:                                              **REINSURER**

                                                    By: _____
                                                        Anthony J. Pellarin

Dated:                                              **BENEFICIARY**

                                                    By: _____
                                                        Peter Knolla, Senior Vice President

Dated:                                              **CUSTODIAN**

                                                    By: _____
                                                        Lisa Smith

6

# REINSURANCE CUSTODIAL AGREEMENT

Effective: March 15, 2003

entered into by and among

**12GK Reinsurance, Ltd.**
(hereinafter referred to as the "Reinsurer")

and

**Heritage Warranty Mutual Insurance RRG, Inc.**
(hereinafter referred to as the "Beneficiary")

and

**SunTrust Bank**
(hereinafter referred to as the "Custodian")

## SECTION 1 – PURPOSE OF AGREEMENT

1.1 Pursuant to the terms hereof, Reinsurer, Beneficiary, and Custodian hereby create a Custodial account for the sole use and benefit of the Beneficiary. The Reinsurer obligates itself to deliver to and deposit with the Custodian "Securities" (as defined in Section 3.1) which shall be received and held by the Custodian in accordance with the terms and conditions of this Agreement. The securities thus held by the Custodian are hereinafter referred to as the "Custodial Fund."

1.2 The rights and obligations of Reinsurer, Custodian and Beneficiary under this Agreement are not subject to any conditions or qualifications not stated herein.

## SECTION 2 – REINSURER'S DEPOSITS TO AND WITHDRAWALS FROM FUND

2.1 Within seven (7) days after the effective date of this Agreement first set forth above, the Reinsurer shall deliver or transfer to the Custodian Securities with a market value (determined in accordance with Section 3.3) of not less than the full amount of the Reinsurer's Obligations (as defined in Section 4.3(d), due or which may become due under a certain Quota Share Reinsurance Agreement effective between the Reinsurer and Beneficiary, less Obligations paid by the Reinsurer under said agreement (hereinafter referred to as the "Reinsurance Agreement").

2.2 Within forty-five (45) days after the end of each calendar quarter, the Reinsurer shall deposit with the Custodian such additional securities as may be necessary to increase the aggregate market value of the Custodial Fund to an amount at least equal to the amount required under Section 2.1.

2.3 In the event the aggregate market value of the Custodial Fund immediately after each calendar quarter is greater than the amount required in Section 2.2, the Reinsurer may withdraw Securities from the Custodial Fund so as to reduce the aggregate market value of the Custodial Fund to an amount not less than the amount required in section 2.2 . The Custodian shall permit such withdrawal upon receipt by it or written authorization from the Beneficiary, which shall not be unreasonably withheld.

2.4 The Reinsurer may at any time withdraw Securities from the Custodial Fund provided that concurrently therewith Securities of equal or greater market value are deposited in the Custodial Fund, and Custodian shall permit such substitution of Securities upon receipt by it of written authorization from the Beneficiary, which shall not be unreasonably withheld.

IN WITNESS WHEREOF, the parties hereto by their respective duly authorized officers have executed this Agreement on the dates set forth below.

Dated: _____        REINSURER

                                     By: _____

Dated: _____        BENEFICIARY

                                     By: _____
                                         Peter Knolla, Senior Vice President

Dated: _____        CUSTODIAN

                                     By: _____

8