# HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC.

## SERVICE CONTRACT REIMBURSEMENT INSURANCE POLICY DECLARATIONS PAGE

### NOTICE

This Policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.

| | | |
|---|---|---|
| 1. | Insured: | Butler Financial Solutions, LLC. |
| | Address: | 2300 Corporate Blvd. NW<br>Suite 214<br>Boca Raton, FL 33431 |
| 2. | Policy Period: | Twelve (12)-month period ending December 31; automatically renewed unless noticed prior to 12-31, subject to provisions of insurance policy. |
| 3. | Insurance Company: | Heritage Warranty Mutual Insurance Risk Retention Group, Inc.<br>Keenan Building, Third Floor<br>1330 Lady Street<br>Columbia, South Carolina 29201 |
| 4. | Policy Number: | HWMIRRG-SC-WAR-001 |
| 5. | Premium: | Refer to pricing information provided by Company. |
| 6. | Limit of Liability | Market value of covered vehicle or $75,000.00, whichever is less, per underlying service contract. |

*Signed and Accepted:*

Heritage Warranty Mutual Insurance Risk Retention Group, Inc.:

_____  President  12-17-01
Signature                         Title       Date

Insured: Butler Financial Solutions, LLC.

_____  President  1/9/02
Signature                         Title       Date

**EXHIBIT G**

# HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC.

## SERVICE CONTRACT REIMBURSEMENT INSURANCE POLICY

### NOTICE

This Policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.

### POLICY PROVISIONS

Heritage Warranty Mutual Insurance Risk Retention Group, Inc. (a Mutual Insurance Company), hereafter referred to as the Company, in consideration of the payment of the premium and in reliance upon the statements in the Declarations Page and subject to the limits of liability, exclusions, conditions and other terms of this Policy agrees with the Insured as follows:

### I. INSURING AGREEMENTS

1. **Definition of Coverages**

The Company will indemnify the Insured against Loss, subject to the Loss Reserve Fund provision herein, arising out of the reasonable and customary cost of repair or replacement under and in accordance with all the terms of the Service Contracts issued by the Insured on or after the inception date of this Policy, as follows:

UPON FAILURE OF THE INSURED TO PERFORM UNDER THE SERVICE CONTRACTS, HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC., SHALL PAY ON BEHALF OF THE INSURED ANY SUMS THE INSURED IS LEGALLY OBLIGATED TO PAY OR SHALL PROVIDE THE SERVICE THAT THE INSURED IS LEGALLY OBLIGATED TO PERFORM ACCORDING TO THE INSURED'S CONTRACTUAL OBLIGATION UNDER THE SERVICE CONTRACTS ISSUED BY THE INSURED, And HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC., WILL PAY CLAIMS AGAINST THE INSURED FOR RETURN OF THE UNEARNED PURCHASE PRICE OF THE SERVICE CONTRACT.

Coverage hereunder shall be provided on a claims made basis.

HWMIRRG-SC-WAR-001

Upon failure of the Insured to pay or provide service on a valid claim within sixty (60) days after proof of loss has been filed with Insured, coverage hereunder shall be provided directly to the service contract holder claimant.

Revocation or other termination of Insured's registration as a service contract provider in any state, for any reason, shall be construed to be a default by the Insured under service contracts sold in such state(s). In the event of such revocation or other termination, the Company shall provide for direct coverage to the covered service contract holders in such state(s) without having to wait sixty (60) days.

Suspension of Insured's registration as a service contract provider in any state, for more than 60 days, shall be construed to be a default by the Insured under service contracts sold in such state(s). In the event of such suspension, the Company shall provide for direct coverage to the covered service contract holders in such state(s) without having to wait sixty (60) days, until such time as the Insured is permitted to resume business in such state(s).

2. **Loss Reserve Fund**

The Company's liability herein shall be limited to covered Loss in excess of the Loss Reserve Fund applicable to the Insured, subject to the Limit of Liability specified on the Declarations Page.

Upon the suspension, revocation or other termination of Insured's registration as a service contract provider in any state(s), for any reason, the Insured shall grant to Company control, possession, and all ownership rights and interest in a portion of the above-mentioned Loss Reserve Fund equal to the part of said Loss Reserve Fund covering losses under service contracts sold in such state(s).

3. **Settlement of Company's Liability**

The Company agrees to indemnify the Insured or, in the alternative, pay directly to the repairing agency or Service Contract Holder in accordance with the Service Contract issued by the Insured.

## II. DEFINITIONS

The following terms, which are capitalized whenever they appear in this Policy or any endorsements to this Policy, have special or limited meanings, set forth below in alphabetical order:

1. "**Administrator**" means the Company's designated administrator in accordance with the Administration and Service Agreement.

2. "**Company**" means Heritage Warranty Mutual Insurance Risk Retention Group, Inc.

3. "**Covered Unit**" means the product marketed or manufactured by the Insured for which the Insured has issued a Service Contract.

HWMIRRG-SC-WAR-001  2

4.  "**Insured**" means the named insured specified in Item 1 of the Declarations Page.

5.  "**Loss(es)**" means any and all valid claims arising during the period covered by the terms and conditions of the Service Contract at the time the Service Contract was issued.

6.  "**Loss Reserve Fund**" means any loss reserve fund as may be established from time to time by the Administrator on behalf of the Insured to cover Losses under Service Contracts.

7.  "**Policy**" means this Service Contract Reimbursement Insurance Policy issued by the Company.

8.  "**Policy Period**" means the period specified in Item 2 of the Declarations Page.

9.  "**Service Contract(s)**" means service contract(s) issued by the Insured on or after the inception date of this Policy and for which a premium has been paid.

10. "**Service Contract Holder**" means a person, or legal entity, owning a Service Contract acquired directly from the Insured, or a qualified transferee, which is currently in force.

### III. EXCLUSIONS

Notwithstanding anything herein contained, this Policy does **NOT** cover:

1.  Any Loss caused by or contributed to by a dishonest, criminal or fraudulent act of the Insured, a partner thereof, or a director, officer, trustee, employee or agent thereof;

2.  Any Loss arising from fines, penalties, punitive or exemplary damages;

3.  Any Loss caused by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such Loss be direct or indirect, proximate or remote, or be in whole or part caused by, contributed to, or aggravated by the peril(s) insured against in this Policy;

4.  Any Loss caused by:

    a) hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual impending or expected attack, (1) by any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (2) by military, naval or air forces; or (3) by an agent of any such government, power, authority or forces;

    b) any weapon of war employing atomic fission or radioactive force whether in time of peace or war;

HWMIRRG-SC-WAR-001         3

c) insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering, combating, or defending against such an occurrence, seizure or destruction under quarantine or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade;

5. Any Loss arising from any liability assumed by the Insured or the Service Contract Holder by any contract or agreement, except the Service Contract(s);

6. Any Loss while the Covered Unit is used in any illicit trade or transportation or in the commission of a felony; or

7. Any Loss to any Covered Unit if that unit is rented by the Insured or Service Contract Holder.

## IV. CONDITIONS

1. **INSPECTION AND AUDIT:** The Company shall be permitted to inspect and examine the Insured's premises, books and records (insofar as such books and records relate to the premium basis or the subject matter of this insurance) at any time during the Policy Period and any extension thereof and within one (1) year after the final termination of this Policy, and one (1) year after the termination of all outstanding liability on all issued Service Contracts.

2. **PREMIUM PROVISIONS:** Upon the inception of coverage as provided by this Policy for the Insured's liability under each Service Contract issued, the premium for such coverage shall be fully earned by the Company and no part thereof shall be refundable to the Insured, except that:

   a) this provision shall be amended to conform with specific cancellation requirements of a lien holder, and

   b) a partial refund shall be made by the Company to the Insured for each Service Contract canceled by the Service Contract Holder. Such partial refund shall be based on a short rate cancellation table published from time to time by the Company, a current copy of which is available upon request.

   Premium for this Policy shall be specified by endorsement.

3. **MONTHLY REPORTING PROVISION:** The Insured shall maintain and keep an accurate record of Service Contracts issued in accordance with the Administration and Service Agreement and, not later than fifteen (15) days after the closing of the preceding month, report to the Company or its authorized representative the Service Contracts issued during the monthly reporting period. The Company shall not be liable under any Service Contract issued by the Insured unless so reported. In the event of Policy cancellation, the Insured shall report all Service Contracts issued up to and including the date the cancellation becomes effective.

4. **NOTICE OF LOSS:** In the event of Loss under this Policy, the Insured shall give notice of loss to the Company or its designated agent or representative as soon thereafter as practicable

HWMIRRG-SC-WAR-001                                    4

and shall file with the Company or its designated agent, within ninety (90) days from the date of Loss, a detailed proof of loss. Failure by the Insured to report the said Loss and to file such proof of loss as hereinbefore provided shall invalidate any claim under this Policy for such Loss.

5. **PAYMENT FOR LOSS:** Payment for Loss may not be required nor shall action lie against the Company unless, as conditions precedent thereto, the Insured shall have fully complied with all terms of this Policy, thirty (30) days shall have elapsed after proof of loss is filed, and the amount of Loss shall have been determined as provided in this Policy. It is also a condition of this insurance, precedent to payment of any claim, that the Insured or an authorized representative of the Insured shall have carried out the repair and/or replacement on which the claim is based, after having received prior authorization from the Company or its designated agent or Administrator.

6. **ASSIGNMENT:** This Policy is personal to the Insured, any purported assignment of interest in the Policy by the Insured or transfer of interest by operation of law or any act of insolvency on the part of the Insured shall immediately render this Policy canceled as of such date. Any assignment of interest under this Policy shall not bind the Company.

7. **APPROVED SERVICE CONTRACTS:** It is a condition of this insurance that the Service Contract(s) issued by the Insured are identical to the specimen copy(s) on file with and approved by the Company and will remain unaltered unless the Company is duly notified of any proposed alteration and written consent to such proposed alteration is given by the Company.

8. **TERRITORY:** This Policy covers Service Contracts issued by the Insured within the United States.

9. **SUBROGATION:** In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's right of recovery thereof against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after Loss to prejudice such rights.

10. **BURDEN OF PROOF:** It is a condition of this Policy that the Insured will be required to prove any Loss sustained as a precedent to payment of any claim.

11. **SALVAGE & RECOVERY:** All salvages, recoveries and payments received subsequent to a loss settlement under this Policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

12. **ASSISTANCE AND COOPERATION OF THE INSURED:** The Insured shall cooperate with this Company and, upon this Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits.

13. **CONFORMITY OF STATUTE:** The terms of this Policy which are in conflict with the statutes of the state wherein this Policy is issued are hereby amended to conform to such statutes.

14. **OTHER INSURANCE:** If, at the time of Loss hereunder, there is other insurance for such Loss in the name of or for the benefit of the Insured, this insurance shall be considered as excess insurance and shall not apply to nor contribute to the payment of any Loss until all such other insurance shall have been exhausted.

15. **CHANGES:** This Policy, including the Declarations Page, terms, conditions, limitations, exceptions, and exclusions, together with the endorsements and attached papers, if any, constitutes the entire Policy of insurance. No change in the Policy shall be endorsed hereon or attached thereto without the prior written approval of the Company. No agent has authority to change the Policy or to waive any of its provisions.

16. **ACTION AGAINST COMPANY:** No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all terms of this Policy.

17. **SERVICE OF SUIT:** In the event the Company fails to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Further, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer (if specified for that purpose in any relevant statute) or his successor or successors in office, as the Company's true and lawful attorney upon whom, at his offices in the state where the Insured resides, may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the following as the person to whom the said officer is authorized to mail such process or a true copy thereof:

> Heritage Warranty Mutual Insurance Risk Retention Group, Inc.
> Attn: Mr. Gary Osborne, Captive Manager
> Keenan Building, Third Floor
> 1330 Lady Street
> Columbia, South Carolina 29201

18. **DEFENSE AND SETTLEMENT:** The Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought against the Insured; however, the Company shall have the right, and shall be afforded the opportunity, to associate with the Insured in the defense and control of any claim or suit.

19. **FRAUD AND MISREPRESENTATION:** This Policy shall be void if the Insured has concealed or misrepresented or created any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or submission of false or inflated claims or false swearing by the Insured touching any matter relating to this insurance or the subject thereof, whether before or after a Loss.

20. **TERM AND CANCELLATION:** The Policy Period shall be for a term of one year (ending on December 31 of each year) subject to automatic renewals, unless either the Insured or

the Company gives prior notice to the other party of its intention not to renew this Policy. The initial Policy Period may be for a term of less than one year, unless this Policy is effective on January 1 of such Policy Period. Prior notice of non-renewal by the Company must be mailed to the Insured at least thirty (30) days prior to the termination of the Policy Period.

This Policy may be canceled at any time by the Insured by mailing to the Company written notice stating when thereafter such cancellation shall be effective. This Policy may also be canceled by the Company at any time by mailing to the Insured, at the address shown on the Declarations Page, written notice stating a date not less than thirty (30) days thereafter when such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing. Cancellation of this Policy shall not reduce the Company's liability for claims incurred under Service Contracts issued prior to the date on which cancellation takes effect. Should no Service Contracts be submitted pursuant to the provisions of Section IV, paragraph 3, of this Policy for a period of three (3) consecutive months, it will constitute an automatic withdrawal from coverage by the Insured. The Company may, at its option, waive this provision.

This Policy does not provide Bodily Injury or Property Damage Liability Insurance nor does it comply with any financial responsibility law. The limit of the Company's liability shall not exceed the limits specified herein, in accordance with the terms of this Policy.

IN WITNESS WHEREOF, the Company has caused this Policy to be executed and attested these presents, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
Rhoderick J. Beery, President

(Heritage Excess Insurance Policy)

HWMIRRG-SC-WAR-001                    7