# ADMINISTRATIVE AGREEMENT

Among

**Warrantech Automotive, Inc.**
**150 Westpark Way**
**Euless, TX 76040**

**Warrantech Automotive of Florida, Inc.**
**150 Westpark Way**
**Euless, TX 76040**

**Vemeco, Inc.**
**150 Westpark Way**
**Euless, TX 76040**

and

**Heritage Warranty Mutual Insurance Risk Retention Group, Inc.**
**1550 South 70th Street**
**Lincoln, NE 68506**

EFFECTIVE DATE:    March 15, 2001

EXHIBIT

tabbies

H

# ADMINISTRATIVE AGREEMENT

THIS ADMINISTRATIVE AGREEMENT, (the "AGREEMENT") is among Warrantech Automotive, Inc., Warrantech Automotive of Florida, Inc. and Vemeco, Inc., each of which are located at 150 Westpark Way, Euless, TX 76040, (hereinafter collectively referenced as "WARRANTECH"), and Heritage Warranty Mutual Insurance Risk Retention Group, Inc., (hereinafter referenced as "COMPANY") located at 1550 South 70th Street, Lincoln, NE 68506.

WHEREAS, WARRANTECH engages in the business of developing, marketing and administration of Vehicle Service Contract programs, which includes automobiles and recreational vehicles offered through retailers and manufacturers (hereinafter referenced as "PROGRAM" or "PROGRAMS") and

WHEREAS, COMPANY desires to retain WARRANTECH in its capacity as an administrator, to market and administer, and WARRANTECH, as an administrator, desires to market and administer, such PROGRAMS, pursuant to the terms and conditions set forth herein and pursuant to the terms and conditions of the INSURANCE provided by COMPANY.

THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties agree to the following:

## I. ADMINISTRATION

A. COMPANY hereby grants WARRANTECH authority to serve as administrator to perform the duties set forth below and vests in WARRANTECH authority to accomplish, effect and execute such duties upon the terms and conditions set forth in this AGREEMENT.

B. WARRANTECH shall serve as COMPANY's administrator of Vehicle Service Contracts which are provided by COMPANY.

## II. DEFINITIONS

As used in this AGREEMENT, the following terms will have the meanings shown:

"Claim" shall mean a request for payment or performance of service by a Vehicle Service Contract Holder in accordance with the terms of a valid Vehicle Service Contract.

"Confidential Information" shall mean proprietary information obtained from either party to the AGREEMENT including statistical data relating to PROGRAM underwriting results, such as Premium amounts, earnings, losses, loss frequency and loss severity. Confidential Information shall not include information which:

1. Is or becomes generally available to the public other than as a result of a breach of this AGREEMENT;

2.  Was previously known to the other party or independently derived or developed by such other party;

3.  Is disclosed to the other party on a non confidential basis by a third party who has the right to disclose such information; or

4.  Is required to be disclosed by any regulatory authority.

"Dealer" shall mean any company who provides, sells and issues warranties and Vehicle Service Contracts on automobiles and recreational vehicles under PROGRAMS which are covered by the INSURANCE provided by COMPANY.

"Dealer Cost" shall mean that amount that the Dealer must remit to WARRANTECH for the sale of each Vehicle Service Contract.

"Premium " shall mean that portion of the Dealer Cost, net of cancellations, which is required to be paid by WARRANTECH to the COMPANY, and or other entities as COMPANY may direct, to provide INSURANCE for PROGRAMS and the Vehicle Service Contracts.

"Vehicle Service Contract" shall mean the document issued by the Dealer to indicate coverage under a PROGRAM and for which Premium have been paid to COMPANY.

"Vehicle Service Contract Holder" shall mean any person or legal entity who holds or acquires the rights to a valid Vehicle Service Contract as defined herein.

## III.  POLICIES

This AGREEMENT, and the duties to be performed by WARRANTECH and COMPANY as contained herein, are in conjunction with the INSURANCE provided by COMPANY for PROGRAMS. To the extent, that terms and conditions of this AGREEMENT conflict in any way with any of the terms and conditions of the INSURANCE, as defined in the insurance contract, the terms and conditions of the insurance contract shall prevail. Further, any and all obligations of COMPANY contained herein are limited by the terms and conditions of the contract of insurance.

## IV.  TERM OF AGREEMENT

This AGREEMENT shall be effective commencing March 15, 2001, and continue for a five (5) year period continuing through and including March 14, 2006, unless terminated pursuant to Section X, Termination, of this AGREEMENT.

After March 14, 2006, this AGREEMENT shall automatically renew for additional one-year terms unless terminated pursuant to Section X, Termination, of this AGREEMENT.

V.  WARRANTECH'S RELATION TO COMPANY

This AGREEMENT is not a contract of employment and nothing herein contained shall be construed to create the relationship of employer and employee between COMPANY and WARRANTECH. WARRANTECH is an independent contractor and shall be free to exercise judgement and discretion with regard to the conduct of business as administrator for COMPANY.

VI.  AUTHORITY AND DUTIES OF WARRANTECH

A.  Review of Agreements

WARRANTECH shall ensure all Vehicle Service Contracts submitted by Dealers are in compliance with the terms and conditions of PROGRAMS with respect to underwriting, pricing, eligibility and other requirements as agreed to by COMPANY and WARRANTECH.

B.  Policy Issuance

WARRANTECH shall timely and properly issue and execute or countersign policies, certificates, endorsements and binders on forms approved by COMPANY and appropriate regulatory authority, as required by law, for the policies authorized under this Agreement. WARRANTECH will arrange for all policy countersignatures through agents authorized by COMPANY.

C.  Quality of Services

WARRANTECH shall use commercially reasonable efforts to serve COMPANY faithfully, to promote all acts necessary for the proper conduct of the business on behalf of COMPANY and shall maintain a staff of competent and trained personnel, supplies and equipment for the purpose of performing WARRANTECH's duties under this AGREEMENT.

D.  Change in Ownership

WARRANTECH shall notify COMPANY, in writing, within ten (10) days if there is a change in ownership of fifty percent (50%) or more of the stock of WARRANTECH or its parent company, in one transaction or in a series of related transactions.

E.  Representations

WARRANTECH shall not make any representation to any applicant or holder of any Vehicle Service Contract regarding coverage which is not consistent with the actual terms and conditions of the Vehicle Service Contract.

F. **Legal Compliance**

    1.    WARRANTECH shall use all reasonable efforts to carry out its activities in connection with this AGREEMENT in such a way as to comply in all material respects with all applicable laws of the jurisdictions involved, including all licensing requirements, as well as all other applicable laws governing the conduct of business under this AGREEMENT.

    2.    Any fines or penalties, resulting from non-compliance with regulatory requirements for which WARRANTECH was responsible, shall be the responsibility of WARRANTECH.

G. **Reporting**

    1.    WARRANTECH agrees to report, within twenty-five (25) days from each month's end, the total Vehicle Service Contracts sold and cancelled and the Premium due to COMPANY with respect to preceding month reported to WARRANTECH. Such reporting shall be in form acceptable to COMPANY.

    2.    WARRANTECH agrees to provide COMPANY, at WARRANTECH's expense, additional written reports, as needed by COMPANY, to ensure COMPANY'S compliance with any reporting requirements or regulations as promulgated, from time to time, by any regulatory authority of competent jurisdiction. WARRANTECH shall provide COMPANY reinsurance ceding statements, proof of deposit and statements from financial depositories. WARRANTECH shall make every effort to see that such reporting shall be in a time frame to enable COMPANY to meet reporting dates as promulgated by said regulatory authorities.

    3.    WARRANTECH agrees to provide COMPANY, at WARRANTECH's expense, additional reports, as reasonably needed by COMPANY and in a reasonable time frame as prescribed by COMPANY, to ensure COMPANY is able to monitor and assess the status of PROGRAMS administered by WARRANTECH.

H. **Premium**

    1.    WARRANTECH shall act as a fiduciary to COMPANY and will hold all premiums collected and received on policies for COMPANY in a fiduciary account at the time of premium calculation in accordance with Section H.3. below. These funds will then be held separate and apart from all other funds of WARRANTECH or others in a bank(s) approved in writing by COMPANY that is a member of the Federal Reserve System. The bank account(s) shall be designated by WARRANTECH in such a manner as to clearly establish that WARRANTECH is holding and acting as trustee for COMPANY with respect to the funds in the account. WARRANTECH may retain interest or other income, if any, accruing on these premium trust funds for its own account so long as WARRANTECH is current on all accounts with COMPANY. The trust funds so held may be used by WARRANTECH as necessary to return and refund premiums to Vehicle Service Contract Holders or their authorized representatives. Except as may be prohibited by applicable law or regulation, WARRANTECH may

place such funds only in a checking account, bank money market account, bank certificate of deposit, or investments insured by, or obligations of the United States of America.

2.      WARRANTECH shall be responsible for remitting to COMPANY and/or such other entity as COMPANY may direct, all Premium for Vehicle Service Contracts reported to WARRANTECH. WARRANTECH may extend credit terms to its Dealers and such extensions of credit shall be at the sole risk of WARRANTECH.

3.      Except as may be otherwise provided in this AGREEMENT, the accounting, reporting and remitting of Premium shall be made as follows:

WARRANTECH shall remit to COMPANY, and/or such other entity as COMPANY may direct, by the twenty fifth (25th) day after the end of each month, the total Premium due COMPANY for Vehicle Service Contracts reported and paid to WARRANTECH during the immediate preceding month.

4.      In the event of termination of this AGREEMENT in accordance with Section X. TERMINATION, a full and final accounting and payment of all Premium due COMPANY for all Vehicle Service Contracts sold under PROGRAMS by WARRANTECH and Dealers shall be made within ninety (90) days of such termination.

5.      All Premium due COMPANY received by WARRANTECH on behalf of COMPANY is the property of COMPANY and shall be held by WARRANTECH as trustee until delivered to COMPANY. COMPANY's ownership of unpaid Premium which has not been collected by WARRANTECH, and the trust nature of these funds, shall not be held to be modified, affected or waived by any actions taken by either WARRANTECH or COMPANY.

I.      Maintenance of Records; Company's Access to Records

1.      WARRANTECH shall keep complete records of all transactions pertaining to Vehicle Service Contracts written pursuant to this AGREEMENT, originals of which shall remain in WARRANTECH's sole and exclusive possession. Such records shall be maintained for a period of time in accordance with regulatory record retention requirements. During the term of this AGREEMENT and for such time thereafter as COMPANY shall deem reasonably necessary for the protection of COMPANY's property and/or interests, COMPANY shall have the right, and WARRANTECH shall permit and authorize COMPANY, through any person(s) designated by COMPANY and at COMPANY's expense and as often as COMPANY may reasonably request:

a)      To visit, inspect, examine, audit and verify, on a semi annual basis; at any of WARRANTECH's offices or elsewhere, any of the properties, accounts, books, records, financial statements or work papers belonging to or in the possession of WARRANTECH pertaining to matters arising under the terms of this AGREEMENT; provided, however, if any such audit reveals a material error or deficiency in WARRANTECH's claims handling practices, COMPANY shall be entitled to

perform a follow-up audit prior to the next semi annual period for purposes of confirming that said error or deficiency has been corrected. COMPANY will provide WARRANTECH with not less than ten (10) business days advance written notice of all such visits, examinations, inspections and audits. Any audit conducted hereunder shall be deemed by the parties to be final and conclusive with respect to the time period of such audit.

To make or to have WARRANTECH make in a timely fashion, at COMPANY's expense, copies and extracts of any of the items listed in Paragraph a. above in conjunction with any such semi annual visit, inspection, examination or audit.

To perform, at COMPANY's offices, at COMPANY's discretion as reasonably requested, and with reasonable frequency, routine audit tests of WARRANTECH's accounting records in order to ensure reasonable internal accounting controls surrounding WARRANTECH's issuance of Vehicle Service Contracts.

To discuss the affairs, finances, and accounts of the Programs with WARRANTECH's directors or officers at such times as WARRANTECH and COMPANY mutually agree.

2.    All records of transactions pertaining to INSURANCE written under this AGREEMENT shall be in a form approved by COMPANY and regulatory authorities.

3.    When the PROGRAM transactions are recorded on WARRANTECH's proprietary data processing system(s), WARRANTECH shall, on at least a weekly basis, back-up records of all transactions. WARRANTECH shall maintain said backup records at a location other than the location where original records are maintained.

4.    In lieu of maintaining physical copies of the records described hereunder, WARRANTECH may keep said records in a form of electronic media of its choosing.

J.    Advertising and Public Relations

1.    WARRANTECH and COMPANY shall agree, in writing, to a standard reference to COMPANY that may be used by WARRANTECH in its advertising, promotional materials and press releases of Vehicle Service Contracts which are insured by COMPANY. Except as agreed to and provided for in this fashion, WARRANTECH shall not use the name or logo of COMPANY without COMPANY's prior written approval.

2.    COMPANY and WARRANTECH shall agree, in writing, to a standard reference to WARRANTECH that may be used by COMPANY in its advertising, promotional materials and press releases. Except as agreed to and provided for in this fashion, COMPANY shall not use the name or logo of WARRANTECH without WARRANTECH's prior written approval.

K.   Ownership of Program Data

Except as is otherwise provided in Section X, Termination, the PROGRAM results, losses and pricing data, and other related program data is the joint property of WARRANTECH and COMPANY.

L.   Expenses

1.   Except as may be expressly provided in this AGREEMENT and addenda attached hereto, WARRANTECH shall pay all expenses related to the performance of WARRANTECH's duties under this AGREEMENT, including but not limited to rentals, transportation, facilities, clerical expense, commissions or fees paid to Dealers, solicitor's fees, postage, advertising, or miscellaneous expenses. WARRANTECH shall not charge or commit COMPANY to any expense, agreement, payment, debt, or obligation other than the insurance expressly described herein unless prior written approval is obtained from COMPANY.

2.   WARRANTECH shall pay for all data processing hardware utilized by WARRANTECH and shall be responsible for fees for data processing and communication software and technology, including but not limited to, necessary line charges.

M.   Insurance Maintained by WARRANTECH

WARRANTECH is required to maintain in full force and effect during the term of this AGREEMENT a policy (or policies) of professional errors and omissions in at least an amount of two million dollars ($2,000,000) each claim; and two million dollars ($2,000,000) in the aggregate, comprehensive general liability policy (including commercial auto coverage) in at least an amount on one million dollars ($1,000,000) each occurrence, blanket employee dishonesty bond covering all employees of Agent who provide Agent with exposure to loss of any funds due COMPANY in at least an amount of five million dollars ($5,000,000) each loss, which are issued by an insurer rated no less than B+VI by A.M. Best Company. Such insurance shall be maintained by WARRANTECH at WARRANTECH's sole cost and expense and shall be primary and provide non-contributing coverage over any valid and collectible insurance available to COMPANY. WARRANTECH shall provide notification to COMPANY in the event of lapse and shall furnish proof of such insurance at inception of this AGREEMENT and at each subsequent renewal of the insurance policy.

N.  Financial Statements

  1.  Prior to executing this AGREEMENT, WARRANTECH shall furnish to COMPANY WARRANTECH's most recent year-end annual financial statements.

  2.  Not later than ninety (90) calendar days after the end of its fiscal year, which is March 31, WARRANTECH shall provide COMPANY its year-end audited financial statements.

O.  Claims Settlement

  WARRANTECH accepts responsibility for settling claims, in accordance with Addendum B, CLAIMS HANDLING AUTHORITY, which is attached, for valid claims which occur as a result of Vehicle Service Contracts, or warranties written through the PROGRAM. WARRANTECH agrees to all of the other terms and provisions set forth in Addendum B, CLAIMS HANDLING AUTHORITY, which is incorporated in and made a part of this AGREEMENT.

P.  Management

  WARRANTECH shall notify COMPANY of the change of any WARRANTECH's senior management personnel who are directly involved with the PROGRAMS and with whom COMPANY communicates on a regular basis. Such notification shall be in writing and within thirty (30) days of the personnel change.

Q.  Underwriting Authority

  1.  PROGRAMS shall include types and classes of business, policies of insurance and lines which have been reviewed and approved by COMPANY, and are attached hereto as addendum B. Additional types and classes of business, policies of insurance and lines may only be added with the prior written approval of COMPANY.

  2.  WARRANTECH shall have authority to accept, under the same terms and conditions that are in effect for the PROGRAMS, new Dealers and manufacturers for Vehicle Service Contracts issued under the PROGRAMS.

  3.  WARRANTECH shall have authority to propose changes, revisions and amendments to PROGRAMS as follows:

    a.  WARRANTECH shall develop historical statistical data in support of changes, revisions and amendments. Such data shall include, but is not limited to, loss severity data, loss frequency data, earning patterns for all terms and projected ultimate loss ratios.

b.   WARRANTECH shall submit such proposals to COMPANY at the following address:

>Hyle H. Erwin, General Counsel
>Heritage Warranty Mutual Insurance
>1550 South 70th Street
>Lincoln, NE 68506

Such proposals shall include supporting historical data, coverage amendments, and projections of results relating to the change.

c.   COMPANY shall respond, in writing, to WARRANTECH's proposal of changes, revisions and amendments within a reasonable time of COMPANY's receipt of said proposal, which in no event shall exceed two weeks from the date of receipt. WARRANTECH will submit a copy of all proposals to FAX Agency. COMPANY's response shall indicate COMPANY's approval or rejection of WARRANTECH's proposal.

d.   COMPANY shall respond, in writing, to WARRANTECH's proposal of changes, revisions and amendments, which involve "essentially similar" products and/or plan types within a reasonable time of COMPANY's receipt of said proposal, which shall in no event exceed two weeks from the date of receipt. WARRANTECH will submit a copy of all proposals to FAX Agency. COMPANY's response shall indicate COMPANY's approval or rejection of WARRANTECH's proposal.

e.   "Essentially similar" changes shall be defined as changes to existing PROGRAMS which do not involve new technology, a change in technology, or does not materially change the PROGRAM. In the event WARRANTECH and COMPANY disagree as to whether changes meet the definition of "essentially similar", then COMPANY shall decide if the proposed change, revision or amendment is "essentially similar".

f.   WARRANTECH shall be responsible to make all required filings relating to the Vehicle Service Contracts as required as required by regulatory entities or organizations, including all rates and policy forms. WARRANTECH shall provide COMPANY, within thirty (30) days of receipt, a copy of all filings, including correspondence, submitted to regulatory entities or organizations.

4.   Failure by WARRANTECH to comply with any of the terms and conditions of Section VI.Q., Underwriting Authority, may at COMPANY's sole discretion, result in the withdrawal of the authority granted herein. Such withdrawal of the authority shall be immediate upon WARRANTECH's receipt of notification from COMPANY and shall not be subject to the notification provisions contained in Section X, Termination, of this AGREEMENT.

R.     Certificates and Additional Insureds

WARRANTECH shall have authority to issue certificates of insurance to, and add as additional insureds, Dealers and manufacturers who issue Vehicle Service Contracts under PROGRAMS covered by INSURANCE. Said certificates and additional insureds, shall be reported in a format prescribed by COMPANY and shall be reported to COMPANY within five (5) business days of issuance by WARRANTECH.

S.     Policy Cancellation

WARRANTECH shall cancel or otherwise terminate policies bound or written by or through WARRANTECH as required by applicable underwriting standards and consistent with applicable regulatory and policy conditions. COMPANY shall always retain the right to direct the termination of policies by WARRANTECH or to terminate policies by direct notice to Insureds. Neither COMPANY nor WARRANTECH shall make permit or cause general or indiscriminate cancellation, termination or replacement of policies.

T.     Notification of Changes in PROGRAM Segment, Premium, Coverage and Eligibility

1.     WARRANTECH and COMPANY agree that the rate plans for the PROGRAMS used to produce reinsurance funds as of the date of this AGREEMENT, shall remain in effect for a eighteen (18) month period, not to exceed September 15, 2002; provided, however, that each individual account within the PROGRAMS shall not exceed a ninety (90) percent loss ratio. In the event any individual account loss ratio exceeds ninety (90) percent, then WARRANTECH and COMPANY shall jointly review the data for the PROGRAMS to determine if changes to rate plans are necessary for those individual accounts. Not withstanding the aforementioned joint review of data by WARRANTECH and COMPANY, COMPANY retains the unconditional right to make changes to rate plans to produce a ninety (90) percent loss ratio for each individual account. Reinsurance funds are defined as Premium less COMPANY's fee, less the dealer renegade fee of five dollars per vehicle service contract issued, less a loss adjustment fee of fifteen dollars per vehicle service contract issued.

2.     WARRANTECH and COMPANY agree that the rate paid COMPANY will be an insurance fee of $40.00 per vehicle service contract, which COMPANY agrees to adjust downward to account for loss experience or competitive reasons. COMPANY further requires that five dollars per vehicle service contract be paid to COMPANY for renegade fund dealer captives.

3.     In accordance with this provision, upon notification that a change(s) to Premium is (are) required, WARRANTECH shall have a reasonable time, not to exceed ninety (90) days, from the receipt of said request to implement the requested change, subject to the completion of all necessary regulatory filings required by the request.

## VII. AUTHORITIES AND DUTIES OF COMPANY

### A. Regulatory Assistance

COMPANY shall use reasonable efforts to assist WARRANTECH in connection with any regulatory filing or form of compliance required of WARRANTECH's to effect the marketing and administration of the PROGRAM. Such assistance shall include but shall not be limited to providing information, and documents necessary to complete regulatory filings on COMPANY's behalf.

### B. Certificates of Insurance

For the INSURANCE provided by COMPANY, COMPANY shall provide certificates of insurance when necessary or when required by regulatory authority. Nothing contained in this section shall limit or restrict in any way, COMPANY's right to decline to issue, non-renew or cancel any policy or insurance. Provided, however, that COMPANY shall not cause any indiscriminate cancellation of such certificates, endorsements to, or the policy of insurance.

### C. Legal Compliance

COMPANY shall use all reasonable efforts to operate in compliance with all regulatory authorities of competent jurisdiction. Such compliance shall include but is not limited to procuring and maintaining all licenses, permits and other authorizations legally required for it to operate as an admitted insurance carrier.

### D. Changes in Ownership

COMPANY shall notify WARRANTECH, in writing, within ten (10) days if there is a change in ownership of twenty percent (20%) or more of the stock of COMPANY or its parent company.

### E. Best Rating

COMPANY shall endeavor to maintain reinsurance with a reinsurance company with an A.M. Best rating of 'A' "Excellent" or better during the term of this AGREEMENT and any extensions thereto. COMPANY agrees to meet either the insurance or financial ratings required to insure Vehicle Service Contracts written in the state of Florida or any other state which promulgates such rating requirements.

### F. Management

COMPANY shall notify WARRANTECH of the change of any COMPANY's management personnel who are directly involved with COMPANY's WARRANTECH program and with whom WARRANTECH communicates on a regular basis. Such notification shall be in writing and within thirty (30) days of the personnel change.

G.      COMPANY agrees that it will hold all renegade fund fees and loss adjustment expense fees separate and apart from all other funds of COMPANY. The fees will be held in an interest bearing account. WARRANTECH will receive the interest on these fees, as well as monies remaining in the accounts upon expiration of all Vehicle Service Contracts.

## VIII.    LIMITATIONS OF AUTHORITY

Except as may be otherwise provided for in this AGREEMENT, WARRANTECH is authorized to issue insurance policies, complete all regulatory filings perform administrative and marketing services only for those PROGRAMS which COMPANY has given WARRANTECH prior written approval. Changes to existing PROGRAMS by WARRANTECH must be in writing and presented to COMPANY for its written approval before implementation by WARRANTECH.

Changes to existing PROGRAMS by COMPANY must be made in writing and submitted to WARRANTECH for implementation.

## IX.    AGREEMENT

A.      COMPANY agrees to pay WARRANTECH fees based upon the number of actual claims for which WARRANTECH provides administrative services, at a rate of twenty dollars ($20.00) per claim administrated by WARRANTECH. A Claim shall be deemed to have been made each time WARRANTECH is contacted for the first time by a Vehicle Service Contract Holder with respect to any matter that such Holder believes might be the basis for a formal Claim under the Vehicle Service Contract, which results in a repair order number which is subsequently paid. These fees will be paid to WARRANTECH to the extent loss adjustment funds are available and if there remains in the loss adjustment fund Five Dollars ($5.00) per active service contract.

B.      On all Vehicle Service Contracts issued pursuant to this AGREEMENT for which coverage has been canceled, or where Premium have been reduced or refunded, WARRANTECH shall be responsible for refunding such returned or refunded Premium to Service Agreement Holders. Such amounts due from COMPANY shall be offset against current month's business. In the event of termination of this agreement, COMPANY shall reimburse WARRANTECH within thirty (30) days of receipt of invoice. In each case such returned or refunded Premium shall be calculated using the same Net Revenue rate originally paid to COMPANY and within the period of time required by the rules and regulations of COMPANY

C.      WARRANTECH is required to pay out of its remuneration all amounts owing to Dealers on business written through WARRANTECH.

## X.    TERMINATION

A.      Subject to the conditions set forth in this Section, except as stated in Section X.B., X.C. and X.D. below, and notwithstanding Section IV, Term of Agreement, each party to this AGREEMENT shall have the right to terminate this AGREEMENT by giving the other party written notice, by certified mail, to be received not less than one hundred eighty (180) days prior to the effective date thereof.

B.    COMPANY may terminate this AGREEMENT if WARRANTECH violates any provision of this AGREEMENT and/or any provision of the addenda attached hereto.

    1.    In the event of such violation, COMPANY must:

        a.    Notify WARRANTECH in writing of the violation, and

        b.    Provide WARRANTECH thirty (30) days, from the receipt of the notice of violation, to cure the violation.

    2.    If violation is not cured within thirty (30) days, COMPANY may immediately exercise its right of termination by providing WARRANTECH written notification thereof.

C.    COMPANY may also terminate this AGREEMENT upon ten (10) days advance notice to WARRANTECH if any one or more of the following events occur:

    1.    WARRANTECH assigns, transfers, encumbers or otherwise disposes of this AGREEMENT or any interest in this AGREEMENT or sells, exchanges, transfers, assigns, mergers or consolidates the PROGRAM business without COMPANY'S prior written consent which shall not be unreasonably withheld.

    2.    WARRANTECH sells, transfers or causes to be sold or transferred all or substantially all assets to a third party, without COMPANY'S prior written consent which shall not be unreasonably withheld.

D.    This AGREEMENT will automatically terminate if any one or more of the following events occur:

    1.    WARRANTECH, or any of WARRANTECH's subsidiary corporations, if any, is (are) unable to pay its (their) debts as those debts mature; make(s) an assignment for the benefit of creditors; is (are) dissolved; a receiver or liquidator is appointed for WARRANTECH or such subsidiary corporation(s) or a substantial part of its (their) property; or insolvency, bankruptcy, reorganization, arrangement or similar proceedings are instituted by or against WARRANTECH or such subsidiary corporation(s).

    2.    WARRANTECH misappropriates any of COMPANY's funds or property including, but not limited to, the violation of WARRANTECH's fiduciary responsibilities to COMPANY regarding Premium due to COMPANY in accordance with Section VI.H, of this AGREEMENT.

    3.    WARRANTECH abandons or discontinues business or is determined by COMPANY to be guilty of fraud, or gross and willful misconduct.

COMPANY shall provide WARRANTECH written notification of such termination. The failure of COMPANY to provide WARRANTECH written notification or to promptly notify WARRANTECH of such termination, does not waive COMPANY's rights hereunder.

E.     Upon termination of this AGREEMENT, WARRANTECH shall immediately communicate such termination and its effective date to all Dealers who produce PROGRAM business.

F.     Upon termination or cancellation of this AGREEMENT:

1.     WARRANTECH and COMPANY agree to continue to perform all functions and obligations required by this AGREEMENT as if this AGREEMENT were in full force with respects to all Vehicle Service Contracts with effective dates prior to the termination date of this AGREEMENT. Such service shall continue until, all Vehicle Service Contracts expire or are canceled and all Claims thereunder have been paid or a mutually acceptable arrangement for the fulfillment of such obligations is evidenced by a written agreement between the parties. Fulfillment of WARRANTECH's obligations under this provision shall entitle WARRANTECH to receive, and obligate COMPANY to pay compensation, if any, in accordance with Section IX of this AGREEMENT.

2.     Should WARRANTECH, for any reason, fail to fulfill its obligations as defined in Section X.F.1, above, then WARRANTECH shall forfeit all unpaid and future compensation due under this AGREEMENT. COMPANY shall use all such forfeited compensation as offsets against expenses incurred by COMPANY as a result of WARRANTECH's failure to perform its duties under this AGREEMENT. If, as a result of WARRANTECH's failure to fulfill its obligations as described above, COMPANY desires to select a new administrator for the outstanding Vehicle Service Contracts, COMPANY agrees that such new administrator shall comply with and be bound by all claims handling policies, procedures and practices as in effect immediately prior to the transition of administrative responsibility and made known to COMPANY prior to the transition to the new administrator.

Any transition of administrative responsibility from WARRANTECH due to the request of COMPANY shall be made without cost or expense to WARRANTECH, provided, however, that WARRANTECH shall be responsible for the reasonable costs and expenses incurred by it in the physical transfer of all files and records, both paper and electronic, to the new administrator in a manner sufficient to enable said administrator to carry out its administrative obligations.

3.     WARRANTECH shall provide COMPANY upon termination, all Vehicle Service Contracts and files relating to Vehicle Service Contract Holders under the PROGRAMS, and claim files if applicable, which may be required for servicing PROGRAM business or to meet record retention requirements mandated by regulatory organizations or required by COMPANY policy. WARRANTECH shall continue to provide electronic data transfer of contract and claim information as provided herein in a timely fashion during the transfer period. Such files shall include, but shall not be limited to the following information:

a.     For each Vehicle Service Contract Holder, the Vehicle Service Contract Holders' name and addresses, type of Vehicle Service Contract, terms of Vehicle Service Contract, effective and termination dates of Vehicle Service Contract, description of covered item and serial number and related correspondence.

        b.      For each Vehicle Service Contract, identifying all approved service/repair centers and Dealers, copies of the Vehicle Service Contracts correspondence and any other information that WARRANTECH possesses and which COMPANY requires to service PROGRAM business.

        c.      For each Vehicle Service Contract, identifying all claims paid and/or pending with regard to the PROGRAM.

## XI.   CONFIDENTIALITY

A.    During the term of this AGREEMENT and thereafter as may be required to fulfill the terms and conditions of this AGREEMENT, COMPANY may receive Confidential Information of WARRANTECH. COMPANY agrees it shall use all reasonable efforts to keep all Confidential Information of WARRANTECH confidential. However, COMPANY may disclose Confidential Information of WARRANTECH in accordance with Section X, Termination, and:

        1.    To such COMPANY directors, officers, employees and other authorized personnel (hereinafter collectively referenced as "Representative") of COMPANY, in order for COMPANY to fulfill its obligations under this AGREEMENT and related INSURANCE. Such Representatives shall be advised by COMPANY of the confidential nature of such information and shall agree to maintain the confidentiality of the information:

        2.    To the extent that WARRANTECH provides its prior written approval of such disclosure;

        3.    To the extent that COMPANY, or any Representative of COMPANY, is legally required to make such disclosure, provided that, WARRANTECH is notified by COMPANY prior to making the disclosure. In such case or cases, COMPANY or any Representative of COMPANY, agrees to disclose only that Confidential Information which is required by law.

B.    During the term of this AGREEMENT and thereafter as may be required to fulfill the terms and conditions of this AGREEMENT, WARRANTECH may receive Confidential Information of COMPANY. WARRANTECH agrees it shall use all reasonable efforts to keep all Confidential Information of COMPANY confidential. However, WARRANTECH may disclose Confidential Information of COMPANY:

        1.    To such WARRANTECH directors, officers, employees and other authorized personnel (hereinafter collectively referenced as "Representatives") of WARRANTECH, in order for WARRANTECH to fulfill its obligations under this AGREEMENT. Such Representatives shall be advised by WARRANTECH of the confidential nature of such information and shall agree to maintain the confidentiality of the information;

        2.    To the extent that COMPANY provides its prior written approval of such disclosure;

        3.    To the extent that WARRANTECH, or any Representative of WARRANTECH, is legally required to make such disclosure, provided that, COMPANY is notified by

WARRANTECH prior to making the disclosure. In such case or cases, WARRANTECH or any Representative of WARRANTECH, agrees to disclose only that Confidential Information which is required by law.

C. Upon termination or cancellation of this AGREEMENT, COMPANY agrees not to disclose Confidential Information to any non-affiliated third party, other than as provided in Section XI.A. above.

D. All Programs and Rates under this agreement are confidential.

## XII. INDEMNITY

A. A. COMPANY agrees to indemnify, defend and hold WARRANTECH, its affiliates, directors, officers, agents, representatives and employees harmless from and against any and all claims, suits, actions, liability, losses, expenses or damages, including compensatory, punitive and exemplary damages and attorney fees, now existing or which hereafter arise caused by or resulting from any of the following, provided WARRANTECH has not contributed or compounded such error:

1. Any wrongful act by COMPANY or any of its affiliates, directors, officers, agents, representatives and employees;

2. The failure of COMPANY or any of its affiliates, directors, officers, agents, representatives and employees failure to comply with any law or regulation regardless of whether such failure was intentional or unintentional, or resulted from mistake, negligence or lack of knowledge;

3. Any material inaccuracy in or any material breach of any representation, warranty, covenant or agreement of COMPANY contained in this AGREEMENT or in any agreement, document or certificate delivered in connection herein;

4. Any claims, suits, actions, liability, losses, expenses or damages incurred in which COMPANY caused, compounded or contributed to such error.

B. In exchange for COMPANY protecting WARRANTECH, WARRANTECH must notify COMPANY immediately of any claim against WARRANTECH. WARRANTECH must also allow COMPANY to make any investigations, settlement or defense COMPANY feels is appropriate. However, WARRANTECH shall have the right to participate jointly with COMPANY in the defense of any claim, demand, suit or other proceeding in connection with such claim for which indemnification is made and no such claim, demand, suit or other proceeding may be settled or otherwise compromised without the consent of both COMPANY and WARRANTECH.

C. WARRANTECH agrees to indemnify, defend and hold COMPANY, its affiliates, directors, officers, agents, representatives and employees harmless from and against any and all claims, suits actions, liability, losses, expenses or damages, including compensatory, punitive and exemplary damages and attorney fees, now existing or which hereafter arise caused by resulting from any of the following, provided COMPANY has not contributed to or compounded such error:

1. Any wrongful act by WARRANTECH, or any of its affiliates, directors, officers, agents, representative and employees;

2. The failure of WARRANTECH or any of its affiliates, directors, officers, agents, representatives and employees failure to comply with any material law or regulation regardless of whether such failure was intentional or unintentional, or resulted from mistake, negligence or lack of knowledge;

3. Any material inaccuracy in or any material breach of any representation, warranty, covenant or agreement of WARRANTECH contained in this AGREEMENT or in any agreement, document or certificate delivered in connection herein;

4. Any fraudulent or unauthorized use of the claims disbursement account and the claims deposit account required to be maintained pursuant to Addendum B, CLAIMS HANDLING AUTHORITY;

5. Any claims, suits, actions, liability, losses, expenses or damages existing or incurred in which WARRANTECH caused, compounded or contributed to such error.

D. In exchange for WARRANTECH protecting COMPANY, COMPANY must notify WARRANTECH immediately of any claim against COMPANY. COMPANY must allow WARRANTECH to make any investigations, settlement or defense WARRANTECH feels is appropriate. However, COMPANY shall have the right to participate jointly with WARRANTECH in the defense of any claim, demand, suit or other proceeding in connection with such claim for which indemnification is made and no such claim, demand, suit or other proceeding may be settled or otherwise compromised without the consent of both WARRANTECH and COMPANY.

E. For purposes of this section of the AGREEMENT, COMPANY and WARRANTECH shall not be considered affiliates or agents for each other.

## XIII. NO WAIVER

The failure of COMPANY or WARRANTECH to insist on strict compliance with this AGREEMENT, or to exercise any right or remedy hereunder shall not constitute a waiver of any rights contained herein nor stop the parties from thereafter demanding full and complete compliance therewith nor prevent the parties from exercising such remedy in the future.

## XIV. FULL AGREEMENT

A. This AGREEMENT supersedes and makes null and void any and all previous agreements covering the subject matter herein, whether written or oral, between COMPANY and WARRANTECH or their predecessors with respect to the type of business to be written hereunder and constitutes the full agreement between the parties. No amendment to this AGREEMENT shall be valid unless in writing, and signed by the parties except that the addenda attached hereto and the written rules, regulations and instructions of COMPANY communicated to WARRANTECH from time to time, shall be binding on the parties the same as though printed herein.

B.    Therefore, this AGREEMENT shall be the only agreement in effect for the kinds of Vehicle Service Contracts defined herein and referred to as the PROGRAM or PROGRAMS.

## XV.    SEVERABILITY

Wherever possible, each provision of this AGREEMENT will be interpreted in such manner and to such an extent as to be effective and valid under applicable law.  If any provision is prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition of invalidity.

## XVI.   THIRD PARTY BENEFICIARIES

The provisions of this AGREEMENT are for the sole benefit of the parties and, except as otherwise provided in Section XII. Indemnity, neither party shall be liable to any person not a party hereto for loss, liability, damage, expense or for any claim whatsoever.

## XVII.  NOTICES

A.    Any notices required or permitted to be given under this AGREEMENT shall be in writing and shall be deemed duly given if delivered personally, by registered mail, by overnight delivery service signature required or by certified mail to the party for whom it is intended at the following address or such other address as the recipient may designate from time to time.

For WARRANTECH  Warrantech
        150 Westpark Way
        Euless, TX 76040
        Attn: Jeanine M. Folz

Copies to the Chief Executive Officer and Corporate General Counsel at the following address:

        Warrantech Corp.
        1 Canterbury Green
        Stamford, CT 06901

For COMPANY:    Hyle H. Erwin, General Counsel
        Heritage Warranty Mutual Insurance
        1550 South 70th Street
        Lincoln, NE 68506

B.    Such notice shall be deemed to be given when deposited in the United States mail, postage prepaid.

## XVIII.  ARBITRATION

A.    It is understood that this AGREEMENT is made in good faith and should there arise, a difference of opinion or of interpretation of this AGREEMENT, which cannot be settled

amicably between senior representatives of COMPANY who are not involved in the day-to-day management of the PROGRAM and WARRANTECH, or any dispute arising from or relating to the performance or breach of this AGREEMENT, such differences, interpretations or disputes shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire meeting in Chicago, IL. This provision does not preclude COMPANY from seeking injunction relief where authorized under this AGREEMENT.

B.  WARRANTECH and COMPANY shall each appoint its arbitrator, and the two arbitrators shall choose an umpire before instituting the hearing. If the respondent fails to appoint an arbitrator within sixty (60) days after being requested to do so by the claimant, the latter shall also appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within four (4) weeks after their nominations, each of them shall name three (3), of whom the other shall decline two (2) and the decision shall be made by drawing lots. The claimant shall submit its initial brief in twenty (20) days thereafter, and the claimant may submit a reply brief within ten (10) days after filing of the respondent's brief.

C.  The board shall make an award with regard to the custom and usage of the insurance and reinsurance business. The board shall issue its award in writing based upon a hearing at which evidence may be introduced without following strict rules of evidence but in which cross-examination and rebuttal shall be allowed. The board shall make its award within sixty (60) days following the termination of the hearing unless the parties consent to an extension. A decision by the majority of the members of the board shall become binding upon all parties to the proceeding.

D.  Each party shall bear the expense of its own arbitrator and shall jointly and equally bear with the other party the expense of the umpire. The remaining costs of the arbitration proceeding shall be allocated by the board.

E.  The aforementioned Section XVIII, Arbitration, shall survive the termination of this AGREEMENT.

## XIX.  OTHER COMPANIES

WARRANTECH agrees to advise COMPANY of existing and future agency agreements entered into with other insurance companies with respect to business covered by this AGREEMENT.

## XX.  APPLICABLE LAW

This AGREEMENT shall be interpreted in accordance with the laws of the State of Illinois.

## XXI.  CAPTIONS

The captions of this AGREEMENT are not part of the AGREEMENT, but are merely for reference and should have no force or effect. If any caption is inconsistent with any provision of the AGREEMENT such provision shall govern.

IN WITNESS WHEREOF, the parties intending to be legally bound have caused this Administration Agreement to be signed and to take effect on the above date.

**WARRANTECH:**

DATED: 5/17/01

Warrantech Automotive, Inc.

BY: _____ (LS)

NAME: JEANINE M. HOLZ

TITLE: Senior Vice President

---

DATED: 5/17/01

Warrantech Automotive of Florida, Inc.

BY: _____ (LS)

NAME: JEANINE M. HOLZ

TITLE: Senior Vice President

---

DATED: 5/17/01

Vemeco, Inc.

BY: _____ (LS)

NAME: JEANINE M. HOLZ

TITLE: Senior Vice President

---

**COMPANY:**

DATED: _____

Heritage Warranty Mutual Insurance Risk Retention Group, Inc.

BY: _____ (LS)

NAME: Burl Boswn

TITLE: X. lees

Acknowledged and Agreed to this ____ day of April, 2001

Butler Financial Solutions, LLC

DATED: 5/19/01

BY: _____ (LS)

NAME: HARRIS G. MILLER

TITLE: PRESIDENT

# AMENDMENT NO. 1 TO ADMINISTRATIVE AGREEMENT

THIS AMENDMENT NO. 1 TO ADMINISTRATIVE AGREEMENT ("Amendment"), dated as of the 17th day of December, 2002, is entered into by and among Warrantech Automotive, Inc., Warrantech Automotive of Florida, Inc. and Vemeco, Inc., each of which has its principal office at 2200 Highway 121, Suite 100, Bedford, Texas 76021 (hereinafter referred to, collectively, as "WARRANTECH"), and Heritage Warranty Mutual Insurance Risk Retention Group, Inc. with its principal office located at 8055 "O" Street, Lincoln, Nebraska 68510 (hereinafter referred to as "COMPANY").

WHEREAS, WARRANTECH and COMPANY have entered into that certain Administrative Agreement, effective as of March 15, 2001 (hereinafter referred to as the "Agreement"); and

WHEREAS, WARRANTECH and COMPANY now desire to amend certain provisions of the Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and for good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

## I.  AMENDMENTS TO THE AGREEMENT:

a)  The first sentence of Section VI(H)(2) is hereby amended and restated in its entirety as follows:

"WARRANTECH shall be responsible for remitting to COMPANY, and/or such other entity as COMPANY may direct, all Premium for Vehicle Service Contracts reported to WARRANTECH, net of cancellations and net of all Claims and Allocated Loss Expenses (as defined n Addendum A hereto) paid by WARRANTECH during the month corresponding to the month for which the relevant Premium was reported."

b)  Section VI(O) is hereby amended by changing all references to "Addendum B" to "Addendum A".

c)  Section VI(Q)(3)(b) is hereby amended by deleting the address set forth therein and substituting the following in lieu thereof:

> Peter Knolla
> Heritage Warranty Mutual Insurance
> 8055 "O" Street
> Lincoln, Nebraska 68510

d)      Section VI(T)(2) is hereby amended and restated in its entirety as follows:

"WARRANTECH and COMPANY agree that the rate paid Company per vehicle service contract will be comprised of a management fee of $36 and an excess insurance fee of $4, which COMPANY agrees to adjust downward to account for loss experience or competitive reasons."

e)      Section VII(G) is hereby deleted in its entirety.

f)      Section IX(A) is hereby amended and restated in its entirety to read as follows:

"COMPANY hereby acknowledges that WARRANTECH enters into agreements with qualified repair facilities for the purpose of settling Claims against Vehicle Service Contracts under the Insurance. COMPANY hereby acknowledges and agrees that WARRANTECH enters into such agreements solely as agent for COMPANY and that the obligations undertaken and performed by WARRANTECH thereunder with respect to such Claims are the true and valid obligations of COMPANY. In the event that any repair facility shall assert a claim against WARRANTECH arising out of work performed by such repair facility under a Vehicle Service Contract, COMPANY shall be solely responsible for the satisfaction of such claim and shall indemnify and hold WARRANTECH harmless therefrom; provided, however, that such claim shall not result directly from the gross negligence and/or willful misconduct of WARRANTECH."

g)      Section XVII(A) is hereby amended and restated in its entirety as follows:

"Any notices required or permitted to be given under this AGREEMENT shall be in writing and shall be deemed duly given if delivered personally, by registered mail, by overnight delivery service (signature required), or by certified mail to the party for whom it is intended at the following address or such other address as the recipient may designate from time to time.

For WARRANTECH:      Warrantech Automotive, Inc.
2200 Highway 121
Suite 100
Bedford, Texas 76021

Copies to the Chief Executive Officer and General Counsel at the following address:

Warrantech Corporation
350 Bedford Street
Suite 203
Stamford, Connecticut 06901

For COMPANY:       Peter Knolla
Heritage Warranty Mutual Insurance
8055 "O" Street
Lincoln, Nebraska 68510

h)      Section XVIII is hereby re-titled, amended and restated in its entirety as follows:

## "XVIII.  RESOLUTION OF DISPUTES

A.     It is understood and agreed that this AGREEMENT is made in good faith. In the event, however, that there should arise a difference of opinion or interpretation of this AGREEMENT, or any dispute arising from or relating to the performance or breach of this AGREEMENT, that cannot be settled amicably among senior representatives of the parties, either party may make use of the federal and/or state courts of the State of Illinois for the purpose of resolving such dispute.

B.     If a dispute referred to in Paragraph A above arises out of the alleged failure of one party to make one or more monetary payments, it is hereby acknowledged and agreed that the failure to make such payment(s) could have a material and irreparable adverse impact on the other party. Therefore, the parties hereby agree that the party alleging such adverse impact shall be entitled to seek immediate injunctive relief in accordance with Paragraph A above with respect to any such dispute.

II.   AMENDMENTS TO ADDENDUM A

a)     Section I(F) is hereby amended by deleting the address set forth therein and substituting the following in lieu thereof:

Peter Knolla
Heritage Warranty Mutual Insurance
8055 "O" Street
Lincoln, Nebraska 68510

Tel:    402-489-7777
Fax:   402-489-7153

b)     Section I(I)(1) is hereby amended and restated in its entirety as follows:

"WARRANTECH shall maintain a COMPANY funded and controlled disbursement claim payment bank account at an FDIC insured bank (the "Bank") selected by COMPANY. This account shall be used solely for the payment of Claims and Allocated Loss Expenses pursuant to the terms of the AGREEMENT and this ADENDUM and only in the event that Claims and Allocated Loss Expenses paid by

WARRANTECH for a given month exceed the Premium reported to WARRANTECH (net of cancellations) for the corresponding month. With each request submitted to COMPANY for payment of Claims from this account, WARRANTECH will include a Claims disbursement file reasonably satisfactory to COMPANY."

c)     Section I(I)(3) is hereby amended by deleting "Bank One" and inserting in lieu thereof "the Bank".

d)     The first sentence of Section I(I)(6) is hereby amended and restated in its entirety as follows:

"WARRANTECH shall maintain the following minimum accounting controls concerning the bank account specified herein:"

e)     Sections I(K) and (L) are hereby amended by deleting the addresses set forth therein and substituting the following in lieu thereof:

> Peter Knolla
> Heritage Warranty Mutual Insurance
> 8055 "O" Street
> Lincoln, Nebraska 68510
>
> Tel:     402-489-7777
> Fax:    402-489-7153

f)     Section I(N) is hereby amended and restated in its entirety as follows:

"WARRANTECH shall store paper files closed with payment for three (3) years from the date of expiration of the relevant Vehicle Service Contracts or from the date of COMPANY's last state insurance department examination."

g)     A new Section II(G) is hereby added to read as follows:

"Provided that WARRANTECH has provided COMPANY with the requisite Claims disbursement file, COMPANY shall promptly fund the Claims and/or Allocated Loss Expenses submitted by WARRANTECH from the bank account more specifically described in Section I(I)(1) of this ADDENDUM."

h)     Section III(C) is hereby amended by restating the first sentence thereof as follows:

"As part of WARRANTECH's claims settlement ADDENDUM, WARRANTECH shall issue checks, not to exceed $50,000, drawn on COMPANY's funded account."

i)    Section X(E) is hereby amended and restated in its entirety as follows:

"Any notice required under this provision of this ADDENDUM shall be made in writing, by overnight delivery service, or by registered or certified mail, to the parties at the following addresses:

WARRANTECH:    Jeanine M. Folz
Warrantech Automotive, Inc.
2200 Highway 121
Suite 100
Bedford, Texas 76021

COMPANY:    Peter Knolla
Heritage Warranty Mutual Insurance
8055 "O" Street
Lincoln, Nebraska 68510

III.    GENERAL

a)    Except as otherwise specifically set forth herein, the Agreement, including all Addenda and Exhibits (if any), remain in full force and effect.

b)    This Amendment shall be governed by and construed in accordance with the laws of the State of Illinois.

IN WITNESS WHEREOF, the parties, intending to be legally bound, have caused this Amendment to be signed and to take effect as of the date first set forth above.

WARRANTECH:

DATED: _12/17/02_

Warrantech Automotive, Inc.

BY: _____

NAME: _JEANINE FOLZ_

TITLE: _SVP_

DATED: _12/17/02_

Warrantech Automotive of Florida, Inc.

BY: _____

NAME: _JEANINE FOLZ_

TITLE: _SVP_

DATED: 12/17/02

Vemeco, Inc

BY: _____

NAME: Jeanine Foez

TITLE: SVP

**COMPANY:**

DATED: _____

Heritage Warranty Mutual Insurance Risk Retention Group, Inc.

BY: _____

NAME: _____

TITLE: _____

Acknowledged and agreed to this 17th day of December, 2002.

Butler Financial Solutions, LLC

BY: _____

NAME: Harris G. Miller

TITLE: President

orig – J Morganlein
        Harris Miller
        P. Grollo
cc – C Ford
        R Garvin
        G Folz

## CLAIMS HANDLING ADDENDUM

The terms "COMPANY", and "PROGRAM" shall have the meanings ascribed to them in the attached Administrative Agreement.

COMPANY hereby grants WARRANTECH claims handling authority for the PROGRAM. WARRANTECH's responsibilities and duties for claims handling are subject to all policies and procedures as outlined in this ADDENDUM B.

In addition, the responsibilities of WARRANTECH and the rights of COMPANY stated in this ADDENDUM shall be in addition to, and not in limitation of, those responsibilities and duties of WARRANTECH and rights of COMPANY set out in any applicable sections of the attached Administrative Agreement.

I.  RESPONSIBILITIES AND DUTIES OF WARRANTECH:

   A.  WARRANTECH shall investigate, evaluate, document, and settle claims and loss reports submitted to WARRANTECH under Vehicle Service Contracts, and in accordance with policies covered by this ADDENDUM.

   B.  WARRANTECH will document each claim with a written chronology of all actions taken with respect to the underlying claim, including but not limited to disbursement of monies.

   C.  In situations where the claim is covered under the policy, WARRANTECH shall settle the claim through the disbursement of monies in accordance with Section III of this ADDENDUM and as follows:

      1.  If the WARRANTECH authorized repair shops determine that the item covered under the Vehicle Service Contract is repairable, then the disbursement of monies will be issued to the repair shop as reimbursement for repair work.

      2.  If the WARRANTECH authorized repair shops determine that the item covered under the Vehicle Service Contract must be replaced, then the disbursement of monies will be issued to the retailer for reimbursement of the new product.

      3.  If the WARRANTECH authorized repair shops determine that the item covered under the Vehicle Service Contract is neither repairable nor replaceable, then the disbursement of monies will be issued to the consumer who purchased the Vehicle Service Contract, as reimbursement for the damaged item.

      4.  Claims payments shall include the cost of replacement or repair of the damaged item and shall specifically exclude interest expense, fees and miscellaneous other charges.

   D.  WARRANTECH shall perform all reasonable and necessary work in connection with claims handling or loss reports including, but not limited to, clerical, record keeping and administrative functions.

E. WARRANTECH shall establish and maintain a Claim file for each reported Claim or loss. The originals of such files shall remain in WARRANTECH's possession. All such files shall be subject to review at any reasonable time by COMPANY. All information submitted in support of claims payments and requests for claims payments are, and shall remain, the exclusive property of COMPANY. At COMPANY's request and expense, WARRANTECH shall make copies of any of such files.

F. WARRANTECH shall promptly and fully report to COMPANY all information with respect to claims exceeding WARRANTECH's settlement ADDENDUM (Section III of this ADDENDUM), and all claims or reports of loss where fraud is suspected. Said reporting shall include a clear synopsis of the facts regarding the claim or loss, date of loss, date reported, name of Vehicle Service Contract Holder, name of dealer, and other information that COMPANY may require. WARRANTECH shall send this information, within seventy-two hours of receipt, to:

> Hyle H. Erwin, General Counsel
> Heritage Warranty Mutual Insurance
> 1550 South 70th Street
> Lincoln, NE 68506
>
> Tel: 402-489-7777
> Fax: 402-489-7153

G. WARRANTECH shall cooperate with COMPANY to ensure that all required claims information is reported to or accessible by COMPANY. Such required claim information may be extracted by COMPANY using data processing systems, or transmitted by WARRANTECH in accordance with COMPANY described specifications, and may include but shall not be limited to date of loss, date reported, name of Vehicle Service Contract Holder, name of dealer, date of payments, amount of payment, check number and other information the COMPANY may require.

H. WARRANTECH shall designate trained, qualified staff members, acceptable to COMPANY, who will be solely dedicated to the investigation, evaluation and settlement of claims.

I. 1. WARRANTECH shall maintain a COMPANY funded controlled disbursement claim payment bank account at Bank One located in Texas. This account shall be used solely for loss transactions specified under the AGREEMENT between COMPANY and WARRANTECH.

2. COMPANY agrees to pay the normal and customary bank fees and expenses related to establishing and maintaining said bank account. WARRANTECH agrees to indemnify and hold harmless COMPANY for all obligations and liabilities, excluding bank fees and related expenses, that COMPANY may incur by reason of WARRANTECH maintaining said bank account. Not withstanding anything to the contrary in this provision, WARRANTECH shall not be responsible for liabilities arising solely out of COMPANY's acts or omissions.

WARRANTECH and COMPANY agrees that the net proceeds of all salvage and subrogation activities shall be divided eighty percent (80%) to WARRANTECH and twenty percent (20%) to COMPANY. Such distribution shall occur within thirty (30) days of WARRANTECH's receipt of the net proceeds from the salvage and subrogation activities. Payment to COMPANY by WARRANTECH shall also include an accounting of items sold, price received and expenses deducted by WARRANTECH. Net proceeds do not include the cost of shipping and warehousing.

3. WARRANTECH agrees to have COMPANY receive all advices, statements, and reconciliations directly from Bank One. COMPANY will maintain a reconciliation of this account.

4. WARRANTECH shall indemnify COMPANY from any losses or costs associated with unauthorized use of this account and/or inappropriate or erroneous transactions processed through this account arising out of the gross negligence or willful misconduct of WARRANTECH or any of its officers, directors, employees or agents.

5. WARRANTECH shall maintain true and complete records of all transactions on the account, including, but not limited to, positive pay account requirements, records of check numbers available, issued, spoiled, stop payments, and amounts and dates of checks issued. Such records may be audited or examined by representatives of COMPANY during normal business hours with thirty (30) days prior written notice or by any Department of Insurance or other state regulatory authority at any time. Any such audit shall not include or entitle COMPANY to a review of claims files or other claims specific materials. Any audit conducted hereunder shall be deemed by the parties to be final and conclusive with respect to the time period of such audit.

6. WARRANTECH shall maintain the following minimum accounting controls concerning WARRANTECH's Bank One bank account specified under this AGREEMENT:

   a. The supply of unused checks must be maintained in a locked file or facility with access limited to only those authorized personnel who are not authorized check signers.

   b. Check signing machine and corresponding signature plates must be maintained in a locked file or facility with access limited to authorized personnel.

   c. A permanent register of checks issued, checks spoiled, and stop payments must be maintained which reconciles with the record total of checks issued on check signing machines or through data processing systems.

   d. Check issuance procedures, for claim payments, must be documented in accounting manuals and submitted to COMPANY for review.

7. WARRANTECH shall assist COMPANY in escheat analysis of any open issue check that is four (4) months old

8. WARRANTECH shall maintain records and provide COMPANY with all documentation that pertains to salvage and subrogation.

J.  WARRANTECH shall designate no more than three staff members as authorized check signers for claim payment made for the PROGRAM. The names of WARRANTECH's authorized check signers must be communicated to COMPANY, in writing, within two weeks of the effective date of this ADDENDUM.

K.  WARRANTECH shall notify COMPANY of any lawsuit received by WARRANTECH in which COMPANY is named as a defendant. Such notices shall be FAXED to COMPANY is named as a defendant. Such notices shall be FAXED to COMPANY, within twenty-four (24) hours of receipt, at the following address and fax number:

> Hyle H. Erwin, General Counsel
> Heritage Warranty Mutual Insurance
> 1550 South 70th Street
> Lincoln, NE 68506
>
> Tel: 402-489-7777
> Fax: 402-489-7153

L.  WARRANTECH shall notify COMPANY of all claims-related Department of Insurance complaints resulting from claims settlement practices, procedures or from any incident relating to the PROGRAM. Such notice shall be forwarded to COMPANY, within twenty-four (24) hours, at the following address:

> Hyle H. Erwin, General Counsel
> Heritage Warranty Mutual Insurance
> 1550 South 70th Street
> Lincoln, NE 68506
>
> Tel:  402-489-7777
> Fax:  402-489-7153

A copy of COMPANY's response shall be provided to WARRANTECH for documentation.

M.  WARRANTECH shall obtain COMPANY's written approval prior to retaining any professional or expert including, but not limited to, claims adjusters, special investigators, engineers, expert witnesses and accountants, who are not employees of WARRANTECH and whose services may be contracted for by WARRANTECH in the investigation and evaluation of COMPANY claims. This clause does not apply to assignments made by WARRANTECH to authorized repair shops for the purposes of determining if damages are covered by the warranty and for estimating repair cost.

N.  WARRANTECH shall store paper files closed with payment for two (2) years from date of closure and files without payment for six (6) years from date of closure.

## II. RESPONSIBILITIES AND DUTIES OF COMPANY:

A. COMPANY shall coordinate the training and education of WARRANTECH's staff member(s) concerning the procedures, policies, workflow and system of COMPANY. Additional training, if necessary, regarding loss adjustment techniques is available to WARRANTECH on a tuition basis.

B. COMPANY may conduct audits of WARRANTECH's claims handling and settlement performance on a semi annual basis; provided, however, if any such audit reveals a material error or deficiency in WARRANTECH's claims handling practices, COMPANY shall be entitled to perform a follow-up audit prior to the next semi annual period for purposes of confirming that said error or deficiency has been corrected. COMPANY shall provide WARRANTECH with not less than ten (10) business days advance notice of such audits. Any audit conducted hereunder shall be deemed by the parties to be final and conclusive with respect to the time period of such audit.

C. COMPANY shall make all decisions regarding coverage disclaimer issues, reservations of rights issues and ex gratia payments.

D. COMPANY may, at its discretion, assume control of any claim in which COMPANY is named as a defendant.

E. COMPANY may, at its discretion assume the handling of any claim at any time, and WARRANTECH agrees to deliver promptly the claim file to the COMPANY which COMPANY may request, as well as funds accrued for the purpose of paying the claim.

F. COMPANY is responsible for all claim costs and all claim administration costs.

## III. CLAIMS SETTLEMENT ADDENDUM GRANTED:

A. WARRANTECH is granted $6,000 claims settlement ADDENDUM per Vehicle Service Contract claim file.

B. Claims settlement, as used in this ADDENDUM, is defined as the extension of an offer of consideration, in response to covered claims for repair or replacement under Vehicle Service Contracts, covered by an in-force insurance policy issued by COMPANY.

C. As part of WARRANTECH's claims settlement ADDENDUM, WARRANTECH shall issue checks, not to exceed $50,000 drawn on WARRANTECH's COMPANY funded account. Disbursements shall be in accordance with written instructions from COMPANY and with Section I of this ADDENDUM, and shall only be for the settlement of claims arising from policies written as part of the PROGRAM.

## IV. CLAIMS SETTLEMENT ADDENDUM RESTRICTIONS:

A. WARRANTECH has no rights to issue business payments, drawn on WARRANTECH's COMPANY funded account, or to reform coverage after a claim has been presented, without the prior written approval of COMPANY.

B. COMPANY shall permit WARRANTECH to handle subrogation and salvage on claim files managed by WARRANTECH. WARRANTECH will maintain a "Salvage Log" to include entries as follows: date of entry, claim number, name of Vehicle Service Contract

Holder, name of dealer, date of loss, amount paid, date of recovery amount recovered, name of vendor who remitted recovery proceeds, and the date closed

## V. COMPLIANCE WITH STATE INSURANCE CODES:

A. WARRANTECH agrees to operate and maintain, at all times, all necessary licensing in compliance with every applicable insurance code, statute or regulation set forth in the state or jurisdictions in which WARRANTECH services claims or losses on behalf of COMPANY.

B. In the event WARRANTECH is in violation of any state insurance code, statute or regulation due to the acts or omissions of the WARRANTECH, WARRANTECH shall defend, indemnify and hold COMPANY harmless from all liability, expenses (including attorney's fees and other legal expenses), fines or other fees incurred by COMPANY as a result of such violations or alleged violations.

## VI. PROPRIETARY INFORMATION

A. If, and to the extent that WARRANTECH shall, in connection with this ADDENDUM, come into possession of any information, business or technology of COMPANY which is not then known to the public, WARRANTECH agrees to treat such information as confidential and not to disclose such information to others not a party to this ADDENDUM.

B. WARRANTECH shall, in connection with this ADDENDUM, maintain the integrity and security of any data processing system(s), and provide COMPANY or representative of COMPANY, access to any data processing system(s) provided by COMPANY and used in the handling and/or payment of service warranty claims.

## VII. EXPENSES:

A. WARRANTECH shall make all payments with respect to Claims and pay all Allocated Loss Expenses (as defined in paragraph B below) from the Claims disbursement account.

B. The term "Allocated Loss Expenses" shall mean the following items of expense incurred or authorized by WARRANTECH that are directly allocable to a specific Claim and that are reasonable and necessary in connection with WARRANTECH's duties:

   1. Attorney's fees and disbursements.

   2. Court reporter services and transcripts.

   3. Stenographic services and transcripts.

   4. Witness attendance fees.

   5. Court costs.

   6. Appeal bonds.

   7. Printing costs related to trials and appeals.

8.  Testimony, opinions, appraisals, reports, surveys, and analysis of professionals and experts.

9.  Trial and hearing attendance fees.

10. Reports from government agencies and branches.

11. Credit bureau reports.

12. Private investigators.

13. Photographs.

14. Extraordinary Claim investigation and/or travel expense incurred at the request of COMPANY.

15. Inspection fees.

C.  WARRANTECH shall not incur any expenses on behalf of COMPANY or assess COMPANY for any expenses, other than for charges for services rendered as defined in Section VII. of this ADDENDUM, without the prior written approval by COMPANY.

## VIII. TERMINATION:

A.  COMPANY shall have the right to terminate this ADDENDUM for any reason by giving WARRANTECH written notice to be received ninety (90) days prior to the effective date thereof.

B.  WARRANTECH shall have the right to terminate this ADDENDUM for any reason by giving COMPANY written notice to be received one hundred eighty (180) days prior to the effective date thereof.

C.  The COMPANY may terminate this ADDENDUM immediately by sending a written notice if WARRANTECH violates any provision of this ADDENDUM.

D.  This ADDENDUM shall terminate automatically upon the termination of the attached ADMINISTRATIVE AGREEMENT.

E.  At the COMPANY's discretion, the ADDENDUM and responsibility of WARRANTECH to adjust, settle and service claims or losses under the terms of this ADDENDUM, shall continue until such time as all claims or losses reported to WARRANTECH have been finally adjusted and closed.

## IX. REINSURANCE:

COMPANY shall have the sole right and responsibility to report to any and all reinsurers all facts, notices, documents and information sufficient to comply with reporting requirements of said reinsurers. WARRANTECH shall make no such reports, and all contacts shall be made by or through COMPANY. WARRANTECH further agrees to cooperate with COMPANY in meeting COMPANY's obligations to reinsurers.

## X. GENERAL PROVISIONS:

A.     This ADDENDUM shall, without prior notice, be automatically modified to conform with any law or governmental regulation having application to or jurisdiction over the subject matter of the parties hereto.

B.     This ADDENDUM may not be altered or modified, except in writing, signed by the parties hereto. A waiver by COMPANY of any breach or default by WARRANTECH under this ADDENDUM shall not constitute a continuing waiver or a waiver by COMPANY of any subsequent act in breach or in default hereunder.

C.     WARRANTECH will make available to the COMPANY, when directed by the COMPANY, exact copies of all correspondence and documents received or issued pursuant to this ADDENDUM. WARRANTECH shall keep true and complete records of all transactions and correspondence received and sent hereunder. Such records may be audited, examined and copied by representatives of the COMPANY at any time during business hours upon reasonable advance written notice and shall be made available for examination by any State Insurance Department or regulatory body which so requires.

D.     WARRANTECH shall advise COMPANY of existing and future claims administration agreements with other insurance companies with respect to the classes of business covered by this ADDENDUM.

E.     Any notice required under this provision of this ADDENDUM shall be made in writing, by telex or registered or certified mail, to the parties at the following addresses:

      WARRANTECH         Jeanine M. Folz, Senior Vice President
                                 Warrantech Corp.
                                 150 Westpark Way
                                 Euless, TX 76040

      COMPANY

                                 Hyle H. Erwin, General Counsel
                                 Heritage Warranty Mutual Insurance
                                 1550 South 70th Street
                                 Lincoln, NE 68506

## Addendum B

- Service Contract Application/Registrationn
  - Dealer Obligor – Form# G791100DONY1100
  - Third Party Obligor – Form# G741100AONY1100
- Service Contract
  - RepairMaster TruckCare Plus – Form# R981299TRUCKVSC0100
  - RepairMaster Vehicle Service Contract – Form# R981299VSC0100
- Rates (Dealer Cost) and Class Listing
  - Cars and Vans Rates and Class Listing – Form# CVRMO10400/CAR
  - TruckCare Plus Rates and Class Listing – Form# CVTCPO10400/TRUCK
- Agent Agreement – Revised 12/19/97
- Dealer Agreement – Form# R470200AO/DO0300
- Marketing Materials
  - Brochure – Form# R160400C/V0500
  - Brochure – Form# R160400T/S0500
  - Brochure – Form# R150200RMCORP0200
- Insurance Remit Charts (Reinsurance Trust + Claim Management Fund + Renegade Fund)
  - RepairMater TruckCare Plus – Form# 2000 RepairMaster Truck Premium
  - RepairMaster VSC – Form# 2000 RepairMaster Premium
- Risk Retention Group Application
- Risk Retention Group Certificate of Membership
- Insurance Policy Declarations Page
- VSC Reimbursement Insurance Policy – Form# HWMIRRG-SC-WAR-001
- Insurance Policy Endorsement
- Program Flow Chart
- Monthly Report Format – Report to be provided by Warrantech monthly
- Contract / Claim / Cancel Data Specification – Data to be provided by Warrantech monthly
- Asset Management Program - Investment Specifications – Draft Copy Included
- Earning Patterns – Provided by Warrantech but not yet approved by Heritage
- Reinsurance Agreement – Not Attached
- Trust/Custodial Agreement – Not Attached

SAMPLE

REDACTED

**Louis Companies** 817-640-1444

This is your CUSTOMER CONTRACT NUMBER. Please use this number in any phone or written communication.

| 14 | 860370 | | | | |
|---|---|---|---|---|---|
| | YOUR CONTRACT NUMBER | YOUR CONTRACT PLAN CODE | SELLING DEALER CODE | | LOCAL AGENT CODE |

CONTRACT HOLDER (You, Your):

CONTRACT HOLDER ADDRESS: (Phone)

☐ FULL PAY
☐ INSTALLMENT

DESCRIPTION OF YOUR VEHICLE:

| YEAR | MAKE | MODEL | | | |
|---|---|---|---|---|---|

VEHICLE SERVICE DEDUCTIBLE PLAN

| | TERM | MILEAGE |
|---|---|---|

MONTHS / KM

☐ 4WD / AWD
☐ DIESEL
☐ TURBO/SUPERCHARGER
☐ COMMERCIAL USE

☐ ENHANCED ELECTRICAL
☐ CONVERSION VAN
☐ SEALS AND GASKETS
☐ ONE TON

*CONTRACT PURCHASE DATE

LIENHOLDER: (Needed only when VSC is financed)

DEALER/LESSOR:

ADDRESS

DEALER PHONE NUMBER (          )

CONTRACT HOLDER SIGNATURE _____ DATE _____

AUTHORIZED DEALER SIGNATURE _____ DATE _____
                                                    Vehicle Purchase Date

Distributor: White – Administrator; Green – Agent; Canary – Dealer Copy; Pink – Customer Copy; Goldenrod – Lienholder Copy

FOLD HERE ▼

•New vehicle plan expiration is measured in time/mileage from the Contract Purchase Date and zero (0) miles.
•Used vehicle plan expiration is measured from Contract Purchase Date and odometer mileage at Contract Purchase Date.

The definition of "We, Us and Our" used frequently throughout the Vehicle Service Contract is defined as BUTLER FINANCIAL SOLUTIONS, L.L.C., 2300 Corporate Blvd, NW, Suite 214, Boca Raton, Florida 33431. Please refer to the Vehicle Service Contract for additional Definitions.

Our obligations under this Vehicle Service Contract are insured by a policy issued by American Modern Home Insurance Company, 7000 Midland Blvd., Amelia, OH 45102. If a covered claim is not paid within sixty (60) days, (except in Arizona thirty (30) days), after proof of loss has been filed, You may file a claim directly with the Insurance Company. Please call 1-800-877-0824 for instructions.

*Correct Purchase Date

Administrator
Warrantech Automotive, Inc.
P.O. BOX 1189, Bedford, TX, Texas
1-800-877-0824 (WATTY)

07411000A0W1100

If this Vehicle Service Contract has been financed, the Lienholder shall be entitled to any refunds resulting from the cancellation of this Vehicle Service Contract for whatever reason. This would include cancellation for non-payment, repossession of the vehicle, or total loss of the vehicle.