UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT T. KENNEDY, JOANN MICK and CHARLES C. MITSCHOW, | ) ) ) |
| Plaintiffs, | ) ) ) 08 C 1862 |
| v. | ) ) Judge George M. Marovich |
| BUTLER FINANCIAL SOLUTIONS, LLC, HERITAGE WARRANTY INSURANCE RISK RETENTION GROUP, INC., WARRANTECH MUTUAL INSURANCE RISK RETENTION GROUP, INC., | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Robert T. Kennedy ("Kennedy"), JoAnn Mick ("Mick") and Charles C. Mitschow ("Mitschow") filed a purported class action complaint against defendants Butler Financial Solutions, LLC ("Butler"), Heritage Warranty Risk Retention Group, Inc. ("Heritage") and Warrantech Mutual Insurance Risk Retention Group, Inc. ("Warrantech").[1] In Count I, plaintiffs allege that the defendants violated the Magnuson-Moss Warranty Act. In Count II, plaintiffs allege that Butler breached its contracts with plaintiffs. In Count III, plaintiffs assert

---

[1] The Court has jurisdiction over this case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (d)(2)(A) ("The district courts shall have original juridiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant;"). According to the allegations in plaintiffs' complaint, the amount in controversy is greater than $5,000,000.00, and the number of members in the proposed class is greater than 100. Plaintiff Mick is a citizen of Illinois, and plaintiff Mitschow is citizen of North Carolina. Defendant Butler is a citizen of Delaware and Florida. Defendant Heritage is a citizen of South Carolina. Defendant Warrantech is a citizen of Connecticut and Texas.

that their contracts are voidable.  In Count IV, plaintiffs assert a third-party beneficiary claim against Heritage.  In Count V, plaintiffs seek declaratory relief from defendants.

Each defendant has filed a separate motion to dismiss.  Butler seeks to dismiss Counts I, III and V against it.  Heritage seeks to dismiss Counts I and III.  Warrantech seeks to dismiss Counts I, III and V.  For the reasons set forth below, the Court grants in part and denies in part Heritage's motion to dismiss.  The Court grants in part and denies in part Butler's motion.  The Court grants in part and denies in part Warrantech's motion to dismiss.

**I.     Background**

The Court takes as true the allegations in plaintiffs' first amended complaint.

This case arises out of the alleged failure of defendants to comply with their obligations under vehicle service contracts ("VSCs") entered into by plaintiffs Kennedy, Mick and Mitschow.  A VSC is akin to an extended warranty for an automobile.  The automobile-purchaser has the option, when purchasing a car, to enter into an agreement whereby the purchaser pays a premium and the obligor agrees to pay for the cost of certain repairs that become necessary during the time period set out in the VSC.

In December 2002, Kennedy paid $1,332.00 for a VSC that was to cover his vehicle for 84 months or 100,000 miles.  In November 2002, Mick paid $1,270.00 for a VSC that was to cover her vehicle for 60 months or 100,000 miles.  In June 2003, Mitschow paid $1,500.00 for a VSC that was to cover his vehicle for 72 months or 100,000 miles.  Plaintiffs allege that the defendants collected more than $25,000,000.00 in premiums for VSCs.

The VSCs signed by Kennedy, Mick and Mitschow are standard-form contracts.  Each says, among other things, "**We** will pay or reimburse **You** for reasonable costs to repair or

replace any **Breakdown** of a part listed under **Mechanical Coverage**." (Emphasis in original.) The VSC defines "**We**" or "Our" as Butler Financial Solutions, LLC. The VSCs also say, "**Our** obligations under this Vehicle Service Contract are insured by a policy issued by Heritage Warranty Mutual Insurance Risk Retention Group, Inc. [address omitted] under a motor Vehicle Service Contract reimbursement policy . . . If a covered claim is not paid within sixty (60) days . . . **You** may file a claim directly with the Insurance Company. Please call 1-800-543-8801 for instructions."

In addition to Heritage and Butler, a third entity–Warrantech–is involved with the VSCs. Warrantech designed, priced, marketed, distributed and administered the VSC program. The three defendants are contractually linked by an Administrative Agreement, which the defendants signed in 2001. Heritage and Butler each signed the Administrative Agreement as "COMPANY". The Administrative Agreement says, among other things, that "WARRANTECH shall serve as COMPANY's administrator of Vehicle Service Contracts which are provided by COMPANY." According to the Administrative Agreement, the VSCs are actually sold by car dealers. For each VSC sold, a car dealer remits to Warrantech some amount (which is not set out in the Administrative Agreement). Warrantech, in turn, remits a "premium" to COMPANY. In addition to the premium, Warrantech is supposed to pay COMPANY $40 for each VSC.

Warrantech settles all claims made under the VSCs. The Administrative Agreement says that "WARRANTECH shall maintain a COMPANY funded controlled disbursement claim payment bank account at Bank One located in Texas. This account shall be used solely for loss transactions specified under the AGREEMENT between COMPANY and WARRENTECH."

COMPANY is to pay WARRENTECH $20 for each claim, according to the Administrative Agreement.

A third contract is relevant to this case. In December 2001, Heritage and Butler signed an insurance agreement (the "Insurance Policy"). Under the Insurance Policy, Heritage and Butler agreed, among other things:

> [Heritage] will indemnify [Butler] against Loss, subject to the Loss Reserve Fund provision herein, arising out of the reasonable and customary cost of repair or replacement under and in accordance with all the terms of the Service Contracts issued by [Butler] on or after the inception date of this Policy, as follows:
>
> **UPON FAILURE OF [BUTLER] TO PERFORM UNDER THE SERVICE CONTRACTS, HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC., SHALL PAY ON BEHALF OF [BUTLER] ANY SUMS [BUTLER] IS LEGALLY OBLIGATED TO PAY OR SHALL PROVIDE THE SERVICE THAT [BUTLER] IS LEGALLY OBLIGATED TO PERFORM ACCORDING TO [BUTLER'S] CONTRACTUAL OBLIGATION UNDER THE SERVICE CONTRACTS ISSUED BY [BUTLER], And HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC. WILL PAY CLAIMS AGAINST THE INSURED FOR RETURN OF THE UNEARNED PURCHASE PRICE OF THE SERVICE CONTRACT.**
>
> Coverage hereunder shall be provided on a claims made basis.
>
> Upon failure of [Butler] to pay or provide service on a valid claim within sixty (60) days after proof of loss has been filed with [Butler], coverage hereunder shall be provided directly to the service contract holder claimant.

(Insurance Policy at 1-2) (emphasis in original). The Insurance Policy says Heritage's liability is limited to the loss in excess of any "Loss Reserve Fund" that "may be established from time to time by the Administrator on behalf of [Butler]". The Insurance Policy also makes it clear that Heritage approved the content of the VSCs. (Insurance Policy at 5 ("It is a condition of this insurance that the Service Contract(s) issued by [Butler] are identical to the specimen copy(s) on file with and approved by [Heritage] and will remain unaltered unless [Heritage] is duly notified

of any proposed alteration and written consent to such proposed alteration is given by [Heritage].")).

Kennedy made a claim under the VSC in August 2007. When Kennedy took his vehicle to the local car dealer, the dealer contacted Butler's claims administrator, which acknowledged that the repair was covered by the VSC but, nonetheless, refused to pay. The administrator informed Kennedy and the dealer that they would need to ask Heritage to pay. Heritage, in turn, declined to pay and said that Butler would have to pay. Plaintiffs Mick and Mitschow had similar experiences. When Mitschow made claims to Butler's claims administrator, he was told to seek payment from Heritage. Heritage refused to pay. Similarly, when Mick made a claim to Butler's claims administrator, it approved the claim but refused to pay. The claims administrator told Mick to turn to Heritage for payment. Heritage never responded to her claim.

Plaintiffs allege that the entire VSC system was a scheme. Plaintiffs allege that Butler and Heritage never intended for Butler to pay the claims. Rather, the claims were paid for some period of time from a Loss Reserve Fund which was funded, according to plaintiffs' allegations, by Heritage. Plaintiffs allege that when the Loss Reserve Fund ran out, the defendants stopped paying claims. Plaintiffs allege that when they designed the system, defendants failed to ensure that the Loss Reserve Fund contained sufficient money to cover potential claims. Plaintiffs also allege that neither Butler nor Heritage ever intended to accept the risk that claims would exceed funds available in the Loss Reserve Fund.

## II. **Standard on a motion to dismiss**

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiffs' favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

**III.   Discussion**

    **A.   Plaintiffs' Magnuson-Moss claim**

In Count I, plaintiffs assert that defendants violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2306, by failing to disclose fully, clearly and conspicuously certain

terms of the VSCs. The details of the alleged failures are not relevant. Defendants argue that Count I must be dismissed on account of the McCarran-Ferguson Act, 15 U.S.C. § 1012.[2]

By virtue of the Supremacy Clause of Article VI of the Constitution, federal law preempts conflicting state law. With respect to the business of insurance, however, the McCarran-Ferguson Act changed the normal rules of preclusion. *See American Deposit Corp. v. Schacht*, 84 F.3d 834, 837-838 (7th Cir. 1996). The McCarran-Ferguson Act says:

> **(a)** **State regulation**
>
> The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> **(b)** **Federal regulation**
>
> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012. All defendants rely on McCarran-Ferguson to argue that plaintiffs' Count I must be dismissed. Not all defendants make the same arguments, but the analysis is the same with respect to each defendant.

A regulation issued by the Federal Trade Commission, which is charged with making regulations in connection with the MMWA, directly addresses whether the VSCs are covered by the MMWA. Specifically, the relevant regulation states:

> The Act recognizes two types of agreements which may provide similar coverage of consumer products, the written warranty, and the service contract. In addition, other agreements may meet the statutory definitions of either 'written warranty'

---

[2]No defendant argues that plaintiffs fail to state a claim because the VSCs are not service contracts within the meaning of the MMWA.

> or 'service contract,' but are sold and regulated under state law as contracts of insurance. One example is the automobile breakdown insurance policies sold in many jurisdictions and regulated by the state as a form of casualty insurance. The McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., precludes jurisdiction under federal law over 'the business of insurance' to the extent an agreement is regulated by state law as insurance. Thus, such agreements are subject to the Magnuson-Moss Warranty Act *only to the extent they are not regulated in a particular state as the business of insurance*.

16 C.F.R. § 700.11 (emphasis added).

The Court first considers whether the regulation is entitled to deference under *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 842-843 (1984). *See Bloch v. Frischholz*, 533 F.3d 562, 571 (7th Cir. 2008). Thus, the Court considers "whether Congress has directly spoken to the precise question at issue," and, if not, whether the agency's answer is reasonable. *Chevron*, 467 U.S. at 842-843; *Bloch*, 533 F.3d at 571. It is not clear from the face of the MMWA whether it is meant to regulate insurance, so the Court considers whether the regulation is reasonable. The FTC's regulation strikes the Court as reasonable, though perhaps not the best interpretation of the law. The regulation is reasonable because it is true to McCarran-Ferguson's clear purpose, which is for most federal statutes to stay out of the way of the states' regulation of the insurance business. The regulation essentially says that if the state regulates the agreement as insurance, then Magnuson-Moss does not apply, and if the state does not, then Magnuson-Moss applies. Thus, the regulation is reasonable.

Next, the Court applies the regulation to the VSCs at issue in this case. The regulation says agreements are subject to Magnuson-Moss "only to the extent they are not regulated in a particular state as the business of insurance." Here, the plaintiffs are citizens of three different states. If each of those states regulates VSCs "as the business of insurance" then Magnuson-

-8-

Moss is inapplicable to the VSCs. Otherwise, McCarran-Ferguson is not a reason to dismiss Count I.

Plaintiff Mick is a citizen of Illinois. It is clear as a matter of law that Illinois regulates the VSCs. It is not clear, however, whether Illinois regulates the VSCs "as the business of insurance" or regulates them as a non-insurance business. Illinois subjects service contracts to the Illinois Service Contract Act, 215 ILCS 152/1 et. seq. Among other things, the Illinois Service Contract Act says that "[s]ervice contract providers and related service contract sellers and administrators complying with this Act are not required to comply with and are not subject to any provision of the Illinois Insurance Code." 215 ILCS 152/10. Not surprisingly, a federal bankruptcy court has concluded:

> The only interpretation of the [Illinois Service Contract] Act that gives meaning to all of its statutory provisions is that once a service contract provider complies with the financial requirements of § 15 and registers according to § 25, it is exempt from compliance with the Insurance Code and is not considered an insurer under Illinois law. If an exempt service contract provider fails to comply with the other requirements of the statute, it is not then treated as an insurer but instead is subject to the enforcement provisions in § 50.

See In re Automotive Professionals, Inc., 370 B.R. 161, 170 (N.D. Ill. 2007). This Court agrees. So long as a service contract provider complies with § 15 and registers according to § 25, Illinois does not regulate it as the business of insurance. The upshot is that service contract providers that comply with § 15 and register under § 25 are subject to Magnuson-Moss. It is not clear at this point in the proceedings whether the service contract provider of the VSCs complied with § 15 and registered under § 25. Thus, the Court will not, at this point, dismiss Count I.

For these reasons, the Court denies the motions to dismiss with respect to Count I.

### B. Plaintiffs' attempt to void the contracts

In Count III, plaintiffs assert that the VSC contracts they signed are voidable on account of fraud. Defendants seek to dismiss Count III on the grounds that plaintiffs fail to allege sufficient facts to state a claim for fraud. Essentially, the issue is whether plaintiffs have plead enough to turn their contract claims into tort claims.

Misrepresentations of the intent to perform future conduct are not actionable as fraud. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 168 (Ill. 1989). "Even a false promise of future conduct with no current intent to fulfil that promise will not constitute fraud." *Prime Leasing, Inc. v. Kendig*, 332 Ill.App.3d 300, 309 (1st Dist. 2002). Illinois law recognizes an exception, however, and a false promise of future performance is actionable if it "is part of a scheme or device to defraud another of her property." *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill.App.3d 795, 826 N.E.2d 970, 977 (1st Dist. 2005). Such promissory fraud "is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). The Seventh Circuit has noted:

> In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent–a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief. If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed.

*Bower*, 978 F.2d at 1012 (quoting *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985). In *Willis v. Atkins*, 412 Ill. 245, 259-260 (Ill. 1952), for example, the Supreme Court of Illinois relied on actions beyond a promise of marriage without intent to perform in allowing a fraud claim. The court explained:

> We are aware of [the general rule that "actionable fraud cannot be predicated upon the mere failure to perform a promise, though there was no intention to perform the promise when made"] but believe it has no application to a situation such as that presented here, where the fraud was perpetrated and the confidence gained not by mere promises but by a course of conduct covering a period of almost twelve years in which appellee, by pretending great interest in the appellant's welfare and devotion to her affairs, secured not only her property but a large measure of his support. During all those years, he came to appellant's home almost daily, ate his meals with her and handled her business affairs. . . . The appellee, by all of his conduct, and not by mere promises, falsely represented that he and the appellant were building together for a rosy future, while all the time he was interested only in what he could get from her.

*Willis*, 412 Ill. at 259-260.

Plaintiffs attempt to turn their contract claim into a tort claim by arguing that the VSC system was a scheme and that defendants never intended to pay claims under the VSCs. Plaintiffs allege that while Butler was the obligor under the VSCs, both Heritage and Butler knew from the beginning that Butler would never pay claims. Plaintiffs allege that claims under the VSCs were paid only until December 2006, and Butler never paid the claims. Rather, Warrantech, as Administrator, is alleged to have paid the claims out of a Loss Reserve Fund that was funded by Heritage. At this point, each defendant refuses to pay claims. The Court is not convinced that plaintiffs' allegations get around the general prohibition against turning contract claims into tort claims. Plaintiffs allege that defendants knew from the beginning that *Butler* would not pay the claims, but they do not allege that the defendants intended that *no one* would pay the claims. Rather, plaintiffs' allegations suggest that the defendants intended that claims would be paid through the Loss Reserve Fund. Claims were paid for years. It seems from plaintiffs' allegations that it was only when the Loss Reserve Fund ran out that each party refused to pay claims. Plaintiffs have adequately alleged a breach of contract, but they have not alleged fraud.

Count III is dismissed, and each defendant's motion to dismiss is granted with respect to Count III.

### C. Count V

In Count V, plaintiffs seek a declaration of their rights under the VSCs, the Insurance Policy and the Administrative Agreement. Defendants Warrantech and Butler move to dismiss Count V.

Warrantech and Butler cite *Pelfresne v. Village of Lindenhurst*, Case No. 03 C 6905, 2005 WL 2322228 at *6 (N.D. Ill. Sept. 16, 2005), where a district court dismissed a declaratory action on the grounds that it was duplicative of other relief requested in the suit. The Court disagrees that the claim is duplicative. Plaintiffs' other claims do not seek a declaration of their rights under the Administrative Agreement. In any event, although the Court *may* strike duplicative pleadings, it is not required to.

Warrantech's motion to dismiss is denied as to Count V. Butler's motion to dismiss is denied as to Count V.

## IV. Conclusion

For the reasons set out above, the Court grants in part and denies in part Warrantech's motion to dismiss. The Court grants in part and denies in part Butler's motion to dismiss. The Court grants in part and denies in part Heritage's motion to dismiss. The Court dismisses Count III.

ENTER:

George M. Marovich
United States District Judge

DATED: February 4, 2009