# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ROBERT T. KENNEDY, JOANN MICK,　　)
CHARLES C. MITSCHOW　　　　　　　　)
On Behalf of Themselves and All Others　)
Similarly Situated,　　　　　　　　　　　)　　　Case No. 1:08-cv-1862
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　　Honorable George M. Marovich
　　　　　　　　　　　　　　　　　　　)
BUTLER FINANCIAL SOLUTIONS, LLC, )　　**FIRST SET OF PLAINTIFFS'**
HERITAGE WARRANTY INSURANCE　)　　**INTERROGATORIES DIRECTED**
RISK RETENTION GROUP, INC.,　　　　)　　**TO ALL DEFENDANTS**
f/k/a HERITAGE WARRANTY　　　　　　)
MUTUAL INSURANCE RISK　　　　　　　)
RETENTION GROUP, INC., and　　　　　)
JOHN DOES 1-10,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs, Robert T.

Kennedy, Joann Mick, and Charles C. Mitschow (collectively "Plaintiffs") hereby request that

each Defendant individually respond to the following First Set of Interrogatories Directed to

Defendants Butler, Heritage and Warrantech ("Defendants") within thirty (30) days after the date

of service.

## DEFINITIONS AND INSTRUCTIONS

A.　　For the purposes of these Interrogatories, the following terms shall be deemed to

have the following meanings:

1.　　"Plaintiffs" shall refer collectively to the Plaintiffs Robert T. Kennedy,

Joann Mick, and Charles C. Mitschow.

1



EXHIBIT
*A*

2. "You," "Your," or "Yourself," shall refer to the party responding to these Interrogatories including its predecessors and successors, and any of its parents, subsidiaries, affiliates or other organizations it owns, controls or operates, either directly or indirectly.

3. "Butler" means Butler Financial Solutions, LLC, as well as any of its predecessors, successors, subsidiaries and parents, as well as all of their officers, directors, agents, employees, servants and representatives.

4. "Heritage" means defendant, Heritage Warranty Insurance Risk Retention Group, Inc., as well as any of its predecessors, successors, subsidiaries and parents, as well as all of their officers, directors, agents, employees, servants and representatives.

5. "Warrantech" means Warrantech Automotive, Inc., Warrantech Automotive of Florida, Inc., Warrantech Corporation, Warranty-by-Net, Vemeco, Inc. as well as any of their predecessors, successors, past or present subsidiaries and parents, as well as all of their officers, directors, agents, employees, servants and representatives.

6. "VSC" means vehicle service contract, specifically, the contract identified as such throughout the Plaintiffs' complaint.

7. "Claim" means any direct or indirect attempt by or on behalf of a VSC purchaser or holder to receive payment, reimbursement or coverage under a VSC.

8. "Related Actions" means any and all litigation concerning the VSCs, the nonpayment of claims, the responsibility for the VSC program, the funding and/or payment of claims, and any related contractual disputes, including without limitation the other cases currently pending before this Court between and among Defendants.

9. "Any" shall encompass "all" and "all" shall encompass "any."

2

10.     "Communication" shall mean any oral or written utterance, notation or statement of any nature whatsoever, by and to whom ever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements and other understandings between or among two or more persons.

11.     "Concerning" or "regarding" means and includes the following terms: comprising, constituting, dealing with, describing, discussing, reflecting, evidencing, pertaining, prepared for, relating or referring to, mentioning and/or showing.

12.     "Document" shall be interpreted in a manner consistent with the requirements of Fed.R.Civ.P. 34 and, unless otherwise indicated, shall mean all written, printed, typed, recorded (electronically or otherwise), graphic or photographic material of any kind or character and all photostatic, microfilmed or other non-duplicative copies now or at any time in your possession, custody or control in whatever form, including, among other things and without limitation, address and telephone records, adjusting and inner company eliminating entries, agreements, analyses, audits, audio tapes, bank checks, bank credit and debit memoranda, bank drafts, bank statements, books, books of account, brochures, budgets, bulletins, business records, calendars, cash journals, charts, computer data (including printouts and programs), computer disks, contracts, desk pads and desk calendars, diaries, depositions, electronic mail ("e-mail") messages and attachments, expense records, financial calculations, financial projections, financial statements and reports, galley proofs, general journals, general ledgers, graphs, inter-office communications, interview, invoices, letters, lists, maps, memoranda, minutes, notes, note pads, notes and minutes of meetings, notes of conversations and conferences (whether by telephone or in person), notices, pamphlets, payroll records, periodicals, phonograph records,

3

photographs, press releases, page proofs, records, reports, results of investigations, schedules, scripts, screenplays, sound recordings, speeches, statements of account, studies, summaries, surveys or studies, tape recordings, telegrams, telephone billing records, telephone logs, telephone message slips or memos, teletype messages, transcripts, videotapes, video disks, vouchers, voucher registers, working papers, worksheets and other compilations reflecting the combination and consolidation of data and other writings or parts thereof of every kind and description (whether or not actually used).  In addition, the term "document" shall include "electronic data," which means the original and any non-identical copies and drafts of mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial, or work-in-progress), programming notes, instructions, comments or remarks, program change logs and activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, e-mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drivers, PDF files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment.  Electronic data shall include any and all items stored on computer memories or computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, hard disks, floppy disks, CD-ROM, Bernoulli Boxes and their equivalent, magnetic tape of all types, microfiche, punched media or any other vehicle for digital data storage and/or transmittal. The term shall also include all Electronic Bulletin Board Services, including all levels of access, sub-boards, conferences and all information contained therein.

4

13.     "Identify," with respect to persons, means to provide, to the extent known, the person's full name, present or last known address, and when referring to a natural person, the present or last known place of employment and, if the person was but is no longer employed by Defendant, the date upon which the individual's employment terminated with Defendant.

14.     "Identify," with respect to Documents, means to provide, to the extent possible, information about the (i) type of document, (ii) its general subject matter, (iii) the date of the document, and (iv) author(s), addressee(s), and recipient(s).

B.     Unless otherwise indicated, the relevant period for these Interrogatories is January 1, 2004 through the duration of this litigation.  All information and Documents which refer to this period whether prepared or collected before, during or afterward are to be produced.

C.     If any form of privilege, whether based on statute or otherwise, is claimed as a ground for not responding to any Interrogatory, or producing any document responsive to the accompanying Requests for Production of Documents, or any part thereof, each and every fact upon which the privilege is based, including sufficient facts for the Court to make a full determination as to whether the claim of privilege is valid, shall be set forth in complete detail. With respect to a document to which a privilege is being claimed, the following information at the very minimum should be provided:

(1)     date;

(2)     author;

(3)     names and addresses of any persons who receive copies, if any;

(4)     title;

(5)     type of tangible thing, letter, memorandum, telegram, report, etc.; and

5

(6)     general description of the subject matter (without revealing privileged

information).

D.     Documents shall be produced as they are kept in the regular course of business.

E.     Except as otherwise provided, these Interrogatories shall be deemed to be

continuing and any information or documents relating in any way to these Interrogatories which

you acquire, which become known to you up to and including the time of trial, shall be furnished

by you to Plaintiffs within a reasonable time after such information is acquired or becomes

known.  Similarly, any information or documents provided in response to these Interrogatories

which is later found to be incomplete or incorrect, or to have become incomplete or incorrect

because of changed circumstances, should be completed or corrected by means of supplemental

responses.

## INTERROGATORIES

1.     State the total number of persons who purchased VSCs in which Butler is

identified as the obligor.

2.     State the total number of persons who purchased VSCs in which Butler is

identified as the obligor and in which Heritage is identified as the insurer of Butler's obligations

under the VSCs.

3.     Provide a breakdown of the number of persons stated, in your responses to

Interrogatory Nos. 1 & 2, by state of residence on a state-by-state basis.

4.     State the total number and total dollar amount of all formal and informal VSC

claims submitted, and attempted to be submitted, after June 30, 2006.

5.     State the total number and total dollar amount of all formal and informal VSC

6

claims paid after June 30, 2006.

6.      State the total number and total dollar amount of all formal and informal VSC claims that remain unpaid after June 30, 2006.

7.      State the total number and total dollar amount of all formal and informal VSC claims that were denied after June 30, 2006.

8.      State the total number and total dollar amount of all formal and informal VSC claims that remain unpaid after June 30, 2006 that you contend are not valid claims and, for each, state every reason why you contend it is not a valid claim.

9.      State the total number and total dollar amount of all formal and informal VSC claims that were denied after June 30, 2006 that you contend are not valid claims and, for each, state every reason why you contend it is not a valid claim.

10.      Provide a breakdown of the number of persons stated, in your responses to Interrogatory Nos. 4 - 9, by state of residence on a state-by-state basis.

11.      Identify all VSC holders who, after June 30, 2006, have submitted a formal or informal claim, attempted to submit a formal or informal claim, or have complained about the nonpayment of a VSC claim.

12.      State the total revenues collected as a result of the sale of VSCs.

13.      State the total revenues you received as a result of the sale of VSCs.

14.      Identify each materially different version of the form VSC that was issued, the number of persons issued that version of the VSC, the time period during which each such VSC version was issued and identify with specificity all material differences between such VSC versions.

7

15.     Provide a breakdown of the VSC versions and the number of persons stated, in your response to Interrogatory No. 14, by state of residence on a state-by-state basis.

16.     Describe in detail if and how you, or anyone else, recorded, logged, noted, tracked, reported or otherwise documented any and all formal and informal VSC claims submitted, or attempted to be submitted, after June 30, 2006.

17.     Identify any and all persons who have provided information in connection with responses to these interrogatories.

18.     Identify any and all persons who have provided information in relation to discovery responses provided in the related actions.

19.     Identify any and all persons who have been deposed in the related actions and describe the subject of the depositions.

DATED: February 9, 2009

SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP

By:

Scott R. Shepherd
1640 Town Center Circle, Suite 216
Weston, FL 33326
Telephone: 954/943-9191
Facsimile: 954/943-9173
sshepherd@sfmslaw.com

8

George N. Vurdelja, Jr.
**HARRISON & HELD LLP**
333 W. Wacker Drive, Suite 1700
Chicago, Illinois 60606
Telephone: 312/753-6161
Facsimile: 312/332-1150
gvurdelja@harrisonheld.com

Jeffrey A. Berens
**DYER & BERENS LLP**
682 Grant Street
Denver, Colorado 80203
Telephone: 303/861-1764
Facsimile: 303/395-0393
jeff@dyerberens.com

James C. Shah
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
35 E. State Street
Media, Pennsylvania 19063
Telephone: 610/891-9880
Facsimile: 610/891-9883
jshah@sfmslaw.com

Douglas P. Dehler
**SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP**
111 East Wisconsin Avenue, Suite 1750
Milwaukee, Wisconsin 53202
Telephone: 414/226-9900
Facsimile: 414/226-9905
ddehler@sfmslaw.com

**Attorneys for Plaintiffs**

9

## **CERTIFICATE OF SERVICE**

I hereby certify on February 9, 2009, I sent the foregoing First Set of Plaintiffs' Interrogatories Directed to All Defendants  by electronic mail and first class mail postage prepaid to the following:

Michael Murphy Tannen
Michael Murphy Tannen Law Offices
39 S. LaSalle Street
Suite 905
Chicago, IL 60603

Joel B. Samson
Thomas M. Dee
Husch Blackwell Sanders, LLP
190 Carondelet Plaza
Suite 600
St. Louis, MO 63105

John Kenneth Kallman
Law Offices of John Kenneth Kallman
221 North LaSalle Street
Suite 1200
Chicago, IL 60601-1305

James M. Davis
Evan Thomas Knott
Paul R. Walker-Bright
Reed Smith LLP
10 S. Wacker Drive - 40th Floor
Chicago, IL 60606

Iain D. Johnston
Philip F. Ackerman
Johnston & Greene LLC
542 S. Dearborn Street
Suite 1310
Chicago, IL 60605

By: _____
Scott R. Shepherd

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT T. KENNEDY, JOANN MICK, CHARLES C. MITSCHOW On Behalf of Themselves and All Others Similarly Situated, Plaintiff, BUTLER FINANCIAL SOLUTIONS, LLC, HERITAGE WARRANTY INSURANCE RISK RETENTION GROUP, INC., f/k/a HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC., and JOHN DOES 1-10, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:08-cv-1862 Honorable George M. Marovich **FIRST SET OF PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO ALL DEFENDANTS** |

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs, Robert T. Kennedy, Joann Mick, and Charles C. Mitschow (collectively "Plaintiffs") hereby request that Defendants Butler, Heritage and Warrantech ("Defendants") each produce the documents set forth below upon Plaintiffs at the offices of George N. Vurdelja, Jr., 333 W. Wacker Drive, Suite 1700, Chicago, Illinois 60606, within thirty (30) days of date of service or such other date as the parties may agree or the Court may order.

1

## DEFINITIONS AND INSTRUCTIONS

A.    For the purposes of these Requests for Production, the following terms shall be deemed to have the following meanings:

1.    "Plaintiffs" shall refer collectively to the Plaintiffs Robert T. Kennedy, Joann Mick, and Charles C. Mitschow.

2.    "You," "Your," or "Yourself," shall refer to the party responding to these Requests including its predecessors and successors, and any of its parents, subsidiaries, affiliates or other organizations it owns, controls or operates, either directly or indirectly.

3.    "Butler" means Butler Financial Solutions, LLC, as well as any of its predecessors, successors, subsidiaries and parents, as well as all of their officers, directors, agents, employees, servants and representatives.

4.    "Heritage" means defendant, Heritage Warranty Insurance Risk Retention Group, Inc., as well as any of its predecessors, successors, subsidiaries and parents, as well as all of their officers, directors, agents, employees, servants and representatives.

5.    "Warrantech" means Warrantech Automotive, Inc., Warrantech Automotive of Florida, Inc., Warrantech Corporation, Warranty–by–Net, Vemeco, Inc., as well as any of their predecessors, successors, subsidiaries and parents, as well as all of their officers, directors, agents, employees, servants and representatives.

6.    "VSC" means vehicle service contract, specifically, the contract identified as such throughout the Plaintiffs' complaint.

7.    "Claim" means any direct or indirect attempt by or on behalf of a VSC purchaser or holder to receive payment, reimbursement or coverage under a VSC.

2

8.     "Related Actions" means any and all litigation concerning the VSCs, the nonpayment of claims, the responsibility for the VSC program, the funding and/or payment of claims, and any related contractual disputes, including without limitation the other cases currently pending before this Court between and among Defendants.

9.     "Any" shall encompass "all" and "all" shall encompass "any."

10.     "Communication" shall mean any oral or written utterance, notation or statement of any nature whatsoever, by and to whom ever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements and other understandings between or among two or more persons.

11.     "Concerning" or "regarding" means and includes the following terms: comprising, constituting, dealing with, describing, discussing, reflecting, evidencing, pertaining, prepared for, relating or referring to, mentioning and/or showing.

12.     "Document" shall be interpreted in a manner consistent with the requirements of Fed.R.Civ.P. 34 and, unless otherwise indicated, shall mean all written, printed, typed, recorded (electronically or otherwise), graphic or photographic material of any kind or character and all photostatic, microfilmed or other non-duplicative copies now or at any time in your possession, custody or control in whatever form, including, among other things and without limitation, address and telephone records, adjusting and inner company eliminating entries, agreements, analyses, audits, audio tapes, bank checks, bank credit and debit memoranda, bank drafts, bank statements, books, books of account, brochures, budgets, bulletins, business records, calendars, cash journals, charts, computer data (including printouts and programs), computer disks, contracts, desk pads and desk calendars, diaries, depositions, electronic mail ("e-mail")

3

messages and attachments, expense records, financial calculations, financial projections,

financial statements and reports, galley proofs, general journals, general ledgers, graphs,

inter-office communications, interview, invoices, letters, lists, maps, memoranda, minutes, notes,

note pads, notes and minutes of meetings, notes of conversations and conferences (whether by

telephone or in person), notices, pamphlets, payroll records, periodicals, phonograph records,

photographs, press releases, page proofs, records, reports, results of investigations, schedules,

scripts, screenplays, sound recordings, speeches, statements of account, studies, summaries,

surveys or studies, tape recordings, telegrams, telephone billing records, telephone logs,

telephone message slips or memos, teletype messages, transcripts, videotapes, video disks,

vouchers, voucher registers, working papers, worksheets and other compilations reflecting the

combination and consolidation of data and other writings or parts thereof of every kind and

description (whether or not actually used).  In addition, the term "document" shall include

"electronic data," which means the original and any non-identical copies and drafts of

mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private,

commercial, or work-in-progress), programming notes, instructions, comments or remarks,

program change logs and activity listings of electronic mail receipts and/or transmittals, output

resulting from the use of any software program, including word processing documents,

spreadsheets, database files, charts, graphs and outlines, e-mail, operating systems, source code

of all types, programming languages, linkers and compilers, peripheral drivers, PDF files, ASCII

files, and any and all miscellaneous files and/or file fragments, regardless of the media on which

they reside and regardless of whether said electronic data consists in an active file, deleted file or

file fragment.  Electronic data shall include any and all items stored on computer memories or

4

computer chips, including, but not limited to, EPROM, PROM, RAM and ROM, hard disks, floppy disks, CD-ROM, Bernoulli Boxes and their equivalent, magnetic tape of all types, microfiche, punched media or any other vehicle for digital data storage and/or transmittal. The term shall also include all Electronic Bulletin Board Services, including all levels of access, sub-boards, conferences and all information contained therein.

13. "Identify," with respect to Documents, means to provide, to the extent possible, information about the (i) type of document, (ii) its general subject matter, (iii) the date of the document, and (iv) author(s), addressee(s), and recipient(s).

B. If anything is deleted or redacted from a document produced in response to a request for production, you shall state the reason for the deletion or redaction and the subject matter of the deletion.

C. If any document is withheld pursuant to an objection or claim of privilege, you shall produce a log of privileged documents identifying each withheld document by stating: (1) the name(s) and affiliation(s) of the document's author(s) or originator(s); (2) the name(s) and affiliation(s) of the document's addressee(s); (3) the document's date; (4) the document's title and subject matter; (5) the name(s) and affiliation(s) of the present or last known custodian(s) of the original document or copies thereof; (6) the current or last known business and residence addresses of such custodian(s); and (7) the name(s) and affiliation(s) of all recipients of copies of the document. In addition, you shall state the basis upon which the objection is raised or the privilege is claimed.

D. All documents are to be produced as they are maintained in the ordinary course of business. To the extent documents are ordinarily maintained in a labeled file, folder or file

5

drawer, produce a copy or the original of the file, folder or label together with the document so that the location in which the document was found can be determined.

E.     These requests for production are to be deemed continuing in nature. Supplemental answers are requested in the event that you subsequently obtain or become aware of the existence of information that differs from or is in addition to that contained in earlier answers.

F.     These requests for production of documents cover all information and documents in your possession, control, or custody or in that of your officials, employees, agents, consultants, servants, attorneys and assigns.

G.     Where you are asked to produce a document which was formerly in your possession, custody or control but has been lost or destroyed, designate the type of document (*i.e.*, letter, report, book, brochure, etc.) and state:

(a)     Information sufficient to enable identification of the document, including the title or subject heading, date, name and address of the author or signer, and name and address of the addressee and persons copied with the document;

(b)     The substance or contents of the document;

(c)     The last location of the document;

(d)     The date on which the document was lost or destroyed; and

(e)     If destroyed, the circumstances of or reason for such destruction and the persons requesting and performing such destruction.

6

H.      Where You object that a request is overly broad, burdensome or oppressive, please set forth the facts or other evidence to demonstrate the nature of the burden so that the request may be clarified or redrafted in order to eliminate the burden.

## REQUESTS FOR PRODUCTION

1.      All documents, discovery requests and discovery responses (including deposition transcripts) provided or produced by or to any party, third-party, or non-party in discovery in the related actions.

2.      All documents provided to or received from any federal, state or local government or quasi-governmental agency, or business rating organization (such as the Better Business Bureau), as part of any formal or informal inquiry, investigation or litigation regarding VSCs.

3.      All documents concerning inquiries or complaints regarding the nonpayment of VSC claims, by or on behalf of VSC holders.

4.      All documents which reflect, in whole or part, the number and form of VSCs that were issued in each State of the United States of America.

5.      Any and all contracts or agreements between the parties in the related actions.

6.      All documents regarding the marketing, advertising, public relations, or sale of the VSCs.

7.      All documents regarding the actual claims, claims rates, and anticipated or projected claim rates on the VSCs.

8.      Documents sufficient to identify all VSC holders (including current address and contact information), who, after June 30, 2006, have submitted a formal or informal claim, attempted to submit a formal or informal claim, or have complained or inquired about the

7

nonpayment of a VSC claim.

9.       Documents sufficient to identify all VSC holders (including current address and contact information) whose formal or informal claims remain unpaid as of the date of these Requests.

10.      All documents that were reviewed, relied upon or were otherwise consulted in preparing your responses to Interrogatory Nos. 1-11 & 14-16.

11.      All documents regarding or relating to Plaintiffs Robert T. Kennedy, Joann Mick, or Charles C. Mitschow.

12.      All form contracts used in relation to the sale or distribution of VSCs, including the VSC forms themselves and any and all materially different versions thereof.

13.      All documents related to your revenues, costs, and net profits from the sale of the VSCs.

14.      Documents sufficient to show your document retention policies for the past 5 years.

DATED: February 9, 2009           **SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

By:   _____

Scott R. Shepherd
1640 Town Center Circle, Suite 216
Weston, FL 33326
Telephone: 954/943-9191
Facsimile: 954/943-9173
sshepherd@sfmslaw.com

8

George N. Vurdelja, Jr.
**HARRISON & HELD LLP**
333 W. Wacker Drive, Suite 1700
Chicago, Illinois 60606
Telephone: 312/753-6161
Facsimile: 312/332-1150
gvurdelja@harrisonheld.com.

Jeffrey A. Berens
**DYER & BERENS LLP**
682 Grant Street
Denver, Colorado 80203
Telephone: 303/861-1764
Facsimile: 303/395-0393
jeff@dyerberens.com

James C. Shah
**SHEPHERD, FINKELMAN, MILLER**
 **& SHAH, LLP**
35 E. State Street
Media, Pennsylvania 19063
Telephone: 610/891-9880
Facsimile: 610/891-9883
jshah@sfmslaw.com

Douglas P. Dehler
**SHEPHERD, FINKELMAN, MILLER**
 **& SHAH, LLP**
111 East Wisconsin Avenue, Suite 1750
Milwaukee, Wisconsin 53202
Telephone: 414/226-9900
Facsimile: 414/226-9905
ddehler@sfmslaw.com

**Attorneys for Plaintiffs**

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on February 9, 2009, I sent the foregoing First Set of Plaintiffs' Requests for Production of Documents Directed to All Defendants by electronic mail and first class mail postage prepaid to the following:

Michael Murphy Tannen
Michael Murphy Tannen Law Offices
39 S. LaSalle Street
Suite 905
Chicago, IL 60603

Joel B. Samson
Thomas M. Dee
Husch Blackwell Sanders, LLP
190 Carondelet Plaza
Suite 600
St. Louis, MO 63105

John Kenneth Kallman
Law Offices of John Kenneth Kallman
221 North LaSalle Street
Suite 1200
Chicago, IL 60601-1305

James M. Davis
Evan Thomas Knott
Paul R. Walker-Bright
Reed Smith LLP
10 S. Wacker Drive - 40th Floor
Chicago, IL 60606

Iain D. Johnston
Philip F. Ackerman
Johnston & Greene LLC
542 S. Dearborn Street
Suite 1310
Chicago, IL 60605

By: _____
Scott R. Shepherd

# EXHIBIT B

HWMIRRG-SC-WAR-001

## HERITAGE WARRANTY INSURANCE RISK RETENTION GROUP, INC.

## TEXAS ENDORSEMENT TO SERVICE CONTRACT REIMBURSEMENT INSURANCE POLICY

## NOTICE

**This Policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance**
**Insolvency guaranty funds are not available for your risk retention group.**

This endorsement shall be attached to the Service Contract Reimbursement Insurance Policy issued by Heritage Warranty Mutual Insurance Risk Retention Group, Inc., hereafter referred to as the Company, to the Insured therein, (Policy Number HWMIRRG-SC-TPA-001) which policy was issued on the 8TH day of March, 2001.

### *POLICY PROVISIONS*

*The Company, in consideration of the payment of the premium and in reliance upon the statements in the Declarations Page and subject to the limits of liability, exclusions, conditions and other terms of this Endorsement and the underlying Policy agrees with the Insured as follows:*

## I. *INSURING AGREEMENTS*

1.  *Definition of Coverages*

*Notwithstanding any other definition, term, condition, limitation, exclusion, endorsement or other provision of this policy or any other insurance policy: (1) the Named Company shall reimburse or pay on behalf of the Insured (Provider) any covered amounts the Provider is legally obligated to pay or shall provide the service that the Provider is legally obligated to perform according the Provider's contractual obligations under any insured service contract issued or sold by the Provider during the term of this policy; and (2) if the covered service is not provided to a service contract holder within 60 days of proof of loss, payment shall be made directly from the Named Company to the service contract holder or the Named Company shall provide the required service.*

*For the purposes of this endorsement an "insured service contract" shall mean any service contract issued or sold by the Provider during the term of this policy, which shall be from the effective date of the policy until effective date of cancellation of this policy. Any provision of this policy which limits in any way the Named Company's absolute obligation to reimburse or pay on behalf of the Provider any covered amounts the Provider is legally obligated to pay, or to provide any service that the Provider is legally obligated to provide or perform, under an insured service contract, is hereby amended to conform in all respects to the Provider's obligations to the service contract holder imposed by such service contract or by Section 7(a(1)*

EXHIBIT
B

NOV-22-2004  16:30                                                                      P.03/03

and (2), Article 9034, Texas Civil Statutes. Further, in the event that any provision of this policy cannot be amended to conform to the service contract or Section 7 (a) (1) and (2) as specified herein, such provision in this policy shall not apply to the Named Company's absolute obligations to the service contract holder, and the terms of the service contract shall control the determination of the Named Company's obligation to pay the service contract holder, not the provisions of this policy. Neither the Provider's failure to comply with a term of this policy nor any definition, term, condition, limitation, exclusion, endorsement, or other provision of this policy or any other policy shall relieve the Named Company from those obligations imposed on the Provider in the service contracts issued or sold by the Provider during the term of this policy. Similarly, no defense related to this policy that otherwise would be available to the Named company against the Provider shall apply to or defeat the named Company's obligations to pay or perform, on behalf of the Provider for the benefit of the service contract holder, as specified in any insured service contract.

All other conditions and terms of the underlying referenced Policy shall remain in full force and effect except as specifically altered herein.

**In Witness Whereof,** the Company has caused this Endorsement to be executed and attested these presents, but this Endorsement shall not be valid unless countersigned by a duly authorized representative of the Company.

Larry S. Roseberry, President

TOTAL P.03

# HERITAGE WARRANTY MUTUAL INSURANCE RISK RETENTION GROUP, INC.

## ILLINOIS ENDORSEMENT TO SERVICE CONTRACT REIMBURSEMENT INSURANCE POLICY

### NOTICE

This Policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.

This Endorsement shall be attached to the Service Contract Reimbursement Insurance Policy issued by Heritage Warranty Mutual Insurance Risk Retention Group, Inc., hereafter referred to as the Company, to the Insured therein, (Policy Number HWMIRRG-SC-WAR-001) which Policy was issued on the 17th day of December, 2001.

### POLICY PROVISIONS

*The Company, in consideration of the payment of the premium and in reliance upon the statements in the Declarations Page and subject to the limits of liability, exclusions, conditions and other terms of this Endorsement and the underlying Policy agrees with the Insured as follows:*

### I. INSURING AGREEMENTS

1. *Definition of Coverages*

*The Company will indemnify the Insured against Loss, subject to the Loss Reserve Fund provision in the underlying Policy, arising out of the reasonable and customary cost of repair or replacement under and in accordance with all the terms of the Service Contracts issued by the Insured in the State of Illinois on or after the inception date of the underlying Policy, as follows:*

*The Company will reimburse or pay on behalf of the Insured all covered sums which the Insured is legally obligated to pay or will provide the service that the Insured is legally obligated to perform according to the Insured's contractual obligations under the provisions of the above-mentioned Service Contracts.*

*Any Losses, as defined in the underlying Policy, not paid or reimbursed by the Insured within sixty (60) days of the filing of proof of loss by the Service Contract Holder with the Insured, may be filed by the Service Contract Holder directly with the Company.*

*The Company shall be deemed to have received any premium payments made by Service Contract Holders for Service Contract coverage.*

*If a Service Contract is canceled by a Service Contract Holder, the Company shall return the unearned Service Contract reimbursement insurance premium for that Service Contract to the Insured. If the Insured fails to refund to the Service Contract Holder of a canceled Service Contract the amounts required under Section 35 of the Illinois Service Contract Act, 215 ILCS 152/1 et seq., the Company shall be responsible for the refund to the Service Contract Holder.*

All other conditions and terms of the underlying referenced Policy shall remain in full force and effect except as specifically altered herein.

**IN WITNESS WHEREOF,** the Company has caused this Endorsement to be executed and attested these presents, but this Endorsement shall not be valid unless countersigned by a duly authorized representative of the Company.

_____
Rhoderick J. Beery, President

HWMIRRG-SC-WAR-001

## HERITAGE WARRANTY MUTUAL INSURANCE
## RISK RETENTION GROUP, INC.

## WYOMING ENDORSEMENT TO SERVICE CONTRACT REIMBURSEMENT
## INSURANCE POLICY

### NOTICE

*This Policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your state. State insurance insolvency guaranty funds are not available for your risk retention group.*

This Endorsement shall be attached to the Service Contract Reimbursement Insurance Policy issued by Heritage Warranty Mutual Insurance Risk Retention Group, Inc., hereafter referred to as the Company, to the Insured therein, (Policy Number HWMIRRG-SC-MIL-001) which Policy was issued on the 7th day of June, 2002. This Endorsement modifies and amends said Policy as follows:

### I.    INSURING AGREEMENTS

1.    **Definition of Coverages**

*The Company will reimburse or pay 100% on behalf of the Insured all covered sums which the Insured is legally obligated to pay or will provide the service that the Insured is legally obligated to perform according to the Insured's contractual obligations under the provisions of the above-mentioned Service Contracts.*

*The following language shall not be deemed applicable in the state of Wyoming, per Wyoming Statue §26-49-108, "Coverage hereunder shall be provided on a claims made basis".*

*The underlying Policy may not be cancelled by either the third party obligor or the issuing insurer without providing sixty (60) days prior notice to the Commissioner of the Department of Agriculture and Consumer Services.*

All other conditions and terms of the underlying referenced Policy shall remain in full force and effect except as specifically altered herein.

**IN WITNESS WHEREOF**, the Company has caused this Endorsement to be executed and attested these presents, but this Endorsement shall not be valid unless countersigned by a duly authorized representative of the Company.

Rhodorick J. Berry, President

HWMIRRG-SC-MIL-001

# EXHIBIT C

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.2.1
### Eastern Division

Robert T. Kennedy

                    Plaintiff,

v.

                              Case No.: 1:08–cv–01862

                              Honorable George M. Marovich

Butler Financial Solutions, LLC, et al.

                    Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, August 19, 2008:

      MINUTE entry before the Honorable George M. Marovich: Motion hearing held. Director Scott H Richardson is given leave to intervene. Intervenor's motion for leave to file two documents as restricted and sealed pursuant to LR 26.2 [111] is granted; said documents are to remain under seal and can be returned to counsel for the intervenor at the conclusion of this case. Case is stayed until 9/25/2008. Status hearing set for 10/7/2008 at 11:00 a.m.Mailed notice(clw, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.



EXHIBIT

*C*

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 1862 | **DATE** | 12/30/2008 |
| **CASE TITLE** | Kennedy vs. Butler Financial Solutions, LLC, et al. | | |

**DOCKET ENTRY TEXT**

Motion hearing set for 1/6/2009 is stricken. Motion of Scott H Richardson, as Director of the South Carolina Department of Insurance, to withdraw as intervenor [167] is granted. Intervenor Director Scott H. Richardson is withdrawn without prejudice as intervenor in this case.

Docketing to mail notices.

| | Courtroom Deputy Initials: | CW |
|---|---|---|